**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01223

**AMANDA WILSON**, a Michigan resident,

Plaintiff,

v.

**JONATHAN PAULING**, an individual Colorado resident, **MARK PAULING**, an individual Colorado resident, **TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP**, a Colorado General Partnership, **ELYCE YORK**, an individual Nebraska or Colorado resident, **LARDYN CONSULTING LLC**, a Nebraska Limited Liability Company, and **FARMERS STATE BANK**.

Defendants.

---

## COMPLAINT
---

Plaintiff Amanda Wilson, for her Complaint against Defendants Jonathan Pauling, Mark Pauling, Two Mile Ranch a/k/a Two Mile Ranch General Partnership, Elyce York, Lardyn Consulting LLC, and Farmers State Bank (collectively "Defendants"), states as follows:

### STATEMENT OF THE CASE

This case arises out of a civil conspiracy between Defendant Jonathan "Jon" Pauling and several of his confederates to hinder, delay, and defraud Plaintiff Amanda Wilson in her efforts to collect a civil judgment exceeding $4 million. Jon Pauling was found both criminally and civilly liable for sexually assaulting Amanda Wilson. As described in detail in this complaint, Jon Pauling, his brother Defendant Mark Pauling, his girlfriend Elyce York, multiple entities they control, and the Pauling brother's longtime bank Farmer's State Bank, undertook elaborate and concerted actions to conceal and protect Jon Pauling's assets against collection and to frustrate the civil justice system.

1

## PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Amanda Wilson is an individual who resides at 13 Ballard St., Apt. 2, Ypsilanti, MI 48197.

2.     Defendant Jon Pauling is an individual who, on information and belief, resides at 60773 North Highway 71, Stoneham, Colorado, 80754.

3.     Defendant Mark Pauling is Jon Pauling's brother and is an individual who, on information and belief, resides at 18503 or 18505 County Road 42.5, Sterling, Colorado, 80751.

4.     Defendant Two Mile Ranch a/k/a Two Mile Ranch General Partnership is a Colorado general partnership whose principal place of business, on information and belief, is 60773 North Highway 71, Stoneham, Colorado, 80754, or alternatively—according to Jon Pauling's previous testimony—it is 18503 County Road 42.5, Sterling, Colorado (despite the fact that "legally it's still probably going to show up as 60773 [North Highway 71, Stoneham, Colorado]").

5.     Defendant Elyce York is an individual who, on information and belief, currently resides at 1660 Summit Drive, Sidney, Nebraska, 69162.  The property at this address is owned by a Nebraska entity called Redtail Resources LLC, which is registered to do business in Colorado as Redtail Resources Colorado LLC.  The statement of foreign entity authority and other documents filed for Redtail Resources Colorado LLC were filed by attorney Brian Bates, who is a longtime attorney for Two Mile Ranch and other entities affiliated with Jon Pauling and Mark Pauling. Jon Pauling testified in 2016 that Elyce York lived in a property owned by Two Mile Ranch at 22434 N. Turkey Creek Road, Morrison, Colorado, 80465, but that she had moved out. However, U.C.C. Financing Statements filed by Defendant Farmers State Bank in April of

2017 reflect that Elyce York still lived at the Morrison address. As such, alternatively, Elyce York resides at 22434 N. Turkey Creek Road, Morrison, Colorado, 80465.

6. Defendant Lardyn Consulting LLC is a Nebraska limited liability company whose principal place of business, on information and belief, is 2561 S. 125th Ave., Omaha, Nebraska, 68144.

7. Defendant Farmers State Bank is a bank regulated by the Federal Deposit Insurance Corporation, whose principal place of business, on information and belief, is 355 2nd St., Dodge, Nebraska, 68633. The allegations herein pertain to the branch of Farmers State Bank at 823 Main Street, Bridgeport, Nebraska, 69336 (formerly 501 Main Street, Bridgeport, Nebraska, 69336). Farmers State Bank repeatedly engaged in transactions with Colorado residents Jon Pauling, Mark Pauling, Elyce York (while she resided in Colorado) and Two Mile Ranch, lent money to Colorado residents and entities controlled by them, encumbered property in Colorado in connection with those loans, filed U.C.C. financing statements in Colorado with respect to those loans, and otherwise engaged in concerted actions to hinder, delay, and defraud the collection (in Colorado) of a Colorado judgment by Plaintiff Amanda Wilson as alleged herein. Farmers State Bank purposely availed itself of this jurisdiction such that the Court's exercise over Farmers State Bank is proper.

