| | |
|---|---|
| DISTRICT COURT, COUNTY OF DENVER, STATE OF COLORADO.<br><br>Court Address:<br>1437 Bannock Street<br>Denver, CO 80237<br><br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br>Plaintiff: AMANDA WILSON<br>v.<br><br>Defendants:  JONATHAN M. PAULING et al<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | DATE FILED: December 19, 2018 10:55 PM<br>CASE NUMBER: 2013CV35298<br><br><br><br>▲ COURT USE ONLY ▲<br>⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯<br>Case Number: 13CV35298<br><br><br>Div.:   275          Ctrm: |
| ORDER RE: PENDING MOTIONS | |

THIS MATTER comes before the Court on the parties' pending post-trial motions.  The Court, having reviewed the motions, the responses, the replies, the court file, the applicable law, and being otherwise fully advised in the premises HEREBY ORDERS as follows:

## I.    Background

Following a jury trial, in its Amended Judgment issued on October 29, 2015, *nunc pro tunc* October 23, 2015, this court entered judgment for Plaintiff and against Defendant Pauling for economic damages in the amount of $732,136.00, non-economic damages in the amount of, $936,030.00, and punitive damages in the amount of, $2,250,000.00, and awarded Plaintiff costs and prejudgment interest. However, the court did not reduce the prejudgment interest to a sum certain.

The parties have been unable to appeal the amended judgment entered on October 29, 2015 because it was not a final, appealable judgment. In a show cause order, the court of appeals noted that the October 29, 2015 Amended Judgment  does not appear to be a final, appealable order because (1) claims remain outstanding against the entity Defendants and the court did not certify the order for purposes of appeal pursuant to C.R.C.P. 54(b); and (2) the award of

Exhibit 1

prejudgment interest has not been reduced to a sum certain. This Order shall address all remaining matters in this case and final judgment shall enter.[1]

### II.   Plaintiff's Motion to Amend the Judgment in Include Prejudgment Interest and Defendant Pauling's Unopposed Motion for Forthwith Order Granting Plaintiff's Motion for Award of Prejudgment Interest

On November 2, 2015, Plaintiff filed her Motion to Amend the Judgment to Include Prejudgment Interest in the Court's Calculation of Actual Damages. On December 1, 2015, Defendant Jonathan Pauling withdrew his Opposition to Plaintiff's Motion to Amend the Judgment to Include Prejudgment Interest in the Court's Calculation of Actual Damages. Furthermore, Defendant Pauling filed an Unopposed Motion for Forthwith Order Granting Plaintiff's Motion for Award of Prejudgment Interest on June 22, 2016.

While the Motion requests that the court "amend" the judgment to add prejudgment interest, the court finds that the  sixty-three-day deadline under C.R.C.P. 59(j) does not apply to Plaintiff's Motion because prejudgment interest remained unresolved by the jury verdict and the Motion was not directed at obtaining post-judgment relief from the jury verdict or the Amended Judgment, but rather was directed at reducing the award of prejudgment interest which the court made in the Amended Judgment to a sum certain. *See Church v. American. Standard.Ins. Co. of Wisc.*, 742 P.2d 971, 972 (Colo. App. 1987). *See,* C.R.S. § 13-21-101(1)("[I]t is the duty of the court in entering judgment for the plaintiff… to add to the amount of damages assessed by the verdict of the jury… interest on such amount calculated at the rate of nine percent per annum…"). Therefore, the court still has jurisdiction to amend the judgment to include prejudgment interest.

Accordingly, the Motion is GRANTED and the court amends the Amended Judgment to include prejudgment interest, at a rate of 9% per annum, pursuant to C.R.S. §13-21-101(1), in the total amount of $430,971.24. The court's calculation of prejudgment interest is set forth in the table on page 10, *infra,* which calculation duplicates that contained in Plaintiff's Motion. Defendant's Unopposed Motion is DENIED AS MOOT.

