# GENERAL PARTNERSHIP AGREEMENT

## OF

## TWO MILE RANCH

THIS AGREEMENT made this 14th day of February, 1986, by and between JONATHAN M. PAULING, Rural Route, Stoneham, Colorado 80754, and MARK A. PAULING, Rural Route, Stoneham, Colorado 80754.

### Statement Of Agreement

The parties hereto desire to form a general partnership for the purpose of conducting a ranching operation. It is agreed that this partnership shall be governed by the laws of the State of Colorado and pursuant to the following terms and conditions.

## ARTICLE I

### General Provisions

**1.01 Partnership Name.** The name of the partnership shall be "TWO MILE RANCH."

**1.02 Business Of The Partnership.** The partnership shall engage in ranching. The partnership may also engage in any other business as may be agreed upon by the partners from time to time.

**1.03 Place Of Business Of The Partnership.** The principal place of business of the partnership shall be Rural Route, Stoneham, Colorado, with such other places of business within and without the State of Colorado as may be agreed upon by the partners from time to time.

**1.04 Duration Of The Partnership.** The partnership shall commence upon signing this Agreement and continue until dissolved by the mutual consent of the partners, or by an act or event specified herein, or by law as one effecting dissolution. The death, disability, withdrawal, retirement, insanity, or bankruptcy of a partner shall not result in the winding up or liquidation of the partnership business, but the partnership shall continue as is hereinafter provided. The interest of the deceased, retired, insane or bankrupt partner in the partnership shall be liquidated as hereinafter provided, and neither the deceased, retired, insane, or bankrupt partner, nor the estate or personal representative thereof, shall have any right or interest thereafter in this partnership or of any of the assets,

records or affairs of this partnership except as is expressly provided herein.

1.05 **Management**. The affairs of the partnership shall be conducted by all of the partners. In case of a difference of opinion among the partners with respect to the management and policies of the partnership, the decision made by Jonathan M. Pauling shall prevail.

1.06 **Services**. Jonathan M. Pauling shall devote his full time and attention to the business of the partnership, and Mark A. Pauling shall devote as much time and attention to such business as is possible. Each partner shall use his best efforts to profitably operate such partnership.

1.07 **Assignability Of Interest**. No partner shall have the right to assign, transfer, sell, mortgage, pledge, or convey by deed of trust his interest in the partnership, or otherwise encumber such interest by using the same as security for borrowed funds, or make any other disposition of all or any part of his interest in the partnership without the consent of all of the other partners, or as is otherwise expressly provided in this agreement.

1.08 **Fiscal Year And Accounting**. The partnership shall operate on the cash, and not accrual, method of accounting and its fiscal year shall be the calendar year.

## ARTICLE II

### Capital

Each of the partners hereto is contributing all of their interest in and to the real property and livestock described in Exhibit "A" attached hereto and by this reference incorporated herein. Each partner owns one-half of such real and personal property being contributed to the partnership. The parties agree that the total value of such contributed property is $ 186,550⁰⁰. The partnership shall assume all existing liabilities owing on such contributed property which is now owing The Federal Land Bank Association of Greeley and First State Bank of Kimball, Kimball, Nebraska.

## ARTICLE III

### Partnership Books And Accounts

3.01 **Partnership Books**. The partnership books shall be maintained at the principal place of business of the partnership, and all partners shall have access thereto. The

-2-

expense of the partnership in determining net profits and net losses.

4.02 Profits And Losses. The net profits and losses of the partnership shall be computed on the cash basis of accounting. After deducting salaries and all other expenses, the net profits and losses shall be allocated to the partners after the end of each partnership accounting year in the following percentages, to-wit:

| | |
|---|---|
| Jonathan M. Pauling | 50% |
| Mark A. Pauling | 50% |

Net profits and losses shall be deposited or charged to each partner's profit and loss account, as the case may be, as soon as is practicable after the close of each calendar year.

