**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 19-cv-01224-RBJ-STV

**AMANDA WILSON**, a Michigan citizen,

Plaintiff,

v.

**JONATHAN PAULING**, an individual Colorado citizen, **MARK PAULING**, an individual Colorado citizen, **TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP**, a Colorado General Partnership, **ELYCE YORK**, an individual Nebraska or Colorado citizen, **LARDYN CONSULTING LLC**, a Nebraska Limited Liability Company, and **FARMERS STATE BANK**, a Nebraska Corporation.

Defendants.

_____

**RESPONSE TO FARMERS STATE BANK'S**
**MOTION TO DISMISS AMENDED COMPLAINT [#23]**
_____

Plaintiff Amanda Wilson, by and through her attorneys, Aaron D. Goldhamer and Ross W. Pulkrabek of Keating Wagner Polidori Free, P.C., for her Response to Defendant Farmers State Bank's ("FSB") Motion to Dismiss Amended Complaint [#23] ("Motion"), states the following:

**SUMMARY**

Plaintiff Amanda Wilson alleges that FSB conspired with Jon Pauling to continue his farm, ranch, and feedlot business through a sham entity in order to hinder Plaintiff's efforts to collect a judgment against him in excess of $4 million.[1] FSB knew about Plaintiff's judgment, and it knew that Jon Pauling and his brother Mark Pauling were shifting their business activities under the

---

[1] Plaintiff's Amended Complaint refers to "a civil judgment exceeding $4 million." Amended Complaint [#15-1 at 1]. Although the specific amount of the judgment is not important for purposes of responding to FSB's motion to dismiss, the total judgment amount (not including post-judgment interest) is $6,337,704.70—comprising actual damages of $2,099,137.24 plus exemplary damages ultimately entered in the amount of $4,198,274.98. [#1-1 at 8 & n.4]. The state court also entered a separate judgment for costs of $40,292.98.

1

umbrella of a front operation ostensibly being run by Jon Pauling's young girlfriend (acting as a straw woman), all to avoid Plaintiff's efforts to collect her judgment. Nevertheless, FSB cooperated in this scheme because it had a longstanding and lucrative banking relationship with Jon Pauling and Mark Pauling and wanted to continue making money by financing them.

FSB ignores allegations in Plaintiff's Amended Complaint [#15-1] that establish FSB's knowledge of and involvement in this scheme to hide Jon Pauling's continuing business activities from Plaintiff. Instead, FSB takes excerpts from Plaintiff's Amended Complaint, then shuffles and rearranges them into an entirely different order to weave a disjointed narrative. The apparent point of FSB's exercise is to manufacture confusion and to set up an argument that Plaintiff's allegations are vague, that FSB was merely performing ordinary banking functions, that Plaintiff has no basis for bringing this lawsuit, and that Plaintiff's claims (as FSB mischaracterizes them) are barred by a one-year statute of limitations.

The Court should reject FSB's arguments. A defendant seeking dismissal under Fed.R.Civ.P. 12(b)(6) may not weaponize the "plausibility" standard by disregarding the allegations that the plaintiff actually pled and instead cutting and pasting parts of the plaintiff's allegations to manufacture an argument that the allegations are ambiguous. Plaintiff's allegations are not ambiguous. Plaintiff alleges that FSB helped Jon Pauling move his business to a sham company so he could avoid Plaintiff's judgment. Plaintiff's allegations support a plausible claim against FSB for engaging in a civil conspiracy to violate the Colorado Uniform Fraudulent Transfer Act ("CUFTA"). To the extent FSB wishes to pursue a statute of limitations defense, it bears the burden of proving that defense with evidence, not a misinterpretation of Plaintiff's allegations.

**FACTUAL ALLEGATIONS PLED IN AMENDED COMPLAINT**

1.  In October 2015, Plaintiff obtained a jury verdict in state court against Defendant Jon Pauling arising out of a sexual assault. The verdict ultimately was reduced to a judgment in excess of $4 million. [#15-1 at ¶¶ 10-13]; *see also* n. 1, *supra*.

2.  Plaintiff has been unsuccessful collecting any part of her judgment. In post-judgment proceedings, Jon Pauling denied having any income or assets. [#15-1 at ¶ 12].

