IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01224-RBJ-STV

AMANDA WILSON, a Michigan citizen,

Plaintiff,

v.

JONATHAN PAULING, an individual Colorado citizen,
MARK PAULING, an individual Colorado citizen,
TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIOP, a Colorado General Partnership,
ELYCE YORK, an individual Nebraska or Colorado citizen,
LARDYN CONSULTING, LLC, a Nebraska Limited Liability Company, and
FARMERS STATE BANK, a Nebraska corporation,

Defendants.

---

MOTION TO DISMISS PURSUANT TO F.R.Civ.P. 12(b)(6)

---

Pursuant to F.R.Civ.P. 12(b)(6), and for the reasons set forth below, defendants Lardyn Consulting LLC ("Lardyn") and Elyce York ("Ms. York") (collectively the "Lardyn Defendants") request dismissal of the claims asserted against them.

OVERVIEW

In this diversity case, plaintiff challenges the *bona fides* of two transactions under the Colorado Uniform Fraudulent Transfer Act, C.R.S. §38-8-101 *et seq.* ("CUFTA"). Only one of those transactions — the sale of a feedlot operation — is alleged to have involved the Lardyn Defendants. That transaction is the subject of plaintiff's Second Claim For Relief. Additionally, plaintiff's Third Claim For Relief asserts a claim for civil conspiracy against the Lardyn Defendants with respect to that transaction. This motion requests dismissal of both

{00378247.DOCX / 1 }

claims asserted against the Lardyn Defendants.

## STANDARD OF REVIEW

The current standard for evaluating a motion under F.R.Civ.P. 12(b)(6) requires this Court to determine whether a plaintiff has stated plausible claims for relief. Application of that standard does not reflect a return to code pleading. Thus, a plaintiff is not required to allege facts establishing a *prima facie* case on each element of its claims. At the same time, however, a plaintiff is not entitled to have its claims go forward simply by making rote allegations concerning each element of its claims. Instead, the determination of whether a plaintiff has stated plausible claims for relief "requires the reviewing court to draw on its judicial experience and common sense," and the "nature and specificity of the allegations required to state a plausible claim will vary based on context." *See SEC v. Shields,* 744 F.3d 633, 640-41(10th Cir. 2014) (internal citations omitted).

It goes without saying that, even though a plaintiff's factual allegations must be accepted as true in ruling on a motion to dismiss, a plaintiff is not entitled to proceed with a claim that relies on allegations that are contrary to matters of public record. Nor is a plaintiff entitled to proceed with a claim by avoiding reference to such facts when they demonstrate that the plaintiff's claim is not viable. Therefore, in determining whether a plaintiff has stated a plausible claim for relief, this Court may consider matters subject to judicial notice, including pleadings in related cases and publicly recorded documents.

Here, the facts of which this Court may take judicial notice show that the property transferred to Lardyn was fully encumbered before that transfer took place and remained fully encumbered after that transfer took place. Additionally, the property in question was not transferred by a judgment debtor of the plaintiff. Nor did plaintiff have the right to execute on

the transferred property. Hence, the Amended Complaint fails to allege a plausible fraudulent conveyance claim against the Lardyn Defendants — and, for that reason, also fails to allege a plausible civil conspiracy claim against those defendants.

## STATEMENT OF FACTS

The following statement of facts is taken from three sources: (1) the specific factual allegations in plaintiff's Amended Complaint, (2) the pleadings from *In re Two Mile Ranch, a Colorado general partnership,* Case No. 1:16-bk-16615 (Bktrcy.D.Colo.), and (3) the public records maintained by the Colorado Secretary of State, the Nebraska Secretary of State and the Clerks and Recorders for Logan and Weld counties. Although the latter sources of information go beyond the four corners of the Amended Complaint, it is well-established that federal courts may take judicial notice of such information in ruling on a Rule 12(b)(6) motion. *Compare, e.g., Grynberg v. Koch Gateway Pipeline Co.,* 390 F.3d 1276, 1278 n. 1 (10th Cir. 2004) (courts can take judicial notice of pleadings in related cases and publicly filed documents) *with, e.g., Gee v. Pacheco,* 627 F.3d 1178, 1186 (10th Cir. (2010) (courts can consider facts subject to judicial notice without converting a Rule 12(b)(6) motion into a motion for summary judgment). Therefore, the Lardyn Defendants believe the Court should consider the following allegations and judicially noticeable facts in ruling on their motion to dismiss:

