EXHIBIT C TO LARDYN DEFENDANTS'

MOTION TO DISMISS

(PART 1)

| Fill in this information to identify the case: | |
|---|---|
| Debtor 1 | Two Mile Ranch, a Colorado general partnership |
| Debtor 2 (Spouse, if filing) | |
| United States Bankruptcy Court for the: | District of Colorado |
| Case number | 1:16-bk-16615 |

## Official Form 410

# Proof of Claim

04/16

Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.

Filers must leave out or redact information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements. **Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy (Form 309) that you received.**

| Part 1: | Identify the Claim |
|---|---|

| | | |
|---|---|---|
| 1. | Who is the current creditor? | **Farmers State Bank**<br>Name of the current creditor (the person or entity to be paid for this claim)<br><br>Other names the creditor used with the debtor _____ |
| 2. | Has this claim been acquired from someone else? | ☑ No<br>☐ Yes.  From whom? _____ |

| | | | |
|---|---|---|---|
| 3. | Where should notices and payments to the creditor be sent?<br><br>Federal Rule of Bankruptcy Procedure (FRBP) 2002(g) | **Where should notices to the creditor be sent?**<br><br>**Cline Williams Wright Johnson & Oldfather, LLP**<br>Name<br>**330 S. College Ave., Suite 300**<br>Number        Street<br>**Fort Collins          CO          80524**<br>City                State              ZIP Code<br><br>Contact phone  970-221-2637<br>Contact email  toldemeyer@clinewilliams.com<br><br>Uniform claim identifier for electronic payments in chapter 13 (if you use one):<br>_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | **Where should payments to the creditor be sent? (if different)**<br><br>Name<br>Number        Street<br>City                State              ZIP Code<br><br>Contact phone  _____<br>Contact email  _____ |

| | | |
|---|---|---|
| 4. | Does this claim amend one already filed? | ☑ No<br>☐ Yes.  Claim number on court claims registry (if known) _____   Filed on ___/___/___<br>                                                                                                MM / DD / YYYY |
| 5. | Do you know if anyone else has filed a proof of claim for this claim? | ☑ No<br>☐ Yes.  Who made the earlier filing? _____ |

Official Form 410                                    **Proof of Claim**                                    page 1

**Part 2:**   **Give Information About the Claim as of the Date the Case Was Filed**

**6. Do you have any number you use to identify the debtor?**

☐ No

☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: __1__ __5__ __0__ __7__

**7. How much is the claim?**   $_____9,582,213.61__. Does this amount include interest or other charges?

☐ No

☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A).

**8. What is the basis of the claim?**

Examples: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.

Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).

Limit disclosing information that is entitled to privacy, such as health care information.

money loaned and loans guaranteed

**9. Is all or part of the claim secured?**

☐ No

☑ Yes. The claim is secured by a lien on property.

**Nature of property:**

☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*

☑ Motor vehicle

☑ Other. Describe:   accounts, inventory, equipment, instruments, growing crops

**Basis for perfection:**   3 Deeds of Trust and 2 Commercial Security Agreements

Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)

**Value of property:**   $____8,963,500.00

**Amount of the claim that is secured:**   $____8,963,500.00

**Amount of the claim that is unsecured:**   $____618,713.61 (The sum of the secured and unsecured amounts should match the amount in line 7.)

**Amount necessary to cure any default as of the date of the petition:**   $____9,582,213.61

**Annual Interest Rate** (when case was filed) 16.00 %

☑ Fixed

☐ Variable

**10. Is this claim based on a lease?**

☑ No

☐ Yes. Amount necessary to cure any default as of the date of the petition.   $_____

**11. Is this claim subject to a right of setoff?**

☐ No

☑ Yes. Identify the property: deposit accounts, items presented, and repurchase agreements

| | | | Amount entitled to priority |
|---|---|---|---|
| **12. Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?** | ☑ No | | |
| A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☐ Yes. *Check one:* | | |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or (a)(1)(B). | | $_____ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C. § 507(a)(7). | | $_____ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | | $_____ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C. § 507(a)(8). | | $_____ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C. § 507(a)(5). | | $_____ |
| | ☐ Other. Specify subsection of 11 U.S.C. § 507(a)(___) that applies. | | $_____ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | | |

## Part 3:   Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this *Proof of Claim* serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this *Proof of Claim* and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date   02/27/2017
                   MM / DD / YYYY

_Tracy Oldemeyer_
Signature

**Print the name of the person who is completing and signing this claim:**

| Name | Tracy A. Oldemeyer | | |
|---|---|---|---|
| | First name | Middle name | Last name |
| Title | Partner | | |
| Company | Cline Williams Wright Johnson & Oldfather, L.L.P. | | |
| | Identify the corporate servicer as the company if the authorized agent is a servicer. | | |
| Address | 330 S. College Ave., Suite 300 | | |
| | Number        Street | | |
| | Fort Collins | CO | 80524 |
| | City | State | ZIP Code |
| Contact phone | 970-221-2637 | Email | toldemeyer@clinewilliams.com |

```
RUN DATE:  6-30-16                FARMERS STATE BANK                    PAGE 1
                              LOAN CALCULATED PAYOFF                    LB21


        TWO MILE RANCH GENERAL PARTNERSHIP
        18503 LCR 42 1/2
        STERLING, CO  80751



    PAYOFF INFORMATION FOR LOAN ACCOUNT #      0002097

    PAYMENT / PMT PORTION INFORMATION

            PAYMENT DATE                  7-01-16
            PAYMENT AMOUNT              71,808.48

            PRINCIPAL PORTION          70,160.92
            INTEREST PORTION            1,647.56
            SERVICE FEE PORTION             0.00
            LATE CHARGE PORTION             0.00
            OTHER FEES PORTION              0.00
            ESCROW PORTION                  0.00


        LOAN INFORMATION        BEFORE PAYMENT        AFTER PAYMENT

        PRINCIPAL BALANCE          70,171.15               10.23
        INTEREST BALANCE            1,647.56                0.00
        MINIMUM INT DUE             0.0000                0.0000
        SERVC FEE BALANCE              0.00                 0.00
        LATE CHARGE                    0.00                 0.00
        OTHER FEES                     0.00                 0.00
        REBATES:
        ICNE                           0.00                 0.00
        CREDIT LIFE                    0.00                 0.00
        2ND INSURANCE                  0.00                 0.00
        3RD INSURANCE                  0.00                 0.00
        4TH INSURANCE                  0.00                 0.00
        ESCROW BALANCE                 0.00                 0.00

        TOTAL AMOUNT DUE           71,818.71               10.23
        ONE DAYS INTEREST            10.2333              0.0015

        PAYOFF DATE             7-01-16
```

