EXHIBIT C TO LARDYN DEFENDANTS'

MOTION TO DISMISS

(PART 3)

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

**15. LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**16. DEFAULT.** Grantor will be in default if any of the following occur:

    A. Any party obligated on the Secured Debt fails to make payment when due;

    B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guarantying the Secured Debt;

    C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;

    D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any other person or entity obligated on the Secured Debt;

    E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;

    F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or

    G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**17. REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and any related documents, including without limitation, the power to sell the Property or foreclose on installments without acceleration.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

**18. EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender.  The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

L. Notwithstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

21. **INSURANCE.** Grantor agrees to maintain insurance as follows:

A. Grantor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two



sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payments. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B.  Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C.  Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

**22. ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

**23. FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

**24. JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

**25. APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

**26. NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

**27. WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement, homestead exemption and marshalling of liens and assets relating to the Property.

**28. U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Security Instrument:

☐  **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐  **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.

☐  **Crops; Timber; Minerals; Rents, Issues and Profits.** Grantor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐  **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents,

Experi™  ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-CO  12/20/2002

instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term "Property"). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Security Instrument also suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

29. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

☐ **Agricultural Property.** Grantor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Grantor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Separate Assignment.** The Grantor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

**SIGNATURES:** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

Entity Name: TWO MILE RANCH, A COLORADO GENERAL PARTNERSHIP

(Signature) JONATHAN M. PAULING, PARTNER        (Date) 5/13/13

(Signature) MARK A. PAULING, PARTNER        (Date) 5/15/15

(Signature)        (Date)

(Signature)        (Date)

Express™  ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-CO 12/20/2002        (page 7 of 8)

**ACKNOWLEDGMENT:**

(Individual)

STATE OF _____, COUNTY OF _____ } ss.

The foregoing instrument was acknowledged before me this _____ day of _____

by _____ .

My commission expires:

_____

(Notary Public)

(Business or Entity Acknowledgment)

STATE OF <u>NEBRASKA</u> _____, COUNTY OF <u>Kimball</u> _____ } ss.

The foregoing instrument was acknowledged before me this <u>18TH</u> day of <u>MAY, 2015</u>

by <u>JONATHAN M. PAULING, PARTNER; MARK A. PAULING, PARTNER</u>

_____ (Title(s))

of <u>TWO MILE RANCH, A COLORADO GENERAL PARTNERSHIP</u> _____ (Name of Business or Entity)

a <u>COLORADO GENERAL PARTNERSHIP</u> _____ on behalf of the business or entity.

My commission expires: 3/6/2019

_____

(Notary Public)

General Notary - State of Nebraska
VICKI F. STULL
My Comm. Exp. March 6, 2019.

Expere℠  ©1994, 2001 Bankers Systems, Inc., St. Cloud, MN  Form AGCO-RESI-CO 12/20/2002

## ATTACHED LEGAL DESCRIPTION

Parcel A:

A tract of land in the SW ¼ of Section 29 and the NW ¼ of Section 32, Township 5 South, Range 70 West of the 6th P.M., described as follows:

Commencing at the S ¼ corner of said Section 29, also being the N ¼ corner of said Section 32, from which the SW corner of said Section 29, also being the NW corner of said Section 32, bears S 88°13'29" W at a distance of 2559.37';
Thence S 88°13'29" W, along said line, 503.64' to the Point of Beginning;
Thence N 16°00'00" E, 138.00';
Thence N 0°00'00" E, 384.00';
Thence N 71°51'23" W, 1122.48' to a point on the Southeasterly line of an access easement described at Book 1158 at Page 275 of the Jefferson County Records;
Thence following the Southeasterly line of said easement, the following five courses:

1) S 44°05'37" W, 432.31';
2) S 38°26'37" W, 357.91';
3) S 46°59'37" W, 115.11.';
4) S 31°40'37" W, 312.38';
5) S 35°30'37" W, 317.17';

Thence departing said Southeasterly line, S 83°08'15" E, 367.52';
Thence N 88°33'00" E, 325.77';
Thence S 85°51'24" E, 203.27';
Thence N 88°35'32" E, 182.09';
Thence S 81°39'01" E, 214.66';
Thence S 80°36'09" E, 372.79';
Thence N 35°16'11" E, 569.64' to the Point of Beginning,

County of Jefferson, State of Colorado;

Parcel B:

Access to an existing county road known as County Road 64 (N. Turkey Creek Road) follows the access easement described at Book 1158 at Page 275 of the Jefferson County Records, and continuing, on the same road, along the access easement described at Book 302 at Pages 67-68, of the Jefferson County Records, through 22334 N. Turkey Creek Road, a distance of approximately 275 feet.

Also Known as:  **22434  North Turkey Creek Road, Morrison, CO 80465**

```
RUN DATE:  6-30-16              FARMERS STATE BANK                    PAGE 1
                              LOAN CALCULATED PAYOFF                  LB21


      MARK A PAULING
      18503 COUNTY ROAD 42.5
      STERLING, CO  80751-9613


   PAYOFF INFORMATION FOR LOAN ACCOUNT #       0002346

   PAYMENT / PMT PORTION INFORMATION

            PAYMENT DATE                 7-01-16
            PAYMENT AMOUNT           754,221.46

            PRINCIPAL PORTION        729,903.33
            INTEREST PORTION          24,318.13
            SERVICE FEE PORTION            0.00
            LATE CHARGE PORTION            0.00
            OTHER FEES PORTION             0.00
            ESCROW PORTION                 0.00


      LOAN INFORMATION          BEFORE PAYMENT         AFTER PAYMENT

      PRINCIPAL BALANCE            730,000.00               96.67
      INTEREST BALANCE             24,318.13                0.00
      MINIMUM INT DUE                0.0000              0.0000
      SERVC FEE BALANCE              0.00                 0.00
      LATE CHARGE                   25.00                25.00
      OTHER FEES                     0.00                 0.00
      REBATES:
      ICNE                           0.00                 0.00
      CREDIT LIFE                    0.00                 0.00
      2ND INSURANCE                  0.00                 0.00
      3RD INSURANCE                  0.00                 0.00
      4TH INSURANCE                  0.00                 0.00
      ESCROW BALANCE                 0.00                 0.00

      TOTAL AMOUNT DUE            754,343.13              121.67
      ONE DAYS INTEREST             121.6667               0.0161

      PAYOFF DATE                7-01-16
```

This is the payoff information you requested on your loan.
If payment is received after the PAYOFF DATE listed, additional
charges may apply.
If you have further questions, please contact us at:

```
                FARMERS STATE BANK
                501 MAIN ST PO BOX 220
                BRIDGEPORT, NE  69336-4013
                Phone (308)262-1500

                *** END OF REPORT ***
```

Case 16-16615-EEB   Claim 10-1 Part 2   Filed 02/27/17   Desc Attachments to Proof of Claim   Page 55 of 72

| GUARANTOR NAME AND ADDRESS | LENDER NAME AND ADDRESS | |
|---|---|---|
| TWO MILE RANCH, A COLORADO GENERAL PARTNERSHIP | FARMERS STATE BANK - BRIDGEPORT<br>501 MAIN STREET<br>P.O. BOX 220<br>BRIDGEPORT, NE 69336 | Number 2346<br><br>Amount 1,005,000.00<br><br>Date MAY 15, 2015 |

## GUARANTY

**DATE.** The date of this Guaranty is 05-15-2015

For good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and to induce Lender (with its participants, successors and assigns), at its option, at any time or from time to time to make loans or extend other accommodations to or for the account of MARK A. PAULING

(Borrower) or to engage in any other transactions with Borrower, the Guarantor hereby absolutely and unconditionally guarantees to the Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the debts, liabilities and obligations described as follows:

**INDEBTEDNESS.**

☐ **Specific Debts.** The Guarantor guarantees to Lender the payment and performance of the debt, liability or obligation of Borrower to Lender evidenced by or arising out of the following: _____

_____ and any extensions, renewals or replacements thereof (Indebtedness).

☒ **All Debts.** Except as this Guaranty may otherwise provide, the Guarantor guarantees to Lender the payment and performance of each and every debt, liability and obligation of every type and description which Borrower may now or at any time hereafter owe to Lender (whether such debt, liability or obligation now exists or is hereafter created or incurred, and whether it is or may be direct or indirect, due or to become due, absolute or contingent, primary or secondary, liquidated or unliquidated, or joint, several, or joint and several; all such debts, liabilities and obligations (Indebtedness)). Without limitation, this Guaranty includes the following described debt(s):

PROMISSORY NOTE #2346

**Exclusions.**

☐ Guarantor will be liable for $_____ of the principal amount of the Indebtedness outstanding at default and for all of the accrued interest, and the expenses of collection, enforcement or protection of Lender's rights and remedies under this Guaranty, including reasonable attorneys' fees.

☐ Guarantor's liability will not exceed _____ % of the Indebtedness outstanding at default and all of the accrued interest, and the expenses of collection, enforcement or protection of Lender's rights and remedies under this Guaranty, including reasonable attorneys' fees.

☐ Indebtedness Excludes:

**SECURITY.**

☐ the Guaranty is unsecured.

☒ secured by SECURITY AGREEMENT DATED 01/11/2013; DEED OF TRUST DATED 05/15/2015

---

**IL only** ☐ **CONFESSION OF JUDGMENT.** If Guarantor defaults, it authorizes any attorney to appear in a court of record and confess judgment against it in favor of Lender. The confession of judgment may be without process and for any amount due on this Guaranty including collection costs and reasonable attorneys' fees.

**PA only** ☐ **WARRANT OF AUTHORITY TO CONFESS JUDGMENT.** Upon default, in addition to all other remedies and rights available to Lender, by signing below Guarantor irrevocably authorizes the prothonotary, clerk, or any attorney to appear in any court of record having jurisdiction over this matter and to confess judgment against Guarantor at any time without stay of execution. Guarantor waives notice, service of process and process. Guarantor agrees and understands that judgment may be confessed against Guarantor for any unpaid principal, accrued interest and accrued charges due on this Note, plus collection costs and reasonable attorneys' fees up to 15 percent of the judgment. The exercise of the power to confess judgment will not exhaust this warrant of authority to confess judgment and may be done as often as Lender elects. Guarantor further understands that Guarantor's property may be seized without prior notice to satisfy the debt owed. Guarantor knowingly, intentionally, and voluntarily waives any and all constitutional rights Guarantor has to pre-deprivation notice and hearing under federal and state laws and fully understands the consequence of this waiver.

By signing immediately below, Guarantor agrees to the terms of the WARRANT OF AUTHORITY TO CONFESS JUDGMENT section.

---

**SIGNATURES.** By signing under seal, Guarantor agrees to the terms contained in this Guaranty (including those on page 2). Guarantor also acknowledges receipt of a copy of this Guaranty.

**GUARANTOR:**

TWO MILE RANCH, A COLORADO GENERAL PARTNERSHIP
Entity Name

_Jonathan M Pauly_   5/15/15   (Seal)
Name, Title   JONATHAN M. PAULING, MANAGER/MEMBER

_Mark Pauling_   5/15/15   (Seal)
Name, Title   MARK A. PAULING, MEMBER

## ADDITIONAL PROVISIONS

The Guarantor further acknowledges and agrees with Lender that:

**1.** No act or thing need occur to establish the liability of the Guarantor hereunder, and no act or thing, except full payment and discharge of all Indebtedness, shall in any way exonerate the Guarantor or modify, reduce, limit or release the liability of the Guarantor hereunder.

**2.** This is an absolute, unconditional and continuing Guaranty of payment of the Indebtedness and will continue to be enforceable against the Guarantor, whether or not all Indebtedness is paid in full, until this Guaranty is revoked by written notice actually received by the Lender. Any revocation shall not be effective as to any Indebtedness existing or committed to at the time of actual receipt of notice by the Lender, or as to any renewals, extensions and refinancings thereof.

