# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01224-RBJ-STV

**AMANDA WILSON**, a Michigan citizen,

Plaintiff,

v.

**JONATHAN PAULING**, an individual Colorado citizen, **MARK PAULING**, an individual Colorado citizen, **TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP**, a Colorado General Partnership, **ELYCE YORK**, an individual Nebraska or Colorado citizen, **LARDYN CONSULTING LLC**, a Nebraska Limited Liability Company, and **FARMERS STATE BANK**, a Nebraska Corporation.

Defendants.

_____

## RESPONSE TO LARDYN AND ELYCE YORK'S
## MOTION TO DISMISS [#35]
_____

Plaintiff Amanda Wilson, by and through her attorneys, Aaron D. Goldhamer and Ross W. Pulkrabek of Keating Wagner Polidori Free, P.C., for her Response to Defendants Lardyn Consulting LLC's ("Lardyn") and Elyce York's Motion to Dismiss [#35] ("Motion"), states the following:

### SUMMARY

Not only is Ms. York and Lardyn's reliance on evidence outside the pleadings improper, but the evidence of new transfers that they submit and arguments they make in the Motion support Plaintiff's claims: Defendants transferred assets from Jonathan Pauling's business, Two Mile Ranch, to Lardyn in order to circumvent the charging order entered by the Denver District Court and shield millions of dollars in equity from Plaintiff Amanda Wilson's collection efforts. In late June and July 2019—<u>after</u> this case was filed and service effectuated on the Pauling brothers—Defendants created and signed new documents purporting to encumber the assets that they

1

transferred from Two Mile Ranch to Lardyn with $3,375,000 in additional debt. [#35-7 at pp. 6-21]. The fact that Defendant Farmers State Bank ("FSB") loaned an additional $3,375,000 against the assets transferred to Lardyn highlights (i) how the asset transfer was not an "arms length transaction" between Two Mile Ranch and Lardyn and (ii) how Defendants merely transferred those assets between companies controlled by Jonathan Pauling for considerably less than those assets were worth. Although Defendants make unsupported allegations that the assets transferred from Two Mile Ranch to Lardyn were fully encumbered at the time of the transfer, the fact that FSB loaned an additional $3,375,000 against the assets almost immediately after Defendants were served with this lawsuit shows that there was substantial equity in the assets (*i.e.,* they were not fully encumbered, or FSB would not have loaned additional money against those assets). Had the assets been sold for fair market value, at least $3,375,000 in equity would have been subject to the Denver District Court's charging order and available to reduce the balance owed to Plaintiff on her judgment. In sum, Ms. York and Lardyn's Motion—and especially the evidence of the new $3,375,000 loan—only tends to make Plaintiff's case that she is the victim of a conspiracy between Defendants to hinder her efforts to collect her judgment.

In addition, Ms. York and Lardyn make the argument that the Court should dismiss Plaintiff's claims against her because it is "gender stereotyping" to for Plaintiff allege that Ms. York is a straw person for Jonathan Pauling. The Court should reject that argument. Plaintiff alleges numerous facts showing that Ms. York is acting as a proxy for Jonathan Pauling.

Finally, Ms. York and Lardyn confuse several concepts and defined terms under the Colorado Uniform Fraudulent Transfer Act ("CUFTA") by arguing that because Two Mile Ranch is not a judgment debtor, the asset transfer cannot support a CUFTA claim. The essence of the transfer here was to render Jonathan Pauling's ownership of Two Mile Ranch valueless and to

circumvent a charging order that the Denver District Court had entered against Two Mile Ranch to facilitate Plaintiff's collection of her judgment. Under CUFTA, the concepts of "claim," "transfer," and "debtor" are broad and encompass the scheme that Defendants perpetrated to shield more than $3 million from Plaintiff's collection efforts.

