IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01224-RBJ-STV

AMANDA WILSON, a Michigan citizen,

Plaintiff,

v.

JONATHAN PAULING, an individual Colorado citizen,
MARK PAULING, an individual Colorado citizen,
TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIOP, a Colorado General Partnership,
ELYCE YORK, an individual Nebraska or Colorado citizen,
LARDYN CONSULTING, LLC, a Nebraska Limited Liability Company, and
FARMERS STATE BANK, a Nebraska corporation,

Defendants.

---

LARDYN DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS

---

Defendants Elyce York and Lardyn Consulting, LLC (respectively "Ms. York" and "Lardyn" and collectively the "Lardyn Defendants"), through their undersigned counsel, state the following for their Reply to Plaintiff's Response to Lardyn's Motion To Dismiss (hereafter respectively "Resp.Mot.Dis., p. __" and "Mot.Dis., p. __").

OVERVIEW

Plaintiff's response to the Lardyn Defendants' motion to dismiss reflects some fundamental confusion about the manner in which charging orders and CUFTA work. For example, Plaintiff contends that an SBA loan made to Lardyn in 2019, approximately two years after the alleged improper transfer occurred, somehow shows that the transferred property had equity at the time the challenged transfer occurred and that Plaintiff was deprived of the ability to

obtain that equity pursuant to the charging order granted by the Colorado state court. [*See* Resp.Mot.Dis., p. 2.] But, a charging order does not entitle a creditor to seize partnership property. To the contrary, it only entitles a debtor to reach *distributions* from a partnership. *See* C.R.S. §7-64-504(1) and (2). Further, a claimant under CUFTA is not entitled to recover subsequent increases in the value of the transferred property. Instead, for purposes of awarding a remedy, the property in question is valued at the time of the challenged transfer. *See* C.R.S. §38-8-109(3).

As a result of Plaintiff's confusion over the scope of the various post-judgment remedies at issue in this case, it is somewhat difficult to separate the relevant portions of Plaintiff's response from the portions of that response that appear intended to tell a story of victimization without regard to the underlying legal framework. Nonetheless, the following discussion attempts to focus on the legal issues relevant to deciding the Lardyn Defendants' motion to dismiss, instead of focusing on those portions of Plaintiff's response that appear to be an attempt to appeal to this Court's emotions without regard to the relevant legal considerations.

The first relevant point is that, despite the Lardyn Defendants having identified Plaintiff's inappropriate use of gender stereotyping, Plaintiff — who was herself an exotic dancer several years ago — continues to assert that because Ms. York was also an exotic dancer several years ago it is not credible to believe that Ms. York would be able to own and operate her own business. The fact that Plaintiff has simply repeated that argument does not make it any more appropriate.

Plaintiff also fails meaningfully to address the point that Two Mile Ranch (the transferor of the property at issue) was not and is not a debtor of the Plaintiff, and that the property transferred by Two Mile Ranch was not property in which either of alleged debtors of

Plaintiff (*i.e.,* Jon and Mark Pauling) had an interest. That point cannot be ignored, however, because CUFTA only applies to a *debtor's* transfer of property in which it the *debtor* has an interest.

Finally, Plaintiff does not identify any factual allegations in her Amended Complaint from which it could reasonably be inferred that the property transferred by Two Mile Ranch constituted an "asset" within the meaning of CUFTA. Instead, she offers two arguments in an attempt to paste over that fatal deficiency.

First, she asks the Court to ignore the contents of the publicly recorded documents cited by the Lardyn Defendants on the basis that their contents are hearsay. That contention is directly contrary to F.R.E. 803(14) and (15), which collectively provide that statements in duly recorded documents that relate to the intended purpose of those documents are not hearsay. Second, she argues that the question of whether the transferred property constituted an "asset" within the meaning of CUFTA is a defense to her claims, and therefore she need not plead facts from which it can reasonably be inferred that the transferred property actually had value. But, it is Plaintiff's burden to establish that the transaction involved a "transfer" within the meaning of CUFTA, and to do that Plaintiff must establish that the property conveyed constituted an "asset" within the meaning of CUFTA. Thus, Plaintiff's argument that she plead a fraudulent conveyance claim without alleging facts from which it can reasonably be inferred that the transaction in question involved property that had value stands CUFTA on its head.