8. This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and because the citizenship of Plaintiff Amanda Wilson is different from that of any Defendant.

9. Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

### *The Underlying Judgment in the State Case*

10. Jon Pauling presented himself as a wealthy rancher in the Sterling, Colorado, area when he first met Amanda Wilson. Using his wealth to entice Amanda Wilson into spending time with him, he later sexually assaulted her.

11. In Denver District Court Case No. 2013CV35298 (the "State Case"), on October 23, 2015, Amanda Wilson obtained a jury verdict in her favor against Jon Pauling for claims of assault, battery, and intentional interference with contract. The State Case pertained to (a) the circumstances surrounding Jon Pauling's sexual assault of Plaintiff, to which he pled guilty in Denver District Court Case No. 2013CR1069, as well as (b) Jon Pauling's use of his network of business entities to employ Plaintiff for a time and to manipulate Plaintiff and groom her for sexual assault.

12. Despite attempts to collect the judgment entered in the State Case following the jury verdict, Plaintiff has been unable to collect any amount owed her as a result of the State Case. In those collection proceedings, Jon Pauling has professed to have no assets or income.

13. Through various post-verdict proceedings in the State Case, on December 19, 2018, the Honorable Judge Ross Buchanan amended the judgment in the State Case—increasing the punitive damage award initially rendered by the jury—to total $4,198,274.48. *See* December 19, 2018, Order in the State Case, attached hereto as **Exhibit 1**.

14. In Judge Buchanan's analysis of whether to increase the punitive damage award initially rendered by the jury in the State Case, Judge Buchanan considered Plaintiff's argument that Jon Pauling continued to engage in a pattern of grooming behavior with other vulnerable

young women he met at adult entertainment clubs. Exh. 1 at 5. Judge Buchanan specifically cited evidence concerning Jon Pauling's grooming of Defendant Elyce York.

> The court agrees with Plaintiff and finds beyond a reasonable doubt that Defendant has, in fact, continued to engage in the same wrongful conduct that was the subject of Plaintiff's claims during the pendency of this case. The evidence at trial demonstrated that, following the assault on Plaintiff and including while this case has been pending, Defendant Pauling has continued to frequent adult entertainment establishments and pay for young women who work as exotic dancers, <u>such as Elyce York</u>, to be taken "off the list," meaning they were not required to dance and instead may sit and drink alcohol and talk with Defendant. According to Ms. York's deposition testimony, which was read at trial, Defendant used this technique over perhaps ten occasions to gain her trust and develop a relationship with her. After gaining her trust, Defendant Pauling began to take her to dinner and shopping; assisted her financially, including loaning her $5,000 to hire a divorce lawyer, giving her money to rent an apartment separate from her estranged husband, preparing and backdating a fraudulent document purporting to be an employment contract and two fraudulent paychecks designed to mislead her prospective landlord that her income was sufficient to afford the rent, loaning both her and her mother money on a no-interest basis, giving her access to a car, and buying her diamond earrings and a necklace worth $3,500. In addition, Defendant Pauling, through one of the Defendant entities he controls, has purchased the multi-million-dollar home in a gated community in the foothills near Denver where Ms. York has resided rent-free with her son since May, 2015. Ms. York testified that she has spent at least one night in a hotel with Mr. Pauling. Although she is aware that Plaintiff claims that Mr. Pauling raped her, she does not believe that occurred, and instead believes that Defendant was "probably" set up. She knows he is a registered sex offender, but it does not concern her. She believes that Defendant is divorced, when in fact he remains married. This is a pattern of "grooming" behavior strikingly similar to that in which Defendant Pauling engaged with Plaintiff and several other exotic dancers….
>
> As the testimony of Plaintiffs expert Janine D'Anniballe made clear, such grooming behavior is a well-recognized precursor to sexually abusive or assaultive behavior, especially where there is a significant differential in power or wealth or age….