### III.   Plaintiff's Motion to Dismiss with Prejudice the Entity Defendants

On July 25, 2018, Plaintiff filed her Motion to Dismiss with Prejudice Entity Defendants. Defendants did not respond.

Therefore, pursuant to to C.R.C.P. 121§ 1-15(3), the Motion is GRANTED AS CONFESSED, and the entity Defendants are HEREBY DISMISSED WITH PREJUDICE.

---

[1] The court sincerely apologizes to the parties and counsel for the very significant and inexcusable delay in resolving these matters and entering final judgment in this matter. There were reasons for the delay, but none of which rise to the level of an adequate explanation.

**IV.     Defendant Pauling's Motion for Rule 54(b) Certification of Final Judgment Against Mr. Pauling, Defendant Pauling's Motion to Certify and Supplement the Record on Appeal**

On June 22, 2016, Defendant Pauling filed a Motion for Rule 54(b) Certification of Final Judgment Against Mr. Pauling and a Motion to Certify and Supplement the Record on Appeal after the Colorado Court of Appeals issued its show cause order questioning whether the Amended Judgment was a final, appealable order. Initially, Plaintiff opposed these Motions; however, Plaintiff withdrew her opposition to the Motions.

Because the prejudgment interest has now been reduced to a sum certain and the claims against the remaining entity Defendants have been resolved, the court shall enter final judgment in this matter from which the parties may appeal, if they choose. Therefore, the necessity of a C.R.C.P. 54(b) certification and certifying and supplementing the record on appeal has been eliminated and these Motions shall be DENIED AS MOOT.

**V.     Plaintiff's Motion to Amend Judgment to Increase Punitive Damages Award**

On November 9, 2015, Plaintiff filed her Motion to Amend the Judgment to Increase Punitive Damages Award to three times the amount of actual damages awarded by the jury because of Defendant Pauling's actions during the pendency of this litigation. On December 21, 2015, Defendant Pauling filed his Response in Opposition to Plaintiff's Motion. On January 11, 2016, Plaintiff filed her Reply in support of the Motion.

**a.   Jurisdiction to Rule on the Motion**

Again, the title of Plaintiff's Motion includes the phrase "amend judgment," which is one form of relief which can be sought through a post-trial motion pursuant to C.R.C.P. 59(a)(4). At a hearing on March 9, 2016, Defendant Pauling took the position that Plaintiff's Motion to Increase the Punitive Damage Award should be deemed denied, because the court did not dispose of it within 63 days, as required by C.R.C.P. 59(j). More recently, however, Defendant Pauling has acknowledged that the Motion to Increase Punitive Damages is not subject to the provisions of Rule 59(j) under Colorado law. *See,* Defendant Jonathan M. Pauling's Reply in Support of Motion for Rule 54(b) Certification of Final Judgment against Mr. Pauling, filed July 20, 2016, at 3, n. 1. However, because this is a matter of subject matter jurisdiction, which parties and the court cannot simply agree exists, the court must determine as a preliminary matter whether it still has jurisdiction to decide this Motion.

Pursuant to C.R.C.P. 59(j),

> The court shall determine any post-trial motion within 63 days (9 weeks) of the date of the filing of the motion. Where there are multiple motions for post-trial relief, the time for determination shall commence on the date of filing of the last of such motions. Any post-trial motion that has not been decided within the 63-day determination period shall, without further action by the court, be deemed denied.

3

Here, Plaintiff's Motion to Increase the Punitive Damage Award was filed on November 9, 2015, Defendant's Response thereto (following one extension) on December 21, 2015, and Plaintiffs Reply (following another extension) on January 11, 2016. As it happens, January 11, 2016 was the 63rd day following November 9, 2015, and therefore the court would have needed to rule on the motion the same day it became fully briefed, if C.R.C.P. 59(j) applies.[2]