## ARTICLE V

### Retirement, Insanity Or Bankruptcy Of Any Partner

5.01 Insanity. A partner shall withdraw from the partnership upon his becoming permanently insane. For purposes of this Article V, permanent insanity shall mean the mental incapacity to work or conduct a business and such capacity is expected to continue indefinitely in the future. If the partnership and a partner with whom permanent insanity is claimed cannot agree whether the partner is permanently insane, the partner with respect to whom permanent insanity is claimed and the partnership shall each select a physician to render an opinion, and if such physicians cannot agree, they shall select a third physician whose judgment shall be conclusive on the question.

5.02 Bankruptcy. A partner shall withdraw from the partnership immediately upon the filing of a petition in bankruptcy, whether said petition be voluntary or involuntary.

5.03 Withdrawal From Partnership. Any partner may retire from the partnership at any time upon providing prior written notice ninety (90) days in advance, delivered to the principal place of business and a copy thereof to the remaining partners. No such withdrawal or retirement shall become effective except at the end of a calendar year.

5.04 Distributions To Bankrupt, Insane Or Withdrawing Partner. If a partner retires from the partnership, or becomes bankrupt or insane, said partner, or his estate, shall be entitled to the following, but only if the surviving partner

-4-

elects to continue the partnership business, and if not, it shall be dissolved as provided in Article VI:

    (a) Any salaries due him until the effective date of the withdrawal.

    (b) His share of profits, if any, to the effective date of the withdrawal.

    (c) The balance of his capital account, if any. If the capital account shows a deficit, that amount shall be subtracted from the other sums paid to the withdrawing partner.

After the value has been so determined, the partnership shall pay to the withdrawing partner, or estate of the withdrawing partner, one-tenth of the total amount due within sixty (60) days after the retirement, or other event described herein, and deliver to the withdrawing partner, or estate of the withdrawing partner, its unsecured promissory note for the remaining ninety percent (90%) of the purchase price. Said note shall provide that the remaining amount shall be paid in nine (9) equal annual installments with interest at the rate of nine percent (9%) per annum.

No value for good will, going concern, growing crops, partnership name or similar intangible shall be included in computing the value of any partner's interest.

## ARTICLE VI

### Death Of Partner

6.01 Insurance. The partnership shall insure the life of each partner, naming itself as beneficiary, in a sum of not less than $100,000.00. All policies shall be listed in a schedule to be attached hereto and the policies and any proceeds received thereunder shall be held by the partnership in trust for the purposes of this agreement. The partnership shall have the right to purchase additional insurance on the life of any partner whenever, in the unanimous opinion of the partners, additional insurance may be required to carry out their obligations under this agreement. Any additional policies of insurance shall also be listed in the schedule attached hereto and shall also be subject to the terms of this agreement. The partnership shall pay all premiums on insurance policies taken out by it pursuant to this agreement and shall give proof of payment to the partners within fifteen (15) days after the due date of each premium. All sums so expended shall be treated as a partnership expense. The partnership shall be the sole owner of the policies issued to it, but shall not, during the term of this agreement, modify or impair any of the rights or values

under such policies except upon unanimous consent of all partners in writing.

**6.02 Purchase Of Partnership Interest On Death.** Upon the death of any partner, the partnership shall purchase, and the estate of the deceased partner shall sell, the decedent's interest in the partnership.

**6.03 Purchase Price.** The purchase price of the interest of the deceased partner shall be equal to the sum of the following items:

(A) Any salaries due him until the date of death.

(B) His share of profits, if any, to the effective date of the withdrawal.

(C) The balance of his capital account, if any. If the capital account shows a deficit, that amount shall be subtracted from the other sums paid to the deceased partner.

(D) His proportionate share of the cash surrender value of all policies of life insurance owned by the partnership at the time of death, including the cash surrender value of all life insurance policies on his life.

**6.04 Payment Of Purchase Price.** Upon the death of any partner, the partnership shall collect the proceeds of the policies insuring the life of the deceased partner and shall pay the purchase price for the decedent's partnership interest to the personal representative of the decedent's estate within sixty (60) days after the qualification and appointment of such personal representative. Upon the receipt of the purchase price, the personal representative shall transfer to the partnership the deceased partner's interest therein. Such interest shall be divided among the surviving partners in the proportions in which they share in the profits and losses of the partnership and the books of the partnership shall be adjusted to reflect this transaction.