3.  Since the 1980s, Jon Pauling and his brother Mark Pauling have operated a farm, ranch, and feedlot business as a general partnership. The name of the partnership is Two Mile Ranch. Jon Pauling and Mark Pauling each are 50% partners in Two Mile Ranch. [#15-1 at ¶¶ 17-18].

4.  Plaintiff obtained a charging order against Jon Pauling's partnership interest in Two Mile Ranch; however, she never received money through that charging order. [#15-1 at ¶¶ 20].

5.  This case arises out of various actions that Jon Pauling and Mark Pauling have taken to frustrate Plaintiff's attempt to collect her judgment. One action—which FSB places at issue in its Motion by incorrectly arguing that it is outside the statute of limitations—concerns Jon Pauling and Mark Pauling manufacturing a document in which Jon Pauling purported to transfer all but 10% of his interest in Two Mile Ranch to Mark Pauling. That document was falsely backdated to September 2014 (*i.e.,* before the jury's verdict). Jon Pauling and Mark Pauling's backdating of the document is evident through their 2014 federal tax filings (filed in 2015) as well as documents signed by Jon Pauling and Mark Pauling in 2015, each of which show that Jon Pauling and Mark Pauling respectively owned 50% of the partnership interests in Two Mile Ranch. Denver District Court Judge Ross Buchanan commented on Jon Pauling's history of backdating fraudulent

documents in an order in the underlying case. [#1-1 at 5]. Additionally, the purported transfer of Jon Pauling's partnership interest to Mark Pauling lacked consideration. [#15-1 at ¶¶ 14, 21-24].

6. Another way the Pauling brothers have hindered Plaintiff's collection efforts has been to transfer the assets and operations of their farm, feedlot, and ranch business to a new sham company that Jon Pauling controls through his girlfriend acting as a straw person. The name of that sham company is Lardyn Consulting, LLC ("Lardyn"). The Pauling brothers are continuing their farming, ranching, and feedlot operations through Lardyn at the same location that they historically have operated. [#15-1 at ¶¶ 25-41].

7. FSB has a longstanding business relationship with Jon Pauling and Mark Pauling that predates Plaintiff's judgment against Jon Pauling. Over the years, FSB loaned Jon Pauling and Mark Pauling millions of dollars, and it has profited richly from those loans. [#15-1 at ¶¶ 42-43, 45].

8. FSB has actual knowledge of Plaintiff's judgment against Jon Pauling and her efforts to collect that judgment. Plaintiff issued a post-judgment subpoena for banking records to FSB, and FSB responded to that subpoena. [#15-1 at ¶ 44].

9. FSB has assisted Jon Pauling and Mark Pauling to hinder, delay, and defraud Amanda Wilson in her efforts to collect her judgment by refinancing the farm, ranch, and feedlot business through Lardyn. FSB willingly participated in the scheme because of its profitable relationship with Jon Pauling and Mark Pauling. [#15-1 at ¶¶ 37, 45, 48].

10. Jon Pauling and Mark Pauling made Defendant Elyce York—Jon Pauling's girlfriend—the *nominal* manager of Lardyn to serve as a straw woman for Jon Pauling. [#15-1 at ¶ 27].

11. Several facts illustrate how Lardyn is a sham company for the continuation of Jon Pauling and Mark Pauling's ranch and feedlot business, and how Elyce York is a straw woman for Jon Pauling. Elyce York is not a rancher but rather is a young dancer whom Denver District Court Judge Ross Buchanan found had been groomed by Jon Pauling. Although Mark Pauling is the other member of Lardyn, even months after the formation of Lardyn, Mark Pauling had never met Elyce York. Jon Pauling and Mark Pauling used their own longtime attorney to handle the various corporate filings for Lardyn. Jon Pauling and Mark Pauling compensated Elyce York for her involvement in this scheme by providing her free rent at a property in Jefferson County, Colorado, and—on information and belief to be confirmed through discovery—purchasing real property in Nebraska for her. [#15-1 at ¶¶ 22-34; ¶ 5 (discussing the Nebraska property)].