1. Two Mile Ranch ("TMR") is a Colorado general partnership formed by two brothers, Jon and Mark Pauling (respectively "J. Pauling" and "M. Pauling"). Since the 1980's, TMR has owned and managed agricultural and residential properties and engaged in a variety of farming, ranching and feedlot operations. [Amended Complaint, p. 2, ¶4 and p. 7, ¶17.]

2. Farmers State Bank ("FSB") is a Nebraska state-chartered bank whose

deposits are insured by the FDIC.  [Amended Complaint, p. 4, ¶7.]

        3.      FSB has loaned money to TMR, J. Pauling and M. Pauling for many years, including making loans to TMR in 2014 and 2015.  [Amended Complaint, p. 11, ¶43.]

        4.      According to the public records filed with the Nebraska Secretary of State establish, Lardyn is a Nebraska limited liability company in good standing that was formed on August 24, 2016.  [*See* Exhibit A.]

        5.      Ms. York is a co-owner of Lardyn along with M. Pauling and has a close relationship with J. Pauling.  [Amended Complaint, pp. 3-4, ¶6 and p. 6, ¶15.]

        6.      On October 23, 2015, plaintiff obtained a judgment against J. Pauling in a Denver District Court action docketed as 2013CV35298 (the "State Case").  [Amended Complaint, p. 5, ¶11.]

        7.      Although plaintiff sued other entities affiliated with J. Pauling in the State Case, she did not sue TMR and therefore did not obtain a judgment against TMR.  [Amended Complaint, p. 7, ¶16.]

        8.      Plaintiff obtained a charging order against J. Pauling's interest in TMR, but has not recovered any portion of her judgment pursuant to that charging order.  [Amended Complaint, p. 7, ¶20.]

        9.      On July 1, 2016, TMR filed for bankruptcy in the United States Bankruptcy Court for the District of Colorado seeking relief under Chapter 11 of the Bankruptcy Code, which action was docketed as 16-BK-16615-EEB.  [*See* Exhibit B.][1]

        10.     On February 27, 2017, FSB filed a Proof of Claim in TMR's bankruptcy case, along with documents establishing that (a) FSB had security agreements and Deeds of

---

[1] Although the documents filed in TMR's bankruptcy proceeding are available on PACER, for ease of reference the Lardyn Defendants have attached copies to this motion.

Trust encompassing all of TMR's property, (b) as of the date of TMR's bankruptcy filing it owed FSB $9,582,213.61, and (c) TMR's debt to FSB substantially exceeded the value of TMR's property, which was only $8,963,500.  [*See* Exhibit C.]

11. On February 28, 2017, TMR moved to dismiss its bankruptcy case on the ground that it had been unable to sell its assets, that it was fully secured to FSB, that FSB no longer supported TMR's reorganization efforts, and that accordingly TMR would be unable to propose a viable plan of reorganization.  [*See* Exhibit D.]

12. On March 31, 2017, TMR's bankruptcy was dismissed.  [*See* Exhibit E.]

13. In late April 2017, TMR sold certain real property to Lardyn.  [Amended Complaint, p. 10, ¶35.]

14. On April 27, 2017, FSB recorded Deeds of Trust in Logan County and Weld County securing a note from Lardyn in the maximum amount of $7,100,000.  [*See* Exhibit F.]  Those Deeds of Trust encumbered the property sold by TMR to Lardyn.  [Complaint, p. 12, ¶45.]