This is the payoff information you requested on your loan.
If payment is received after the PAYOFF DATE listed, additional
charges may apply.
If you have further questions, please contact us at:

```
                    FARMERS STATE BANK
                    501 MAIN ST PO BOX 220
                    BRIDGEPORT, NE  69336-4013
                    Phone (308)262-1500

                    *** END OF REPORT ***
```

```
RUN DATE:  6-30-16              FARMERS STATE BANK                    PAGE 1
                            LOAN CALCULATED PAYOFF                     LB21
```

TWO MILE RANCH-GENERAL PARTNERSHIP
18503 LCR 42 1/2
STERLING, CO  80751


PAYOFF INFORMATION FOR LOAN ACCOUNT #    0002351

PAYMENT / PMT PORTION INFORMATION

```
        PAYMENT DATE                    7-01-16
        PAYMENT AMOUNT               644,240.01

        PRINCIPAL PORTION           620,418.05
        INTEREST PORTION             23,821.96
        SERVICE FEE PORTION               0.00
        LATE CHARGE PORTION               0.00
        OTHER FEES PORTION                0.00
        ESCROW PORTION                    0.00
```

```
     LOAN INFORMATION       BEFORE PAYMENT        AFTER PAYMENT

  PRINCIPAL BALANCE          620,521.47              103.42
  INTEREST BALANCE            23,821.96                0.00
  MINIMUM INT DUE                 0.0000               0.0000
  SERVC FEE BALANCE               0.00                 0.00
  LATE CHARGE                     0.00                 0.00
  OTHER FEES                      0.00                 0.00
  REBATES:
  ICNE                            0.00                 0.00
  CREDIT LIFE                     0.00                 0.00
  2ND INSURANCE                   0.00                 0.00
  3RD INSURANCE                   0.00                 0.00
  4TH INSURANCE                   0.00                 0.00
  ESCROW BALANCE                  0.00                 0.00

  TOTAL AMOUNT DUE           644,343.43              103.42
  ONE DAYS INTEREST             103.4202               0.0172

  PAYOFF DATE                7-01-16
```

This is the payoff information you requested on your loan.
If payment is received after the PAYOFF DATE listed, additional
charges may apply.
If you have further questions, please contact us at:

```
        FARMERS STATE BANK
        501 MAIN ST PO BOX 220
        BRIDGEPORT, NE  69336-4013
        Phone (308)262-1500

        *** END OF REPORT ***
```

```
RUN DATE:  6-30-16                FARMERS STATE BANK                  PAGE 1
                              LOAN CALCULATED PAYOFF                  LB21


        TWO MILE RANCH-GENERAL PARTNERSHIP
        18503 LCR 42 1/2
        STERLING, CO  80751



    PAYOFF INFORMATION FOR LOAN ACCOUNT #      0002352

    PAYMENT / PMT PORTION INFORMATION

              PAYMENT DATE                   7-01-16
              PAYMENT AMOUNT             8,110,491.67

              PRINCIPAL PORTION         7,598,758.33
              INTEREST PORTION            511,733.34
              SERVICE FEE PORTION               0.00
              LATE CHARGE PORTION               0.00
              OTHER FEES PORTION                0.00
              ESCROW PORTION                    0.00


        LOAN INFORMATION          BEFORE PAYMENT         AFTER PAYMENT

        PRINCIPAL BALANCE          7,600,000.00              1,241.67
        INTEREST BALANCE             511,733.34                  0.00
        MINIMUM INT DUE                   0.0000                0.0000
        SERVC FEE BALANCE                 0.00                  0.00
        LATE CHARGE                      25.00                 25.00
        OTHER FEES                        0.00                  0.00
        REBATES:
        ICNE                              0.00                  0.00
        CREDIT LIFE                       0.00                  0.00
        2ND INSURANCE                     0.00                  0.00
        3RD INSURANCE                     0.00                  0.00
        4TH INSURANCE                     0.00                  0.00
        ESCROW BALANCE                    0.00                  0.00

        TOTAL AMOUNT DUE           8,111,758.34              1,266.67
        ONE DAYS INTEREST             1,266.6667                0.2069

        PAYOFF DATE                7-01-16

    This is the payoff information you requested on your loan.
    If payment is received after the PAYOFF DATE listed, additional
    charges may apply.
    If you have further questions, please contact us at:

                    FARMERS STATE BANK
                    501 MAIN ST PO BOX 220
                    BRIDGEPORT, NE  69336-4013
                    Phone (308)262-1500

                    *** END OF REPORT ***
```

Case 16-16615-EEB   Claim 10-1 Part 2   Filed 02/27/17   Desc Attachments to Proof of
Claim   Page 4 of 72

| TWO MILE RANCH<br>50773 NORTH HIGHWAY 71<br>STONEHAM, CO 80754 | FARMERS STATE BANK - BRIDGEPORT<br>501 MAIN STREET<br>P.O. BOX 220<br>BRIDGEPORT, NE 69336 | LINE _____ 13538601<br>Loan Number 2097<br>Date 01-11-2013<br>Maturity Date 01-11-2033<br>Loan Amount $ 600,000.00<br>Renewal Of _____ |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of SIX HUNDRED THOUSAND AND NO/100 _____
_____ Dollars $ 600,000.00 _____

☒ **Single Advance:** I will receive all of this principal sum on _____ 01-11-2013 _____. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____
_____
_____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to all other conditions and expires on _____ .