The Guarantor represents and warrants to the Lender that the Guarantor has a direct and substantial economic interest in Borrower and expects to derive substantial benefits therefrom and from any loans and financial accommodations resulting from the creation of Indebtedness guaranteed hereby, and that this Guaranty is given for a business purpose. The Guarantor agrees to rely exclusively on its right to revoke this Guaranty prospectively as to future transactions by written notice actually received by Lender if at any time the benefits then being received by the Guarantor in connection with this Guaranty are not sufficient to warrant its continuance as a Guarantor as to future Indebtedness. Accordingly, the Lender may rely conclusively on a continuing warranty, hereby made, that the Guarantor continues to be benefited by this Guaranty and that the Lender has no duty to inquire into or confirm the receipt of any benefits, and that this Guaranty will be enforceable without regard to the receipt, nature or value of any such benefits.

**3.** If the Guarantor is dissolved or becomes insolvent, however defined, or revokes this Guaranty, then the Lender has the right to declare the full amount of all Indebtedness immediately due and payable, and the Guarantor will forthwith pay the Lender. If the Guarantor voluntarily commences or there is commenced involuntarily against the Guarantor a case under the United States Bankruptcy Code, the full amount of all Indebtedness, whether due and payable or unmatured, will become immediately due and payable without demand or notice thereof.

**4.** The Guarantor will be liable for all Indebtedness, without any limitation as to amount, plus accrued interest thereon and all other costs, fees, and expenses agreed to be paid under all agreements evidencing the Indebtedness and securing the payment of the Indebtedness, and all attorneys' fees, collection costs and enforcement expenses referable thereto. Indebtedness may be created and continued in any amount, whether or not in excess of such principal amount, without affecting or impairing the liability of the Guarantor hereunder. The Lender may apply any sums received by or available to the Lender on account of the Indebtedness from Borrower or any other person (except the Guarantor), from their properties, out of any collateral security or from any other source to payment of the excess. Such application of receipts will not reduce, affect or impair the liability of the Guarantor hereunder. If the liability of the Guarantor is limited pursuant to this paragraph 4, any payment made by the Guarantor under this Guaranty will be effective to reduce or discharge its liability only if accompanied by a written transmittal document, received by the Lender, advising that such payment is made under this Guaranty for that purpose.

**5.** The Guarantor will pay or reimburse the Lender for all costs and expenses (including reasonable attorneys' fees and legal expenses) incurred by the Lender in connection with the protection, defense or enforcement of this Guaranty in any litigation or bankruptcy or insolvency proceedings.

**6.** Whether or not any existing relationship between the Guarantor and Borrower has been changed or ended and whether or not this Guaranty has been revoked, the Lender may, but shall not be obligated to, enter into transactions resulting in the creation or continuance of Indebtedness, without any consent or approval by the Guarantor and without any notice to the Guarantor. The liability of the Guarantor will not be affected or impaired by any of the following acts or things (which the Lender is expressly authorized to do, omit or suffer from time to time, both before and after revocation of this Guaranty, without notice to or approval by the Guarantor): (i) any acceptance of collateral security, Guarantors, accommodation parties or sureties for any or all Indebtedness; (ii) any one or more extensions or renewals of Indebtedness (whether or not for longer than the original period) or any modification of the interest rates, maturities or other contractual terms applicable to any Indebtedness; (iii) any waiver, adjustment, forbearance, compromise or indulgence granted to Borrower, any delay or lack of diligence in the enforcement of Indebtedness, or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any Indebtedness; (iv) any full or partial release of, settlement with, or agreement not to sue, Borrower or any other Guarantor or other person liable in respect of any Indebtedness; (v) any discharge of any evidence of Indebtedness or the acceptance of any instrument in renewal thereof or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for Indebtedness, or to see to the proper or sufficient creation and perfection thereof, or to establish the priority thereof, or to protect, insure, or enforce any collateral security; or any release, modification, substitution, discharge, impairment, deterioration, waste, or loss of any collateral security; (vii) any foreclosure or enforcement of any collateral security; (viii) any transfer of any Indebtedness or any evidence thereof; (ix) any order of application of any payments or credits upon Indebtedness; (x) any election by the Lender under §1111(b)(2) of the United States Bankruptcy Code.

**7.** The Guarantor waives any and all defenses, claims and discharges of Borrower, or any other obligor, pertaining to Indebtedness, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Guarantor will not assert, plead or enforce against the Lender any defense of waiver, release, estoppel, statute of limitations, res judicata, statute of frauds, fraud, forgery, incapacity, minority, usury, illegality or unenforceability which may be available to Borrower or any other person liable in respect of any Indebtedness, or any setoff available against the Lender to Borrower or any such other person, whether or not on account of a related transaction. The Guarantor expressly agrees that the Guarantor will be liable, to the fullest extent permitted by applicable law, for any deficiency remaining after foreclosure of any mortgage or security interest securing Indebtedness, whether or not the liability of Borrower or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The Guarantor shall remain obligated, to the fullest extent permitted by law, to pay such amounts as though Borrower's obligations had not been discharged.

**8.** The Guarantor further agree(s) that Guarantor will be obligated to pay Indebtedness even though any other person obligated to pay Indebtedness, including Borrower, has such obligation discharged in bankruptcy or otherwise discharged by law. "Indebtedness" shall include post-bankruptcy petition interest and attorneys' fees and any other amounts which Borrower is discharged from paying or which do not accrue to Indebtedness due to Borrower's discharge, and Guarantor will be obligated to pay such amounts as fully as if Borrower's obligations had not been discharged.

**9.** If any payment applied by the Lender to Indebtedness is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of Borrower or any other obligor), the Indebtedness to which such payment was applied for the purposes of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty will be enforceable as to such Indebtedness as fully as if such application had never been made.

**10.** Until the obligations of the Borrower to Lender have been paid in full, the Guarantor waive(s) any claim, remedy or other right which the Guarantor may now have or hereafter acquire against Borrower or any other person obligated to pay Indebtedness arising out of the creation or performance of the Guarantor's obligation under this Guaranty, including, without limitation, any right of subrogation, contribution, reimbursement, indemnification, exoneration or any right to participate in any claim or remedy the Guarantor may have against the Borrower, collateral, or other party obligated for Borrower's debt, whether or not such claim, remedy, or right arises in equity, or under contract, statute or common law.

**11.** The Guarantor waives presentment, demand for payment, notice of dishonor or nonpayment, and protest of any instrument evidencing Indebtedness. The Lender will not be required first to resort for payment of the Indebtedness to Borrower or other persons or their properties, or first to enforce, realize upon or exhaust any collateral security for Indebtedness, before enforcing this Guaranty.

**12.** The liability of the Guarantor under this Guaranty is in addition to and is cumulative with all other liabilities of the Guarantor to the Lender as Guarantor or otherwise, without any limitation as to amount, unless the instrument or agreement evidencing or creating such other liability specifically provides to the contrary.

**13.** To induce Lender to enter into the Loan, Guarantor makes these representations and warranties for as long as Guaranty is in effect. Guarantor is duly organized, validly existing and in good standing under the laws in the jurisdiction where Guarantor was organized and is duly qualified, validly existing and in good standing in all jurisdictions in which Guarantor operates or Guarantor owns or leases property. Guarantor has the power and authority to enter into this transaction and to carry on Guarantor's business or activity as now conducted. The execution, delivery and performance of this Guaranty and the obligation evidenced by this Guaranty are within Guarantor's duly authorized powers; have received all necessary governmental approval; will not violate any provision of law or order of court or governmental agency; and will not violate any agreement to which Guarantor is a party or to which Guarantor is or any of Guarantor's property is subject. Other than previously disclosed in writing to Lender, Guarantor has not changed Guarantor's name or principal place of business within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Guarantor does not and will not use any other name and will preserve Guarantor's existing name, trade names and franchises. Guarantor owns or leases all property that Guarantor needs to conduct Guarantor's business and activities. All of Guarantor's property is free and clear of all liens, security interests, encumbrances and other adverse claims and interests, except those Lender previously agreed to in writing. Guarantor is not violating any laws, regulations, rules, orders, judgments or decrees applicable to Guarantor or Guarantor's property, except for those that Guarantor is challenging in good faith through proper proceedings after providing adequate reserves to fully pay the claim and its challenge should Guarantor lose.

**14.** This Guaranty is effective upon delivery to the Lender, without further act, condition or acceptance by the Lender. It will be binding upon the Guarantor and the successors and assigns of the Guarantor and will inure to the benefit of the Lender and its participants, successors and assigns. If there is more than one Guarantor, all agreements and promises herein shall be construed to be, and are hereby declared to be, joint and several in each and every particular and shall be fully binding upon and enforceable against either, any or all the Guarantors. Any invalidity or unenforceability of any provision or application of this Guaranty will not affect other lawful provisions and application hereof, and to this end the provisions of this Guaranty are declared to be severable. Except as allowed by the terms herein, this Guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Guarantor and the Lender. This Guaranty shall be governed by the laws of the State in which it is executed. The Guarantor waives notice of the Lender's acceptance hereof.

© 2001 Wolters Kluwer Financial Services - Bankers Systems™ Fo      250  8/29/2006

(page 2 of 2)

| | | |
|---|---|---|
| MARK A. PAULING<br>18503 COUNTY ROAD 42.5<br>STERLING, CO 80751-9613 | FARMERS STATE BANK, BRIDGEPORT<br>501 MAIN STREET<br>P.O. BOX 220<br>BRIDGEPORT, NE 69336 | LINE    15334601<br>Loan Number 2346<br>Date 05-15-2015<br>Maturity Date 12-15-2015<br>Loan Amount $ 730,000.00<br>Renewal Of |
| **BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | **LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | |

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of <u>SEVEN HUNDRED THIRTY THOUSAND AND NO/100</u>
_____ Dollars $ 730,000.00

☒ **Single Advance:** I will receive all of this principal sum on _____ 05-15-2015 _____. No additional advances are contemplated under this note.

☐ **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $ _____ and future principal advances are contemplated.

Conditions: The conditions for future advances are _____
_____

☐ **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
all other conditions and expires on _____

☐ **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 05-15-2015 _____ at the rate of ____ 5.750 %
per year until 05-18-2015

☒ **Variable Rate:** This rate may then change as stated below.

☒ **Index Rate:** The future rate will be 2.500 PERCENT ABOVE the following index rate: THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST
70% OF THE 10 LARGEST U.S. BANKS KNOWN AS THE WALL STREET JOURNAL U.S. PRIME RATE.
_____

☐ **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.

☒ **Frequency and Timing:** The rate on this note may change as often as EVERY DAY BEGINNING 05-18-2015 _____.
A change in the interest rate will take effect ON THE SAME DAY

☐ **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
_____ %. The rate may not change more than _____ % each _____.

Effect of Variable Rate: A change in the interest rate will have the following effect on the payments:
☐ The amount of each scheduled payment will change.    ☒ The amount of the final payment will change.
☐ _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
☐ on the same fixed or variable rate basis in effect before maturity (as indicated above).
☒ at a rate equal to 18%

☒ **LATE CHARGE:** If a payment is made more than ____ 10 ____ days after it is due, I agree to pay a late charge of $25.00

☒ **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which ☒ are  ☐ are not  included in the principal amount
above: $5,000.00 LOAN ORIGINATION FEE _____

**PAYMENTS:** I agree to pay this note as follows:

ON DEMAND, BUT IF NO DEMAND IS MADE THEN 1 PAYMENT OF $754,951.81 ON 12-15-2015. THIS IS A VARIABLE RATE LOAN AND THE FINAL PAYMENT AMOUNT MAY CHANGE.

**ADDITIONAL TERMS:**
COMMITMENTS WITH AN ORIGINAL MATURITY OF 1 YEAR OR LESS WILL BE UNCONDITIONALLY CANCELABLE BY THE BANK.

☒ **SECURITY:** This note is separately secured by (describe separate
document by type and date):

SECURITY AGREEMENT DATED 01/11/2013; DEED OF TRUST DATED 05/13/2015
5-15-2015
(This section is for your internal use. Failure to list a separate security document will not mean the
agreement will not secure this note.)