### GENERAL BACKGROUND AND FACTUAL ALLEGATIONS PLED IN AMENDED COMPLAINT AND LARDYN AND MS. YORK'S MOTION

Plaintiff incorporates by reference the recitation of factual allegations in her Amended Complaint set forth in ¶¶ 1-6 of her Response to FSB's Motion to Dismiss [#35]. Plaintiff will not belabor those facts again here but refers to them in her arguments below.[1]

### STANDARD FOR RULING ON A MOTION UNDER FED.R.CIV.P. 12(b)(6)

To withstand a motion to dismiss, a complaint must contain "enough factual matter (taken as true) to" entitle the plaintiff to relief.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (emphasis added).  These allegations must "state a claim to relief that is plausible on its face." *Id.* at 570.  A plausible claim is a claim that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[S]o long as the plaintiff offers sufficient factual allegations such that the right to relief is raised above the speculative level, [she] has met the threshold pleading standard." *Free the Nipple - Fort*

---

[1] To offer a brief synopsis, (1) Plaintiff obtained a jury verdict in state court against Defendant Jon Pauling arising out of a sexual assault in October of 2015 that was reduced to a judgment in excess of $4 million ([#15-1 at ¶¶ 10-13]; *see also* n. 1, *supra*); (2) Plaintiff has not collected any part of her judgment, and Jon Pauling has denied having any income or assets ([#15-1 at ¶ 12]); (3) The Pauling brothers have operating a farm, ranch, and feedlot business as 50% partners through the Two Mile Ranch general partnership since the 1980s ([#15-1 at ¶¶ 17-18]); (4) Plaintiff obtained a charging order against Two Mile Ranch, but never received money through that charging order ([#15-1 at ¶ 20]); (5) The Pauling brothers worked together to fraudulently transfer Jonathan Pauling's interest in Two Mile Ranch as between them ([#15-1 at ¶¶ 14, 21-24]); and (6) Defendants worked together to transfer Jonathan Pauling's business operations from Two Mile Ranch to Lardyn, the members of which are Jon Pauling's girlfriend Elyce York and his brother Mark Pauling ([#15-1 at ¶¶ 25-41]).

*Collins v. City of Fort Collins*, 216 F. Supp. 3d 1258, 1262 (D. Colo. 2016) (citations omitted). The court's function at the motion to dismiss stage "is not to make factual findings or to decide the merits of the parties' arguments as defendant would have it, but rather to assess whether [the plaintiff] adequately allege[s] a [claim]." *Id.* at 1264 (citations omitted).

## LEGAL AUTHORITIES CONCERNING FRAUDULENT TRANSFERS

Fraudulent transfer laws have existed for centuries to address all manners of schemes imagined by mankind to evade creditors. The original fraudulent transfer act, the Statute of 13 Elizabeth, was enacted in 1571. *See Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1587 (2016); *see also* the authorities cited in Plaintiff's Response to Farmers State Bank's Motion to Dismiss [#34], which Plaintiff incorporates herein by reference. The colorfully worded preamble of the Statute of 13 Elizabeth recognizes that there is no limit to the methods by which creative and unscrupulous debtors will attempt to shield their assets from the reach of their creditors, and a functioning civil justice system requires that courts have the power to remedy asset transfers that are intended to hinder, delay, and defraud creditors.

The Colorado Uniform Fraudulent Transfer Act ("CUFTA"), C.R.S. §§ 38-8-101, *et seq.*, broadly encompasses the creative means by which debtors may seek to hinder, delay, and defraud creditors. CUFTA defines "transfer" broadly as "every mode, direct or indirect, absolute or conditional, voluntary and involuntary, of disposing of or parting with an asset or an interest in an asset...." C.R.S. § 38-8-102(13). A "claim" is broadly defined as "a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." C.R.S. § 38-8-102(3). A "creditor" broadly includes both judgment creditors as well as persons whose claims against a debtor have not yet been liquidated. *Sands v. New Age Family P'ship, Ltd.*, 897 P.2d 917, 920

4

(Colo. App. 1995); C.R.S. § 38-8-102 cmt. (4); *see also* Fed.R.Civ.P. 18(b) ("[A] plaintiff may state a claim for money and a claim to have set aside a conveyance fraudulent as to him, without first having obtained a judgment establishing the claim for money"). "Debtor" broadly means "a person who is liable on a claim." C.R.S. § 38-8-102(7). "Property" means "anything that may be the subject of ownership." C.R.S. § 38-8-102(11).