## ARGUMENT

### A. This Court Should Reject Plaintiff's Continued Reliance On Gender Stereotyping As A Basis For Finding That She Has Stated Claims For Relief Against The Lardyn Defendants.

Plaintiff does not deny that she engaged in gender stereotyping by arguing that

because (like Plaintiff) Ms. York was previously an exotic dancer who was "groomed" by Jon Pauling, Ms. York is incapable of owning and managing a feedlot business. Instead, Plaintiff argues that there is no authority for the proposition that this Court should ignore allegations that involve the use of such stereotyping. [*See* Resp.Mot.Dis., p. 7.] The Lardyn Defendants concede that they are unaware of any such authority. Their point, however, is that given the advances towards equality that are still being made in today's world, this Court can and should lead the way and hold that the use of such gender stereotyping *is* improper and does *not* constitute an acceptable basis for stating a claim.

Further, Plaintiff's assertions that Ms. York is Jon Pauling's "girlfriend" (she is not), and was found to have been "groomed" by Mr. Pauling, do not provide a reasonable basis for inferring that Ms. York is a simply a "straw person." That is so because neither of those relationships make Ms. York an insider of Mr. Pauling within the meaning of CUFTA. *See* C.R.S. §38-8-102(8)(a). Thus, Plaintiff's argument that it has sufficiently alleged that Ms. York is a "straw person" for Jon Pauling should be rejected for that reason as well.

B. Plaintiff Has Not Pled Facts Establishing That The Conveyance From Two Mile Ranch Involved A Transfer By A Debtor Of Plaintiff, Or Involved Property In Which A Debtor Of Plaintiff Held An Interest.

CUFTA defines a fraudulent conveyances as a transfer made by a debtor who is liable to the plaintiff on a claim. *See* C.R.S. §§38-8-105(1) and C.R.S. §38-8-106(1) and (2) (defining fraudulent transactions under CUFTA). Thus, a threshold requirement for stating a claim under CUFTA is that the transfer be made by a person who is liable to the plaintiff on a claim.

Plaintiff concedes she does not have a judgment against Two Mile Ranch. She argues, however, that she has a claim against Two Mile Ranch because her charging order "gave

her a lien on Jon Pauling's interest in Two Mile Ranch" and that instead of respecting that charging order, Jon and Mark Pauling (as the general partners of Two Mile Ranch) caused Two Mile Ranch to transfer its property to Lardyn for "millions of dollars less than those assets were worth." [*See* Resp.Mot.Dis., p. 9.] But, that argument avoids the question because even if Two Mile Ranch is considered to be an insider of Jon and Mark Pauling, CUFTA does not reach transfers *by* insiders. It only reaches transfers by a debtor *to* an insider. *See* C.R.S. §38-8-105(2)(a) and -106(b). Or, stated differently, under CUFTA, the fact that Two Mile Ranch is an insider of Jon and Mark Pauling does not make Two Mile Ranch a debtor of Plaintiff.

Further, Plaintiff fails to address the fact that CUFTA requires that a challenged transfer involve property in which the debtor has an interest and that partners do not have any interest in partnership property. [*See* Mot.Dis., p. 7.] According to Plaintiff, the Court need not concern itself with that issue, because CUFTA defines a transfer to include "every mode, direct or indirect" by which a "debtor can part with an asset" and Jon Pauling was a 50% owner of Two Mile Ranch. [*See* Resp.Mot.Dis., p. 9.] That argument, however, begs the question, because the question is not whether Jon Pauling held a 50% ownership interest in Two Mile Ranch. Instead, the question is whether Mr. Pauling held an interest in the property owned by Two Mile Ranch, which is the property at issue.

On that question, the answer is that as a matter of law Jon Pauling did *not* have an interest in the assets of Two Mile Ranch. Instead, his only interest in Two Mile Ranch was an interest in its profits as and when distributed. *Compare* C.R.S. §7-64-203 (property acquired by partnership is partnership property and is not property of the partners individually), C.R.S. §7-64-402 (partner has no right to receive distribution of partnership property in kind) and C.R.S. §7-64-501 (partner has no interest in partnership property) *with* C.R.S. §7-64-503 (partner's

transferable interest is an interest in profits during partnership operations and surplus following winding up and dissolution) and C.R.S. §7-64-504 (judgment creditor of partner may obtain charging order against partner's transferable interest in profits and surplus following winding up and dissolution).