*See* Exh. 1 at 5-6 (emphasis added).

15.   Jon Pauling continues to have a close relationship with Elyce York as evidenced by facts described more fully in this complaint.

5

16. One of the businesses that had employed Plaintiff—and thus was instrumental to Jon Pauling's grooming behavior with respect to Plaintiff—was a partnership called Two Mile Ranch. Plaintiff sued a number of "Two Mile Ranch" affiliated entities in the State Case as well as other Jon Pauling-controlled entities; however, she did not sue Two Mile Ranch General Partnership in the State Case.

### *In concert, Defendants Fraudulently Transfer Property to Avoid Collection of the Judgement in the State Case*

17. Two Mile Ranch a/k/a Two Mile Ranch General Partnership is a general partnership owned by Jon Pauling and Mark Pauling, through which those brothers have transacted business since the 1980s. Specifically, Jon Pauling and Mark Pauling through Two Mile Ranch have owned and managed several agricultural and residential properties and engaged in a variety of farming, ranching, feedlot operations, and other businesses. Jon Pauling and Mark Pauling are experienced, career ranchers and feedlot owners.

18. The General Partnership Agreement of Two Mile Ranch, dated February 14, 1986, states that Jon Pauling and Mark Pauling are co-equal, fifty percent (50%) partners in Two Mile Ranch.

19. This General Partnership Agreement states the following concerning the management of Two Mile Ranch:

> 1.05 Management. The affairs of the partnership shall be conducted by all of the partners. In case of a difference of opinion among the partners with respect to the management and policies of the partnership, the decision made by Jonathan M. Pauling shall prevail.

20. Plaintiff attempted to collect on the judgment in the State Case by obtaining a charging order on Jon Pauling's partnership interest in Two Mile Ranch. To date Plaintiff has collected no money through the charging order.

21. In the course of collection proceedings in the State Case, on February 10, 2016, Jon Pauling testified that there had been an amendment to the Two Mile Ranch partnership agreement, purportedly on or around September 15, 2014. This purported amendment reallocated partnership interests, such that his partnership interest was reduced to ten percent (10%) and his brother Mark Pauling's partnership interest was increased to ninety percent (90%). This purported amendment likewise replaced the above-quoted management provision for Two Mile Ranch to read, "Mark A. Pauling is the Manager of the partnership."

22. The documentation for the purported reallocation of Jon Pauling's and Mark Pauling's respective partnership interests in Two Mile Ranch was falsely backdated to September 15, 2014. Additionally, it was done to effectuate a fraudulent transfer of assets so that Amanda Wilson would be unable to collect her judgment against Jon Pauling. Facts that demonstrate that the document was falsely backdated include the following:

   a. Jon Pauling and Mark Pauling's 2014 Internal Revenue Service Schedule K-1 forms both show that they remained co-equal fifty percent (50%) partners in Two Mile Ranch as of year-end 2014. Jon Pauling and Mark Pauling's ownership interest of 50% as of the end of 2014 contradicts the purported modifications to their respective partnership interests on September 15, 2014.

   b. Jon Pauling and Mark Pauling signed a document to sell Two Mile Ranch real property which confirmed that—as of May 13, 2015—there had been no amendments or modifications to the Two Mile Ranch partnership agreement. The representation by both Jon Pauling and Mark Pauling that they had made no modifications to the partnership agreement was inconsistent with any purported modification on September 15, 2014, or for that matter at any other date at least through May 13, 2015.

   c. As of May 15, 2015, Jon Pauling—and Jon Pauling alone—was still signing loan agreements on behalf of Two Mile Ranch, whereby it lent Mark Pauling two-hundred seventy five thousand dollars ($275,000).

23. Moreover, Jon Pauling's purported transfer of a forty percent (40%) partnership interest in Two Mile Ranch (i.e. his 50% interest less the 10% interest he retained) to Mark

7

Pauling was for no apparent actual consideration. Instead, Jon Pauling attempted to rationalize the transfer based on some vague perception of what was "fair" between brothers in view of Jon Pauling's misconduct and the fallout from his sexual assault on Plaintiff, as Jon Pauling testified to the following:

> Q. How did you figure out -- how did you figure out to change it from 50/50 to 90/10? How did you go about doing that?
> A. That's what he said he wanted. I really wasn't in a position to argue.
> Q. Why not?
> A. Because he was right and I was wrong.
> Q. So Mark demanded 90 percent?
> A. He just said that that was fair, and I said that's fine.