However, the court still has jurisdiction to rule on Plaintiff's Motion to Amend Judgment to Increase Punitive Damages Award. In *Smeal v. Oldenettel*, the Colorado Supreme Court determined that the trial court retained jurisdiction to rule on plaintiff's new trial motion after the expiration of the time limitation contained in C.R.C.P. 59(j) because plaintiff's claim against a codefendant remained unresolved and the trial court had not entered an order certifying its judgment as final. 814 P. 2d 904 (Colo. 1991).  As the Court of Appeals noted in *Church v. American Standard Ins. Co., supra,*

> Where motions filed following a jury trial pertained to unresolved, substantive claims raised in the complaint, they are not actually directed at obtaining post-judgment relief, and accordingly, the provisions of C.R.C.P. 59 do not apply. Even though the motions here were denominated as post-judgment motions, the type of the relief sought fixes their actual nature. The statutory claim for treble damages, attorney's fees, and interest remained unresolved by the jury verdict. Therefore, we conclude that there was no final judgment adjudicating all the claims and the rights and liabilities of the parties until the trial court issued its written ruling. *See* C.R.C.P. 54(b).

742 P.2d at 972. [3] Similarly, until the date of this Order, Plaintiff retained unresolved claims against the entity Defendants and this court had not entered an order certifying its judgment as final pursuant to C.R.C.P. 54(b). Thus, the court has jurisdiction to address the merits of Plaintiff's Motion to Amend Judgment to Increase Punitive Damages Award.

### b.  Court's Increase of the Jury's Exemplary Damages Award

The Colorado General Assembly has given trial courts discretion to increase a jury's award of exemplary damages in two circumstances. Pursuant to C.R.S. § 13-21-102(3),

> [T]he court may increase any award of exemplary damages, to a sum not to exceed three times the amount of actual damages, if it is shown that:

---

[2] In fact, given that Plaintiff's Reply was filed at 10:47 PM, the court would have had exactly one hour and 13 minutes to rule on the Motion before it lost jurisdiction!

[3] The court acknowledges and appreciates defense counsel's professionalism in citing controlling precedent from Colorado which had not previously been cited to the court, including during the hearing on March 9, 2016. *See,* C.R.P.C. 3.3(a)(2).

4

(a) The defendant has continued the behavior or repeated the action which is the subject of the claim against the defendant in a willful and wanton manner, either against the plaintiff or another person or persons, during the pendency of the case; or

(b) The defendant has acted in a willful and wanton manner during the pendency of the action in a manner which has further aggravated the damages of the plaintiff when the defendant knew or should have known such action would produce aggravation.

Under the punitive damage statute, "willful and wanton conduct means conduct purposefully committed which the actor must have realized is dangerous, done heedlessly and recklessly without regard to consequences,  or of the rights and safety of others, particularly the plaintiff." C.R.S. § 13-21-102(1)(b). *See, Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). The statutory requirements of "willful and wanton conduct" are met when "the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result." *Id.* To increase an award of exemplary damages, the court must make its findings beyond a reasonable doubt. C.R.S. § 13-25-127(2). "The size of a punitive damages award is committed in the first instance to the discretion of the fact finder, and a reviewing court will not disturb the award absent an abuse of that discretion." *Coors*, 112 P.3d at 67.

### 1.     Continued Behavior

First, Plaintiff argues that, pursuant to C.R.S. § 13-21-102(3)(a), the court should increase the jury's award of punitive damages due to Defendant Pauling's wrongful conduct during the pendency of the case that was the subject of Plaintiff's claims. The specific wrongful conduct Plaintiff highlights is Defendant Pauling's "continued grooming behavior with other vulnerable, young women he met at adult entertainment clubs." Mot. at 5. Defendant argues that this alleged conduct is legally and factually insufficient to warrant an increase in punitive damages. Specifically, Defendant Pauling argues that grooming was not the subject of Plaintiff's claims and is not a cognizable claim in Colorado.