**6.05 Withdrawal Of A Partner.** If any partner shall withdraw from the partnership voluntarily or because of bankruptcy or insanity, such partner shall have the right to purchase from the partnership the insurance policies covering his life at a price equal to the cash surrender value of the policies on the life of the withdrawing partner. This right shall be exercised by payment of the price to the partnership.

**6.06 Cessation Of Business.** In the event of dissolution of the partnership or cessation of the partnership business for any reason, each partner shall have the right, within thirty (30) days after such termination or dissolution, to purchase from the

partnership the insurance policies on his life at a price equal to the cash surrender value of the policies on such date of dissolution or termination. This right may be exercised by payment of the price to the partnership within thirty (30) days after the date of such termination or dissolution. Upon receipt of the price, the partnership shall deliver the policy or policies to the respective purchasers and shall execute any necessary instruments for such transfer. The insured shall have no right in any policies not purchased within said thirty (30) day period.

## ARTICLE VII

### Dissolution

7.01 **Events Of Dissolution.** The partnership shall be dissolved:

    (a) Upon the affirmative vote of all of the partners;

    (b) Upon the bankruptcy or receivership of the partnership; or

    (c) Upon entry of Court Order to dissolve.

    (d) Upon election of the surviving partner when the other partner retires or withdraws from the partnership and the surviving partner does not desire to continue the partnership business.

7.02 **Dissolution And Winding Up.** Notwithstanding any other provision of this agreement, upon the dissolution of the partnership, the partners shall have the responsibility for expeditiously dissolving and liquidating the partnership. They shall promptly proceed to wind up the affairs of the partnership, and after payment (or making provision for payment) of liabilities owing to creditors (excluding partners), shall cause the remaining net assets to be distributed to the partners as follows:

    (a) In the event there are any amounts owing to a deceased or withdrawn partner by the partnership under Article V, such amount shall be paid, to such partner out of the first available net assets with future obligations being reduced to present value. In the event the net assets are insufficient to pay all such amounts, the amount of such net assets which each such partner shall receive shall bear, respectively, the same ratio to the total net assets as all amounts so owed to such partner bears to the total amounts so owed to all partners;

    (b) There shall be distributed to each partner, out of the next available net assets, an amount equal to the credit

-7-

balance in such partner's then existing capital account, if any. In the event the net assets are insufficient to pay all such amounts, the amount of such net assets which each partner shall receive shall bear, respectively, the same ratio to the total net assets as the capital account of that partner bears to the total capital accounts of all partners; and

(c) The remaining net assets, if any, shall be distributed to the partners in proportion to their respective interest in the profits and losses of the partnership. In the event any part of the net assets distributed hereunder consist of notes receivable or non-cash assets, the cash shall be distributed first, in the order of priority indicated above, and such notes and non-cash assets shall be distributed last. In the event that upon such dissolution the assets of the partnership are insufficient to pay and discharge all obligations of the partnership to persons other than a partner, each partner shall contribute as a capital contribution to the partnership a percentage of the aggregate amount of such insufficiency required by the partnership to pay and discharge in full and in cash all of such obligations and liabilities, equal to his interest in the profits and losses of the partnership.

## ARTICLE VIII

### Miscellaneous

8.02 Unanimous Consent. Certain management decisions require unanimous consent of all partners. Said matters are as follows:

(a) To borrow or lend money on behalf of the partnership;

(b) To execute any mortgage, bond or security agreement;

(c) To assign, transfer, or pledge any debts due the partnership or release any such debts due, except upon payment in full;

(d) To compromise any claim due the partnership, or submit to arbitration any dispute or controversy involving the partnership;

(e) To admit any new or substitute partner;

(f) To dissolve or incorporate the partnership;

(g) To sell, contract for sale, or exchange all or substantially all of the assets of the partnership;

-6-

partnership's books shall be kept on the cash basis of accounting and the income tax returns of the partnership shall be prepared each calendar year.