12. FSB financed the transfer of the farm, ranch, and feedlot business to Lardyn. FSB knew that the purpose of this elaborate scheme to move the farm, ranch, and feedlot operations to Lardyn as a new shell entity nominally controlled by Elyce York was to hinder, delay, and defraud Plaintiff in her efforts to collect her judgment against Jon Pauling. The bankers and FSB personally knew Jon Pauling and Mark Pauling to be experienced farm and feedlot operators, operating that the location at issue. Those bankers had a longstanding, highly lucrative relationship with Jon Pauling and Mark Pauling. FSB knew that Lardyn was a mere front and shell operation for Jon Pauling and Mark Pauling's continuing business operations. FSB knew that Elyce York was merely a *nominal* managing member of Lardyn who was signing documents in connection with financing to be provided by FSB. It is not credible that Elyce York—an exotic dancer without agricultural experience—would be the brains, brawn, or new investor of a feedlot operation at the same location where Jon Pauling and Mark Pauling have operated their business for many years. At least in part because it knew these facts, FSB did not simply accept the signature of Elyce York

5

as the nominal manager of Lardyn on banking documents but instead required that Mark Pauling co-sign documents as a member of Lardyn. [#15-1 at ¶¶ 42-46].

13. The transfer of the business to Lardyn left Jon Pauling in control of the business, while rendering Two Mile Ranch (against whom Plaintiff had a charging order) insolvent; and, yet, the transfer lacked adequate consideration to Two Mile Ranch. This transfer was made with actual intent to hinder, delay, and defraud Plaintiff as a creditor of Jon Pauling, Mark Pauling, and Two Mile Ranch. [#15-1 at ¶ 65].

14. As of April 2019, Jon Pauling and Mark Pauling are continuing their business of ranching and operating feedlots through Lardyn at the same location where Jon Pauling and Mark Pauling historically operated their farm, ranch, and feedlot operations through Two Mile Ranch. [#15-1 at ¶ 46].

15. By virtue of these actions to avoid the charging order on Two Mile Ranch and enable Jon Pauling and Mark Pauling to continue their business operations through a sham company with the intent of avoiding Plaintiff's judgment, Plaintiff has suffered harm in an amount to be determined at trial. [#15-1 at ¶ 73].

## STANDARD FOR RULING ON A MOTION UNDER FED.R.CIV.P. 12(b)(6)

To withstand a motion to dismiss, a complaint must contain "enough factual matter (taken as true) to" entitle the plaintiff to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added). These allegations must "state a claim to relief that is plausible on its face." *Id.* at 570. A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[S]o long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, [she] has met the threshold pleading standard." *Free the Nipple - Fort*

*Collins v. City of Fort Collins*, 216 F. Supp. 3d 1258, 1262 (D. Colo. 2016) (citations omitted). The court's function at the motion to dismiss stage "is not to make factual findings or to decide the merits of the parties' arguments as defendant would have it, but rather to assess whether [the plaintiff] adequately allege[s] a [claim]." *Id.* at 1264 (citations omitted).

## ARGUMENT

FSB selectively quotes allegations in the Amended Complaint that do not particularly address FSB's involvement in the conspiracy, then largely ignores the allegations that do address its involvement. The Court should examine the entirety of the Amended Complaint in determining whether Plaintiff has pled a plausible claim against FSB. Plaintiff's allegations demonstrate a plausible claim that FSB conspired with Jon Pauling, Mark Pauling, and Elyce York to hinder Plaintiff's collection of her civil judgment. Accordingly, the Court should deny FSB's Motion.

**A. Plaintiff has pled a plausible claim for relief with respect to the transfer of Jon Pauling and Mark Pauling's business operations from Two Mile Ranch to Lardyn.**

Fraudulent transfer laws have been in existence for centuries to address all manners of schemes imagined by mankind to evade creditors. The original fraudulent transfer act was the Statute of 13 Elizabeth enacted in 1571. *See Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587 (2016). The preamble to the Statute of 13 Elizabeth colorfully illustrates the point that fraudulent transfer laws always have been intended to be broad.

> For the avoiding and abolishing of feigned covenants and fraudulent feoffments, gifts, grants, alienations, conveyances, bonds, suits, judgments and executions, as well of lands and tenements as of goods and chattels, more commonly used and practiced in these days, then has been seen or heard of heretofore; feoffments, gifts, grants, alienations, conveyances, bonds, suits, judgments and executions have been and are devised and contrived of malice, fraud, conspiracy, collusion or guild, to the purpose and intent to delay, hinder or defraud creditors and others of their just and lawful actions, suits, debts, accounts, damages, penalties, forfeitures, heriots, mortuaries, and reliefs, not only to the let or hinderance of the due course and execution of law and justice, but also to the overthrow of all true and plain dealing, bargaining, and

7

>> arrangements between men, without therewith no commonwealth or civil society can be maintained or continued.