15. On April 27, 2017, FSB recorded a UCC financing statement with the Colorado Secretary of State reflecting that it held a lien against all livestock and growing crops owned by Lardyn in Logan and Weld counties.  [*See* Exhibit G, p. 1.]

16. On April 20, 2018, FSB recorded a UCC financing statement against Lardyn's lease of certain farming equipment.  [*See* Exhibit G, p. 2.]

17. On June 20, 2019, FSB recorded a Deed of Trust in Logan County securing an SBA loan to Lardyn in the maximum amount of $3,375,000.  [*See* Exhibit H.]  That Deed of Trust also encumbered the real property acquired by Lardyn from TMR.  [Complaint, p. 12, ¶45.]

ARGUMENT

A. Plaintiff's Allegations That Ms. York Is Simply A "Straw Man" For J. Pauling Should Be Rejected Because They Are Based On Gender Stereotyping.

Plaintiff's Second Claim for Relief asserts that Ms. York is simply a "straw man" for J. Pauling, and that accordingly there was no *bona fide* sale of property from TMR to Lardyn. Specifically, plaintiff alleges that she "does not believe Elyce York to be the *de facto* manager of Lardyn" because at one point (like plaintiff) Ms. York was a dancer. Therefore, plaintiff contends, it is "not credible" to believe that Ms. York could actually learn to manage, and then actually manage, a feedlot business. [*See* Amended Complaint, p. 9, ¶26 and p. 11, ¶37.]

The fact that one's prior employment may have included work that some may regard as out of the mainstream does not disqualify that person from pursuing a different career path. Indeed, as plaintiff herself admits (at least implicitly), her work as a dancer did not disqualify her from employment in other businesses owned by J. Pauling. [*See* Amended Complaint, p. 5, ¶11.]

Thus, it appears that plaintiff has unwittingly engaged in the very type of gender stereotyping that should have no place in the contemporary world. The Lardyn Defendants submit that plaintiff's use of gender stereotyping as the sole basis for alleging that Ms. York is simply a "straw man" for J. Pauling should therefore be deemed insufficient to give that allegation a veneer of plausibility. Hence, this Court should find that, due to plaintiff's improper reliance on gender stereotyping in order to challenge Ms. York's status as an independent businesswomen, plaintiff has not stated a plausible claim that the transaction between TMR and Lardyn did not involve a *bona fide* sale.

B. Plaintiff Has Not Plausibly Alleged That TMR's Transfer To Lardyn Involved A Transfer Of A Debtor's Property Within The Meaning Of CUFTA.

A claim under CUFTA cannot arise unless a debtor of the plaintiff transfers property in which that debtor holds an interest. *See* C.R.S. §38-8-105(1) ("A transfer made or obligation incurred *by a debtor* is fraudulent as to a creditor [if the described circumstances are present]") (emphasis supplied); *see also* C.R.S. §38-8-106(1) (same). Here, the sale that is the subject of plaintiff's Second Claim For Relief was made by TMR and involved partnership property.

Quite properly, the Amended Complaint does not allege that TMR is a judgment debtor of plaintiff. Indeed, plaintiff candidly acknowledges that she elected not to sue TMR in the State Case, even though she sued other entities in which J. Pauling had an interest. [*See* Amended Complaint, p. 7, ¶16.] Thus, because the sale to Lardyn that is the subject of plaintiff's Second Claim For Relief was not made by a judgment debtor, that sale cannot properly be made the subject of a claim under CUFTA.

The fact that J. Pauling is a general partner of TMR does not change that conclusion. General partners do not hold personal interests in partnership property. Instead, a general partner's sole financial interest in a partnership is the right to receive partnership distributions, in the form of profits while the business is operating or in the form of surplus when the partnership is liquidated. *See generally Mountain States Bank v. Irvin,* 809 P.2d 1113, 1115 (Colo.App. 1991). Thus, the holder of a judgment against a general partner is not entitled to execute on partnership property in order to satisfy that judgment. Instead, such a judgment creditor's remedy is against the general partner's interest in partnership profits, which remedy is implemented through filing a charging order. *See* C.R.S. §7-60-128.