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 01-11-2013 _____ at the rate of _____ 5.000 % per year until 01-11-2016 _____

☒ **Variable Rate:** This rate may then change as stated below.
  ☒ **Index Rate:** The future rate will be 1.750 PERCENT ABOVE _____ the following index rate: THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 70% OF THE 10 LARGEST U.S. BANKS KNOWN AS THE WALL STREET JOURNAL U.S. PRIME RATE.
  _____
  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☒ **Frequency and Timing:** The rate on this note may change as often as EVERY 3RD YEAR BEGINNING 01-11-2016 _____ .
    A change in the interest rate will take effect ON THE SAME DAY _____
  ☒ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ N/A% or less than _____ 5.000 %. The rate may not change more than _____ % each _____

**Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.
  ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ ACTUAL/360 _____ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☒ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☐ at a rate equal to _____
☒ **LATE CHARGE:** If a payment is made more than _____ 10 _____ days after it is due, I agree to pay a late charge of $25.00 _____

☐ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☐ are not included in the principal amount above: _____

**PAYMENTS:** I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN 40 SEMIANNUAL PAYMENTS OF $24,045.22 BEGINNING 07-11-2013. THIS IS A VARIABLE RATE LOAN AND THE FINAL PAYMENT AMOUNT MAY CHANGE. THE ACTUAL AMOUNT OF MY FINAL PAYMENT WILL DEPEND ON MY PAYMENT RECORD.

**ADDITIONAL TERMS:**
LOAN IS SEPARATELY SECURED BY:
TWO MILE RANCH, A GENERAL PARTNERSHIP - SECURITY AGREEMENT DATED 1/11/2013, LOGAN COUNTY DEED OF TRUST DATED 1/11/2013 AND WELD COUNTY DEED OF TRUST DATED 1/11/2013. PAULING MANAGEMENT CO., LLC - SECURITY AGREEMENT DATED 1/11/2013. TWO MILE RANCH MARKET CO., LLC - SECURITY AGREEMENT DATED 1/18/2012, SECURITY AGREEMENT DATED 1/11/2013. TWO MILE RANCH, LLC - SECURITY AGREEMENT DATED 1/18/2012, SECURITY AGREEMENT DATED 1/11/2013. TWO MILE RANCH CATTLE FEEDERS CO., LLC - SECURITY AGREEMENT DATED 1/11/2013. TWO MILE RANCH LAND CO., LLC - SECURITY AGREEMENT DATED 1/11/2013. TWO MILE RANCH TRUCKING CO., LLC - SECURITY AGREEMENT DATED 1/11/2013. JON M. PAULING - SECURITY AGREEMENT DATED 1/11/2013 AND DEED OF TRUST DATED 1/18/2012. MARK PAULING - SECURITY AGREEMENT DATED 1/11/2013.

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):
SEE ADDITIONAL TERMS

*(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)*

**PURPOSE:** The purpose of this loan is REFINANCE DEBT W/FIRST IER BANK _____

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.

TWO MILE RANCH

Signature for Lender

*Richard A. Stull*
RICHARD A. STULL, EXECUTIVE VICE PRESIDENT

ATTACHED SIGNATURE PAGE

UNIVERSAL NOTE
Experi © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN 3/4/2002

(page 1 of 2)

Case 16-16615-EEB   Claim 10-1 Part 2   Filed 02/27/17   Desc Attachments to Proof of Claim   Page 5 of 7

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless you permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make a written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from any duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Express  ©1984,1991 Bankers Systems, Inc., St. Cloud, MN Form UN  3/4/2002

Signature Page
Loan # 2097

**TWO MILE RANCH MARKET CO., LLC**
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

Jon Pauling  - Manager / Member

Mark Pauling – Member

**TWO MILE RANCH CATTLE FEEDERS CO., LLC**
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

Jon Pauling  - Manager / Member

Mark Pauling – Member

**TWO MILE RANCH LAND CO., LLC**
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

Jon Pauling  - Manager / Member

Mark Pauling – Member

**TWO MILE RANCH TRUCKING CO., LLC**
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

Jon Pauling  - Manager / Member

Mark Pauling – Member

**TWO MILE RANCH, LLC**
Pauling Management Co., LLC – Manager

Jon Pauling  - Manager / Member

Mark Pauling – Member

**PAULING MANAGEMENT CO., LLC**

Jon Pauling – Manager / Member

Mark Pauling - Member

**TWO MILE RANCH, A GENERAL PARTNERSHIP**

Jonathan M. Pauling – Partner

Mark A.  Pauling - Partner

**JONATHAN M. PAULING, Individually**

Jonathan M.  Pauling

**MARK A.  PAULING, Individually**

Mark  A. Pauling

Case 16-16615-EEB   Claim 10-1 Part 2   Filed 02/27/17   Desc Attachments to Proof of
Claim   Page 7 of 72

| | | |
|---|---|---|
| TWO MILE RANCH, A COLORADO GENERAL PARTNERSHIP | FARMERS STATE BANK BRIDGEPORT | LINE          12250501 |
| 80773 NORTH HWY 71 | 501 MAIN STREET | Loan Number 2351 |
| STONEHAM, CO  80754-9300 | P.O. BOX 220 | Date 05-15-2015 |
| | BRIDGEPORT, NE  69336 | Maturity Date 07-18-2016 |
| | | Loan Amount $ 1,000,000.00 |
| | | Renewal Of 2084 & 2098 & 2087 |

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS |
|---|---|
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of ONE MILLION AND NO/100
_____ Dollars $ 1,000,000.00

☒ **Single Advance:** I will receive all of this principal sum on _____ 05-18-2015 . No additional advances are contemplated under this note.
☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $_____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
all other conditions and expires on _____ .
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).
**INTEREST:** I agree to pay interest on the outstanding principal balance from_____ 05-18-2015 at the rate of_____ 5.750 %
per year until _____ 05-18-2015 .
☒ **Variable Rate:** This rate may then change as stated below.
  ☒ **Index Rate:** The future rate will be 2.500 PERCENT ABOVE _____ the following index rate: U.S. PRIME RATE IS THE BASE RATE ON CORPORATE LOANS
  POSTED BY AT LEAST 75% OF THE 30 LARGEST U.S. BANKS. _____