Signature for Lender

RICHARD A. STULL, EXECUTIVE VICE PRESIDENT

**PURPOSE:** The purpose of this loan is PURCHASE OF WELD COUNTY RANCH

**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING
THOSE ON PAGE 2).** I have received a copy on today's date.

MARK A. PAULING

UNIVERSAL NOTE

Express © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN  Form UN  2/1/2013

Case 16-16615-EEB   Claim 10-1 Part 2   Filed 02/27/17   Desc Attachments to Proof of Claim   Page 58 of 72

**DEFINITIONS:** As used on page 1, "☒" means the terms that apply to this loan, "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest period is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on this note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.
"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.
"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.
By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my right to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).
I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of this note or debt, from time to time without limit or notice and for any term without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |
|  | $ |  | $ | $ | % | $ |  |

Complete the following for consumer transactions secured by a dwelling.

Loan origination organization

NMLS ID

Loan originator

NMLS ID



(page 2 of 2)

4158/77 05/16/2015 04:07 PM
Total Pages: 11 R   Fee: $61.00
Carly Koppes - Clerk and Recorder, Weld County, CO

**Return To:**
FARMERS STATE BANK
501 MAIN STREET  PO BOX 220
BRIDGEPORT, NE 69336-0220

———————State of Nebraska——————— Space Above This Line For Recording Data ———

# REAL ESTATE DEED OF TRUST
### (With Future Advance Clause)

☒ **Construction Security Agreement**   ☐ **Master form recorded by** _____

1. **DATE AND PARTIES.** The date of this Deed of Trust is <u>05-15-2016</u> _____ and the
   parties and their addresses are as follows:
   **TRUSTOR:**

   MARK A. PAULING, A SINGLE PERSON
   18503 COUNTY ROAD 42.5
   STERLING, CO 80751-9613

   ☐ **Refer to the Addendum which is attached and incorporated herein for additional Trustors, signatures
   and acknowledgments.**
   **TRUSTEE:**

   FARMERS STATE BANK
   P. O. BOX 220
   BRIDGEPORT, NE 69336-0220

   **BENEFICIARY:**

   FARMERS STATE BANK - BRIDGEPORT
   501 MAIN STREET
   P.O. BOX 220
   BRIDGEPORT, NE 69336

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

 25131153

AGCO-RESI-NE 7/1/2011
VMP-C595(NE) (1107).00
Page 1 of 10

E-RECORDED

Return To:

FARMERS STATE BANK

501 MAIN STREET  PO BOX 220

BRIDGEPORT, NE 69336-0220

—————————State of Nebraska————————— Space Above This Line For Recording Data —————————

# REAL ESTATE DEED OF TRUST
## (With Future Advance Clause)

☑ **Construction Security Agreement**   ☐ **Master form recorded by** _____

1. **DATE AND PARTIES.** The date of this Deed of Trust is <u>05-15-2015</u> _____ and the parties and their addresses are as follows:

   TRUSTOR:

   MARK A. PAULING, A SINGLE PERSON

   18503 COUNTY ROAD 42.5

   STERLING, CO  80751-9613

   ☐ Refer to the Addendum which is attached and incorporated herein for additional Trustors, signatures and acknowledgments.

   TRUSTEE:

   FARMERS STATE BANK

   P. O. BOX 220

   BRIDGEPORT, NE  69336-0220

   BENEFICIARY:

   FARMERS STATE BANK - BRIDGEPORT

   501 MAIN STREET

   P.O. BOX 220

   BRIDGEPORT, NE  69336

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

25131153

Land Title

AGCO-RESI-NE 7/1/2011
VMP-C595(NE) (1107).00
Page 1 of 10

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (hereafter defined), Trustor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of the Beneficiary, with power of sale, the following described property:

SEE EXHIBIT "A"

The property is located in _WELD_____ at _N/A_____
                                    (County)

_____ , _STONEHAM_____ , Nebraska _80754____
      (Address)                         (City)                           (Zip Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all diversion payments or third party payments made to crop producers, and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property"). The term Property also includes, but is not limited to, any and all water wells, water, ditches, reservoirs, reservoir sites and dams located on the real estate and all riparian and water rights associated with the Property, however established.

3. **MAXIMUM OBLIGATION LIMIT.** The total principal amount of the Secured Debt (hereafter defined) secured by this Deed of Trust at any one time shall not exceed $ _1,000,000.00_____ . This limitation of amount does not include interest, loan charges, commitment fees, brokerage commissions, attorneys' fees and other charges validly made pursuant to this Deed of Trust and does not apply to advances (or interest accrued on such advances) made under the terms of this Deed of Trust to protect Beneficiary security and to perform any of the covenants contained in this Deed of Trust. Future advances are contemplated and, along with other future obligations, are secured by this Deed of Trust even though all or part may not yet be advanced. Nothing in this Deed of Trust, however, shall constitute a commitment to make additional or future loans or advances in any amount. Any such commitment would need to be agreed to in a separate writing.

4. **SECURED DEBT DEFINED.** The term "Secured Debt" includes, but is not limited to, the following:
   A. The promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all extensions, renewals, modifications or substitutions (Evidence of Debt). *(When referencing the debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates, maturity dates, etc.)*

   PROMISSORY NOTE # 2346 DATED 06/13/2015 WITH A MATURITY DATE OF 12/15/2015 AND EXECUTED BY MARK A. PAULING PAYABLE IN ONE SINGLE PAYMENT TO THE ORDER OF BENEFICIARY-FARMERS STATE BANK, WHICH EVIDENCES A LOAN TO BORROWER IN THE AMOUTN OF $1,005,000.00 PLUS INTEREST, AND ALL EXTENSIONS, RENEWALS, MODIFICATIONS OR SUBSTITUTIONS THEREOF.

   B. All future advances from Beneficiary to Trustor or other future obligations of Trustor to Beneficiary under any promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Deed of Trust whether or not this Deed of Trust is specifically referred to in the evidence of debt.
   C. All obligations Trustor owes to Beneficiary, which now exist or may later arise, to the extent not prohibited by law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between Trustor and Beneficiary.
   D. All additional sums advanced and expenses incurred by Beneficiary for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Beneficiary under the terms of this Deed of Trust, plus interest at the highest rate in effect, from time to time, as provided in the Evidence of Debt.
   E. Trustor's performance under the terms of any instrument evidencing a debt by Trustor to Beneficiary and any Deed of Trust securing, guarantying, or otherwise relating to the debt.

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C595(NE) (1107).00
Page 2 of 10

If more than one person signs this Deed of Trust as Trustor, each Trustor agrees that this Deed of Trust will secure all future advances and future obligations described above that are given to or incurred by any one or more Trustor, or any one or more Trustor and others. This Deed of Trust will not secure any other debt if Beneficiary fails, with respect to such other debt, to make any required disclosure about this Deed of Trust or if Beneficiary fails to give any required notice of the right of rescission.

5. **PAYMENTS.** Trustor agrees to make all payments on the Secured Debt when due and in accordance with the terms of the Evidence of Debt or this Deed of Trust.

6. **WARRANTY OF TITLE.** Trustor covenants that Trustor is lawfully seized of the estate conveyed by this Deed of Trust and has the right to irrevocably grant, convey and sell to Trustee, in trust, with power of sale, the Property and warrants that the Property is unencumbered, except for encumbrances of record.

7. **CLAIMS AGAINST TITLE.** Trustor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Beneficiary may require Trustor to provide to Beneficiary copies of all notices that such amounts are due and the receipts evidencing Trustor's payment. Trustor will defend title to the Property against any claims that would impair the lien of this Deed of Trust. Trustor agrees to assign to Beneficiary, as requested by Beneficiary, any rights, claims or defenses which Trustor may have against parties who supply labor or materials to improve or maintain the Property.

8. **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property and that may have priority over this Deed of Trust, Trustor agrees:
   A. To make all payments when due and to perform or comply with all covenants.
   B. To promptly deliver to Beneficiary any notices that Trustor receives from the holder.
   C. Not to make or permit any modification or extension of, and not to request or accept any future advances under any note or agreement secured by, the other mortgage, deed of trust or security agreement unless Beneficiary consents in writing.

9. **DUE ON SALE OR ENCUMBRANCE.** Beneficiary may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of any lien, encumbrance, transfer, or sale, or contract for any of these on the Property. However, if the Property includes Trustor's residence, this section shall be subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable. For the purposes of this section, the term "Property" also includes any interest to all or any part of the Property. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Deed of Trust is released.

10. **TRANSFER OF AN INTEREST IN THE TRUSTOR.** If Trustor is an entity other than a natural person (such as a corporation or other organization), Beneficiary may demand immediate payment if (1) a beneficial interest in Trustor is sold or transferred; (2) there is a change in either the identity or number of members of a partnership; or (3) there is a change in ownership of more than 25 percent of the voting stock of a corporation. However, Beneficiary may not demand payment in the above situations if it is prohibited by law as of the date of this Deed of Trust.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Trustor is an entity other than a natural person (such as a corporation or other organization), Trustor makes to Beneficiary the following warranties and representations which shall be continuing as long as the Secured Debt remains outstanding:
   A. Trustor is an entity which is duly organized and validly existing in the Trustor's state of incorporation (or organization). Trustor is in good standing in all states in which Trustor transacts business. Trustor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Trustor operates.
   B. The execution, delivery and performance of this Deed of Trust by Trustor and the obligation evidenced by the Evidence of Debt are within the power of Trustor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
   C. Other than disclosed in writing Trustor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Beneficiary's prior written consent, Trustor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C595(NE)  (1107).00
Page 3 of 10

**12. PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Trustor will keep the Property in good condition and make all repairs that are reasonably necessary. Trustor will give Beneficiary prompt notice of any loss or damage to the Property. Trustor will keep the Property free of noxious weeds and grasses. Trustor will not initiate, join in or consent to any change in any private restrictive covenant, zoning ordinance or other public or private restriction limiting or defining the uses which may be made of the Property or any part of the Property, without Beneficiary's prior written consent. Trustor will notify Beneficiary of all demands, proceedings, claims, and actions against Trustor or any other owner made under law or regulation regarding use, ownership and occupancy of the Property. Trustor will comply with all legal requirements and restrictions, whether public or private, with respect to the use of the Property. Trustor also agrees that the nature of the occupancy and use will not change without Beneficiary's prior written consent.

No portion of the Property will be removed, demolished or materially altered without Beneficiary's prior written consent except that Trustor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Deed of Trust. Trustor shall not partition or subdivide the Property without Beneficiary's prior written consent. Beneficiary or Beneficiary's agents may, at Beneficiary's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Any inspection of the Property shall be entirely for Beneficiary's benefit and Trustor will in no way rely on Beneficiary's inspection.

**13. AUTHORITY TO PERFORM.** If Trustor fails to perform any of Trustor's duties under this Deed of Trust, or any other mortgage, deed of trust, security agreement or other lien document that has priority over this Deed of Trust, Beneficiary may, without notice, perform the duties or cause them to be performed. Trustor appoints Beneficiary as attorney in fact to sign Trustor's name or pay any amount necessary for performance. If any construction on the Property is discontinued or not carried on in a reasonable manner, Beneficiary may do whatever is necessary to protect Beneficiary's security interest in the Property. This may include completing the construction.

Beneficiary's right to perform for Trustor shall not create an obligation to perform, and Beneficiary's failure to perform will not preclude Beneficiary from exercising any of Beneficiary's other rights under the law or this Deed of Trust. Any amounts paid by Beneficiary for insuring, preserving or otherwise protecting the Property and Beneficiary's security interest will be due on demand and will bear interest from the date of the payment until paid in full at the interest rate in effect from time to time according to the terms of the Evidence of Debt.

**14. ASSIGNMENT OF LEASES AND RENTS.** Trustor irrevocably assigns, grants and conveys to Beneficiary as additional security all the right, title and interest in the following (Property).
  A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).
  B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Trustor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).
In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Trustor will promptly provide Beneficiary with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Trustor may collect, receive, enjoy and use the Rents so long as Trustor is not in default. Trustor will not collect in advance any Rents due in future lease periods, unless Trustor first obtains Lender's written consent. Upon default, Trustor will receive any Rents in trust for Beneficiary and Trustor will not commingle the Rents with any other funds. When Beneficiary so directs, Trustor will endorse and deliver any payments of Rents from the Property to Beneficiary. Amounts collected will be applied at Beneficiary's

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C595(NE)  (1107).00
Page 4 of 10

discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Trustor agrees that this Security Instrument is immediately effective between Trustor and Beneficiary and effective as to third parties on the recording of this Assignment.