CUFTA provides a remedy for any transfer that is made "with actual intent to hinder, delay, or defraud any creditor of the debtor." C.R.S. §§ 38-8-105(1)(a), 38-8-108. An action for civil conspiracy to hinder, delay, or defraud a creditor in violation of CUFTA is actionable and is intended to ensure "that equity will not be outwitted and frustrated by the willful and calculated acts of the debtor and those who aid and abet him." *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.*, 97 P.3d 140, 146-147 (Colo. App. 2003) (citations, internal quotation marks, and ellipses omitted).

## ARGUMENT

Not only does Ms. York and Lardyn's Motion suffer from the same infirmities as the motion to dismiss filed by FSB, but it goes a long way toward proving Plaintiff's claims. Rather amazingly—Plaintiff was unaware of this until Ms. York and Lardyn filed the Motion—Defendants further advanced their scheme Ranch to protect $3,375,000 in equity from Plaintiff's reach *after* Plaintiff served process in this case on Defendants Jonathan Pauling, Mark Pauling, and Two Mile. Specifically, Ms. York and Lardyn state that "on June 20, 2019, FSB recorded a Deed of Trust in Logan County securing an SBA loan to Lardyn in the maximum amount of $3,375,000" and "encumbered the real property acquired by Lardyn from TMR." Motion at 5 ¶ 17. Here, Ms. York and Lardyn essentially are making Plaintiff's point for her—namely, that

Defendants transferred Two Mile Ranch's assets to Lardyn to shield substantial equity from Plaintiff's judgment collection efforts.

It is entirely plausible that Defendants, including Ms. York and Lardyn, have conspired to hinder, delay, and defraud Plaintiff in her efforts to collect her judgment. Jonathan Pauling owes millions of dollars to Plaintiff on a duly entered civil judgment arising from a sexual assault. [#15-1 at ¶¶ 10-14]. The Denver District Court found that Jonathan Pauling's deviousness, maliciousness, and depravity toward Plaintiff was so extreme as to warrant increasing the jury's punitive damage award. [#1-1].

To facilitate Plaintiff's collection of her judgment, the Denver District Court entered a charging order against Jonathan Pauling's business enterprise, Two Mile Ranch. [#15-1 at ¶ 20]. Jonathan Pauling initially tried to frustrate Plaintiff's judgment collection efforts by working with his brother Mark Pauling to fraudulently backdate a document suggesting that Jonathan Pauling owns only 10% of Two Mile Ranch rather than 50%. [#15-1 at ¶¶ 21-23]. The rather obvious intention behind this sham was to hinder Plaintiff's ability to collect her judgment through actions in derogation of the charging order against Two Mile Ranch.

Defendants later decided to transfer the business entirely from Two Mile Ranch to Lardyn. To that end, Defendants used the Pauling brothers' lawyers to create Lardyn and designated Jonathan Pauling's girlfriend Elyce York to be the manager. [#15-1 at ¶¶ 25-32]. The Pauling brothers compensated Ms. York for her involvement in the scheme by giving her real property or other benefits. [#15-1 at ¶ 32]. Defendants then transferred Two Mile Ranch's assets to Lardyn for $4,270,000. [#15-1 at ¶ 35]. The Pauling brothers are simply continuing their business at the same location they always have done business, only now they transact business through Lardyn. [#15-1 at ¶ 36].