In sum, while the scope of CUFTA is broad, it is not boundless. CUFTA sets out specific circumstances in which transactions may be challenged as being actually or constructively fraudulent as to creditors. And, if a transaction does not fall within scope of CUFTA, it is simply not subject to challenge as a fraudulent conveyance. Two of the elements required to assert a claim under CUFTA are that (1) the transfer must be made by a debtor of the judgment creditor, and (2) the transfer must be of property in which the debtor has an interest. Because the property at issue was owned by Two Mile Ranch and was transferred by Two Mile Ranch, and because as a matter of law neither Jon Pauling nor Mark Pauling had any interest in that property, both of those elements are necessarily lacking. Accordingly, Plaintiff's First Amended Complaint fails to state a claim that the transfer of property from Two Mile Ranch to Lardyn constituted an actionable fraudulent conveyance .

C. Plaintiff Has Failed To Plead Facts From Which It Can Reasonably Be Inferred That The Conveyance From Two Mile Ranch To Lardyn Involved Assets Within The Meaning Of CUFTA, And Therefore Involved A Transfer Within The Meaning Of CUFTA.

The only property that Plaintiff's First Amended Complaint specifically identifies as having been improperly transferred are certain "large tracts of real property" that Plaintiff alleges were transferred to Lardyn in April 2017 for a "purported sales price of four million two hundred and seventy thousand dollars ($4,270,000)." [*See* First Amended Complaint, p. 10, ¶35.] Under CUFTA, however, the sales price is not what determines whether transferred property constitutes an "asset" that may be the subject of a fraudulent conveyance action.

Instead, it is only the amount (if any) by which the value of property at the time of transfer exceeded any liens against the property that constitutes an asset within the meaning of CUFTA. *See* C.R.S. §38-8-102(2)(a).

Although Plaintiff acknowledges that Farmers State Bank lent money to Lardyn in connection with that sale, and that such loans were "secured by deeds of trust in favor of Farmers State Bank on the transferred property," Plaintiff carefully avoids providing any information concerning the amount of those deeds of trust. [*See* First Amended Complaint, p. 12, ¶45.] That failure is critical, however, because if the liens against the transferred property exceeded the value of that property, that property would not constitute an "asset" within the meaning of CUFTA and by definition there could be no fraudulent conveyance. [*See* Mot.Dis., p. 8.]

As it turns out, from at least January 14, 2013 through the time of the sale to Lardyn, Farmers State Bank had an outstanding loan to Two Mile Ranch that was secured by a Deed of Trust against the transferred property in the face amount of $5,500,000. [*See* Mot.Dis., Ex. C, Part 1, pp. 21-22 and Part 2, pp. 2-10.] To be sure, Plaintiff contends that this Court may not consider the substance of that Deed of Trust, because, even if that Deed of Trust can properly be made the subject of judicial notice, its contents are hearsay. [*See* Resp.Mot.Dis., p. 11.] But, under F.R.E. 803 (14) and (15), the contents of that Deed of Trust are not hearsay because they appear in a regularly recorded document and relate to the intended purpose of that document. Therefore, the Court can take judicial notice of the contents of that document in ruling on the Lardyn Defendants' motion to dismiss.

Perhaps recognizing that the contents of the Deed of Trust establish that the transferred property was encumbered by a lien exceeding its value (and therefore does not

constitute an "asset" within the meaning of CUFTA), Plaintiff contends that the question of value is a defense and therefore she need not address (and this Court should not consider) the Deed of Trust in determining whether she has stated a claim under CUFTA. [*See* Resp.Mot.Dis., p. 12.]