24. Additionally, with respect to one of the purported sales of Two Mile Ranch property to Mark Pauling described above, a condition of this sale included the purported grant to "seller Jonathan Pauling" of a rent-free tenancy on this real property.

### *The Pauling Brothers Involve Elyce York and Lardyn in their Scheme to Avoid Paying Amanda Wilson's Judgment*

25. Lardyn Consulting LLC ("Lardyn") is a Nebraska Limited Liability Company formed on August 24, 2016.

26. Elyce York is the *nominal* managing member of Lardyn and its registered agent. Elyce York has signed numerous documents to facilitate the creation of Lardyn, maintenance of its status, and transaction of business in Colorado. To be clear, Plaintiff does not believe Elyce York to be the *de facto* manager of Lardyn but rather a straw woman standing in for Jon Pauling.

27. Mark Pauling is also a member of Lardyn.

28. According to the Statement of Foreign Authority filed with the Colorado Secretary of State in 2018, Lardyn commenced business operations in Colorado on September 1, 2016.

8

29. Brian Bates, a longtime attorney of Two Mile Ranch and various other entities related to Jon Pauling and Mark Pauling, filed this Statement of Foreign Authority.

30. Brian Bates likewise filed a periodic report for Lardyn with the Colorado Secretary of State on March 31, 2019.

31. Lardyn's registered agent in Colorado is Brian Bates.

32. Upon information and belief, to be confirmed through discovery, Elyce York has received compensation for her involvement in Lardyn and other assistance to Jon Pauling and Mark Pauling through the aforementioned Redtail Resources LLC, with which Jon Pauling and Mark Pauling's attorney Brian Bates also is involved.

33. Despite being a co-member in Lardyn with Elyce York, Mark Pauling testified in November of 2016 that he had never met Elyce York.

34. Consistent with Judge Buchanan's above-quoted findings, Jon Pauling testified that, for a time, Elyce York lived rent-free at a property in Jefferson County, Colorado, titled in the name of Two Mile Ranch.

35. In 2017, the Pauling brothers caused Two Mile Ranch to transfer large tracts of real property to Lardyn. Namely, in late April of 2017, Two Mile Ranch transferred parcel(s) of real property located at or around 18503 and/or 18505 and/or 18507 County Road 42.5 in Sterling, Colorado, to Lardyn for a purported sales price of four million two hundred and seventy thousand dollars ($4,270,000).

36. As of April 2019, Jon Pauling and Mark Pauling are continuing their business of ranching and operating feedlots through Lardyn. Lardyn is in the process of obtaining state certification to operate a feedlot at 18413 County Road 42.5. That address is for all intents and purposes identical to the location (18503 County Road 42.5) where Jon Pauling and Mark

9

Pauling, through Two Mile Ranch, have operated irrigated farm, ranching, and feedlot operations. *See* Jeff Rice, *County P&Z OKs feedyard expansion*, JOURNAL-ADVOCATE, April 17, 2019.[1]

37. Unlike Jon Pauling and Mark Pauling, Elyce York is not a famer, rancher, or feedlot operator by trade. To the contrary, she is a young dancer who, as Judge Buchanan found in the State Case, also was groomed by Jon Pauling. Notwithstanding her nominal title as the manager of Lardyn, it is not credible that Elyce York would be the brains, brawn, or investor behind a feedlot operation based out of the same location where Jon Pauling and Mark Pauling have operated their farm, ranch, and feedlot businesses for many years.

38. Lardyn is a mere alter ego of Jon Pauling and Two Mile Ranch and its longstanding ranching operation.

39. Two Mile Ranch is an alter ego of Jon Pauling and Mark Pauling used to facilitate fraud, including the avoidance of Amanda Wilson's collection efforts.

40. Lardyn also is a mere alter ego of Jon Pauling and Mark Pauling used to facilitate fraud, including the avoidance of Amanda Wilson's collection efforts.