The court agrees with Plaintiff and finds beyond a reasonable doubt that Defendant has, in fact, continued to engage in the same wrongful conduct that was the subject of Plaintiff's claims during the pendency of this case. The evidence at trial demonstrated that, following the assault on Plaintiff and including while this case has been pending, Defendant Pauling has continued to frequent adult entertainment establishments and pay for young women who work as exotic dancers, such as Elyce York, to be taken "off the list," meaning they were not required to dance and instead may sit and drink alcohol and talk with Defendant.  According to Ms. York's deposition testimony, which was read at trial, Defendant used this technique over perhaps ten occasions to gain her trust and develop a relationship with her. After gaining her trust, Defendant Pauling began to take her to dinner and shopping; assisted her financially, including loaning her $5,000 to hire a divorce lawyer, giving her money to rent an apartment separate from her estranged husband, preparing and backdating a fraudulent document purporting to be an employment contract and two fraudulent paychecks designed to mislead her prospective landlord

5

that her income was sufficient to afford the rent, loaning both her and her mother money on a no-interest basis, giving her access to a car, and buying her diamond earrings and a necklace worth $3,500. In addition, Defendant Pauling, through one of the Defendant entities he controls, has purchased the multi-million-dollar home in a gated community in the foothills near Denver where Ms.York has resided rent-free with her son since May, 2015. Ms. York testified that she has spent at least one night in a hotel with Mr. Pauling. Although she is aware that Plaintiff claims that Mr. Pauling raped her, she does not believe that occurred, and instead believes that Defendant was "probably" set up. She knows he is a registered sex offender, but it does not concern her. She believes that Defendant is divorced, when in fact he remains married.  This is a pattern of "grooming" behavior strikingly similar to that in which Defendant Pauling engaged with Plaintiff and several other exotic dancers, including Leslie Muirhead and Natalie LaDouceur.

Defendant argues that such grooming was not itself a claim for relief, and that Mr. Pauling has not sexually assaulted anyone other than Plaintiff.  However, the court does not interpret the operative language of the punitive damages statute – "has continued the behavior or repeated the action which is the subject of the claim"- quite so narrowly.  As the testimony of Plaintiffs expert Janine D'Anniballe made clear, such grooming behavior is a well-recognized precursor to sexually abusive or assaultive behavior, especially where there is a significant differential in power or wealth or age.  This has been true with respect to Defendant's relationships with both Plaintiff Wilson and Ms. Muirhead.

The trial evidence indicated that Defendant had violated the protection order entered in the criminal case by coming to Plaintiff's place of employment, an adult entertainment establishment where she had resumed exotic dancing, three times after the sexual assault occurred. While these episodes apparently pre-date the pendency of this case, and therefore are not a separate basis for increasing the punitive damage award, the court nevertheless finds them relevant in the limited sense that they indicate a sense of entitlement, as well as a consciousness of his conduct and a recognition that injury would result to the Plaintiff, and therefore further support the finding that Defendant Pauling continues to engage in the patterned behavior at issue in this lawsuit. Reply at 6, fn. 7. Simply put, Defendant Pauling has thus far failed to learn from his past mistakes and correct his destructive behavior, indicating that the presumed deterrent effect of punitive damages is warranted in this matter. *See Coors*, 112 P.3d at 65 ("The general purposes of punitive damages under section 13–21–102 are punishment of the defendant and deterrence against the commission of similar offenses by the defendant or others in the future.").

## 2.    Further Aggravation

Second, Plaintiff argues that, pursuant to C.R.S. § 13-21-102(3)(b), the court should increase the jury's award of punitive damages on account of Defendant Pauling's willful and wanton conduct during the pendency of the case, which has further aggravated Plaintiff's damages. Specifically, Plaintiff contends that an increase in punitive damages is warranted because Defendant Pauling has engaged in abusive litigation tactics and engaged in an abuse of process by directing bad faith filings for bankruptcy in order to improperly delay trial. Defendant argues that "Plaintiff's claims are unavailing and provide no basis to increase the punitive damages award." Resp. at 9.