3.02 Capital Accounts. A separate capital account shall be established and maintained for each partner. If at any time there is no credit balance in a partner's profit and loss account (as provided for in Section 3.03 hereof), then said partner's proportionate share of the net losses shall be debited against said partner's capital account. If the capital account of a partner shall at any time be depleted below zero by reason of the debiting of such losses and distributions, such partner's proportionate share of undistributed profits shall be credited to his capital account until such time as the deficit is eliminated.

3.03 Profit And Loss Account. A separate profit and loss account shall be established and maintained for each partner. There shall be credited to each partner's profit and loss account his share of undistributed net profits of the partnership, and there shall be charged against each partner's profit and loss account the amount of all distributions of net profits to said partner, and such partner's share of the net losses of the partnership. At the end of each partnership accounting year, the profit and loss account of each partner shall be closed to such partner's capital account. All items of depreciation, gain, loss, deduction or credit, for tax purposes, shall be allocated in the same percentage in which the partners share profits and losses. No additional share of profits or losses shall inure to any partner by reason of his capital or profit and loss account being in excess of the capital or profit and loss account of any other partner. No profit and loss account shall draw interest.

3.04 Bank Accounts. The partnership shall maintain a bank account, or bank accounts, in such banks or depositories as may be agreed upon by the partners of the partnership. Checks may be drawn on the partnership account or accounts for partnership business upon the signature of either partner.

## ARTICLE IV

### Compensation

4.01 Partner's Salaries. The partnership shall not pay any partner a salary, except as may be agreed upon by all partners. The payment of any salary shall be an obligation of the partnership only to the extent that there are partnership assets available for such payment, and shall not be an obligation of the individual partners. Salaries shall be treated as an

-3-

(h) To pay, increase or decrease salaries to the partners;

(i) To amend this partnership agreement;

(j) To sell, assign, pledge, or mortgage, or in any way use the individual interest of a partner as security for an obligation.

(k) To withdraw capital contributions.

8.02 Successors And Assigns. This agreement and each and every provision hereof shall be binding upon and shall inure to the benefit of each of the partners, his successors and assigns, executors, administrators, legal representatives, and heirs. Each partner agrees, on behalf of himself, his successors and assigns, executors, administrators, heirs and legal representatives to execute any instruments which may be necessary or appropriate to carry out and execute the purposes and intentions of this agreement, and hereby authorizes and directs his successors and assigns, executors, administrators, heirs and legal representatives to execute any and all such instruments. Each and every successor in interest to any partner, however such successor acquires such interest, shall hold such interest subject to all of the terms and provisions of this Agreement. It is the intention of the partners that during the term of this Agreement, the rights of the partners and their successors in interest, as among themselves, shall be governed by the terms of this agreement.

8.03 Amendment. No change, modification or amendment of this agreement shall be valid or binding upon the partners unless such change or modification shall be in writing signed by the partner or partners against whom the same is sought to be enforced.

8.04 Remedies Cumulative. The remedies of the partners under this agreement are cumulative and shall not exclude any other remedies to which any party may be lawfully entitled.

8.05 No Waiver. The failure of any partner to insist upon strict performance of a covenant herein or of any obligation herein shall not be a waiver of such partner's right to demand strict compliance therewith in the future, nor shall the same be construed as a novation of this agreement.

8.06 Integration. This agreement constitutes the full and complete agreement of the partners.

8.07 Captions. Titles or captions of articles or sections contained in this agreement are inserted only as a matter of

convenience and for reference and in no way define, limit, extend or describe the scope of this Agreement.

**8.08 Number And Gender.** Whenever required by the context, the singular number shall include the plural, the plural number shall include the singular and the gender of any pronoun shall include the other genders.

**8.09 Applicable Law.** This agreement shall be governed by and construed in accordance with the laws of the State of Colorado.

IN WITNESS WHEREOF, each of the partners has executed and sealed this Agreement on the day and date first above written.

_____
Jonathan M. Pauling

_____
Mark A. Pauling