13 Eliz. ch. 5.

The Colorado Uniform Fraudulent Transfer Act ("CUFTA"), C.R.S. §§ 38-8-101, *et seq.*, continues the tradition of being written broadly to encompass the creative means by which debtors may seek to hinder, delay, and defraud creditors. The term "transfer" means "*every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset*, and includes payment of money, release, lease, and creation of a lien or other encumbrance." C.R.S. § 38-8-102(13) (emphasis added). Other terms under CUFTA are similarly broadly defined. A "claim" is broadly defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." C.R.S. § 38-8-102(3). Similarly, "creditor" broadly includes both judgment creditors who have liquidated their claims as well as persons whose claims against a debtor have not yet been liquidated. *Sands v. New Age Family P'ship, Ltd.*, 897 P.2d 917, 920 (Colo. App. 1995) ("[A]lthough a person must be a creditor, or otherwise have a claim, in order to maintain an action for fraudulent conveyance, the claim need not be liquidated or otherwise reduced to judgment"); C.R.S. § 38-8-102 cmt. (4); *see also* Fed.R.Civ.P. 18(b) ("[A] plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money"). "Debtor" broadly means "a person who is liable on a claim." C.R.S. § 38-8-102(7). "Property" means "anything that may be the subject of ownership." C.R.S. § 38-8-102(11).

CUFTA provides a remedy for any transfer that is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." C.R.S. §§ 38-8-105(1)(a), 38-8-108. An action for civil conspiracy to hinder, delay, or defraud a creditor in violation of CUFTA is actionable and is

8

intended to ensure "that equity will not be outwitted and frustrated by the willful and calculated acts of the debtor and those who aid and abet him." *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146-147 (Colo. App. 2003) (quoting *Miller v. Kaiser,* 433 P.2d 772, 775 (Colo. 1967) (internal quotation marks and ellipses omitted) (emphasis added).

Plaintiff has alleged facts that show a plausible claim against FSB for engaging in a civil conspiracy with Jon Pauling, Mark Pauling, Elyce York, and Lardyn to hinder, delay, and defraud Plaintiff in her efforts to collect her judgment. Jon Pauling claims that he personally owns no assets and has no income; however, he continuously has been running a farm, ranch, and feedlot business. To address Jon Pauling's professed inability to pay a judgment, Judge Buchanan imposed a charging order on Two Mile Ranch as the partnership through which Jon Pauling runs his farm, ranch, and feedlot business. Rather than honor that charging order and continue conducting business under Two Mile Ranch, Jon Pauling and Mark Pauling created Lardyn as a new sham entity, designated Jon Pauling's girlfriend Elyce York as the titular manager of Lardyn who serves as a proxy for Jon Pauling, and continued their farm, ranch, and feedlot business through Lardyn. Because Jon Pauling's farm, ranch, and feedlot business requires financing, he turned to his longtime bankers at FSB to support the transfer of the business to Lardyn. FSB knew Plaintiff had a judgment against Jon Pauling because it was served with and responded to post-judgment discovery from Plaintiff. FSB knew Jon Pauling and Mark Pauling concocted Lardyn to be a sham entity nominally managed by Jon Pauling's exotic dancer girlfriend with no agricultural experience, but in fact run by Jon Pauling. FSB knew that the purpose of all these complicated maneuvers was to evade the charging order that Judge Buchanan entered against Two Mile Ranch, create a fictitious veil that conceals Jon Pauling's continuing business activities from scrutiny, and hinder Plaintiff from collecting her judgment. FSB has a longstanding and profitable business

9

relationship with Jon Pauling and Mark Pauling, which likely explains why FSB agreed to help Jon Pauling.