Consequently, not only has plaintiff has failed to allege facts from which it could

reasonably be inferred that the transfer from TMR to Lardyn was made by a judgment debtor, she has also failed to allege facts from which it could reasonably inferred that such transfer involved property in which a judgment debtor held an interest. Therefore, for both of those reasons, plaintiff's Second Claim For Relief fails to state a plausible CUFTA claim against the Lardyn Defendants.

C. Facts Subject To Judicial Notice Establish That Plaintiff Has Not Plausibly Alleged, And Cannot Plausibly Allege, That The Sale To Lardyn Involved "Assets" Within The Meaning Of CUFTA.

The purpose of a fraudulent conveyance action is to ensure that a debtor does not denude itself of assets that would otherwise be available to satisfy a judgment. Thus, a judgment debtor remains free to transfer property that is fully encumbered — even to an insider — because such property is unavailable to satisfy a judgment. *See* C.R.S. §38-8-102(2)(a) (stating that property does not constitute an "asset" within the meaning of CUFTA to the extent it is encumbered). Indeed, in a case that also involved transfer of ranching assets, a division of the Colorado Court of Appeals held that because the ranch was encumbered by liens that exceeded its value, the ranch was not an "asset" within the meaning of CUFTA. Therefore, as a matter of law the transfer of that ranch could not constitute a fraudulent conveyance, even though the ranch was transferred to the original debtor's partners. *See Bd. of County Commr's v. Park County Sportsmen's Ranch, LLP,* 271 P.3d 562, 571 (Colo.App. 2011); *cf. Megabank Financial Corp. v. Alpha Gamma Rho Fraternity,* 841 P.2d 318, 320 (Colo.App. 1992) (if a transfer is for value, it is not a fraudulent conveyance because such a transfer "does not diminish the estate" meaning that "the motives of the debtor and grantee are immaterial" (quoting 1 G. Glenn, *Fraudulent Conveyances* §300 (rev. ed. 1940)).

Here, facts that are properly made the subject of judicial notice establish that the

plaintiff has not plausibly alleged that the property conveyed to Lardyn constituted an "asset" within the meaning of CUFTA. Thus, for this reason as well, plaintiff's Second Claim For Relief fails to allege a plausible CUFTA claim against the Lardyn Defendants.

More particularly, the records of this Court's bankruptcy division show that TMR filed a Chapter 11 bankruptcy petition on July 1, 2016. [*See* attached Exhibit B.] On February 27, 2017 (less than two months before the April 2017 sale from TMR to Lardyn that is the subject of plaintiff's Second Claim For Relief), FSB filed a proof of claim in TMR's bankruptcy. FSB's proof of claim attached copies of documents showing that, from at least January 2013 forward, FSB held a security interest in all of TMR's non-real estate assets and also held recorded Deeds of Trust encumbering all of TMR's real estate assets. FSB's proof of claim further showed that the amount due and owing to FSB at the time TMR filed for bankruptcy ($9,582,213.61) substantially exceeded the value of TMR's property ($8,963,500). [*See* attached Exhibit C.]

TMR's bankruptcy case was dismissed on March 31, 2017. [*See* attached Exhibit E.] Thereafter, TMR sold its property to Lardyn. FSB financed that sale. And, just as is the case in other standard commercial transactions, FSB required Lardyn to post the assets being acquired as collateral. Accordingly, on April 17, 2017, FSB recorded UCC financing statements and Deeds of Trust against all of the property transferred to Lardyn. Originally, those documents secured a debt in the maximum amount of $7,100,000. [*See* Exhibit F.] On June 20, 2019, however, the secured amount was increased to $10,475,000 when Lardyn obtained an SBA loan through FSB in the maximum amount of $3,375,000. [*See* Exhibit H.] Thus, the assets acquired by Lardyn are currently subject to encumbrances in the face amount of $10,475,000.