  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☒ **Frequency and Timing:** The rate on this note may change as often as EVERY DAY BEGINNING 05-19-2015 _____ .
    A change in the interest rate will take effect ON THE SAME DAY _____ .
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
    _____ %. The rate may not change more than _____ % each _____ .
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
    ☐ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.
    ☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ ACTUAL/360 _____ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
    ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
    ☒ at a rate equal to 16.0% _____
☒ **LATE CHARGE:** If a payment is made more than _____ 10 _____ days after it is due, I agree to pay a late charge of $25.00 _____

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal amount
above: $10,000.00 LOAN ORIGINATION FEE _____
**PAYMENTS:** I agree to pay this note as follows:
IN DEMAND, BUT IF NO DEMAND IS MADE THEN 1 PAYMENT OF $1,098,201.39 ON 07-18-2016. THIS IS A VARIABLE RATE LOAN AND THE FINAL PAYMENT AMOUNT MAY CHANGE.

**ADDITIONAL TERMS:**

☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):

DOT DATED 5-18-2015; (2) DOT DATED 01-11-2013; DOT DATED 5-15-2015; DOT DATED 1-18-2012; (8) SECURITY AGREEMENT DATED  1-11-13; (2) SECURITY AGREEMENTS  DATED 1-18-12
(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.)

Signature for Lender

RICHARD A. STULL, EXECUTIVE VICE PRESIDENT

**PURPOSE:** The purpose of this loan is AGRICULTURAL OPERATING _____ .

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.
TWO MILE RANCH, A COLORADO GENERAL PARTNERSHIP

JONATHAN M. PAULING, PARTNER

MARK A. PAULING, PARTNER

JONATHAN M. PAULING, INDIVIDUALLY

MARK A. PAULING, INDIVIDUALLY

UNIVERSAL NOTE
Experº © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN  2/1/2013

(page 1 of 2)

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign any obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Complete the following for consumer transactions secured by a dwelling.

Loan origination organization

NMLS ID

Loan originator

NMLS ID

Experᴛ® © 1984, 1991 Bankers Systems, Inc., St. Cloud — Form UN 2/1/2013

Signature Page
Promissory Loan # 2351

**TWO MILE RANCH MARKET CO., LLC**
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

_____
Jon Pauling – Manager / Member

_____
Mark Pauling – Member

**PAULING MANAGEMENT CO., LLC**

_____
Jon Pauling – Manager / Member

_____
Mark Pauling – Member

**TWO MILE RANCH CATTLE FEEDERS CO., LLC**
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

_____
Jon Pauling – Manager / Member

_____
Mark Pauling – Member

**TWO MILE RANCH LAND CO., LLC**
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

_____
Jon Pauling – Manager / Member

_____
Mark Pauling – Member

**TWO MILE RANCH TRUCKING CO., LLC**
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

_____
Jon Pauling – Manager / Member

_____
Mark Pauling – Member

**TWO MILE RANCH, LLC**
Pauling Management Co., LLC – Manager

_____
Jon Pauling – Manager / Member

_____
Mark Pauling – Member

Case 16-16615-EEB    Claim 10-1 Part 2   Filed 02/27/17   Desc Attachments to Proof of Claim   Page 10 of 72

| | | |
|---|---|---|
| TWO MILE RANCH, A COLORADO GENERAL PARTNERSHIP<br>60773 NORTH HWY 71<br>STONEHAM, CO 80754-9300 | FARMERS STATE BANK, Bridgeport<br>501 MAIN STREET<br>P.O. BOX 220<br>BRIDGEPORT, NE 69336 | LINE          12250601<br>Loan Number 2352<br>Date 05-15-2015<br>Maturity Date 05-18-2016<br>Loan Amount $ 7,600,000.00<br>Renewal Of 2094 & 2096 & 2097 |

| BORROWER'S NAME AND ADDRESS | LENDER'S NAME AND ADDRESS |
|---|---|
| "I" includes each borrower above, jointly and severally. | "You" means the lender, its successors and assigns. |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of SEVEN MILLION SIX HUNDRED THOUSAND AND NO/100 _____ Dollars $ 7,600,000.00

☒ **Single Advance:** I will receive all of this principal sum on _____05-18-2015_____ . No additional advances are contemplated under this note.
☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.
  **Conditions:** The conditions for future advances are _____
  _____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum of principal more than one time. This feature is subject to
  all other conditions and expires on _____ .
☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).
**INTEREST:** I agree to pay interest on the outstanding principal balance from_____05-18-2015_____ at the rate of_____5.750 %
per year until 05-18-2016 _____ .
☒ **Variable Rate:** This rate may then change as stated below.
  ☒ **Index Rate:** The future rate will be 2.500 PERCENT ABOVE _____ the following index rate: U.S. PRIME RATE IS THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST 75% OF THE 30 LARGEST U.S. BANKS.
  _____
  ☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  ☒ **Frequency and Timing:** The rate on this note may change as often as EVERY DAY BEGINNING 05-19-2015 _____ .
    A change in the interest rate will take effect ON THE SAME DAY _____
  ☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____% or less than
    _____%. The rate may not change more than _____% each _____ .
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  ☐ The amount of each scheduled payment will change.   ☒ The amount of the final payment will change.
  ☐ _____
**ACCRUAL METHOD:** Interest will be calculated on a _____ACTUAL/360_____ basis.
**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  ☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
  ☒ at a rate equal to 18.0% _____
☒ **LATE CHARGE:** If a payment is made more than _____10_____ days after it is due, I agree to pay a late charge of $25.00 _____

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☐ are ☒ are not included in the principal amount
  above: $8,000.00 LOAN ORIGINATION FEE (Waive) _____
**PAYMENTS:** I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN 1 PAYMENT OF $8,044,283.33 ON 05-18-2016. THIS IS A VARIABLE RATE LOAN AND THE FINAL PAYMENT AMOUNT MAY CHANGE.