As long as this Assignment is in effect, Trustor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Trustor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the Leases to comply with the Leases and any applicable law.

If Trustor or any party to the Lease defaults or fails to observe any applicable law, Trustor will promptly notify Beneficiary. If Trustor neglects or refuses to enforce compliance with the terms of the Leases, then Beneficiary may, at Beneficiary's option, enforce compliance. Trustor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Beneficiary's consent. Trustor will not assign, compromise, subordinate or encumber the Leases and Rents without Beneficiary's prior written consent. Beneficiary does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Beneficiary acts to manage, protect or preserve the Property, except for losses and damages due to Beneficiary's gross negligence or intentional torts. Otherwise, Trustor will indemnify Beneficiary and hold Beneficiary harmless for all liability, loss or damage that Beneficiary may incur when Beneficiary opts to exercise any of its remedies against any party obligated under the Leases.

15. **CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** If the Property includes a unit in a condominium or a planned unit development, Trustor will perform all of Trustor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

16. **DEFAULT.** Trustor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Deed of Trust, any prior mortgage or any construction loan agreement, security agreement or any other document evidencing, guarantying, securing or otherwise relating to the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Beneficiary that is false or incorrect in any material respect by Trustor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, appointment of a receiver for, or application of any debtor relief law to, Trustor or any person or entity obligated on the Secured Debt;
   E. A good faith belief by Beneficiary at any time that Beneficiary is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the Property is impaired;
   F. A material adverse change in Trustor's business including ownership, management, and financial conditions, which Beneficiary in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

17. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Beneficiary to provide Trustor with notice of the right to cure, mediation notices or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Beneficiary may accelerate the Secured Debt and foreclose this Deed of Trust in a manner provided by law if this Trustor is in default.

At the option of Beneficiary, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Beneficiary shall be entitled to all the remedies provided by law, the Evidence of Debt, other evidences of debt, this Deed of Trust and any related documents including without limitation, the power to sell the Property.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Beneficiary, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Trustor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale.

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C595(NE) (1107).00
Page 5 of 10

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Beneficiary all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Trustor. Beneficiary may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Beneficiary is entitled to all remedies provided at law or equity, whether expressly set forth or not. The acceptance by Beneficiary of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Beneficiary's right to require full and complete cure of any existing default. By not exercising any remedy on Trustor's default, Beneficiary does not waive Beneficiary's right to later consider the event a default if it continues or happens again.

18. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Trustor agrees to pay all of Beneficiary's expenses if Trustor breaches any covenant in this Deed of Trust. Trustor will also pay on demand all of Beneficiary's expenses incurred in collecting, insuring, preserving or protecting the Property or in any Inventories, audits, inspections or other examination by Beneficiary in respect to the Property. Trustor agrees to pay all costs and expenses incurred by Beneficiary in enforcing or protecting Beneficiary's rights and remedies under this Deed of Trust, including, but not limited to, attorneys' fees, court costs, and other legal expenses. Once the Secured Debt is fully and finally paid, Beneficiary agrees to release this Deed of Trust and Trustor agrees to pay for any recordation costs. All such amounts are due on demand and will bear interest from the time of the advance at the highest rate in effect, from time to time, as provided in the Evidence of Debt and as permitted by law.

19. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) "Environmental Law" means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) "Hazardous Substance" means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law. Trustor represents, warrants and agrees that, except as previously disclosed and acknowledged in writing:
    A. No Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.
    B. Trustor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.
    C. Trustor will immediately notify Beneficiary if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Trustor will take all necessary remedial action in accordance with Environmental Law.
    D. Trustor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Trustor or any tenant of any Environmental Law. Trustor will immediately notify Beneficiary in writing as soon as Trustor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Beneficiary has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.
    E. Trustor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.
    F. There are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Beneficiary first consents in writing.
    G. Trustor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C595(NE)  (1107).00
Page 6 of 10

H. Trustor will permit, or cause any tenant to permit, Beneficiary or Beneficiary's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Trustor and any tenant are in compliance with applicable Environmental Law.

I. Upon Beneficiary's request and at any time, Trustor agrees, at Trustor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Beneficiary. The choice of the environmental engineer who will perform such audit is subject to Beneficiary's approval.

J. Beneficiary has the right, but not the obligation, to perform any of Trustor's obligations under this section at Trustor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Trustor will indemnify and hold Beneficiary and Beneficiary's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Beneficiary and Beneficiary's successors or assigns may sustain; and (2) at Beneficiary's discretion, Beneficiary may release this Deed of Trust and in return Trustor will provide Beneficiary with collateral of at least equal value to the Property secured by this Deed of Trust without prejudice to any of Beneficiary's rights under this Deed of Trust.

L. Notwithstanding any of the language contained in this Deed of Trust to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Deed of Trust regardless of any passage of title to Beneficiary or any disposition by Beneficiary of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

20. **CONDEMNATION.** Trustor will give Beneficiary prompt notice of any action, real or threatened, by private or public entities to purchase or take any or all of the Property, including any easements, through condemnation, eminent domain, or any other means. Trustor further agrees to notify Beneficiary of any proceedings instituted for the establishment of any sewer, water, conservation, ditch, drainage, or other district relating to or binding upon the Property or any part of it. Trustor authorizes Beneficiary to intervene in Trustor's name in any of the above described actions or claims and to collect and receive all sums resulting from the action or claim. Trustor assigns to Beneficiary the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Deed of Trust. This assignment of proceeds is subject to the terms of any prior security agreement.

21. **INSURANCE.** Trustor agrees to maintain insurance as follows:

A. Trustor shall keep the Property insured against loss by fire, theft and other hazards and risks reasonably associated with the Property due to its type and location. Other hazards and risks may include, for example, coverage against loss due to floods or flooding. This insurance shall be maintained in the amounts and for the periods that Beneficiary requires. What Beneficiary requires pursuant to the preceding three sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Trustor subject to Beneficiary's approval, which shall not be unreasonably withheld. If Trustor fails to maintain the coverage described above, Beneficiary may, at Beneficiary's option, obtain coverage to protect Beneficiary's rights in the Property according to the terms of this Deed of Trust.

All insurance policies and renewals shall be acceptable to Beneficiary and shall include a standard "mortgage clause" and, where applicable, "beneficiary loss payee clause." Trustor shall immediately notify Beneficiary of cancellation or termination of the insurance. Beneficiary shall have the right to hold the policies and renewals. If Beneficiary requires, Trustor shall immediately give to Beneficiary all receipts of paid premiums and renewal notices. Upon loss, Trustor shall give immediate notice to the insurance carrier and Beneficiary. Beneficiary may make proof of loss if not made immediately by Trustor.

Unless Beneficiary and Trustor otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged if the restoration or repair is economically feasible and Beneficiary's security is not lessened. If the restoration or repair is not economically feasible or Beneficiary's security would be lessened, the insurance proceeds shall be applied to the Secured

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C595(NE)  (1107).00
Page 7 of 10

Debt, whether or not then due, with any excess paid to Trustor. If Trustor abandons the Property, or does not answer within 30 days a notice from Beneficiary that the insurance carrier has offered to settle a claim, then Beneficiary may collect the insurance proceeds. Beneficiary may use the proceeds to repair or restore the Property or to pay the Secured Debt whether or not then due. The 30-day period will begin when the notice is given.

Unless Beneficiary and Trustor otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of scheduled payments or change the amount of the payments. If the Property is acquired by Beneficiary, Trustor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Beneficiary to the extent of the Secured Debt immediately before the acquisition.

B.  Trustor agrees to maintain comprehensive general liability insurance naming Beneficiary as an additional insured in an amount acceptable to Beneficiary, insuring against claims arising from any accident or occurrence in or on the Property.

C.  Trustor agrees to maintain rental loss or business interruption insurance, as required by Beneficiary, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Beneficiary.

22. **NO ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Trustor will not be required to pay to Beneficiary funds for taxes and insurance in escrow.

23. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Trustor will provide to Beneficiary upon request, any financial statement or information Beneficiary may deem necessary. Trustor warrants that all financial statements and information Trustor provides to Beneficiary are, or will be, accurate, correct, and complete. Trustor agrees to sign, deliver, and file as Beneficiary may reasonably request any additional documents or certifications that Beneficiary may consider necessary to perfect, continue, and preserve Trustor's obligations under this Deed of Trust and Beneficiary's lien status on the Property. If Trustor fails to do so, Beneficiary may sign, deliver, and file such documents or certificates in Trustor's name and Trustor hereby irrevocably appoints Beneficiary or Beneficiary's agent as attorney in fact to do the things necessary to comply with this section.

24. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Deed of Trust are joint and individual. If Trustor signs this Deed of Trust but does not sign the Evidence of Debt, Trustor does so only to mortgage Trustor's interest in the Property to secure payment of the Secured Debt and Trustor does not agree to be personally liable on the Secured Debt. Trustor agrees that Beneficiary and any party to this Deed of Trust may extend, modify or make any change in the terms of this Deed of Trust or the Evidence of Debt without Trustor's consent. Such a change will not release Trustor from the terms of this Deed of Trust. The duties and benefits of this Deed of Trust shall bind and benefit the successors and assigns of Trustor and Beneficiary.

If this Deed of Trust secures a guaranty between Beneficiary and Trustor and does not directly secure the obligation which is guarantied, Trustor agrees to waive any rights that may prevent Beneficiary from bringing any action or claim against Trustor or any party indebted under the obligation including, but not limited to, anti-deficiency or one-action laws.

25. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Deed of Trust is governed by the laws of the jurisdiction in which Beneficiary is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Deed of Trust is complete and fully integrated. This Deed of Trust may not be amended or modified by oral agreement. Any section or clause in this Deed of Trust, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section or clause of this Deed of Trust cannot be enforced according to its terms, that section or clause will be severed and will not affect the enforceability of the remainder of this Deed of Trust. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Deed of Trust are for convenience only and are not to be used to interpret or define the terms of this Deed of Trust. Time is of the essence in this Deed of Trust.

26. **SUCCESSOR TRUSTEE.** Beneficiary, at Beneficiary's option, may from time to time remove Trustee and appoint a successor trustee by an instrument recorded in the county in which this Deed of Trust is recorded. The successor trustee, without conveyance of the Property, shall succeed to all the title, power and duties conferred upon the Trustee by this Deed of Trust and applicable law.

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers SystemsTM
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C595(NE) (1107).00
Page 8 of 10

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Deed of Trust, or to any other address designated in writing. Notice to one trustor will be deemed to be notice to all trustors. Trustor and Beneficiary hereby request a copy of any notice of default, and a copy of any notice of sale thereunder, be mailed to each party at the address for such party set forth on page 1 of this Deed of Trust.

28. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Deed of Trust:

☐ **Construction Loan.** This Deed of Trust secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Trustor grants to Beneficiary a security interest in all goods that Trustor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Trustor grants to Beneficiary a security interest in all crops, timber and minerals located on the Property as well as all rents, issues and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Trustor grants to Beneficiary a security interest in all personal property located on or connected with the Property. This security interest includes all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Trustor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property. The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Trustor agrees and acknowledges that this Deed of Trust also suffices as a financing statement and as such, may be filed of record as a financing statement of purposes of Article 9 of the Uniform Commercial Code. A carbon, photographic, image or other reproduction of this Deed of Trust is sufficient as a financing statement.

29. **OTHER TERMS.** If checked, the following are applicable to this Deed of Trust:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Deed of Trust will remain in effect until released.

☐ **Agricultural Property.** Trustor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Trustor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Separate Assignment.** The Trustor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☐ **Additional Terms.**

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C585(NE) (1107).00
Page 9 of 10

——————————————— DESIGNATION OF HOMESTEAD ———————————————

Pursuant to the Farm Homestead Protection Act, designation of homestead ☐ is attached to this Deed of
Trust and made a part hereof ☐ has been disclaimed; the disclaimer is attached to this Deed of Trust and
made a part hereof.

**SIGNATURES:** By signing below, Trustor agrees to the terms and covenants contained in this Deed of Trust and
in any attachments. Trustor also acknowledges receipt of a copy of this Deed of Trust on the date stated
above on Page 1.