6

To reiterate the new and additional evidence that Ms. York and Lardyn themselves have supplied in their Motion, Defendants collaborated after this lawsuit was filed to encumber the property with an additional $3,375,000 in debt. Thus, Ms. York and Lardyn somewhat unwittingly make the point that Defendants' scheme shifted millions of dollars in equity from Two Mile Ranch to Lardyn in circumvention of the Denver District Court's charging order.

### A. The Court should disregard Ms. York and Lardyn's unsupported "Gender Stereotyping" argument.

The Court should disregard Ms. York and Lardyn's lead argument that "gender stereotyping" renders Plaintiff's allegations implausible. Motion at 6. This argument—which is unsupported by any legal authority—ignores previously adjudicated facts that Plaintiff also has alleged in her pleadings: that Jon Pauling employed Plaintiff to groom her for sexual assault, and that he then employed Ms. York in a similar manner, warranting the increase of punitive damages against Jon Pauling. [#15-1 at ¶ 14; #1-1 at pp. 5-6]. Ms. York is Jonathan Pauling's girlfriend. [#15-1 at ¶ 14]. Mr. Pauling has allowed Ms. York to live in one of his properties rent free. *Id.* Plaintiff alleges that Ms. York has no background as a farmer, rancher, or feedlot operator. [#15 at ¶ 37].

Revealingly, even though Mark Pauling is the only member of Lardyn other than Ms. York, Mark Pauling claimed never to have met Ms. York. [#15-1 at ¶ 33]. It defies common sense that Mark Pauling would entrust the management of the multi-million business that he has operated with Jonathan Pauling since the 1980s to a woman he has never met. A reasonable inference from Plaintiff's factual allegations is that Ms. York is merely a straw person for Jonathan Pauling.

Ms. York and Lardyn make no effort argue that Ms. York has credentials to manage a farm, ranch, and feedlot business. Given the entirety of Plaintiff's allegations, it is perfectly plausible

7

that Ms. York is a proxy for Jonathan Pauling and that Lardyn is a front for the Pauling brothers' continued ranching operations that have been transferred to hinder Plaintiff's collection efforts.

### B. Plaintiff has pled a plausible claim for relief with respect to the transfer of Jon Pauling and Mark Pauling's business operations from Two Mile Ranch to Lardyn.

Plaintiff has alleged facts that show a plausible claim against Ms. York and Lardyn for engaging in a civil conspiracy with Jon Pauling, Mark Pauling, and FSB to hinder, delay, and defraud Plaintiff in her efforts to collect her judgment. Although Jon Pauling asserts that he personally owns no assets and has no income ([#15 at ¶ 12]), he continuously has been running a farm, ranch, and feedlot business with several million dollars in assets. That is precisely why the Denver District Court imposed a charging order on Two Mile Ranch as the partnership through which Jon Pauling runs his business.

As already noted, rather than honor that charging order and continue conducting business under Two Mile Ranch, Jonathan Pauling and Mark Pauling engaged in various efforts to avoid the charging order. The first effort involved the sham backdating of documents purporting to transfer most of Jonathan Pauling's interest to Mark Pauling. Later, they invented Lardyn as a new sham entity, designated Jonathan Pauling's girlfriend Elyce York to be the titular manager and serves as a proxy for Jon Pauling, and transferred Two Mile Ranch's assets to Lardyn for substantially less than the fair value of those assets. The fact that the transfers were not arms-length and were not for fair value is borne out by the arguments and exhibits that Ms. York and Lardyn attach to the Motion, which show that Defendants engaged in further transactions after Plaintiff filed this lawsuit to shield $3,375,000 in equity in the transferred assets.

A fair inference is that Defendants engaged in these complicated maneuvers to evade the charging order that Judge Buchanan entered against Two Mile Ranch, conceal Jon Pauling's continuing business activities from scrutiny, and hinder Plaintiff from collecting her judgment.

8

Quite frankly, there is no logical explanation for these activities other than that Defendants sought to continue the Pauling brothers' business operations in a manner that would enable them to avoid respecting Plaintiff's judgment and the Denver District Court's charging order. Such activity is prohibited by CUFTA. *See* C.R.S. § 38-8-105.