But, the essence of a CUFTA claim is that a debtor engaged in an improper transfer of property. Indeed, C.R.S. §38-8-105 is titled "Transfers fraudulent as to present and future creditors," and C.R.S. §38-8-106 is titled "Transfers fraudulent as to present creditors." A "transfer" is defined as every mode of "disposing of or parting with an asset or an interest in an asset." *See* C.R.S. §38-8-102(13). And, as noted above, under C.R.S. §38-8-102(2)(a), in order to establish that the property transferred constituted an asset, that property must have been worth more than the liens filed against it at the time of the transfer. Accordingly, the question of whether the transferred property had value at the time of the transfer is not a defense to a fraudulent conveyance action. It is, instead, part of the judgment creditor's burden of proof.

It also makes sense that the judgment creditor must plead facts showing giving rise to the reasonable inference that the property at issue had value at the time of the transfer. Otherwise, a judgment creditor could do what the Plaintiff has done here — that is, ignore the public records showing that the property in question was fully encumbered and force the transferee to engage in the expensive process of defending a transaction that the public records show lies outside the scope of CUFTA.

Finally, Plaintiff's assertion that the SBA loan issued in 2019 actually proves there was equity in the transferred property is both irrelevant and incorrect. As noted above, the relevant question is not what the property was worth in 2019, but rather is what the property was worth in 2017. *See* C.R.S. §38-8-109(3). Further, Plaintiff's attempt to claim that the 2019

transaction involving an SBA loan proves there was equity in the property relies on considering the statements made by Farmers State Bank in their bankruptcy filings as true. [*See* Resp.Mot.Dis., p. 12.] That, however, is precisely what Plaintiff says this Court may not do. [*See* Resp.Mot.Dis., p. 11.] Plaintiff cannot have it both ways. Moreover, to the extent Plaintiff is conceding that this Court can accept the statements in the Bankruptcy filings at face value, they establish that all of the assets of Two Mile Ranch were fully encumbered at the time of the challenged transfer — and, thus, establish that the transferred property did not constitute an asset within the meaning of CUFTA. [*See* Mot.Dis., Ex. C, Part 1, p. 3 (showing Two Mile Ranch's total debt exceeded the value of its assets).]

### D. If Plaintiff's Fraudulent Conveyance Against The Lardyn Defendants Is Dismissed, Its Conspiracy Claim Against The Lardyn Defendants Must Also Be Dismissed.

All parties agree that the viability of Plaintiff's civil conspiracy claim rises or falls with the viability of Plaintiff's fraudulent conveyance claims. Thus, if Plaintiff's fraudulent conspiracy claim against the Lardyn Defendants is dismissed, its conspiracy claim against the Lardyn Defendants must also be dismissed.

## CONCLUSION

While the legal issues identified above may not be as interesting as Plaintiff's tale of conspiracies, those legal issues are properly made the focus of this Court's consideration of the Lardyn Defendants' motion to dismiss. The Lardyn Defendants submit that, for the reasons stated above and in their Motion To Dismiss, they have demonstrated that Plaintiff's First Amended Complaint fails to state a claim for fraudulent conveyance against them. Accordingly, to the extent it is asserted against the Lardyn Defendants, Plaintiff's First Amended Complaint should be dismissed.

Dated: September 20, 2019
Denver, Colorado

Respectfully submitted,

CARVER SCHWARZ McNAB KAMPER & FORBES, LLC

*s/Peter C. Forbes*
By:___________________________

Peter C. Forbes
1888 Sherman Street — Suite 400
Denver, Colorado 80203
Telephone: 303.893.1815
Fax: 303.893.1829
pforbes@csmkf.com

*Attorneys for the Lardyn Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 20, 2019, the undersigned caused a true and correct copy of the above and foregoing to be served upon the following via the CM/ECF system:

Ross W. Pulkrabek
Aaron D. Goldhamer
Keating Wagner Polidori Free, PC
1290 Broadway — Suite 600
Denver, Colorado 80203
agoldhamer@keatingwagner.com
rpulkrabek@keatingwagner.com

Christopher Wenzel Carr
Dill Carr Stonbraker & Hutchings, P.C.
455 Sherman Street
Suite 300
Denver, CO 80203
ccarr@dillanddill.com

Beau Bryan Bump
Tracy A. Oldemeyer
Cline Williams Wright Johnson & Oldfather-Fort Collins
215 Mathews Street
Suite 300
Fort Collins, CO 80524
bbump@clinewilliams.com
toldemeyer@clinewilliams.com

*Diane Wziontka*
By:________________________________