41. Elyce York is a straw woman for Jon Pauling's interest in Lardyn and a co-conspirator of Jon Pauling and Mark Pauling.

### *Farmers State Bank Assists in transactions concerning the Transferred Properties*

42. The Pauling brothers and their businesses have a longstanding business relationship with Farmers State Bank.

---

[1] Available at http://www.journal-advocate.com/sterling-local_news/ci_32581616/county-p-z-oks-feedyard-expansion (last accessed April 24, 2019, discussing an application to Colorado's Logan County Commissioners to amend and renew a special use permit to increase current permitted capacity of 2,500 head of cattle to 5,000 head of cattle for a feedlot at 18413 County Road 42.5).

43. At least through 2014 and 2015, Farmers State Bank continued to extend credit terms to Two Mile Ranch based on Jon Pauling's signature alone on behalf of Two Mile Ranch.

44. Farmers State Bank had actual knowledge of the State Case and of Amanda Wilson's efforts to collect her judgment against Jon Pauling. In particular, Amanda Wilson engaged in post-judgment discovery that included issuing a subpoena to Farmers State Bank for banking records pertaining to Two Mile Ranch and related business activities of Jon Pauling and Mark Pauling. Farmers State Bank produced documents in response to that subpoena. There is no doubt that Farmers State Bank was fully aware of the State Case, Amanda Wilson's judgment, and her efforts to collect it including against the assets of Two Mile Ranch.

45. In order to protect Jon Pauling and Two Mile Ranch against efforts by Amanda Wilson to collect her judgment, Jon Pauling and Mark Pauling arranged for Farmers State Bank to lend money to Lardyn, with such loans secured by deeds of trust in favor of Farmers State Bank on the transferred property. Farmers State Bank, which had loaned Jon Pauling and Mark Pauling millions of dollars over the years, and which had profited richly from such loans, willingly participated in that scheme.

46. The bankers at Farmers State Bank know Jon Pauling and Mark Pauling personally and have a longstanding, highly lucrative relationship with them. They know Jon Pauling and Mark Pauling to be experienced ranch and feedlot operators operating at the location at issue. When Farmers State Bank providing new financing to Lardyn, with Elyce York as the *nominal* managing member of Lardyn who signed various documents in connection with the financing, it knew that Elyce York and Lardyn were a mere front and shell operation for Jon Pauling, Mark Pauling, and Two Mile Ranch's continuing business operations. Indeed, in connection with providing financing to Lardyn, Farmers State Bank required Mark Pauling to co-

11

sign one or more documents as a member of Lardyn. Farmers State Bank knew that the purpose of this elaborate scheme to transferring property from Two Mile Ranch to Lardyn and provide new financing to Lardyn was to hinder, delay, and defraud Amanda Wilson in her efforts to collect her judgment against Jon Pauling.

47. Moreover, the U.C.C. Financing Statements filed by Farmers State Bank in Colorado with respect to its loans to Lardyn and Elyce York reflect Farmers State Bank's security in livestock and crops, farm and ranching equipment, and profits obtained from farming and ranching operations.

48. Despite knowing that Jon Pauling was being actively pursued by judgment creditors, on information and belief Farmers State Bank knowingly assisted Jon Pauling and Mark Pauling to hinder, delay, and defraud Amanda Wilson in her efforts to collect her judgment against Mark Pauling.

**FIRST CLAIM FOR RELIEF**
*Violation of the Colorado Uniform Fraudulent Transfer Act*
*Transfer of Jon Pauling's Partnership Interest in Two Mile Ranch*
*Against Jon Pauling, Mark Pauling, and Two Mile Ranch*

49. The allegations in the preceding paragraphs are incorporated by reference.

50. Under the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), C.R.S. § 38-8-101 *et seq.*, any transfer made or obligation entered into by a debtor "with actual intent to hinder, delay or defraud" a present or future creditor is actionable. C.R.S. § 38-8-105(1)(a).

51. At all times relevant to Jon Pauling's purported transfer of the majority of his partnership interest in Two Mile Ranch to Mark Pauling, Jon Pauling was a "debtor" of Amanda Wilson as defined by C.R.S. § 38-8-102(7).