The court finds that, beyond a reasonable doubt, Defendant Pauling acted in a willful and wanton manner during the pendency of this action, causing aggravation to Plaintiff's damages. Primarily, Defendant Pauling directed all of the entity Defendants, which he controlled, to file for Chapter 7 bankruptcy protection less than one month before trial, which had the effect of automatically staying the case against those entities, then attempted to stay the case against himself as well. Colorado courts have regarded such abusive litigation tactics as justifying a trebling of punitive damages. *See, Gen. Steel Domestic Sales, LLC v. Bacheller*, 291 P.3d 1, 12 (Colo. 2012) (affirming trial court's trebling the exemplary damages award for discovery abuses and filing a C.A.R. 21 petition for the purpose of delay); *see generally Tait ex rel v. Hartford Underwrtiers Ins. Co.*, 49 P.3d 337 (Colo. App. 2001) (affirming the trial court's increase of punitive damages for abusive litigation conduct including attempting to remove the case to federal court without a good faith basis).

Here, the court concludes that the entities' bankruptcy filings were clearly a litigation tactic used solely to delay trial because the entity Defendants did not list any creditors besides Plaintiff (with her claim listed as "unknown") and did not list any assets. With no assets, the bankruptcy proceeding did not change the status quo of the companies. In his Response, Defendant Pauling does not even attempt to justify the bankruptcy filing as anything more than a litigation tactic to avoid allowing Plaintiff to recover a possible damage award against the entity Defendants. Resp. at 15-16. However, Defendant Pauling, who did not personally file for bankruptcy, then attempted to use the automatic stay issued as a result of the bankruptcy filings by the entity Defendants to obtain a continuance of the trial against himself as well.  In two emergency hearings held on September 24 and 28, 2015, counsel for Defendant Pauling argued for a continuance based upon the bankruptcy filings of the entity defendants and their resulting automatic stays. *See,* Order Re: Defendant Pauling's Motions to Continue Trial, September 30, 2015, at 3. In fact, however, clear legal authority demonstrated that the case was not stayed against Defendant Pauling, a solvent individual, as distinct from the entities he controlled. *See Id.* (citing *Fortier v. Dona Anna Plaza Partners*, 747 F.2d 1324, 1330 (10th Cir. 1984)).  Thus, the court concludes that the entities' bankruptcy filings and Defendant Pauling's attempt to bootstrap the resulting automatic stay into a delay of the trial against him individually were calculated and illegitimate litigation tactics of the type which should not be tolerated, and meet the test of C.R.S. § 13-21-102 (3)(b). Defendant Pauling's litigation-related misconduct required Plaintiff to incur unnecessary litigation expenses to respond to his efforts to delay the trial and the bankruptcy filings and appear at several hearings related to these issues. Additionally, beyond increasing Plaintiff's litigation expenses, this misconduct aggravated her damages by preventing her from possibly recovering her attorney's fees from the entity Defendants pursuant to her Title VII claim, and by causing her additional emotional harm to be forced to continue litigation against the entity Defendants. Reply at 6, fn. 5.

Additionally, Defendant Pauling and the entity Defendants, at the direction of Defendant Pauling, misused the discovery process, which further aggravated Plaintiff's damages. Defendant Pauling used written discovery and her deposition to attempt to harass and intimidate Plaintiff in a manner that was disproportionate and inappropriate, especially in light of the fact that the sexual assault itself was essentially uncontested. In a status conference on August 19, 2015, the court felt it necessary to grant a protective order and offer to have Plaintiff's deposition be

conducted in the courtroom in order to eliminate intimidation. *See* Plf.'s Mot. for Protective Order, July 28, 2015. Furthermore, Defendant Pauling plead affirmative defenses that he failed in any way to litigate in an attempt to intimidate and harass Plaintiff. In sum, the court finds that Defendant Pauling's litigation-related behavior was extraordinary and abusive and constituted a pattern of attempts to delay, intimidate, and harass Plaintiff, and Defendant knew or reasonably should have known that such actions would further aggravated Plaintiff's damages by causing her increased litigation expenses and emotional harm. *Gen. Steel Domestic Sales, LLC*, 291 P.3d at ¶ 13.