The allegations plausibly demonstrate an agreement between Defendants (including FSB) by words, conduct, or both to engage in a transaction that was intended to hinder Plaintiff's ability to collect her judgment and that has in fact hindered her ability to collect. FSB and the other Defendants thus far have circumvented the charging order entered by Judge Buchanan. FSB and the other Defendants have manufactured new artificial barriers that Plaintiff must overcome if she ever hopes to achieve justice in the form of collecting the civil judgment that she obtained through years of effort, which culminated in a trial at which both the jury and judge found Jon Pauling's conduct so shocking, abhorrent, and utterly intolerable as to warrant millions of dollars in actual and punitive damages. There is nothing "implausible" about Plaintiff's claim that Jon Pauling has managed to avoid paying a cent of Plaintiff's judgment—while at the same time continuing to run a farm, ranch, and feedlot business—because of a coordinated effort to evade that judgment by Jon Pauling's brother and business partner Mark Pauling, his girlfriend Elyce York, and his longtime bankers at FSB.

An agreement between a judgment debtor and others to hinder a judgment creditor and evade payment of the judgment undermines the foundation of the civil justice system. That is why fraudulent transfer statutes have existed since the 1500s. Under Colorado law, the participants in such an agreement may be held liable for a civil conspiracy to violate CUFTA. *Double Oak Constr.,* 97 P.3d at 146-147.

The Court should reject FSB's argument that the transfer of the farm, ranch, and feedlot operation from Two Mile Ranch to Lardyn cannot be a fraudulent transfer as a matter of law. The gist of FSB's argument is that Plaintiff only has a judgment against Jon Pauling, not against Two

10

Mile Ranch; therefore, according to FSB, the transfer of farm, ranch, and feedlot business from Two Mile Ranch to what Plaintiff alleges is a new sham entity (Lardyn) is not a violation of CUFTA that can support a civil conspiracy claim. *See* Motion at 10.

FSB's argument misapprehends CUFTA, its terminology, and its breadth. The term "debtor" is not limited to judgment debtors like Jon Pauling. As previously noted, "debtor" includes a person who may be liable on an unliquidated claim. Even though Plaintiff's claim against Two Mile Ranch has not been reduced to a judgment, Plaintiff has alleged facts showing that she is a creditor of Two Mile Ranch. [#15-1 ¶ 62]. Jon Pauling and Mark Pauling used their control of Two Mile Ranch to stymie Plaintiff's collection efforts, enabling Jon Pauling to profess "poverty" even while he runs a farm, ranch, and feedlot business. To address that situation, Judge Buchanan entered a charging order against Two Mile Ranch. In response, Jon Pauling and Mark Pauling doubled down on using Two Mile Ranch as an artifice evade the judgment, backdating documents to create the illusion that Jon Pauling transferred most of his interest in Two Mile Ranch to Mark Pauling, yet signing other documents that demonstrate that Jon Pauling continued to own a 50% partnership interest in Two Mile Ranch. Jon Pauling and Mark Pauling's misuse of Two Mile Ranch to avoid Plaintiff's judgment was unsustainable, and Two Mile Ranch was virtually as burdened by Plaintiff's judgment as was Jon Pauling himself. That is why Jon Pauling, Mark Pauling, and FSB went to the trouble of transferring their longstanding farm, ranch, and feedlot business into the name of a new sham company, Lardyn, using Jon Pauling's girlfriend Elyce York as a proxy manager.

As detailed in the Amended Complaint the transfer of the business to Lardyn establishes a number of "badges of fraud" under CUFTA. [#15-1 ¶¶ 63(a)-(f)]. Lardyn qualifies as an "insider" and "affiliate" of Two Mile Ranch and Jon Pauling. C.R.S. §§ 38-8-105(b)(2)(a), -102(8)(a)(IV),

11

(d), (e). Jon Pauling, Mark Pauling, and Two Mile Ranch continue to control the transferred assets, operating their same business, at the same location, as before the transfer. C.R.S. § 38-8-105(b)(2)(b). The transfer occurred not only after judgment entered against Jon Pauling and Two Mile Ranch was burdened with a charging order. C.R.S. § 38-8-105(b)(2)(d). The only known asset of Jon Pauling was his interest in Two Mile Ranch—Jon Pauling having claimed absolute poverty in post-judgment proceedings—and the transfer to Lardyn involved substantially all of Two Mile Ranch's assets. C.R.S. § 38-8-105(b)(2)(e). The consideration for the transfer was insufficient insofar as Lardyn had no effective means to pay Two Mile Ranch. C.R.S. § 38-8-105(b)(2)(h). No charging order payments have been made, which supports Plaintiff's allegation that not only is Jon Pauling insolvent but that Two Mile Ranch also was rendered insolvent by the transfers to Lardyn. C.R.S. § 38-8-105(b)(2)(i).