Plaintiff's complaint makes no mention of these facts. But, as noted above,

because these facts are properly made the subject of judicial notice, they are properly considered by this Court in determining whether plaintiff has stated a plausible claim for relief under CUFTA.  Lardyn submits that the foregoing judicially noticeable facts establish that the transferred property was fully encumbered at the time of the sale from TMR to Lardyn.  Accordingly, just as the transfer of fully encumbered property to parties affiliated with the debtor in *Park County Sportsmen's Ranch* did not, as a matter of law, give rise to a CUFTA claim, so too the transfer to Lardyn does not, as a matter of law, give rise to a claim under CUFTA — and that remains the case even if that transfer was done to allow the continued operation of TMR's feedlot business without interference from plaintiff's collection efforts.  *See Park County Sportsmen's Ranch, LLP,* 271 P.3d at 577 (even though transaction was designed to extinguish judgment creditor's lien, where transfer involved fully encumbered assets there could be no fraudulent conveyance, meaning that the defendants' intent "was immaterial because no fraudulent transfer occurred").

   D. Plaintiff's Failure To Allege A Plausible CUFTA Claim Against The Lardyn Defendants Requires Dismissal Of Her Claim That The Lardyn Defendants Participated In A Conspiracy To Commit A Fraudulent Conveyance.

Insofar as it is asserted against the Lardyn Defendants, plaintiff's Third Claim For Relief alleges that the Lardyn Defendants engaged in a conspiracy to commit a fraudulent conveyance in connection with the sale of assets from TMR to Lardyn.  Under Colorado law, however, there can be no actionable civil conspiracy without an actionable wrong.  Accordingly, where a plaintiff fails to establish that a challenged transfer involved a fraudulent conveyance, an agreement to engage in the challenged transfer cannot support a claim for civil conspiracy.  *See Park County Sportsmen's Ranch,* 271 P.3d at 572 (where court found underlying transfer did not constitute a fraudulent conveyance, court was required to vacate verdict for civil conspiracy

to engage in the underlying transfer). Thus, if this Court agrees that plaintiff's Second Claim For Relief against the Lardyn Defendants must be dismissed, this Court should also dismiss plaintiff's Third Claim For Relief against the Lardyn Defendants.

## CONCLUSION

For the reasons stated above, this Court should enter its order dismissing plaintiff's claims against the Lardyn Defendants and award the Lardyn Defendants such other and further relief as this Court finds just and appropriate in the circumstances.

Dated:   August 23, 2019
         Denver, Colorado

>   Respectfully submitted,
>
>   CARVER SCHWARZ McNAB KAMPER
>   & FORBES, LLC
>
>   *s/Peter C. Forbes*
>   By:_____
>      Peter C. Forbes
>      1888 Sherman Street — Suite 400
>      Denver, Colorado 80203
>      Telephone: 303.893.1815
>      Fax: 303.893.1829
>      pforbes@csmkf.com
>
>   *Attorneys for Lardyn Consulting, LLC and Elyce York*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on August 23, 2019, the undersigned caused a true and correct copy of the above and foregoing to be served upon the following via the CM/ECF system:

| | |
|---|---|
| Ross W. Pulkrabek<br>Aaron D. Goldhamer<br>Keating Wagner Polidori Free, PC<br>1290 Broadway — Suite 600<br>Denver, Colorado 80203<br>agoldhamer@keatingwagner.com<br>rpulkrabek@keatingwagner.com | Beau Bryan Bump<br>Tracy A. Oldemeyer<br>Cline Williams Wright Johnson & Oldfather-Fort Collins<br>215 Mathews Street<br>Suite 300<br>Fort Collins, CO 80524<br>bbump@clinewilliams.com<br>toldemeyer@clinewilliams.com |
| Christopher Wenzel Carr<br>Dill Carr Stonbraker & Hutchings, P.C.<br>455 Sherman Street<br>Suite 300<br>Denver, CO 80203<br>ccarr@dillanddill.com | |

                *s/Peter C. Forbes*
By: _____