**ADDITIONAL TERMS:**

| | |
|---|---|
| ☒ **SECURITY:** This note is separately secured by (describe separate document by type and date):<br><br>DOT DATED 5-18-2015; (2) DOT DATED 01-11-2013; DOT DATED 5-15-2015; DOT DATED 1-18-2012; (8) SECURITY AGREEMENT DATED 1-11-13; (2) SECURITY AGREEMENTS DATED 1-18-12<br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is AGRICULTURAL OPERATING<br><br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date.<br>TWO MILE RANCH, A COLORADO GENERAL PARTNERSHIP |

Signature for Lender

*Richard A. Stull* (signature)
RICHARD A. STULL, EXECUTIVE VICE PRESIDENT

*Jonathan M Pauling* (signature)
JONATHAN M. PAULING, PARTNER

*Mark A. Pauling* (signature)
MARK A. PAULING, PARTNER

*Jonathan M Pauling* (signature)
JONATHAN M. PAULING, INDIVIDUALLY

*Mark A. Pauling* (signature)
MARK A. PAULING, INDIVIDUALLY

UNIVERSAL NOTE
Exper© © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN 2/1/2013                                    (page 1 of 2)

Case 16-16615-EEB   Claim 10-1 Part 2   Filed 02/27/17   Desc Attachments to Proof of Claim   Page 11 of 12

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any part of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed and stated, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving my right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign any obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Complete the following for consumer transactions secured by a dwelling.

Loan origination organization

NMLS ID

Loan originator

NMLS ID

*Experi* ©1984,1991 Bankers Systems, Inc., St. Cloud,   Form UN  2/1/2013

TWO MILE RANCH MARKET CO., LLC
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

Jon Pauling – Manager / Member

Mark Pauling – Member

PAULING MANAGEMENT CO., LLC

Jon Pauling – Manager, Member

Mark Pauling - Member

TWO MILE RANCH CATTLE FEEDERS CO., LLC
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

Jon Pauling - Manager / Member

Mark Pauling – Member

TWO MILE RANCH LAND CO., LLC
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

Jon Pauling - Manager / Member

Mark Pauling – Member

TWO MILE RANCH TRUCKING CO., LLC
Two Mile Ranch, LLC – Manager
Pauling Management Co., LLC – Manager

Jon Pauling - Manager / Member

Mark Pauling – Member

TWO MILE RANCH, LLC
Pauling Management Co., LLC – Manager

Jon Pauling - Manager / Member

Mark Pauling – Member

TWO MILE RANCH, A GENERAL PARTNERSHIP
60773 NORTH HIGHWAY 71
STONEHAM, CO 80754

FARMERS STATE BANK
356 SECOND STREET - P. O. BOX 67
DODGE, NE 68633-0067

Type: ☐ individual ☒ partnership ☐ corporation ☐ _____ _____
State of organization/registration (if applicable) co _____
☐ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 01-11-2013 _____

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____
_____ (Borrower) owes to Secured Party:

☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):

_____

☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.

**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.

**PROPERTY DESCRIPTION.** The Property is described as follows:

☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.

☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.

☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.

☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.

☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.

☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.

☒ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.

☒ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.

☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.

☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.

☒ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):

40'05DM-NRG PRODUCE COOLERS # 01113365, 01113370, 01113366, & 01116280;

8+12'05DM-NRG PRODUCE COOLER # 01116269 & 01116303;

8' OSSF SVC SEAFOOD COOLER # 01112659;

12 + 8' OSSF SVC-MEAT COOLER # 01112968 & 01112969;

12' OSF SVC DELI COOLER #01112994;

24 + 12'6DMLH MID DELI COOLER SERIAL # 01113428, 01113430 & 01113427; 5DR0N2 FRZN MEAT COOLER SERIAL # 01095381;

1984 IHC FEED TRUCK VIN 1HTAA 195 1EHA 13568 WITH MOHRLANG BOX VIN 1HTAA1951EHA13568, 2004 GMC PICKUP 1GTEK19T74E304488, 2001 CHEVROLET PICKUP VIN 2BCEC19T511291813, 2001 DODGE PICKUP VIN 1B7MF33791J594478, 1999 CHEVROLET PICKUP VIN 1GCEK29UXXE178991, 2002 FORD PICKUP VIN 1FTNX21FX2EB46831, 2002 HITCHCOCK VIN 1D260030B9CD, 1995 FORD VIN 1FTYR80V2SVA20314

**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☒ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| TWO MILE RANCH, A GENERAL PARTNERSHIP | FARMERS STATE BANK |
| *Jonathan M Pauli* | *Richard A Stull* |
| JONATHAN M. PAULING; JONATHAN M. PAULING | RICHARD A. STULL |
| PARTNER; INDIVIDUALLY | EXECUTIVE VICE PRESIDENT |
| *Mark Pauli* | |
| MARK A. PAULING; MARK A. PAULING | |
| PARTNER; INDIVIDUALLY | |

Experi®   © 2000 Bankers Systems, Inc., St. Cloud, MN Form SA-BUS 7/24/2001   (page 1 of 2)

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the Property, Debtor will record Secured Party's interest on the face of the chattel paper or instruments. If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Secured Party has the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to realize the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to protect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

| DEBTOR NAME AND ADDRESS | SECURED PARTY NAME AND ADDRESS |
|---|---|
| TWO MILE RANCH , A GENERAL PARTNERSHIP<br>90773 NORTH HIGHWAY 71<br>STONEHAM, CO 80754 | FARMERS STATE BANK - BRIDGEPORT<br>501 MAIN STREET<br>P.O. BOX 220<br>BRIDGEPORT, NE 69336 |

Type: ☐ individual ☒ partnership ☐ corporation ☐ _____
State of organization/registration (if applicable) on _____
☒ If checked, refer to addendum for additional Debtors and signatures.

## COMMERCIAL SECURITY AGREEMENT

The date of this Commercial Security Agreement (Agreement) is 01-11-2013 .