☐  Actual  authority  was  granted  to  the  parties  signing  below  by  resolution  signed  and  dated

Entity Name: _____

_____    5/15/15    _____    5/15/15
(Signature)  MARK A. PAULING        (Date)        (Signature)                (Date)

_____    _____    _____    _____
(Signature)              (Date)        (Signature)                (Date)

**ACKNOWLEDGMENT:**

(Individual)  STATE OF NE _____, COUNTY OF  Kimball _____ } ss.
This instrument was acknowledged before me this day  15TH  of MAY, 2015
by MARK A. PAULING, A SINGLE PERSON  A married Person M.P. X. and Toni Lee Pauling, a
My commission expires: 3/6/2019        married person

_____
(Notary Public)

General Notary - State of Nebraska
VICKI F. STULL
My Comm. Exp. March. 6, 2019.

(Business
or Entity
Acknowledg-
ment)

STATE OF _____, COUNTY OF _____ } ss.
This instrument was acknowledged before me this day _____ of _____
by _____
_____ (Title(s))
of _____ (Name of Business or Entity)
a _____ on behalf of the business or entity.
My commission expires: _____

_____
(Notary Public)

Security Instrument-Commercial/Agricultural-NE
VMP® Bankers Systems™
Wolters Kluwer Financial Services ©1993, 2011

AGCO-RESI-NE 7/1/2011
VMP-C595(NE) (1107).00
Page 10 of 10

## Exhibit A

THE N 1/2 AND THE SW 1/4 OF SECTION 1, TOWNSHIP 10 NORTH, RANGE 57 WEST OF THE 6TH P.M., COUNTY OF WELD, STATE OF COLORADO
AND THE W 1/2 OF THE NE 1/4 AND THE E 1/2 OF THE NW 1/4 AND THE S 1/2 OF THE SW 1/4 OF THE NW 1/4 AND THE SW 1/4 AND THE S 1/2 OF THE SE 1/4 OF SECTION 26, TOWNSHIP 11 NORTH, RANGE 57 WEST OF THE 6TH P.M., COUNTY OF WELD, STATE OF COLORADO
AND THE S 1/2 OF THE SE 1/4 OF THE NE 1/4 AND THE E 1/2 OF THE SE 1/4 OF SECTION 27, TOWNSHIP 11 NORTH, RANGE 57 WEST OF THE 6TH P.M., COUNTY OF WELD, STATE OF COLORADO
AND THE NE 1/4 AND THE NE 1/4 OF THE NW 1/4 AND THE E 1/2 OF THE SE 1/4 OF SECTION 34, TOWNSHIP 11 NORTH, RANGE 57 WEST OF THE 6TH P.M., COUNTY OF WELD, STATE OF COLORADO
AND THE N 1/2 AND THE SW 1/4 AND THE S 1/2 OF THE SE 1/4 OF SECTION 35, TOWNSHIP 11 NORTH, RANGE 57 WEST OF THE 6TH P.M., COUNTY OF WELD, STATE OF COLORADO

EXCEPT ANY PORTION THEREOF CONTAINED IN DEED RECORDED JUNE 6, 1961 IN BOOK 1586 AT PAGE 298

Case 16-16615-EEB   Claim 10-1 Part 2   Filed 02/27/17   Desc Attachments to Proof of
Claim   Page 71 of 72

| MARK A. PAULING<br>18503 COUNTY ROAD 42.5<br>STERLING, CO 80571<br><br>**BORROWER'S NAME AND ADDRESS**<br>"I" includes each borrower above, jointly and severally. | TWO MILE RANCH<br>A COLORADO GENERAL PARTNERSHIP<br>60773 NORTH HWY 71<br>STONEHAM, CO 80754-9300<br><br>**LENDER'S NAME AND ADDRESS**<br>"You" means the lender, its successors and assigns. | Loan Number _____<br>Date 05-15-2015<br>Maturity Date 12-15-2015<br>Loan Amount $ 275,000.00<br>Renewal Of _____ |
|---|---|---|

For value received, I promise to pay to you, or your order, at your address listed above the PRINCIPAL sum of TWO HUNDRED SEVENTY FIVE THOUSAND AND
NO/100 _____ Dollars $ 275,000.00

[X] **Single Advance:** I will receive all of this principal sum on _____ 05-15-2015 _____ . No additional advances are contemplated under this note.

[ ] **Multiple Advance:** The principal sum shown above is the maximum amount of principal I can borrow under this note. On _____
_____ I will receive the amount of $_____ and future principal advances are contemplated.
**Conditions:** The conditions for future advances are _____
_____
_____

[ ] **Open End Credit:** You and I agree that I may borrow up to the maximum amount of principal more than one time. This feature is subject to
all other conditions and expires on _____ .
[ ] **Closed End Credit:** You and I agree that I may borrow up to the maximum only one time (and subject to all other conditions).

**INTEREST:** I agree to pay interest on the outstanding principal balance from _____ 05-15-2015 _____ at the rate of _____ 5.750 %
per year until 05-15-2015

[X] **Variable Rate:** This rate may then change as stated below.
  [X] **Index Rate:** The future rate will be 2.500 PERCENT ABOVE _____ the following index rate: THE BASE RATE ON CORPORATE LOANS POSTED BY AT LEAST
  70% OF THE 10 LARGEST U.S. BANKS KNOWN AS THE WALL STREET JOURNAL U.S. PRIME RATE.

  [ ] **No Index:** The future rate will not be subject to any internal or external index. It will be entirely in your control.
  [X] **Frequency and Timing:** The rate on this note may change as often as EVERY DAY BEGINNING 05-16-2015 _____
  A change in the interest rate will take effect ON THE SAME DAY
  [ ] **Limitations:** During the term of this loan, the applicable annual interest rate will not be more than _____ % or less than
  _____ %. The rate may not change more than _____ % each _____ .
  **Effect of Variable Rate:** A change in the interest rate will have the following effect on the payments:
  [ ] The amount of each scheduled payment will change.   [X] The amount of the final payment will change.
  [ ] _____

**ACCRUAL METHOD:** Interest will be calculated on a _____ ACTUAL/360 _____ basis.

**POST MATURITY RATE:** I agree to pay interest on the unpaid balance of this note owing after maturity, and until paid in full, as stated below:
  [ ] on the same fixed or variable rate basis in effect before maturity (as indicated above).
  [X] at a rate equal to 16%

[ ] **LATE CHARGE:** If a payment is made more than _____ days after it is due, I agree to pay a late charge of _____

[ ] **ADDITIONAL CHARGES:** In addition to interest, I agree to pay the following charges which [ ] are [ ] are not included in the principal amount
above: _____

**PAYMENTS:** I agree to pay this note as follows:
ON DEMAND, BUT IF NO DEMAND IS MADE THEN 1 PAYMENT OF $284,399.65 ON 12-15-2015. THIS IS A VARIABLE RATE LOAN AND THE FINAL PAYMENT AMOUNT MAY CHANGE.

**ADDITIONAL TERMS:**

| [ ] **SECURITY:** This note is separately secured by (describe separate document by type and date):<br><br>(This section is for your internal use. Failure to list a separate security document does not mean the agreement will not secure this note.) | **PURPOSE:** The purpose of this loan is CARRY BACK ON RANCH SALE<br><br>**SIGNATURES: I AGREE TO THE TERMS OF THIS NOTE (INCLUDING THOSE ON PAGE 2).** I have received a copy on today's date. |
|---|---|

Signature for Lender

_Jonathan M. Pauling_

_____   MARK A. PAULING

_____

_____

UNIVERSAL NOTE   V02015.1
Experi® © 1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN 2/1/2013                                          (page 1 of 2)

**DEFINITIONS:** As used on page 1, "□§" means the terms that apply to this loan. "I," "me" or "my" means each Borrower who signs this note and each other person or legal entity (including guarantors, endorsers, and sureties) who agrees to pay this note (together referred to as "us"). "You" or "your" means the Lender and its successors and assigns.

**APPLICABLE LAW:** The law of the state in which you are located will govern this note. Any term of this note which is contrary to applicable law will not be effective, unless the law permits you and me to agree to such a variation. If any provision of this agreement cannot be enforced according to its terms, this fact will not affect the enforceability of the remainder of this agreement. No modification of this agreement may be made without your express written consent. Time is of the essence in this agreement.

**COMMISSIONS OR OTHER REMUNERATION:** I understand and agree that any insurance premiums paid to insurance companies as part of this note will involve money retained by you or paid back to you as commissions or other remuneration.

In addition, I understand and agree that some other payments to third parties as part of this note may also involve money retained by you or paid back to you as commissions or other remuneration.

**PAYMENTS:** Each payment I make on this note will first reduce the amount I owe you for charges which are neither interest nor principal. The remainder of each payment will then reduce accrued unpaid interest, and then unpaid principal. If you and I agree to a different application of payments, we will describe our agreement on this note. I may prepay a part of, or the entire balance of this loan without penalty, unless we specify to the contrary on this note. Any partial prepayment will not excuse or reduce any later scheduled payment until this note is paid in full (unless, when I make the prepayment, you and I agree in writing to the contrary).

**INTEREST:** Interest accrues on the principal remaining unpaid from time to time, until paid in full. If I receive the principal in more than one advance, each advance will start to earn interest only when I receive the advance. The interest rate in effect on this note at any given time will apply to the entire principal advanced at that time. Notwithstanding anything to the contrary, I do not agree to pay and you do not intend to charge any rate of interest that is higher than the maximum rate of interest you could charge under applicable law for the extension of credit that is agreed to here (either before or after maturity). If any notice of interest accrual is sent and is in error, we mutually agree to correct it, and if you actually collect more interest than allowed by law and this agreement, you agree to refund it to me.

**INDEX RATE:** The index will serve only as a device for setting the rate on this note. You do not guarantee by selecting this index, or the margin, that the rate on this note will be the same rate you charge on any other loans or class of loans to me or other borrowers.

**ACCRUAL METHOD:** The amount of interest that I will pay on this loan will be calculated using the interest rate and accrual method stated on page 1 of this note. For the purpose of interest calculation, the accrual method will determine the number of days in a "year." If no accrual method is stated, then you may use any reasonable accrual method for calculating interest.

**POST MATURITY RATE:** For purposes of deciding when the "Post Maturity Rate" (shown on page 1) applies, the term "maturity" means the date of the last scheduled payment indicated on page 1 of this note or the date you accelerate payment on the note, whichever is earlier.

**SINGLE ADVANCE LOANS:** If this is a single advance loan, you and I expect that you will make only one advance of principal. However, you may add other amounts to the principal if you make any payments described in the "PAYMENTS BY LENDER" paragraph below.

**MULTIPLE ADVANCE LOANS:** If this is a multiple advance loan, you and I expect that you will make more than one advance of principal. If this is closed end credit, repaying a part of the principal will not entitle me to additional credit.

**PAYMENTS BY LENDER:** If you are authorized to pay, on my behalf, charges I am obligated to pay (such as property insurance premiums), then you may treat those payments made by you as advances and add them to the unpaid principal under this note, or you may demand immediate payment of the charges.

**SET-OFF:** I agree that you may set off any amount due and payable under this note against any right I have to receive money from you.

"Right to receive money from you" means:
(1) any deposit account balance I have with you;
(2) any money owed to me on an item presented to you or in your possession for collection or exchange; and
(3) any repurchase agreement or other nondeposit obligation.

"Any amount due and payable under this note" means the total amount of which you are entitled to demand payment under the terms of this note at the time you set off. This total includes any balance the due date for which you properly accelerate under this note.

If my right to receive money from you is also owned by someone who has not agreed to pay this note, your right of set-off will apply to my interest in the obligation and to any other amounts I could withdraw on my sole request or endorsement. Your right of set-off does not apply to an account or other obligation where my rights are only as a representative. It also does not apply to any Individual Retirement Account or other tax-deferred retirement account.

You will not be liable for the dishonor of any check when the dishonor occurs because you set off this debt against any of my accounts. I agree to hold you harmless from any such claims arising as a result of your exercise of your right of set-off.

**REAL ESTATE OR RESIDENCE SECURITY:** If this note is secured by real estate or a residence that is personal property, the existence of a default and your remedies for such a default will be determined by applicable law, by the terms of any separate instrument creating the security interest and, to the extent not prohibited by law and not contrary to the terms of the separate security instrument, by the "Default" and "Remedies" paragraphs herein.