The Court should reject Ms. York and Lardyn's argument that the transfer of the farm, ranch, and feedlot operation from Two Mile Ranch to Lardyn cannot be a fraudulent transfer as a matter of law. The gist of Defendants' argument is that Plaintiff only has a judgment against Jonathan Pauling, not against Two Mile Ranch; therefore, according to Ms. York and Lardyn, the transfer of farm, ranch, and feedlot business from Two Mile Ranch to what Plaintiff alleges is a new sham entity (Lardyn) is not a violation of CUFTA. *See* Motion at 7-8.

Ms. York and Lardyn's argument misapprehends CUFTA, its terminology, and its breadth. For one, the term "transfer" broadly encompasses "every mode, direct or indirect" by which a debtor can part with an asset. Here, Jonathan Pauling owned 50% of Two Mile Ranch, and he has sought to part with that asset both by fraudulently backdating documents with Mark Pauling and by "indirectly" transferring the value in Two Mile Ranch to a new sham entity that he controls through his girlfriend.

Furthermore, the term "debtor" is not limited to judgment debtors like Jonathan Pauling. "Debtor" includes a person who may be liable on an unliquidated claim. Here, Two Mile Ranch was subject to a charging order in favor of Plaintiff, thereby giving Plaintiff a lien on Jonathan Pauling's interest in Two Mile Ranch. Instead of respecting the charging order, Jonathan Pauling and Mark Pauling first fraudulently manipulated Jonathan Pauling's interest, and then caused Two Mile Ranch to transfer its assets to Lardyn for millions of dollars less than those assets were worth, all so Jonathan Pauling and Mark Pauling could later recapture the equity in those assets through

9

Lardyn. The facts support Plaintiff's claim against Two Mile Ranch (which she is suing in this lawsuit), making Two Mile Ranch a "debtor" within the meaning of CUFTA.

As detailed in the Amended Complaint, the transfer of the business to Lardyn establishes several "badges of fraud" under CUFTA:

- Lardyn qualifies as an "insider" and "affiliate" of Two Mile Ranch and Jon Pauling. C.R.S. §§ 38-8-105(b)(2)(a), -102(8)(a)(IV), (d), (e).

- Jon Pauling, Mark Pauling, and Two Mile Ranch continue to control the transferred assets, operating their same business, at the same location, as before the transfer. C.R.S. § 38-8-105(b)(2)(b).

- The transfer occurred after judgment entered against Jon Pauling and Two Mile Ranch was burdened with a charging order. C.R.S. § 38-8-105(b)(2)(d).

- The only known asset of Jon Pauling was his interest in Two Mile Ranch—Jon Pauling having claimed absolute poverty in post-judgment proceedings—and the transfer to Lardyn involved substantially all of Two Mile Ranch's assets. C.R.S. § 38-8-105(b)(2)(e).

- The consideration for the transfer was insufficient insofar as Lardyn had no effective means to pay Two Mile Ranch. C.R.S. § 38-8-105(b)(2)(h).

- No charging order payments have been made, which supports Plaintiff's allegation that not only is Jon Pauling insolvent but that Two Mile Ranch also was rendered insolvent by the transfers to Lardyn. C.R.S. § 38-8-105(b)(2)(i).

[#15-1 ¶¶ 63(a)-(f)].

Jonathan Pauling is a convicted sexual predator who violated Plaintiff and was found by a jury to have caused her millions of dollars in damages. The Denver District Court determined that Jonathan Pauling's behavior was so utterly abhorrent as to require the sanction of punitive damages double the amount of actual damages. [#1-1 at 8]. Jonathan Pauling continues to demonstrate his malice toward Plaintiff by taking one action after another to avoid ever compensating her. Jonathan Pauling cynically claims poverty even while he continues to run his multimillion dollar farm, ranch, and feedlot enterprise with his brother. There is no way Jonathan Pauling could keep up this

charade without the assistance of those closest to him—namely, his brother, his girlfriend, and the bankers at FSB who have made millions of dollars financing his enterprise. Defendants thus far have frustrated the charging order entered by Judge Buchanan and manufactured new obstacles that Plaintiff must overcome if she ever hopes to collect any of her judgment. There is nothing "implausible" about Plaintiff's claim that Defendants, including Ms. York and Lardyn, have conspired to violate CUFTA.