52. At all times relevant to Jon Pauling purported transfer of the majority of his partnership interest in Two Mile Ranch to Mark Pauling, Amanda Wilson was a "creditor" of Jon

12

Pauling with a "claim" against Jon Pauling as defined by C.R.S. § 38-8-102(3) and (5).

53. C.R.S. § 38-8-105 sets forth the various, non-exclusive factors (also known as "badges of fraud") that inform whether the debtor acted with "actual intent" to hinder, delay, or defraud a creditor. Actions and transfers by the Defendants establish the existence of several badges of fraud, including but not necessarily limited to the following:

    a. Whether "the transfer or obligation was to an insider[.]" C.R.S. § 38-8-105(2)(a). Mark Pauling is an insider of Jon Pauling (C.R.S. § 38-8-102(8)(a)(I)) and Two Mile Ranch is an insider of Jon Pauling (C.R.S. § 38-8-102(8)(a)(II)).

    b. Whether the debtor "retained possession or control of the property transferred after the transfer[.]" C.R.S. § 38-8-105(2)(b). Jon Pauling testified that he continued to work at the feed lot described at n. 1, *supra*, and Jon Pauling retains control over the former Two Mile Ranch property through this control over Elyce York and thereby his control over Lardyn, with the cooperation of Mark Pauling as a fellow member of Lardyn.

    c. Whether, prior to the transfer, "the debtor had been sued[.]" C.R.S. § 38-8-105(2)(d). Prior to the above transfers, Jon Pauling had been successfully sued.

    d. Whether the transfer "was of substantially all the debtor's assets[.]" C.R.S. § 38-8-105(2)(e). The transfer of 40% of his 50% partnership interest in Two Mile Ranch was of substantially all of Jon Pauling's meaningful assets, as evidenced by Jon Pauling's sworn pleas of poverty during Ms. Wilson's collection attempts in the State Case.

    e. Whether the "value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred[.]" C.R.S. § 38-8-105(2)(h). The value that Jon Pauling received for the transfer of his Two Mile Ranch partnership interest (apparently nothing) is not reasonably equivalent to the value of the asset transferred.

    f. Whether the debtor "was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred[.]" C.R.S. § 38-8-105(2)(i). Throughout the collection attempts in the State Case, Jon Pauling testified that he is insolvent.

54. The reduction of Jon Pauling's partnership interest in Two Mile Ranch is a "transfer" as that term is defined in C.R.S. § 38-8-102(13).

55. The above-described transfer was made with actual intent to hinder, delay, or

13

defraud Amanda Wilson, a creditor of Jon Pauling. This transfer violated C.R.S. § 38-8-105(1)(a). Jon Pauling's actual intent may be inferred by the existence of multiple badges of fraud, including but not necessarily limited to those set forth in C.R.S. § 38-8-105(2)(a), (b), (d), (e), (h), and (i).

56. Likewise, the above-described transfer was made without Jon Pauling receiving reasonably equivalent value in exchange at a time (following his arrest for the sexual assault of Amanda Wilson) when Jon Pauling reasonably should have believed that he would face liability beyond his ability to pay as that liability became due. C.R.S. § 38-8-105(1)(b)(II).

57. Additionally, or in the alternative, the transfers were made without Jon Pauling receiving reasonably equivalent value and rendered Jon Pauling insolvent such that they violated C.R.S. § 38-8-106(1).

58. Mark Pauling, Jon Pauling, and Two Mile Ranch agreed by words, conduct, or both to carry out the foregoing transactions, and all cooperated in carrying out these transfers.

59. Amanda Wilson is entitled to any or all remedies set forth in C.R.S. § 38-8-108 as follows:

   a. Avoidance of the transfer to the extent necessary to satisfy her claims;

   b. An attachment or other provisional remedy against the assets transferred or other property of Jon Pauling, Mark Pauling, or Two Mile Ranch;

   c. Judgment for one and one-half the value of the assets transferred or for one and one-half the amount necessary to satisfy her claims, whichever is less, jointly and severally against Jon Pauling, Mark Pauling, or Two Mile Ranch;

   d. An injunction against further disposition by Jon Pauling, Mark Pauling, or Two Mile Ranch of assets already transferred or of other property, appointment of a receiver to take charge of the assets transferred, and any other relief the circumstances may require.