For all the foregoing reasons, the court finds that an increase in the jury's punitive damage award is appropriate under C.R.S. § 13-21-102(3)(a) and (b). As to the amount of the increase, the court finds that it is appropriate under the circumstances to increase the punitive damages to double the amount of actual damages. Based on its careful and independent consideration of the evidence, as discussed above, the court finds that this is the appropriate amount of punitive damages to adequately punish Defendant Pauling and deter future similar conduct by himself and others.. Thus, the court shall increase the punitive damage award to $4,198,274.48.[4]

The court declines Plaintiff's invitation to increase the punitive damage award to the statutory maximum of three times the amount of actual damages. C.R.S. § 13-21-102(3). With respect to the conduct which continued during the pendency of this case, the court notes that grooming conduct is inherently nuanced, and its force somewhat diminished when the "target" of such grooming is an adult, as opposed to a child. Moreover, it was essentially uncontested that Defendant's assault on Plaintiff followed his first-time ingestion of marijuana edibles, which caused him to act in a manner he never had previously toward Plaintiff, despite the antecedent grooming. Further, to punish a party unduly for aggressive discovery and litigation tactics would run the risk of deterring zealous advocacy, which lawyers are duty-bound to engage in on behalf of their clients.

## VI.   Conclusion

For all the foregoing reasons, the court HEREBY ORDERS as follows:

    c. Plaintiff's Motion to Amend the Judgment to Include Prejudgment Interest is GRANTED and the court HEREBY AMENDS  the Amended Judgment entered on October 29, 2015 to include prejudgment interest, at a rate of 9% per annum, C.R.S. §13-21-101(1), in the amount of $430,971.24. The calculation of this amount is set forth on the table on page 10, *infra.*

    d. Defendant Pauling's Unopposed Motion for Forthwith Order Granting Plaintiff's Motion for Award of Prejudgment Interest is DENIED AS MOOT.

---

[4] $2,099,137.24 ($732,136.00 (economic damages) + $936,030.00 (noneconomic damages) + $430,971.24 (prejudgment interest)) x 2 = $4,198,274.48. *See generally Vickery v. Evans*, 266 P.3d 390 (Colo. 2011) (finding that the amount of actual damages includes prejudgment interest).

e.  Plaintiff's Motion to Dismiss is GRANTED and Defendants Pauling Management Group Co., LLC, Two Mile Ranch Cattle Feeders Co., LLC, Two Mile Ranch Land Co., LLC, Two Mile Ranch Market Co., LLC, and Two Mile Ranch Processing Co., LLC are HEREBY DISMISSED WITH PREJUDICE.

f.  Defendant Pauling's Motion for Rule 54(b) Certifications of Final Judgment Against Mr. Pauling is DENIED AS MOOT.

g.  Defendant Pauling's Motion to Certify and Supplement the Record on Appeal is DENIED AS MOOT.

h.  Plaintiff's Motion to Amend Judgment to Increase Punitive Damages Award is GRANTED IN PART.  The court HEREBY AMENDS the Amended Judgment of October 29, 2015 to ENTER JUDGMENT in favor of Plaintiff Amanda Wilson and against Defendant Jonathan Pauling for exemplary damages in the total amount of $4,198,274.48.

i.  Because the prejudgment interest has now been reduced to a sum certain and the claims against the entity Defendants have been resolved, the court determines that a final, appealable judgment has been entered in this matter and all applicable appellate timelines shall apply from the date of this Order.

DATED this 19th day of December, 2018

BY THE COURT:

Ross B.H. Buchanan
Denver District Court Judge

# PREJUDGMENT INTEREST

| FROM | TO | DAYS | PRINCIPAL | RATE | INTEREST |
|---|---|---|---|---|---|
| 2/26/13 | 12/3/13 | 281 | $1,668,166.00 | 9% | $115,583.34 |
| 12/4/13 | 12/3/14 | 365 | $1,783,749.34 | 9% | $160,537.44 |
| 12/4/13 | 10/23/15 | 323 | $1,944.286.78 | 9% | $154,850.46 |
| **Total Pre-Judgment Interest: $430,971.24** | | | | | |