The facts are that Jon Pauling sexually assaulted Plaintiff, for which he now owes a very substantial civil judgment; that his business is farming, ranching, and feedlot operation; that Judge Buchanan burdened that business with a charging order; that Jon Pauling and Mark Pauling forged and backdated documents in the hope of diluting the effects of the charging order; that Jon Pauling and Mark Pauling later decided to transfer the business operation to a new sham company to create an argument why the business is insulated from Plaintiff's judgment; and that FSB knowingly participated in these efforts to hinder Plaintiff's ability to enforce her judgment.

Again, a "transfer" under "CUFTA" includes "*every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with an asset or an interest in an asset*, and includes payment of money, release, lease, and creation of a lien or other encumbrance." C.R.S. § 38-8-102(13) (emphasis added). The creative "mode" that Jon Pauling, FSB, and the other

12

participants in this conspiracy concocted to avoid Plaintiff's judgment collection efforts qualifies as a "transfer" under CUFTA.

FSB also makes arguments for dismissal that are more appropriately characterized as affirmative defenses under Section -109 of CUFTA. *Cf. Lewis v. Taylor,* 427 P.3d 796, 799 (Colo. 2018) (referencing affirmative defenses under C.R.S. § 38-8-109). FSB argues, without factual support, that Two Mile Ranch had no equity in any asset transferred to Lardyn, that "the Two Mile Ranch property transferred to Lardyn was fully encumbered by then-existing loans from FSB to Two Mile Ranch," and that FSB had a valid lien on Two Mile Ranch's property "that exceeds the property's value[.]" [#23 at 11-12]. Such defenses may not be considered at the motion to dismiss stage even if FSB had supported them with evidence, which it has not. FSB's reliance on *Board of Cty. Comm'rs of Cty. of Park v. Park City. Sportsmen's Ranch, LLP*, 271 P.3d 562, 571 (Colo. App. 2011), to support its argument for dismissal is misplaced. [#23 at 8, 11-12]. That case involved facts established at trial concerning the value of valid liens on a property alleged to have been transferred fraudulently; it did not involve dismissal on the pleadings. 271 P.3d at 571. FSB must prove affirmative defenses with evidence, not bare argument of counsel.

Plaintiff's alleges that she has been damaged by the conspiracy to hinder, delay, or defraud her. [#15-1 at ¶ 73]. Insofar as the subtext of FSB's argument seems to be that Plaintiff does not establish how FSB's involvement in the civil conspiracy has damaged her, it misses the mark. Jon Pauling owes millions of dollars to Plaintiff on a duly entered civil judgment arising from a sexual assault. Judge Buchanan ordered a charging order on his business enterprise. Defendants would not go to all the trouble of creating Lardyn, paying lawyers, compensating Elyce York to be a straw woman manager, re-titling assets, and reshuffling the business's financing—all to avoid paying Plaintiff—if they regarded the business as worthless and saw no profit in it. These facts

show, and reason and common sense affirm, that Defendants took these baroque steps so that Defendants could continue making money without being burdened by Judge Buchanan's charging order and without paying Plaintiff any part of her judgment. Plaintiff is not required to ascertain—whether by telepathy, breaking and entering Defendants' offices, or otherwise—information that is uniquely within Defendants' control that will allow her to prove the amount of money that should have been paid on her judgment but for Defendants' coordinated efforts to frustrate her. That is the purpose of discovery. Plaintiff clearly has been and continues to be damaged in her ability to collect amounts on the seven-figure judgment she secured years ago.