**SECURED DEBTS.** This Agreement will secure all sums advanced by Secured Party under the terms of this Agreement and the payment and performance of the following described Secured Debts that (check one) ☒ Debtor ☐ _____
_____ (Borrower) owes to Secured Party:
   ☐ **Specific Debts.** The following debts and all extensions, renewals, refinancings, modifications, and replacements (describe):


   ☒ **All Debts.** All present and future debts, even if this Agreement is not referenced, the debts are also secured by other collateral, or the future debt is unrelated to or of a different type than the current debt. Nothing in this Agreement is a commitment to make future loans or advances.
**SECURITY INTEREST.** To secure the payment and performance of the Secured Debts, Debtor gives Secured Party a security interest in all of the Property described in this Agreement that Debtor owns or has sufficient rights in which to transfer an interest, now or in the future, wherever the Property is or will be located, and all proceeds and products of the Property. "Property" includes all parts, accessories, repairs, replacements, improvements, and accessions to the Property; any original evidence of title or ownership; and all obligations that support the payment or performance of the Property. "Proceeds" includes anything acquired upon the sale, lease, license, exchange, or other disposition of the Property; any rights and claims arising from the Property; and any collections and distributions on account of the Property. This Agreement remains in effect until terminated in writing, even if the Secured Debts are paid and Secured Party is no longer obligated to advance funds to Debtor or Borrower.
**PROPERTY DESCRIPTION.** The Property is described as follows:
   ☒ **Accounts and Other Rights to Payment:** All rights to payment, whether or not earned by performance, including, but not limited to, payment for property or services sold, leased, rented, licensed, or assigned. This includes any rights and interests (including all liens) which Debtor may have by law or agreement against any account debtor or obligor of Debtor.
   ☒ **Inventory:** All inventory held for ultimate sale or lease, or which has been or will be supplied under contracts of service, or which are raw materials, work in process, or materials used or consumed in Debtor's business.
   ☒ **Equipment:** All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools. The Property includes any equipment described in a list or schedule Debtor gives to Secured Party, but such a list is not necessary to create a valid security interest in all of Debtor's equipment.
   ☒ **Instruments and Chattel Paper:** All instruments, including negotiable instruments and promissory notes and any other writings or records that evidence the right to payment of a monetary obligation, and tangible and electronic chattel paper.
   ☒ **General Intangibles:** All general intangibles including, but not limited to, tax refunds, patents and applications for patents, copyrights, trademarks, trade secrets, goodwill, trade names, customer lists, permits and franchises, payment intangibles, computer programs and all supporting information provided in connection with a transaction relating to computer programs, and the right to use Debtor's name.
   ☒ **Documents:** All documents of title including, but not limited to, bills of lading, dock warrants and receipts, and warehouse receipts.
   ☒ **Farm Products and Supplies:** All farm products including, but not limited to, all poultry and livestock and their young, along with their produce, products, and replacements; all crops, annual or perennial, and all products of the crops; and all feed, seed, fertilizer, medicines, and other supplies used or produced in Debtor's farming operations.
   ☒ **Government Payments and Programs:** All payments, accounts, general intangibles, and benefits including, but not limited to, payments in kind, deficiency payments, letters of entitlement, warehouse receipts, storage payments, emergency assistance and diversion payments, production flexibility contracts, and conservation reserve payments under any preexisting, current, or future federal or state government program.
   ☒ **Investment Property:** All investment property including, but not limited to, certificated securities, uncertificated securities, securities entitlements, securities accounts, commodity contracts, commodity accounts, and financial assets.
   ☒ **Deposit Accounts:** All deposit accounts including, but not limited to, demand, time, savings, passbook, and similar accounts.
   ☐ **Specific Property Description:** The Property includes, but is not limited by, the following (if required, provide real estate description):




**USE OF PROPERTY.** The Property will be used for ☐ personal ☒ business ☒ agricultural ☐ _____ purposes.

**SIGNATURES.** Debtor agrees to the terms on pages 1 and 2 of this Agreement and acknowledges receipt of a copy of this Agreement.

| DEBTOR | SECURED PARTY |
|---|---|
| TWO MILE RANCH , A GENERAL PARTNERSHIP | FARMERS STATE BANK , BRIDGEPORT |
| *Jonathan M Pauling* | *Richard A Stull* |
| JONATHAN M. PAULING<br>PARTNER | RICHARD A. STULL<br>EXECUTIVE VICE PRESIDENT |
| *Mark A Pauling* | |
| MARK A. PAULING<br>PARTNER | |

**GENERAL PROVISIONS.** Each Debtor's obligations under this Agreement are independent of the obligations of any other Debtor. Secured Party may sue each Debtor individually or together with any other Debtor. Secured Party may release any part of the Property and Debtor will remain obligated under this Agreement. The duties and benefits of this Agreement will bind the successors and assigns of Debtor and Secured Party. No modification of this Agreement is effective unless made in writing and signed by Debtor and Secured Party. Whenever used, the plural includes the singular and the singular includes the plural. Time is of the essence.

**APPLICABLE LAW.** This Agreement is governed by the laws of the state in which Secured Party is located. In the event of a dispute, the exclusive forum, venue, and place of jurisdiction will be the state in which Secured Party is located, unless otherwise required by law. If any provision of this Agreement is unenforceable by law, the unenforceable provision will be severed and the remaining provisions will still be enforceable.

**NAME AND LOCATION.** Debtor's name indicated on page 1 is Debtor's exact legal name. If Debtor is an individual, Debtor's address is Debtor's principal residence. If Debtor is not an individual, Debtor's address is the location of Debtor's chief executive offices or sole place of business. If Debtor is an entity organized and registered under state law, Debtor has provided Debtor's state of registration on page 1. Debtor will provide verification of registration and location upon Secured Party's request. Debtor will provide Secured Party with at least 30 days notice prior to any change in Debtor's name, address, or state of organization or registration.

**WARRANTIES AND REPRESENTATIONS.** Debtor has the right, authority, and power to enter into this Agreement. The execution and delivery of this Agreement will not violate any agreement governing Debtor or Debtor's property, or to which Debtor is a party. Debtor makes the following warranties and representations which continue as long as this Agreement is in effect:

(1) Debtor is duly organized and validly existing in all jurisdictions in which Debtor does business;

(2) the execution and performance of the terms of this Agreement have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law or order;

(3) other than previously disclosed to Secured Party, Debtor has not changed Debtor's name or principal place of business within the last 10 years and has not used any other trade or fictitious name; and

(4) Debtor does not and will not use any other name without Secured Party's prior written consent.