**DEFAULT:** I will be in default if any one or more of the following occur: (1) I fail to make a payment on time or in the amount due; (2) I fail to keep the property insured, if required; (3) I fail to pay, or keep any promise, on any debt or agreement I have with you; (4) any other creditor of mine attempts to collect any debt I owe him through court proceedings; (5) I die, am declared incompetent, make an assignment for the benefit of creditors, or become insolvent (either because my liabilities exceed my assets or I am unable to pay my debts as they become due); (6) I make any written statement or provide any financial information that is untrue or inaccurate at the time it was provided; (7) I do or fail to do something which causes you to believe that you will have difficulty collecting the amount I owe you; (8) any collateral securing this note is used in a manner or for a purpose which threatens confiscation by a legal authority; (9) I change my name or assume an additional name without first notifying you before making such a change; (10) I fail to plant, cultivate and harvest crops in due season if I am a producer of crops; (11) any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetlands to produce an agricultural commodity, as further explained in 7 C.F.R. Part 1940, Subpart G, Exhibit M.

**REMEDIES:** If I am in default on this note you have, but are not limited to, the following remedies:
(1) You may demand immediate payment of all I owe you under this note (principal, accrued unpaid interest and other accrued charges).
(2) You may set off this debt against any right I have to the payment of money from you, subject to the terms of the "Set-Off" paragraph herein.
(3) You may demand security, additional security, or additional parties to be obligated to pay this note as a condition for not using any other remedy.
(4) You may refuse to make advances to me or allow purchases on credit by me.
(5) You may use any remedy you have under state or federal law.

By selecting any one or more of these remedies you do not give up your right to later use any other remedy. By waiving your right to declare an event to be a default, you do not waive your right to later consider the event as a default if it continues or happens again.

**COLLECTION COSTS AND ATTORNEY'S FEES:** I agree to pay all costs of collection, replevin or any other or similar type of cost if I am in default. In addition, if you hire an attorney to collect this note, I also agree to pay any fee you incur with such attorney plus court costs (except where prohibited by law). To the extent permitted by the United States Bankruptcy Code, I also agree to pay the reasonable attorney's fees and costs you incur to collect this debt as awarded by any court exercising jurisdiction under the Bankruptcy Code.

**WAIVER:** I give up my rights to require you to do certain things. I will not require you to:
(1) demand payment of amounts due (presentment);
(2) obtain official certification of nonpayment (protest); or
(3) give notice that amounts due have not been paid (notice of dishonor).

I waive any defenses I have based on suretyship or impairment of collateral.

**OBLIGATIONS INDEPENDENT:** I understand that I must pay this note even if someone else has also agreed to pay it (by, for example, signing this form or a separate guarantee or endorsement). You may sue me alone, or anyone else who is obligated on this note, or any number of us together, to collect this note. You may do so without any notice that it has not been paid (notice of dishonor). You may without notice release any party to this agreement without releasing any other party. If you give up any of your rights, with or without notice, it will not affect my duty to pay this note. Any extension of new credit to any of us, or renewal of this note by all or less than all of us will not release me from my duty to pay it. (Of course, you are entitled to only one payment in full.) I agree that you may at your option extend this note or the debt represented by this note, or any portion of the note or debt, from time to time without limit or notice and for any term, without affecting my liability for payment of the note. I will not assign my obligation under this agreement without your prior written approval.

**FINANCIAL INFORMATION:** I agree to provide you, upon request, any financial statement or information you may deem necessary. I warrant that the financial statements and information I provide to you are or will be accurate, correct and complete.

**NOTICE:** Unless otherwise required by law, any notice to me shall be given by delivering it or by mailing it by first class mail addressed to me at my last known address. My current address is on page 1. I agree to inform you in writing of any change in my address. I will give any notice to you by mailing it first class to your address stated on page 1 of this agreement, or to any other address that you have designated.

| DATE OF TRANSACTION | PRINCIPAL ADVANCE | BORROWER'S INITIALS (not required) | PRINCIPAL PAYMENTS | PRINCIPAL BALANCE | INTEREST RATE | INTEREST PAYMENTS | INTEREST PAID THROUGH: |
|---|---|---|---|---|---|---|---|
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |
| | $ | | $ | $ | % | $ | |

Complete the following for consumer transactions secured by a dwelling.

Loan origination organization

NMLS ID

Loan originator

NMLS ID

Experian ©1984, 1991 Bankers Systems, Inc., St. Cloud, MN Form UN 2/1/2013

745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 1 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

# Real Estate Deed of Trust
### (With Future Advance Clause)

☐ This is a Revolving Credit Arrangement

1. **DATE AND PARTIES.** The date of this Deed of Trust (Security Instrument) is 06-20-2019 and the parties, their addresses and tax identification numbers, if required, are as follows:

   **GRANTOR**    LARDYN CONSULTING, LLC, A NEBRASKA LIMITED LIABILITY COMPANY
   206 N 117TH AVE
   OMAHA, NE 68154-2211

   ☐ If checked, refer to the attached Addendum incorporated herein, for additional Grantors, their signatures and acknowledgments.

   **TRUSTEE**    LOGAN COUNTY PUBLIC TRUSTEE
   315 MAIN STREET PO BOX 151
   STERLING, CO 80751

   **LENDER**    FARMERS STATE BANK - ATKINSON
   605 N MAIN STREET
   PO BOX 909
   ATKINSON, NE 68713-0909

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Grantor's performance under this Security Instrument, Grantor irrevocably grants, conveys and sells to Trustee, in trust for the benefit of Lender, with power of sale, the following described property: SEE EXHIBIT A, ATTACHED HERETO AND MADE A PART HEREOF

745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 2 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

The property is located in  LOGAN                                               at  18503 COUNTY ROAD 42.5
                                        *(County)*
                        , STERLING                                              , Colorado 80571
        *(Address)*                        *(City)*                                *(Zip Code)*

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, crops, timber, all
diversion payments or third party payments made to crop producers, all water and riparian rights, wells, ditches,
reservoirs, and water stock and all existing and future improvements, structures, fixtures, and replacements that
may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

3.  **MAXIMUM OBLIGATION LIMIT.** The total principal amount secured by this Security Instrument at any one time shall
    not exceed $ 3,375,000.00                                            . This limitation of amount does not include interest and
    other fees and charges validly made pursuant to this Security Instrument. Also, this limitation does not apply to
    advances made under the terms of this Security Instrument to protect Lender's security and to perform any of the
    covenants contained in this Security Instrument.

4.  **SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:
    A.  Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt
        described below and all their extensions, renewals, modifications or substitutions. *(When referencing the
        debts below it is suggested that you include items such as borrowers' names, note amounts, interest rates,
        maturity dates, etc.)*  SBA GUARANTEED LOAN #36708070-01 DATED 06-20-2019 WITH A MATURITY DATE OF 06-20-2039 AND
        EXECUTED BY LARDYN CONSULTING, LLC (BORROWER) PAYABLE IN MONTHLY PAYMENTS TO THE ORDER OF BENEFICIARY, WHICH EVIDENCES
        A LOAN TO BORROWER IN THE AMOUNT OF 3,375,000.00 PLUS INTEREST, AND ALL EXTENSIONS, RENEWALS, MODIFICATIONS OR
        SUBSTITUTIONS THEREOF.

    B.  All future advances from Lender to Grantor or other future obligations of Grantor to Lender under any
        promissory note, contract, guaranty, or other evidence of debt existing now or executed after this Security
        Instrument whether or not this Security Instrument is specifically referenced and whether or not such future
        advances or future obligations are incurred for any purpose that is related or unrelated to the purpose of the
        Security Instrument. If more than one person signs this Security Instrument, each Grantor agrees that this
        Security Instrument will secure all future advances and future obligations that are given to or incurred by any
        one or more Grantor, or any one or more Grantor and others. All future advances and other future obligations
        are secured by this Security Instrument even though all or part may not yet be advanced. All future advances
        and other future obligations are secured as if made on the date of this Security Instrument. Nothing in this
        Security Instrument shall constitute a commitment to make additional or future loans or advances in any
        amount. Any such commitment must be agreed to in a separate writing.
    C.  All obligations Grantor owes to Lender, which now exist or may later arise, to the extent not prohibited by
        law, including, but not limited to, liabilities for overdrafts relating to any deposit account agreement between
        Grantor and Lender.
    D.  All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise
        protecting the Property and its value and any other sums advanced and expenses incurred by Lender under
        the terms of this Security Instrument.
    This Security Instrument will not secure any other debt if Lender fails to give any required notice of the right of
    rescission.

5.  **PAYMENTS.** Grantor agrees that all payments under the Secured Debt will be paid when due and in accordance with
    the terms of the Secured Debt and this Security Instrument.

6.  **WARRANTY OF TITLE.** Grantor warrants that Grantor is or will be lawfully seized of the estate conveyed by this
    Security Instrument and has the right to irrevocably grant, convey and sell the Property to Trustee, in trust, with
    power of sale. Grantor also warrants that the Property is unencumbered, except for encumbrances of record.

7.  **PRIOR SECURITY INTERESTS.** With regard to any other mortgage, deed of trust, security agreement or other lien
    document that created a prior security interest or encumbrance on the Property, Grantor agrees:
    A.  To make all payments when due and to perform or comply with all covenants.
    B.  To promptly deliver to Lender any notices that Grantor receives from the holder.

745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 3 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

C. Not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written consent.

8. **CLAIMS AGAINST TITLE.** Grantor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Grantor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Grantor's payment. Grantor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Grantor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Grantor may have against parties who supply labor or materials to maintain or improve the Property.

9. **DUE ON SALE OR ENCUMBRANCE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, any lien, encumbrance, transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law, as applicable. This covenant shall run with the Property and shall remain in effect until the Secured Debt is paid in full and this Security Instrument is released.

10. **TRANSFER OF AN INTEREST IN THE GRANTOR.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Lender may demand immediate payment if:
    A. A beneficial interest in Grantor is sold or transferred.
    B. There is a change in either the identity or number of members of a partnership or similar entity.
    C. There is a change in ownership of more than 25 percent of the voting stock of a corporation or similar entity.
    However, Lender may not demand payment in the above situations if it is prohibited by law as of the date of this Security Instrument.

11. **ENTITY WARRANTIES AND REPRESENTATIONS.** If Grantor is an entity other than a natural person (such as a corporation or other organization), Grantor makes to Lender the following warranties and representations which shall continue as long as the Secured Debt remains outstanding:
    A. Grantor is duly organized and validly existing in the Grantor's state of incorporation or organization. Grantor is in good standing in all states in which Grantor transacts business. Grantor has the power and authority to own the Property and to carry on its business as now being conducted and, as applicable, is qualified to do so in each state in which Grantor operates.
    B. The execution, delivery and performance of this Security Instrument by Grantor and the obligation evidenced by the Secured Debt are within the power of Grantor, have been duly authorized, have received all necessary governmental approval, and will not violate any provision of law, or order of court or governmental agency.
    C. Other than previously disclosed in writing to Lender, Grantor has not changed its name within the last ten years and has not used any other trade or fictitious name. Without Lender's prior written consent, Grantor does not and will not use any other name and will preserve its existing name, trade names and franchises until the Secured Debt is satisfied.

12. **PROPERTY CONDITION, ALTERATIONS AND INSPECTION.** Grantor will keep the Property in good condition and make all repairs that are reasonably necessary. Grantor shall not commit or allow any waste, impairment, or deterioration of the Property. Grantor will keep the Property free of noxious weeds and grasses. Grantor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Grantor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Grantor will notify Lender of all demands, proceedings, claims, and actions against Grantor, and of any loss or damage to the Property.
No portion of the Property will be removed, demolished or materially altered without Lender's prior written consent except that Grantor has the right to remove items of personal property comprising a part of the Property that become worn or obsolete, provided that such personal property is replaced with other personal property at least equal in value to the replaced personal property, free from any title retention device, security agreement or other encumbrance. Such replacement of personal property will be deemed subject to the security interest created by this Security Instrument. Grantor shall not partition or subdivide the Property without Lender's prior written consent. Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Grantor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Grantor will in no way rely on Lender's inspection.