### C. Ms. York and Lardyn cannot prove defenses in a motion under Rule 12(b)(6).

The Court should disregard Ms. York and Lardyn's efforts to prove that assets transferred to Two Mile Ranch to Lardyn were somehow so lacking in equity as not to qualify as "assets" under CUFTA. To support their argument, they assert that "facts that are properly made the subject of judicial notice establish that the plaintiff has not plausibly alleged that the property conveyed to Lardyn constituted an 'asset' within the meaning of CUFTA." Motion at 8-9. However, Ms. York and Lardyn never conclusively establish the value of the property transferred, much less via facts of which the Court could take judicial notice.

The occurrence of a public filing may be subject to judicial notice as a fact that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned" pursuant to F.R.E. 201(b)(2). However, the truth of the contents of the public filing of a private party—who, in this case, is not a reliable source of information—is not subject to judicial notice without conversion of the Motion to a motion for summary judgment. *See Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 1251 (D. Colo. 2015) ("while the Court can take judicial notice of the attachments to [Defendant's] motion to dismiss as they are public records, it cannot take the facts asserted in the filings to be true"). The inappropriateness of taking judicial notice of alleged

11

facts is especially true where the alleged facts "may be 'self-serving[.]'" *Lozano v. Ashcroft*, 258 F.3d 1160, 1166 (10th Cir. 2001).

To support their Motion, Ms. York and Lardyn point to various statements in filings made by Two Mile Ranch and FSB in a failed Two Mile Ranch bankruptcy proceeding. The statements in those filings are hearsay, and judicial notice could not be used to circumvent the hearsay limitation at any time, much less at this stage of the proceedings. Further, as Judge Buchanan found in the underlying case, Jon Pauling previously used the bankruptcy process as an untoward litigation tactic that aggravated Plaintiff's damages and warranted the imposition of punitive damages. [# 1-1 at pp. 6-8]. The Paulings' statements in bankruptcy warrant skepticism.[2]

Moreover, the facts that Ms. York and Lardyn have offered only tend to support Plaintiff's fraudulent transfer claim. Although Ms. York and Lardyn contend that the assets transferred from Two Mile Ranch to Lardyn were fully encumbered, the exhibits to the Motion indicate otherwise. Lardyn purported to purchase the ranching property from Two Mile Ranch in April of 2017 for $4,270,000. [#15-1 at ¶ 35]. FSB financed this so-called purchase, and encumbered the property with $7,100,000 in debt. Motion at 9. Even taking Ms. York's factual assertions at face value (a benefit to which they are not entitled in any event), Lardyn substantially underpaid for the property, which had been valued at $8,963,500 just weeks earlier. *Id.* Even assuming that such an underpayment might be excusable if Lardyn were a bona fide arms-length buyer, the allegations show that Lardyn clearly does not qualify as such.

---

[2] Likewise, the Court should not take co-conspirator Defendant FSB's bankruptcy filings—the *substance* of which Ms. York and Lardyn inappropriately request judicial notice—as gospel in light of FSB's own motives in Two Mile Ranch's bankruptcy, as well as FSB's own knowledge of Plaintiff's judgment and collection attempts ([#15-1 at ¶ 44]). The truth of the contents of these bankruptcy filings is simply not susceptible to determination from unimpeachable sources, as required by F.R.E. 201(b)(2).

The fact that FSB loaned an additional $3,375,000 in June 2019 is even more indicative of the fact that the property was not fully encumbered and that the transfer from Two Mile Ranch to Lardyn was not for "reasonably equivalent value[.]" C.R.S. § 38-8-105(2)(h). This "badge of fraud" tends to prove that the transfer was to avoid Plaintiff's collection efforts.