**SECOND CLAIM FOR RELIEF**
*Violation of the Colorado Uniform Fraudulent Transfer Act*
*Transfer of Two Mile Ranch Property to Lardyn*
*Against Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, and Lardyn*

60. The allegations in the preceding paragraphs are incorporated by reference.

61. The fraudulent transfer of the majority of Jon Pauling's Two Mile Ranch partnership interest was the first step in hindering Amanda Wilson's collection efforts, and the transfer of Two Mile Ranch property to Lardyn was the second step.

62. At the time when Two Mile Ranch transferred real property to Lardyn, Jon Pauling was a "debtor" of Amanda Wilson as defined by C.R.S. § 38-8-102(7).  Mark Pauling and Two Mile Ranch were likewise "debtors" of Amanda Wilson due to their involvement in the earlier fraudulent transfer of Jon Pauling's partnership interest in Two Mile Ranch to Mark Pauling.

63. C.R.S. § 38-8-105 sets forth the various, non-exclusive factors that inform whether the debtor acted with "actual intent" to hinder, delay, or defraud a creditor.  Various actions and transfers by the Defendants establish the existence of several badges of fraud, including but not necessarily limited to the following::

   a. Whether "the transfer or obligation was to an insider[.]" C.R.S. § 38-8-105(2)(a). Lardyn and Elyce York are insiders of Jon Pauling, Mark Pauling, and Two Mile Ranch.  Lardyn is an insider of Jon Pauling because Lardyn is controlled by Elyce York, who is controlled by and a proxy for Jon Pauling, with Mark Pauling's assistance. C.R.S. § 38-8-102(8)(a)(IV).  Lardyn is likewise an insider of Jon Pauling because of this "affiliate" and agency relationship. C.R.S. §§ 38-8-102(1); 38-8-102(8)(d); 38-8-102(8)(e).  Lardyn is likewise an insider of Two Mile Ranch for these same reasons.  Elyce York is an insider of Jon Pauling, Mark Pauling, and Two Mile Ranch for those same reasons.

   b. Whether the debtor "retained possession or control of the property transferred after the transfer[.]"  C.R.S. § 38-8-105(2)(b).  Jon Pauling testified that he continued to work at the feed lot described at n. 1, *supra*, and Jon Pauling retains control over the former Two Mile Ranch property through this control over Elyce York and thereby his control over Lardyn, with the

15

       cooperation of Mark Pauling as a fellow member of Lardyn. Similarly, Two Mile Ranch's purported managing partner Mark Pauling is likewise a member of Lardyn—whose purported managing member does not appear to have any ranching experience—and as such both Mark Pauling and Two Mile Ranch retain control of the transferred property.

  c. Whether, prior to the transfer, "the debtor had been sued or threatened with suit[.]" C.R.S. § 38-8-105(2)(d). Prior to the transfer of Two Mile Ranch's property to Lardyn, Jon Pauling had been successfully sued by Amanda Wilson. Likewise, Two Mile Ranch had been sued in the State Case.

  d. Whether the transfer "was of substantially all the debtor's assets[.]" C.R.S. § 38-8-105(2)(e). The transfer of Two Mile Ranch property to Lardyn appears to be substantially all of Two Mile Ranch's meaningful assets. As evidenced by Jon Pauling's sworn pleas of poverty during Ms. Wilson's collection attempts in the State Case, he had already transferred substantially all of his assets.

  e. Whether the "value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred[.]" C.R.S. § 38-8-105(2)(h). On information and belief, Lardyn had no effective means to actually pay to Two Mile Ranch the purported sale price for the property transferred by Two Mile Ranch, and Two Mile Ranch received nothing of value from Lardyn for the transfer.

  f. Whether the debtor "was insolvent or became insolvent shortly after the transfer was made[.]" C.R.S. § 38-8-105(2)(i). Throughout the collection attempts in the State Case, Jon Pauling testified that he is insolvent. As the property transferred by Two Mile Ranch was substantially of its property, it too became insolvent.

64. The transfer of the Two Mile Ranch property to Lardyn is a "transfer" as that term is defined in C.R.S. § 38-8-102(13).