FSB's involvement in the transfer of the business to Lardyn does not pass the smell test. If "plausibility" be the standard for deciding a motion to dismiss, it is wholly "implausible" that in the midst of Plaintiff's judgment collection activities—in which FSB was involved by virtue of being subpoenaed—FSB innocently believed it was financing an arms-length transaction in which Jon Pauling's business would be transferred to a new entity managed by Jon Pauling's young exotic dancer girlfriend, with his brother Mark Pauling as a non-managing co-member. The far more plausible explanation is that FSB agreed to help Jon Pauling continue his business through Lardyn as a sham to avoid Plaintiff's judgment because they had a longstanding and profitable relationship, they regarded Plaintiff's judgment collection activities as a threat to their business relationship, and they concluded that it was in their mutual interests to collaborate in the subterfuge of running Jon Pauling's business through Lardyn with Elyce York as a straw woman.

**B. Plaintiff's claims are not barred by a one-year statute of limitation.**

FSB incorrectly asserts that a one-year statute of limitation applies. As FSB admits, "CUFTA sets forth four year and one year statutes of limitation." [#23 at 13]. The one-year statute of limitation applies only to CUFTA claims based on C.R.S. § 38-8-106(2)—which is limited to

14

transfers to an insider for an antecedent debt. Plaintiff has not pled a claim under that section of CUFTA. Instead, Plaintiff pled CUFTA claims that are subject to a four-year statute of limitation.

Plaintiff pled her first and second claims for fraudulent transfer under C.R.S. § 38-8-105. [#15-1 at ¶¶ 50, 53, 55, 56, 63, 65, 66]. A four-year limitations period applies to CUFTA claims under this section. *See* C.R.S. § 38-8-110(1)(a)-(b) ("A cause of action with respect to a fraudulent transfer or obligation under this article is extinguished unless action is brought…[under] section 38-8-105(1)(a) within four years after the transfer was made…[or under] section 38-8-105(1)(b)…within four years after the transfer was made…").

Plaintiff also alleges her fraudulent transfer claims in the alternative under C.R.S. § 38-8-106(1). [#15-1 at ¶¶ 57, 67]. CUFTA claims under this section are also subject to a four-year statute of limitation. C.R.S. § 38-8-110(1)(b).

If FSB wants to pursue the statute of limitations as an affirmative defense, it bears the burden of proving that defense with evidence. FSB cannot meet its burden by grossly misconstruing Plaintiff's allegations and then arguing for the wrong statute of limitations. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298-99 (10th Cir. 2018) ("it is the defendant's burden to plead an affirmative defense," "there can be no question that a limitations issue is an affirmative defense," and dismissal of claims based on an affirmative defense "only" appropriate "when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements"); *Bistline v. Parker*, 918 F.3d 849, 876 (10th Cir. 2019) (statute of limitations is affirmative defense concerning which defendant bears the burden, *citing Fernandez*).

## Conclusion

For the foregoing reasons, the Court should deny Farmers State Bank's Motion to Dismiss Amended Complaint.

DATED:  August 19, 2019

        KEATING WAGNER POLIDORI FREE, P.C.

        By:    *s/ Ross W. Pulkrabek*
              Ross W. Pulkrabek
              Aaron D. Goldhamer
              1290 Broadway, Suite 600
              Denver, CO 80203
              Phone: (303) 534-0401
              Email:  rpulkrabek@keatingwagner.com
              *Attorney for Plaintiff*

CERTIFICATE OF SERVICE

      I hereby certify that on August 19, 2019, a true and correct copy of the foregoing was electronically served via CM/ECF filing system upon the following:

R. Livingston Keithley
Overton Lapuyade Keithley Gleason Schumacher
165 S. Union Blvd., Suite 542
Lakewood, Colorado 80228
Phone: 303-832-1120
Livingston.Keithley@overtonlawfirm.com
*Attorneys for Defendants Mark Pauling and Two Mile Ranch General Partnership*

Christopher Carr
Dill Dill Carr Stonbraker & Hutchings, PC
455 Sherman Street, Suite 300
Denver, CO 80203
ccarr@dillanddill.com
*Attorney for Defendant Jonathan Pauling*

Tracy A. Oldemeyer
Beau B. Bump
CLINE WILLIAMS
WRIGHT JOHNSON & OLDFATHER, L.L.P.
215 Mathews Street, Suite 300
Fort Collins, Colorado 80524
toldemeyer@clinewilliams.com
bbump@clinewilliams.com
*Attorneys for Farmers State Bank*

              *s/ Aaron D. Goldhamer*
              Aaron D. Goldhamer