Debtor owns all of the Property, and Secured Party's claim to the Property is ahead of the claims of any other creditor, except as otherwise agreed and disclosed to Secured Party prior to any advance on the Secured Debts. The Property has not been used for any purpose that would violate any laws or subject the Property to forfeiture or seizure.

**DUTIES TOWARD PROPERTY.** Debtor will protect the Property and Secured Party's interest against any competing claim. Except as otherwise agreed, Debtor will keep the Property in Debtor's possession at the address indicated on page 1 of this Agreement. Debtor will keep the Property in good repair and use the Property only for purposes specified on page 1. Debtor will not use the Property in violation of any law and will pay all taxes and assessments levied or assessed against the Property. Secured Party has the right of reasonable access to inspect the Property, including the right to require Debtor to assemble and make the Property available to Secured Party. Debtor will immediately notify Secured Party of any loss or damage to the Property. Debtor will prepare and keep books, records, and accounts about the Property and Debtor's business, to which Debtor will allow Secured Party reasonable access.

Debtor will not sell, offer to sell, license, lease, or otherwise transfer or encumber the Property without Secured Party's prior written consent. Any disposition of the Property will violate Secured Party's rights, unless the Property is inventory sold in the ordinary course of business at fair market value. If the Property includes chattel paper or instruments, either as original collateral or as proceeds of the chattel paper or instruments, Debtor will note Secured Party's interest on the face of the chattel paper or instruments.

If the Property includes accounts, Debtor will not settle any account for less than the full value, dispose of the accounts by assignment, or make any material change in the terms of any account without Secured Party's prior written consent. Debtor will collect all accounts in the ordinary course of business, unless otherwise required by Secured Party. Debtor will keep the proceeds of the accounts, and any goods returned to Debtor, in trust for Secured Party and will not commingle the proceeds or returned goods with any of Debtor's other property. Debtor will have the right to require Debtor to pay Secured Party the full price on any returned items. Secured Party may require account debtors to make payments under the accounts directly to Secured Party. Debtor will deliver the accounts to Secured Party at Secured Party's request. Debtor will give Secured Party all statements, reports, certificates, lists of account debtors (showing names, addresses, and amounts owing), invoices applicable to each account, and any other data pertaining to the accounts as Secured Party requests.

If the Property includes farm products, Debtor will provide Secured Party with a list of the buyers, commission merchants, and selling agents to or through whom Debtor may sell the farm products. Debtor authorizes Secured Party to notify any additional parties regarding Secured Party's interest in Debtor's farm products, unless prohibited by law. Debtor agrees to plant, cultivate, and harvest crops in due season. Debtor will be in default if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, further explained in 7 CFR Part 1940, Subpart G, Exhibit M. If Debtor pledges the Property to Secured Party (delivers the Property into the possession or control of Secured Party or a designated third party), Debtor will, upon receipt, deliver any proceeds and products of the Property to Secured Party. Debtor will provide Secured Party with any notices, documents, financial statements, reports, and other information relating to the Property Debtor receives as the owner of the Property.

**PERFECTION OF SECURITY INTEREST.** Debtor authorizes Secured Party to file a financing statement covering the Property. Debtor will comply with, facilitate, and otherwise assist Secured Party in connection with obtaining possession or control over the Property for purposes of perfecting Secured Party's interest under the Uniform Commercial Code.

**INSURANCE.** Debtor agrees to keep the Property insured against the risks reasonably associated with the Property until the Property is released from this Agreement. Debtor will maintain this insurance in the amounts Secured Party requires. Debtor may choose the insurance company, subject to Secured Party's approval, which will not be unreasonably withheld. Debtor will have the insurance provider name Secured Party as loss payee on the insurance policy. Debtor will give Secured Party and the insurance provider immediate notice of any loss. Secured Party may apply the insurance proceeds toward the Secured Debts. Secured Party may require additional security as a condition of permitting any insurance proceeds to be used to repair or replace the Property. If Secured Party acquires the Property in damaged condition, Debtor's rights to any insurance policies and proceeds will pass to Secured Party to the extent of the Secured Debts. Debtor will immediately notify Secured Party of the cancellation or termination of insurance. If Debtor fails to keep the Property insured, or fails to provide Secured Party with proof of insurance, Secured Party may obtain insurance to protect Secured Party's interest in the Property. The insurance may include coverages not originally required of Debtor, may be written by a company other than one Debtor would choose, and may be written at a higher rate than Debtor could obtain if Debtor purchased the insurance.

**AUTHORITY TO PERFORM.** Debtor authorizes Secured Party to do anything Secured Party deems reasonably necessary to protect the Property and Secured Party's interest in the Property. If Debtor fails to perform any of Debtor's duties under this Agreement, Secured Party is authorized, without notice to Debtor, to perform the duties or cause them to be performed. These authorizations include, but are not limited to, permission to pay for the repair, maintenance, and preservation of the Property and take any action to enforce the value of the Property. Secured Party's authority to perform for Debtor does not create an obligation to perform, and Secured Party's failure to perform will not preclude Secured Party from exercising any other rights under the law or this Agreement.

If Secured Party performs for Debtor, Secured Party will use reasonable care. Reasonable care will not include any steps necessary to preserve rights against prior parties or any duty to take action in connection with the management of the Property.

If Secured Party comes into possession of the Property, Secured Party will preserve and protect the Property to the extent required by law. Secured Party's duty of care with respect to the Property will be satisfied if Secured Party exercises reasonable care in the safekeeping of the Property or in the selection of a third party in possession of the Property.

Secured Party may enforce the obligations of an account debtor or other person obligated on the Property. Secured Party may exercise Debtor's rights with respect to the account debtor's or other person's obligations to make payment or otherwise render performance to Debtor, and enforce any security interest that secures such obligations.