13. **USE OF PROPERTY AND RELATED INDEMNIFICATION.** Grantor shall not use or occupy the property subject to this Security Instrument in any manner that would constitute a violation of any state and/or federal laws involving

745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 4 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

controlled substances, even in a jurisdiction that allows such use by state or local law or ordinance. In the event that Grantor becomes aware of such a violation, Grantor shall take all actions allowed by law to terminate the violating activity.

In addition to all other indemnifications, obligations, rights and remedies contained herein, if the Lender and/or its respective directors, officers, employees, agents and attorneys (each an "Indemnitee") is made a party defendant to any litigation or any claim is threatened or brought against such Indemnitee concerning this Deed of Trust/Security Instrument or the related property or any part thereof or therein or concerning the construction, maintenance, operation or the occupancy or use of such property, then the Grantor shall (to the extent permitted by applicable law) indemnify, defend and hold each Indemnitee harmless from and against all liability by reason of said litigation or claims, including attorneys' fees and expenses incurred by such Indemnitee in connection with any such litigation or claim, whether or not any such litigation or claim is prosecuted to judgment. To the extent permitted by applicable law, the within indemnification shall survive payment of the Secured Debt, and/or any termination, release or discharge executed by the Lender in favor of the Grantor.

Violation of this provision is a material breach of this Security Instrument and thereby constitutes a default under the terms and provisions of this Security Instrument.

14. **AUTHORITY TO PERFORM.** If Grantor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Grantor appoints Lender as attorney in fact to sign Grantor's name or pay any amount necessary for performance. Lender's right to perform for Grantor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument. If any construction on the Property is discontinued or not carried on in a reasonable manner, Lender may take all steps necessary to protect Lender's security interest in the Property, including completion of the construction.

15. **ASSIGNMENT OF LEASES AND RENTS.** Grantor irrevocably assigns, grants and conveys to Lender as additional security all the right, title and interest in the following (Property).
    A. Existing or future leases, subleases, licenses, guaranties and any other written or verbal agreements for the use and occupancy of the Property, including but not limited to, any extensions, renewals, modifications or replacements (Leases).
    B. Rents, issues and profits, including but not limited to, security deposits, minimum rents, percentage rents, additional rents, common area maintenance charges, parking charges, real estate taxes, other applicable taxes, insurance premium contributions, liquidated damages following default, cancellation premiums, "loss of rents" insurance, guest receipts, revenues, royalties, proceeds, bonuses, accounts, contract rights, general intangibles, and all rights and claims which Grantor may have that in any way pertain to or are on account of the use or occupancy of the whole or any part of the Property (Rents).

In the event any item listed as Leases or Rents is determined to be personal property, this Assignment will also be regarded as a security agreement.

Grantor will promptly provide Lender with copies of the Leases and will certify these Leases are true and correct copies. The existing Leases will be provided on execution of the Assignment, and all future Leases and any other information with respect to these Leases will be provided immediately after they are executed. Grantor may collect, receive, enjoy and use the Rents so long as Grantor is not in default. Grantor will not collect in advance any Rents due in future lease periods, unless Grantor first obtains Lender's written consent. Upon default, Grantor will receive any Rents in trust for Lender and Grantor will not commingle the Rents with any other funds. When Lender so directs, Grantor will endorse and deliver any payments of Rents from the Property to Lender. Amounts collected will be applied at Lender's discretion to the Secured Debts, the costs of managing, protecting and preserving the Property, and other necessary expenses. Grantor agrees that this Security Instrument is immediately effective between Grantor and Lender. This Security Instrument will remain effective during any statutory redemption period until the Secured Debts are satisfied. Unless otherwise prohibited or prescribed by state law, Grantor agrees that Lender may take actual possession of the Property without the necessity of commencing any legal action or proceeding. Grantor agrees that actual possession of the Property is deemed to occur when Lender notifies Grantor of Grantor's default and demands that Grantor and Grantor's tenants pay all Rents due or to become due directly to Lender. Immediately after Lender gives Grantor the notice of default, Grantor agrees that either Lender or Grantor may immediately notify the tenants and demand that all future Rents be paid directly to Lender.

As long as this Assignment is in effect, Grantor warrants and represents that no default exists under the Leases, and the parties subject to the Leases have not violated any applicable law on leases, licenses and landlords and tenants. Grantor, at its sole cost and expense, will keep, observe and perform, and require all other parties to the

745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 5 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

Leases to comply with the Leases and any applicable law. If Grantor or any party to the Lease defaults or fails to observe any applicable law, Grantor will promptly notify Lender. If Grantor neglects or refuses to enforce compliance with the terms of the Leases, then Lender may, at Lender's option, enforce compliance.

Grantor will not sublet, modify, extend, cancel, or otherwise alter the Leases, or accept the surrender of the Property covered by the Leases (unless the Leases so require) without Lender's consent. Grantor will not assign, compromise, subordinate or encumber the Leases and Rents without Lender's prior written consent. Lender does not assume or become liable for the Property's maintenance, depreciation, or other losses or damages when Lender acts to manage, protect or preserve the Property, except for losses and damages due to Lender's gross negligence or intentional torts. Otherwise, Grantor will indemnify Lender and hold Lender harmless for all liability, loss or damage that Lender may incur when Lender opts to exercise any of its remedies against any party obligated under the Leases.

16. **LEASEHOLDS; CONDOMINIUMS; PLANNED UNIT DEVELOPMENTS.** Grantor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Grantor will perform all of Grantor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

17. **DEFAULT.** Grantor will be in default if any of the following occur:
   A. Any party obligated on the Secured Debt fails to make payment when due;
   B. A breach of any term or covenant in this Security Instrument or any other document executed for the purpose of creating, securing or guaranlying the Secured Debt;
   C. The making or furnishing of any verbal or written representation, statement or warranty to Lender that is false or incorrect in any material respect by Grantor or any person or entity obligated on the Secured Debt;
   D. The death, dissolution, or insolvency of, appointment of a receiver for, or application of any debtor relief law to, Grantor or any other person or entity obligated on the Secured Debt;
   E. A good faith belief by Lender at any time that Lender is insecure with respect to any person or entity obligated on the Secured Debt or that the prospect of any payment is impaired or the value of the Property is impaired;
   F. A material adverse change in Grantor's business including ownership, management, and financial conditions, which Lender in its opinion believes impairs the value of the Property or repayment of the Secured Debt; or
   G. Default shall also exist if any loan proceeds are used for a purpose that will contribute to excessive erosion of highly erodible land or to the conversion of wetland to produce or to make possible the production of an agricultural commodity, as provided by 7 CFR Part 12.

18. **REMEDIES ON DEFAULT.** In some instances, federal and state law will require Lender to provide Grantor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Subject to these limitations, if any, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Grantor is in default.

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or anytime thereafter. In addition, Lender shall be entitled to all the remedies provided by law, the terms of the Secured Debt, this Security Instrument and related documents, including without limitation, the power to sell the Property or foreclose on installments without acceleration.

If there is a default, Trustee shall, in addition to any other permitted remedy, at the request of the Lender, advertise and sell the Property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Grantor at such time and place as Trustee designates. Trustee shall give notice of sale including the time, terms and place of sale and a description of the Property to be sold as required by the applicable law in effect at the time of the proposed sale.

Upon sale of the Property and to the extent not prohibited by law, Trustee shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser, and after first paying all fees, charges and costs, shall pay to Lender all moneys advanced for repairs, taxes, insurance, liens, assessments and prior encumbrances and interest thereon, and the principal and interest on the Secured Debt, paying the surplus, if any, to Grantor. Lender may purchase the Property. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

All remedies are distinct, cumulative and not exclusive, and the Lender is entitled to all remedies provided at law or equity, whether or not expressly set forth. The acceptance by Lender of any sum in payment or partial payment on

745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 6 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require full and complete cure of any existing default. By not exercising any remedy on Grantor's default, Lender does not waive Lender's right to later consider the event a default if it continues or happens again.

19. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** Except when prohibited by law, Grantor agrees to pay all of Lender's expenses if Grantor breaches any covenant in this Security Instrument. Grantor will also pay on demand any amount incurred by Lender for insuring, inspecting, preserving or otherwise protecting the Property and Lender's security interest. These expenses will bear interest from the date of the payment until paid in full at the highest interest rate in effect as provided in the terms of the Secured Debt. Grantor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. This Security Instrument shall remain in effect until released. Grantor agrees to pay for any recordation costs of such release.

20. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste," "hazardous substance," or "regulated substance" under any Environmental Law.

Grantor represents, warrants and agrees that:

A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance has been, is, or will be located, transported, manufactured, treated, refined, or handled by any person on, under or about the Property, except in the ordinary course of business and in strict compliance with all applicable Environmental Law.

B. Except as previously disclosed and acknowledged in writing to Lender, Grantor has not and will not cause, contribute to, or permit the release of any Hazardous Substance on the Property.

C. Grantor will immediately notify Lender if (1) a release or threatened release of Hazardous Substance occurs on, under or about the Property or migrates or threatens to migrate from nearby property; or (2) there is a violation of any Environmental Law concerning the Property. In such an event, Grantor will take all necessary remedial action in accordance with Environmental Law.

D. Except as previously disclosed and acknowledged in writing to Lender, Grantor has no knowledge of or reason to believe there is any pending or threatened investigation, claim, or proceeding of any kind relating to (1) any Hazardous Substance located on, under or about the Property; or (2) any violation by Grantor or any tenant of any Environmental Law. Grantor will immediately notify Lender in writing as soon as Grantor has reason to believe there is any such pending or threatened investigation, claim, or proceeding. In such an event, Lender has the right, but not the obligation, to participate in any such proceeding including the right to receive copies of any documents relating to such proceedings.

E. Except as previously disclosed and acknowledged in writing to Lender, Grantor and every tenant have been, are and shall remain in full compliance with any applicable Environmental Law.

F. Except as previously disclosed and acknowledged in writing to Lender, there are no underground storage tanks, private dumps or open wells located on or under the Property and no such tank, dump or well will be added unless Lender first consents in writing.

G. Grantor will regularly inspect the Property, monitor the activities and operations on the Property, and confirm that all permits, licenses or approvals required by any applicable Environmental Law are obtained and complied with.

H. Grantor will permit, or cause any tenant to permit, Lender or Lender's agent to enter and inspect the Property and review all records at any reasonable time to determine (1) the existence, location and nature of any Hazardous Substance on, under or about the Property; (2) the existence, location, nature, and magnitude of any Hazardous Substance that has been released on, under or about the Property; or (3) whether or not Grantor and any tenant are in compliance with applicable Environmental Law.



745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 7 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

I. Upon Lender's request and at any time, Grantor agrees, at Grantor's expense, to engage a qualified environmental engineer to prepare an environmental audit of the Property and to submit the results of such audit to Lender. The choice of the environmental engineer who will perform such audit is subject to Lender's approval.

J. Lender has the right, but not the obligation, to perform any of Grantor's obligations under this section at Grantor's expense.

K. As a consequence of any breach of any representation, warranty or promise made in this section, (1) Grantor will indemnify and hold Lender and Lender's successors or assigns harmless from and against all losses, claims, demands, liabilities, damages, cleanup, response and remediation costs, penalties and expenses, including without limitation all costs of litigation and attorneys' fees, which Lender and Lender's successors or assigns may sustain; and (2) at Lender's discretion, Lender may release this Security Instrument and in return Grantor will provide Lender with collateral of at least equal value to the Property secured by this Security Instrument without prejudice to any of Lender's rights under this Security Instrument.

L. Not withstanding any of the language contained in this Security Instrument to the contrary, the terms of this section shall survive any foreclosure or satisfaction of this Security Instrument regardless of any passage of title to Lender or any disposition by Lender of any or all of the Property. Any claims and defenses to the contrary are hereby waived.

21. **CONDEMNATION.** Grantor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Grantor authorizes Lender to intervene in Grantor's name in any of the above described actions or claims. Grantor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

22. **INSURANCE.** Grantor agrees to maintain insurance as follows:

A. Grantor shall keep the Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Grantor subject to Lender's approval, which shall not be unreasonably withheld. If Grantor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Grantor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Grantor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Grantor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Grantor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of scheduled payment nor change the amount of any payments. Any excess will be paid to the Grantor. If the Property is acquired by Lender, Grantor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

B. Grantor agrees to maintain comprehensive general liability insurance naming Lender as an additional insured in an amount acceptable to Lender, insuring against claims arising from any accident or occurrence in or on the Property.