Although Ms. York and Lardyn essentially argue that Two Mile Ranch had no equity in this property transferred to Lardyn, that is not an issue amenable to resolution on a Rule 12(b)(6) motion. The obvious factual dispute surrounding this issue sets this case apart from *Bd. of County Commr's v. Park County Sportsmen's Ranch, LLP*, 271 P.3d 562 (Colo. App. 2011).[3] There, on a "limited record," the court inferred that the plaintiffs' expert's testimony supported the conclusion that the transferred property's value was less than its encumbrances. 271 P.3d at 571. Here, Plaintiff has not presented evidence that the value of the property was less than the total of the liens on the property, and Defendants likewise have no competent evidence of this argument. Ms. York and Lardyn's arguments for dismissal are more appropriately characterized as affirmative defenses under Section -109 of CUFTA. *Cf. Lewis v. Taylor,* 427 P.3d 796, 799 (Colo. 2018) (referencing affirmative defenses under C.R.S. § 38-8-109). Such defenses may not be considered at the motion to dismiss stage.

### D. Because Plaintiff pleads a plausible CUFTA claim, she likewise pleads a plausible conspiracy claim.

Ms. York and Lardyn's final argument is that because Plaintiff has not pled a plausible CUFTA claim, there can be no conspiracy to violate CUFTA. Motion at 10-11. However, as set

---

[3] Ms. York and Lardyn also rely on *Megabank Financial Corp. v. Alpha Gamma Rho Fraternity*, 841 P.2d 318 (Colo. App. 1992). *Megabank* is inapposite as it does not even mention CUFTA claims, involved a transfer of property "for consideration in excess of its fair market value" which was "uncontested" and "did not place any assets beyond [plaintiff's] reach[,]" and involved several competing lienholders and an allegation of "collusive foreclosure." 841 P.2d at 319-20. None of those factors are present here.

forth above, Plaintiff has pled a plausible CUFTA claim as the "actionable wrong" (Motion at 10) underlying the conspiracy claim, which is likewise plausible and should survive dismissal.

## Conclusion

For the foregoing reasons, the Court should deny Ms. York and Lardyn's Motion to Dismiss.

DATED:  September 13, 2019

                  KEATING WAGNER POLIDORI FREE, P.C.

                By:    *s/ Ross W. Pulkrabek*
                       Ross W. Pulkrabek
                       Aaron D. Goldhamer
                       1290 Broadway, Suite 600
                       Denver, CO 80203
                       Phone: (303) 534-0401
                       Email:  rpulkrabek@keatingwagner.com
                       *Attorney for Plaintiff*

CERTIFICATE OF SERVICE

       I hereby certify that on September 13, 2019, a true and correct copy of the foregoing was electronically served via CM/ECF filing system upon the following:

R. Livingston Keithley
Overton Lapuyade Keithley Gleason Schumacher
165 S. Union Blvd., Suite 542
Lakewood, Colorado 80228
Phone: 303-832-1120
Livingston.Keithley@overtonlawfirm.com
*Attorneys for Defendants Mark Pauling and Two Mile Ranch General Partnership*

Christopher Carr
Dill Carr Stonbraker & Hutchings, PC
455 Sherman Street, Suite 300
Denver, CO 80203
ccarr@dillanddill.com
*Attorney for Defendant Jonathan Pauling*

Tracy A. Oldemeyer
Beau B. Bump
CLINE WILLIAMS
WRIGHT JOHNSON & OLDFATHER, L.L.P.
215 Mathews Street, Suite 300
Fort Collins, Colorado 80524
toldemeyer@clinewilliams.com
bbump@clinewilliams.com
*Attorneys for Farmers State Bank*

                                           *s/ Aaron D. Goldhamer*
                                           Aaron D. Goldhamer