65. This transfer was made with actual intent to hinder, delay, or defraud Amanda Wilson, a creditor of Jon Pauling, Mark Pauling, and Two Mile Ranch. This transfer violated C.R.S. § 38-8-105(1)(a). Jon Pauling, Mark Pauling, and Two Mile Ranch's actual intent may be inferred by the existence of multiple badges of fraud, including but not necessarily limited to those set forth in C.R.S. § 38-8-105(2)(a), (b), (d), (e), (h), and (i).

66. Likewise, this transfer was made without Two Mile Ranch, Jon Pauling, or Mark Pauling receiving reasonably equivalent value in exchange at a time when they should have

16

reasonably believed that they would incur liability beyond their ability to pay as that liability became due.  C.R.S. § 38-8-105(1)(b)(II).

67. Additionally, or in the alternative, the transfers were made without Two Mile Ranch, Jon Pauling, or Mark Pauling receiving reasonably equivalent value and rendered them insolvent such that they violated C.R.S. § 38-8-106(1).

68. Mark Pauling, Jon Pauling, Two Mile Ranch, Elyce York, and Lardyn agreed by words, conduct, or both to carry out the foregoing transaction, and all cooperated in carrying out these transfers.

69. Amanda Wilson is entitled to any or all remedies set forth in C.R.S. § 38-8-108 as follows:

   a. Avoidance of the transfer to the extent necessary to satisfy her claims;

   b. An attachment or other provisional remedy against the assets transferred or other property of Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, or Lardyn;

   c. Judgment for one and one-half the value of the assets transferred or for one and one-half the amount necessary to satisfy her claims, whichever is less, jointly and severally against Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, or Lardyn;

   d. An injunction against further disposition by Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, or Lardyn of assets already transferred or of other property, appointment of a receiver to take charge of the assets transferred, and any other relief the circumstances may require.

### THIRD CLAIM FOR RELIEF
*Conspiracy to Violate the Colorado Uniform Fraudulent Transfer Act*
*Against Jon Pauling, Mark Pauling, Two Mile Ranch,*
*Elyce York, Lardyn, and Farmers State Bank*

70. The allegations in the preceding paragraphs are incorporated by reference.

71. As set forth above, Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, Lardyn, and Farmers State Bank agreed by words, conduct, or both to carry out the above-

described transfers to hinder, delay, or defraud Amanda Wilson in violation of the Colorado Uniform Fraudulent Transfers Act.

72. These Defendants performed one or more acts—namely, the execution of the above transactions—to accomplish their unlawful goals.

73. These actions have caused Amanda Wilson damage in an amount to be determined at trial.

74. Additionally, all Defendants have profited from their participation in the conspiracy to hinder, delay, and defraud Amanda Wilson. Farmers State Bank has benefitted and profited through its continuing financing of Jon Pauling and Mark Pauling's operations in Colorado; Jon Pauling and Mark Pauling have benefitted and profited from their ability to continue those operations; and Elyce York has benefitted from free housing in Morrison, Colorado as well as, on information and belief, compensation funneled through Redtail Resources LLC. All of those benefits and profits were jeopardized by Amanda Wilson's collection efforts, which is why all Defendants conspired to hinder, delay, and defraud Amanda Wilson.

75. All co-conspirators acted with wrongful intent to hinder, delay, and defraud Amanda Wilson, and are jointly and severally liable for any damages that may be awarded against one, including without limitation damages and statutory multipliers available under C.R.S. § 38-8-108(c).

### Prayer for Relief

Plaintiff Amanda Wilson prays for the following relief:

A. An award of damages to be determined at trial, including, without limitation, any enhanced damages contemplated by C.R.S. § 38-8-108;

B. Any other remedy set forth in C.R.S. § 38-8-108;

C. Statutory and mandatory interest on all sums awarded;

D. An award of costs and attorney fees as may be award by applicable law; and

E. Any other relief as is proper.

Dated: April 25, 2019

Respectfully submitted,

/s/ *Ross W. Pulkrabek*
Ross W. Pulkrabek
Aaron D. Goldhamer
Keating Wagner Polidori Free, PC
1290 Broadway, Suite 600
Denver, Colorado 80203
303.534.0401
rpulkrabek@keatingwagner.com
agoldhamer@keatingwagner.com