**PURCHASE MONEY SECURITY INTEREST.** If the Property includes items purchased with the Secured Debts, the Property purchased with the Secured Debts will remain subject to Secured Party's security interest until the Secured Debts are paid in full. Payments on any non-purchase money loan also secured by this Agreement will not be applied to the purchase money loan. Payments on the purchase money loan will be applied first to the non-purchase money portion of the loan, if any, and then to the purchase money portion in the order in which the purchase money Property was acquired. If the purchase money Property was acquired at the same time, payments will be applied in the order Secured Party selects. No security interest will be terminated by application of this formula.

**DEFAULT.** Debtor will be in default if:

(1) Debtor (or Borrower, if not the same) fails to make a payment in full when due;

(2) Debtor fails to perform any condition or keep any covenant on this or any debt or agreement Debtor has with Secured Party;

(3) a default occurs under the terms of any instrument or agreement evidencing or pertaining to the Secured Debts;

(4) anything else happens that either causes Secured Party to reasonably believe that Secured Party will have difficulty in collecting the Secured Debts or significantly impairs the value of the Property.

**REMEDIES.** After Debtor defaults, and after Secured Party gives any legally required notice and opportunity to cure the default, Secured Party may at Secured Party's option do any one or more of the following:

(1) make all or any part of the Secured Debts immediately due and accrue interest at the highest post-maturity interest rate;

(2) require Debtor to gather the Property and make it available to Secured Party in a reasonable fashion;

(3) enter upon Debtor's premises and take possession of all or any part of Debtor's property for purposes of preserving the Property or its value and use and operate Debtor's property to protect Secured Party's interest, all without payment or compensation to Debtor;

(4) use any remedy allowed by state or federal law, or provided in any agreement evidencing or pertaining to the Secured Debts.

If Secured Party repossesses the Property or enforces the obligations of an account debtor, Secured Party may keep or dispose of the Property as provided by law. Secured Party will apply the proceeds of any collection or disposition first to Secured Party's expenses of enforcement, which includes reasonable attorneys' fees and legal expenses to the extent not prohibited by law, and then to the Secured Debts. Debtor (or Borrower, if not the same) will be liable for the deficiency, if any.

By choosing any one or more of these remedies, Secured Party does not give up the right to use any other remedy. Secured Party does not waive a default by not using a remedy.

**WAIVER.** Debtor waives all claims for damages caused by Secured Party's acts or omissions where Secured Party acts in good faith.

**NOTICE AND ADDITIONAL DOCUMENTS.** Where notice is required, Debtor agrees that 10 days prior written notice will be reasonable notice to Debtor under the Uniform Commercial Code. Notice to one party is notice to all parties. Debtor agrees to sign, deliver, and file any additional documents and certifications Secured Party considers necessary to perfect, continue, or preserve Debtor's obligations under this Agreement and to confirm Secured Party's lien status on the Property.

Experi®   © 2000 Bankers Systems, Inc., St. Cloud, MN    IA-BUS  7/24/2001

(page 2 of 2)

```
4063579     Pages: 3 of 3
11/21/2014 03:12 PM  R Fee:$21.00
Steve Moreno, Clerk and Recorder, Weld County, CO
```

**AFFIDAVIT**

(Add: Public Trustee of Weld County as the Trustee on a Recorded Real Estate Deed of Trust)

Amend the following recorded Real Estate Deed of Trust:

| | |
|---|---|
| **GRANTOR:** | TWO MILE RANCH, A GENERAL PARTNERSHIP<br>60773 North Highway 71<br>Stoneham, CO 80754 |
| **Recorded:** | Deed of Trust dated 01/11/2013<br>4:24 PM on January 14, 2013 (Reception No. 3902949)<br>Steve Moreno, Clerk and Recorder, Weld County, CO |
| **TRUSTEE:** | Public Trustee of Weld County<br>(Replaces Weld County Clerk and Recorder) |
| **LENDER:** | FARMERS STATE BANK<br>501 MAIN STREET<br>P.O. BOX 220<br>BRIDGEPORT, NE  69336 |

Dated this: _Nov. 17_ 2014

TWO MILE RANCH, A Partnership,

_Jonathan M Pauling_                    _Mark A Pauling_

Jonathan M. Pauling, Partner            Mark A. Pauling, Partner

STATE OF _Nebraska_ , COUNTY OF _Morrill_ ) ss.

The foregoing instrument was acknowledged before me this _17_ day of _November_ By Jonathan M Pauling, Partner and Mark A Pauling, Partner of TWO MILE RANCH  a Colorado Partnership on behalf of the business or entity.

My commission expires:

```
General Notary - State of Nebraska
KELLY M. ROACH
My Comm. Exp. Jan. 27, 2017.
```

_Kelly M Roach_
(Notary Public)

3902949   Pages: 1 of 10
01/14/2013 04:24 PM   R Fee:$56.00
Steve Moreno, Clerk and Recorder, Weld County, CO

———State of Colorado———————————Space Above This Line For Recording Data———

## REAL ESTATE DEED OF TRUST
(With Future Advance Clause)
☐ This is a Revolving Credit Arrangement

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is 01-11-2013 and the parties, their addresses and tax identification numbers, if required, are as follows:

    GRANTOR: TWO MILE RANCH, A GENERAL PARTNERSHIP
    80773 NORTH HIGHWAY 71
    STONEHAM, CO 80754

    ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

    TRUSTEE: WELD COUNTY CLERK AND RECORDER
    1402 NORTH 17TH AVE.
    GREELEY, CO 80631

    LENDER: FARMERS STATE BANK - BRIDGEPORT
    501 MAIN STREET
    P.O. BOX 220
    BRIDGEPORT, NE 69336

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property:

    ATTACHED EXHIBIT 'A'

The property is located in WELD _____ at RURAL AG REAL ESTATE _____
                              (County)
_____ , STONEHAM _____ , Colorado 80754
        (Address)              (City)                        (Zip Code)

COLORADO - AGRICULTURAL/COMMERCIAL REAL ESTATE SECURITY INSTRUMENT (NOT FOR FNMA, FHLMC, FHA OR VA USE, AND NOT FOR CONSUMER PURPOSES)
Experf ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN Form AGCO-RESI-CO 12/20/2002 _____ _____ _____    JP   (page 1 of 10)