C. Grantor agrees to maintain rental loss or business interruption insurance, as required by Lender, in an amount equal to at least coverage of one year's debt service, and required escrow account deposits (if agreed to separately in writing), under a form of policy acceptable to Lender.

23. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Grantor will not be required to pay to Lender funds for taxes and insurance in escrow.

24. **FINANCIAL REPORTS AND ADDITIONAL DOCUMENTS.** Grantor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Grantor agrees to sign, deliver, and file any

745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 8 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Grantor's obligations under this Security Instrument and Lender's lien status on the Property.

25. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Grantor signs this Security Instrument but does not sign an evidence of debt, Grantor does so only to mortgage Grantor's interest in the Property to secure payment of the Secured Debt and Grantor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Grantor, Grantor agrees to waive any rights that may prevent Lender from bringing any action or claim against Grantor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. Grantor agrees that Lender and any party to this Security Instrument may extend, modify or make any change in the terms of this Security Instrument or any evidence of debt without Grantor's consent. Such a change will not release Grantor from the terms of this Security Instrument. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Grantor and Lender.

26. **APPLICABLE LAW; SEVERABILITY; INTERPRETATION.** This Security Instrument is governed by the laws of the jurisdiction in which Lender is located, except to the extent otherwise required by the laws of the jurisdiction where the Property is located. This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

27. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one grantor will be deemed to be notice to all grantors.

28. **WAIVERS.** Except to the extent prohibited by law, Grantor waives all appraisement, homestead exemption and marshalling of liens and assets relating to the Property.

29. **U.C.C. PROVISIONS.** If checked, the following are applicable to, but do not limit, this Security Instrument:

☐ **Construction Loan.** This Security Instrument secures an obligation incurred for the construction of an improvement on the Property.

☐ **Fixture Filing.** Grantor grants to Lender a security interest in all goods that Grantor owns now or in the future and that are or will become fixtures related to the Property.

☐ **Crops; Timber; Minerals; Rents, Issues and Profits.** Grantor grants to Lender a security interest in all crops, timber, and minerals located on the Property as well as all rents, issues, and profits of them including, but not limited to, all Conservation Reserve Program (CRP) and Payment in Kind (PIK) payments and similar governmental programs (all of which shall also be included in the term "Property").

☐ **Personal Property.** Grantor grants to Lender a security interest in all personal property located on or connected with the Property, including all farm products, inventory, equipment, accounts, documents, instruments, chattel paper, general intangibles, and all other items of personal property Grantor owns now or in the future and that are used or useful in the construction, ownership, operation, management, or maintenance of the Property (all of which shall also be included in the term "Property"). The term "personal property" specifically excludes that property described as "household goods" secured in connection with a "consumer" loan as those terms are defined in applicable federal regulations governing unfair and deceptive credit practices.

☐ **Filing As Financing Statement.** Grantor agrees and acknowledges that this Security Instrument also suffices as a financing statement and any carbon, photographic or other reproduction may be filed of record for purposes of Article 9 of the Uniform Commercial Code.

30. **OTHER TERMS.** If checked, the following are applicable to this Security Instrument:

☐ **Line of Credit.** The Secured Debt includes a revolving line of credit provision. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

Agricultural/Commercial Real Estate Security Instrument-CO
Bankers Systems™ VMP®
Wolters Kluwer Financial Services © 1994, 2001

AGCO-RESI-CO 6/1/2017
Page 8 of 11

```
745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 9 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co
```

☒ **Agricultural Property.** Grantor covenants and warrants that the Property will be used principally for agricultural or farming purposes and that Grantor is an individual or entity allowed to own agricultural land as specified by law.

☐ **Separate Assignment.** The Grantor has executed or will execute a separate assignment of leases and rents. If the separate assignment of leases and rents is properly executed and recorded, then the separate assignment will supersede this Security Instrument's "Assignment of Leases and Rents" section.

☒ **Additional Terms.** THE LOAN SECURED BY THIS LIEN WAS MADE UNDER A UNITED STATES SMALL BUSINESS ADMINISTRATION (SBA) NATIONWIDE PROGRAM WHICH USES TAX DOLLARS TO ASSIST SMALL BUSINESS OWNERS. IF THE UNITED STATES IS SEEKING TO ENFORCE THIS DOCUMENT, THEN UNDER SBA REGULATIONS:

A)  WHEN SBA IS THE HOLDER OF THE NOTE, THIS DOCUMENT AND ALL DOCUMENTS EVIDENCING OR SECURING THIS LOAN WILL BE CONSTRUED IN ACCORDANCE WITH FEDERAL LAW.

B)  LENDER OR SBA MAY USE LOCAL OR STATE PROCEDURES FOR PURPOSES SUCH AS FILING PAPERS, RECORDING DOCUMENTS, GIVING NOTICE, FORECLOSING LIENS, AND OTHER PURPOSES. BY USING THESE PROCEDURES, SBA DOES NOT WAIVE ANY FEDERAL IMMUNITY FROM LOCAL OR STATE CONTROL, PENALTY, TAX OR LIABILITY. NO BORROWER OR GUARANTOR MAY CLAIM OR ASSERT AGAINST SBA ANY LOCAL OR STATE LAW TO DENY ANY OBLIGATION OF BORROWER, OR DEFEAT ANY CLAIM OR SBA WITH RESPECT TO THIS LOAN.

ANY CLAUSE IN THIS DOCUMENT REQUIRING ARBITRATION IS NOT ENFORCEABLE WHEN SBA IS THE HOLDER OF THE NOTE SECURED BY THIS INSTRUMENT.

```
745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 10 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co
```

**SIGNATURES.** By signing below, Grantor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Grantor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

LARDYN CONSULTING, LLC

_Elyce M York_     6/20/99
ELYCE M. YORK, MEMBER     **Date**
               _(Seal)_

_Mark A. Pauling_     6/20/19
MARK A. PAULING, MEMBER     **Date**
               _(Seal)_

               **Date**
               _(Seal)_

               **Date**
               _(Seal)_

☐ Refer to the attached _Signature Addendum_ for additional parties and signatures.

745310 07/01/2019 11:02 AM B: 01033 P: 493 DT
Page: 11 of 13 R $73.00 D $0.00 T $73.00
Pamela M. Bacon Clerk & Recorder, Logan County, Co

**ACKNOWLEDGMENT**

(Individual)

STATE OF                          , COUNTY OF                                      } ss.
This record was acknowledged before me on
by
My commission expires:

_____
*Signature of Notarial Officer*

(Business
or Entity
Acknowledgment)

STATE OF  NEBRASKA                  , COUNTY OF Morrill                          } ss.
This record was acknowledged before me on          06-20-2019
by ELYCE M. YORK, MEMBER; MARK A. PAULING, MEMBER

*(Title(s))*

*(Name of Business or Entity)*

of   LARDYN CONSULTING, LLC                                      on behalf of the business or entity.
a   NEBRASKA LIMITED LIABILITY COMPANY
My commission expires:

> General Notary - State of Nebraska
> **STEPHEN E. STULL**
> My Comm. Exp. Jan. 8, 2023.

_____
*Signature of Notarial Officer*



EXHIBIT "A"

<u>Township 9 North, Range 52 West of the 6th P.M., Logan County, Colorado:</u>
<u>Section 18:</u> S1/2NE1/4 and S1/2, AND a tract of land of land containing approximately 30,000 square feet and lying in a bend of Cedar Creek North of the South line of said NW1/4, described as: Beginning at a point from whence the quarter corner of the West line of Section 18 bears South 88°50' West 1622 feet; thence North 26°35' East 110 feet; thence North 48°10' East 40 feet; thence North 60°50' East 70 feet; thence South 78°15' East 50 feet; thence South 57°20' East 50 feet; thence South 48°0' East 60 feet; thence South 49°30' East 126 feet; thence South 88°50' West 340 feet to the point of beginning.

EXCEPTING from the SW1/4 a tract of land described as: Beginning at a point from whence the quarter corner on the West line of Section 18 bears South 88°50' West 1255 feet; thence South 37°30' East 41 feet; thence South 52°12' East 43 feet; thence South 65°36' East 31 feet; thence South 66°15' East 136 feet; thence North 49° East 90 feet; thence North 5°15' East 85 feet; thence South 88°50' West 300 feet to the place of beginning (containing less than one acre, being approximately 25,000 square feet).

<u>Section 19:</u> N1/2 and SE1/4

<u>Section 30:</u> NE1/4NE1/4

<u>Township 9 North, Range 53 West of the 6th P.M., Logan County, Colorado</u>
<u>Section 13:</u> E1/2 and SE1/4SW1/4

EXCEPTING from the NE1/4 of Section 13, Township 9 North, Range 53 West of the Sixth Principal Meridian, Logan County, Colorado more particularly described as: Beginning at the Northeast corner of said Section 13; thence South 0°22'40" East along the East line of said Section 13 a distance of 2133.67 feet; thence North 88°39'25" West a distance of 53.86 feet; thence North 61°02'35" West a distance of 454.47 feet; thence North 61°51'40" West a distance of 373.40 feet; thence North 60°11'20" West a distance of 273.00 feet; thence North 49°57'05" West a distance of 247.48 feet; thence North 57°24'15" West a distance of 110.53 feet; thence North 62°59'20" West a distance of 183.97 feet; thence North 59°47'15" West a distance of 113.83 feet; thence North 56°47'10" West a distance of 197.94 feet; thence North 73°25'35" West a distance of 48.42 feet; thence South 78°53'50" West a distance of 95.24 feet; thence North 2°07'10" East a distance of 481.13 feet; thence North 0°50'30" East a distance of 654.60 feet to a point on the North line of said Section 13; thence North 89°56'50" East along the North line on said Section 13 a distance of 1826.44 feet to the point of beginning, subject to county road rights-of-way along the North and East lines of said Section 13

TOGETHER WITH an Access and Utility Easement in the Northeast Quarter (NE1/4) of Section 13, Township 9 North, Range 53 West of the Sixth Principal Meridian, Logan County, Colorado, said easement being 10 feet on each side of the following described centerline: Commencing at the Northeast corner of said Section 13; thence South 0°22'40" East along the East line of said Section 13 a distance of 2133.67 feet to the true point of beginning; thence North 88°39'25" West a distance of 53.86 feet; thence North 61°02'35" West a distance of 454.47 feet; thence North 61°51'40" West a distance of 373.40 feet; thence North 60°11'20" West a distance of 273.00 feet; thence North 49°57'05" West a distance of 247.48 feet; thence North 57°24'15" West a distance of 110.53 feet; thence North 62°59'20" West a distance of 183.97 feet; thence North 59°47'15" West a distance of 113.83 feet; thence North 56°47'10" West a distance of 197.94 feet; thence South 78°53'50" West a distance of 95.24 feet; thence North 2°07'10" East a distance of 481.13; thence North 0°50'30" East a distance of 654.60 feet and terminating at a point on the North line of said Section 13, subject to County Road Rights-of-Way along the North and East lines of said Section 13.

SAVING, EXCEPTING, AND RESERVING unto grantors an Access and Utility Easement in the Northeast Quarter (NE1/4) of Section 13, Township 9 North, Range 53 West of the Sixth Principal Meridian, Logan County, Colorado, said easement being 10 feet on each side of the following described centerline: Commencing at the Northeast corner of said Section 13; thence South 0°22'40" East along the East line of said Section 13 a distance of 2133.67 feet to the true point of beginning; thence North 88°39'25" West a distance of 53.86 feet; thence North 61°02'35" West a distance of 454.47 feet; thence North 61°51'40" West a distance of 373.40 feet; thence North 60°11'20" West a distance of 273.00 feet; thence North 49°57'05" West a distance of 247.48 feet; thence North 57°24'15" West a distance of 110.53 feet; thence North 62°59'20" West a distance of 183.97 feet; thence North 59°47'15" West a distance of 113.83 feet; thence North 56°47'10" West a distance of 197.94 feet; thence North