## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01224-RBJ-STV

**AMANDA WILSON**, a Michigan citizen,

Plaintiff,

v.

**JONATHAN PAULING**, an individual Colorado citizen, **MARK PAULING**, an individual Colorado citizen, **TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP**, a Colorado General Partnership, **ELYCE YORK**, an individual Nebraska or Colorado citizen, **LARDYN CONSULTING LLC**, a Nebraska Limited Liability Company, and **FARMERS STATE BANK**, a Nebraska Corporation, and **REDTAIL RESOURCES, LLC**, a Nebraska Limited Liability Company,

Defendants.

---

## SECOND AMENDED COMPLAINT

---

Plaintiff Amanda Wilson, for her Second Amended Complaint against Defendants Jonathan Pauling, Mark Pauling, Two Mile Ranch a/k/a Two Mile Ranch General Partnership, Elyce York, Lardyn Consulting LLC, and Farmers State Bank, and Redtail Resources, LLC (collectively "Defendants"), states as follows:

### STATEMENT OF THE CASE

This case arises out of a civil conspiracy between Defendant Jonathan "Jon" Pauling and several of his confederates to hinder, delay, and defraud Plaintiff Amanda Wilson in her efforts to collect a civil judgment exceeding $4 million. Jon Pauling was found both criminally and civilly liable for sexually assaulting Amanda Wilson. As described in detail in this complaint, Jon Pauling, his brother Defendant Mark Pauling, his girlfriend Elyce York, multiple entities they control, and the Pauling brother's longtime bank Farmer's State Bank, undertook elaborate and concerted

1

actions to conceal and protect Jon Pauling's assets against collection and to frustrate the civil justice system.

## SUMMARY OF SECOND AMENDED COMPLAINT

Through discovery, Plaintiff has uncovered the details of how Jon and Mark Pauling conspired with Elyce York and Farmers State Bank to extract millions of dollars in equity from Two Mile Ranch and shift that equity directly to Lardyn Consulting LLC as well as to another new company previously unnamed as a party to this litigation, Redtail Resources LLC. Information obtained through discovery flatly refutes Defendants' contention that there was no "equity" in the assets transferred from Two Mile Ranch to Lardyn Consulting and Redtail Resources. Plaintiff has obtained detailed asset evaluations prepared by Farmers State Bank as well as financial statements and projections prepared by Elyce York and Mark Pauling, all of which prove that Defendants knew the assets had equity in the millions of dollars and that Defendants intended to shift that equity from Two Mile Ranch to Lardyn Consulting and Redtail Resources for their mutual benefit and to Plaintiff's detriment.

Although the mechanics of Defendants' asset transfers were complex—and in many instances deliberately opaque—their goal was obvious. By transferring Two Mile Ranch's equity to Lardyn Consulting, all Defendants sought to avoid the charging order that the Denver District Court entered in order to enable Plaintiff to collect her judgment against Jon Pauling.

This Second Amended Complaint updates factual allegations in light of the many facts that Plaintiff has discovered since her First Amended Complaint. It also joins Redtail as a defendant whose joinder is important for complete relief.

2

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiff Amanda Wilson is an individual who resides at 13 Ballard St., Apt. 2, Ypsilanti, MI 48197 and who was at the time of filing this action and remains as of the date of this filing a citizen of the State of Michigan, insofar as she is and has been domiciled in the State of Michigan, having resided in the State of Michigan a substantial time prior to the commencement of this action with the intent to remain in the State of Michigan indefinitely.

2.      Defendant Jon Pauling is an individual who resides at 60773 North Highway 71, Stoneham, Colorado, 80754 and who was at the time of filling this action and remains as of the date of this filing a citizen of the State Colorado, insofar as he is and has been domiciled in the State of Colorado, having resided and worked in the State of Colorado at all times relevant to this action, and indeed his entire adult life, with the intent to remain in the State of Colorado indefinitely.

3.      Defendant Mark Pauling is Jon Pauling's brother and is an individual who resides at 18503 or 18505 County Road 42.5, Sterling, Colorado, 80751 and who was at the time of filing of this action and remains as of the date of this filing a citizen of the State of Colorado, insofar as he is and has been domiciled in the State of Colorado, having resided and worked in the State of Colorado at all times relevant to this action, and indeed his entire adult life, with the intent to remain in the State of Colorado indefinitely.

4.      Defendant Two Mile Ranch a/k/a Two Mile Ranch General Partnership is and was at the time of the filing of this action a Colorado general partnership whose principal place of business is and was at the time of the filing of this action 60773 North Highway 71, Stoneham, Colorado, 80754, or alternatively—according to Jon Pauling's previous testimony—18503 County Road 42.5, Sterling, Colorado (despite the fact that "legally it's still probably going to show up as

60773 [North Highway 71, Stoneham, Colorado]").  The totality of the partners of Defendant Two

Mile Ranch are and were at the time of the filing of this action Jon Pauling and Mark Pauling, both

of whom are and were at the time of filing of this action citizens of the State of Colorado, as alleged

in greater detail in the preceding paragraphs.

     5.     Defendant Elyce York is an individual who, on information and belief, was at the

time of filing of this action as well as the date of this filing either a citizen of the State of Nebraska

or of the State of Colorado.  Elyce York, who resides either at 1660 Summit Drive, Sidney,

Nebraska, 69162, and/or 18413 County Road 42.5, Sterling, Colorado, 80751, and either is and

was at the time of the filing of this action domiciled in either the State of Nebraska insofar as she

resided in the State of Nebraska prior to the commencement of this action with intent to remain in

the State of Nebraska indefinitely or, alternatively, domiciled in the state of Colorado insofar as

she resided in the State of Colorado prior to the commencement of this action with intent to remain

in the State of Colorado indefinitely.  The property at the 1660 Summit Drive address was is owned,

from May 18, 2018, to June 17, 2019, by a Nebraska entity called Redtail Resources, LLC, which

is registered to do business in Colorado as Redtail Resources Colorado LLC, described more fully

below.  The statement of foreign entity authority and other documents filed for Redtail Resources

Colorado LLC were filed by attorney Brian Bates, who is a longtime attorney for Two Mile Ranch

and other entities affiliated with Jon Pauling and Mark Pauling. Jon Pauling testified in 2016 that

Elyce York lived in a property owned by Two Mile Ranch at 22434 N. Turkey Creek Road,

Morrison, Colorado, 80465, but that she had moved out. However, U.C.C. Financing Statements

filed by Defendant Farmers State Bank in April of 2017 reflect that Elyce York still lived at the

Morrison address.  Recent tax filings from Elyce York indicate that she resided at 18413 County

Road 42.5, Sterling, Colorado (the site of Two Mile Ranch's historical operations).  As such,

alternatively, Elyce York is and was at the time of the filing of this action a citizen of the State of Colorado in that she was domiciled in the State of Colorado, having resided in the State of Colorado with the intent to remain in the State of Colorado indefinitely.

6.      Defendant Lardyn Consulting LLC is a Nebraska limited liability company, formed in August of 2016, whose principal place of business—according to filings with the Nebraska Secretary of State—is 2561 S. 125th Ave., Omaha, Nebraska, 68144.  The original sole member and putative manager was Elyce York, who is either a Colorado or Nebraska citizen, as alleged above. On or about April 7, 2017, Mark Pauling obtained a 15% membership interest in Lardyn from Elyce York.  On July 17, 2017, Pauling Hauling, LLC, a Colorado limited liability company formed on July 14, 2017, acquired a three percent (3%) membership interest in Lardyn from Elyce York.  Pauling Hauling, LLC's sole managers and members are Paul Pauling—who lists his address with the Colorado Secretary of State as 18503 County Road 42.5, Sterling, Colorado, the site of Two Mile Ranch's historical operations—and Lori Pauling.; Paul Pauling is a Colorado citizen and Jon and Mark Pauling's brother, and Lori Pauling is a Colorado citizen.  On or about November 1, 2017, Elyce York sold a 2% membership interest in Lardyn to Cherry Creek Cattle Company, LLC, a Colorado limited liability company with a principle place of business at 3200 Cherry Creek So. Dr., Suite 380, Denver, CO 80209, whose sole member and manager, on information and belief, is Brian Bates, a Colorado citizen, who resides at 940 Adams Street, Denver, Colorado.  Documents produced in this case show that Mark Pauling purported to transfer his fifteen percent (15%) membership interest in Lardyn to Elyce York Trust #1, which is a Nebraska trust and Nebraska citizen. Those documents were backdated to January 1, 2019, as demonstrated by other documents that indicate that Mark Pauling transferred his membership interest in Lardyn to Elyce York Trust #1 on June 20, 2019, approximately two months after this

lawsuit was filed.   ~~The sole members and managers of Lardyn Consulting LLC currently and as of the time of the filing of this action are Elyce York, a citizen of either the State of Colorado or the State of Nebraska, and Mark Pauling, who is a citizen of the State of Colorado, as alleged in detail in the preceding paragraphs.~~

7.    Defendant Farmers State Bank is a bank regulated by the Federal Deposit Insurance Corporation, whose principal place of business currently and as of the time of the filing of this action is 355 2nd St., Dodge, Nebraska, 68633 and whose state of incorporation currently and as of the time of the filing of this action is the State of Nebraska.  The allegations herein pertain to the branch of Farmers State Bank at 823 Main Street, Bridgeport, Nebraska, 69336 (formerly 501 Main Street, Bridgeport, Nebraska, 69336). —Farmers State Bank repeatedly engaged in transactions with Colorado residents Jon Pauling, Mark Pauling, Elyce York (while she resided in Colorado) and Two Mile Ranch, lent money to Colorado residents and entities controlled by them, encumbered property in Colorado in connection with those loans, filed U.C.C. financing statements in Colorado with respect to those loans, and otherwise engaged in concerted actions to hinder, delay, and defraud the collection (in Colorado) of a Colorado judgment by Plaintiff Amanda Wilson as alleged herein. Farmers State Bank purposely availed itself of this jurisdiction such that the Court's exercise of same over Farmers State Bank is proper.

8.    Defendant Redtail Resources, LLC ("Redtail"), is a Nebraska limited liability company, organized on September 8, 2017, whose principal place of business—according to filings with the Nebraska Secretary of State—is 2561 S. 125th Ave., Omaha, Nebraska, 68144. The members of Redtail at the time of filing this action and continuing through today are Elyce York, Pauling Hauling, LLC, and Cherry Creek Cattle Company, LLC. The members of Pauling

Hauling, LLC and Cherry Creek Cattle Company, LLC are described above. As such, Redtail is a citizen of either Colorado or Nebraska.

~~7.~~9.    This Court has jurisdiction over this action under 28 U.S.C. § 1332 because the matter in controversy exceeds the sum or value of $75,000 (exclusive of interest and costs) and because the citizenship of Plaintiff Amanda Wilson is different from that of any Defendant.

~~8.~~10.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) and (2).

## GENERAL ALLEGATIONS

### *The Underlying Judgment in the State Case*

~~9.~~11.    Jon Pauling presented himself as a wealthy rancher in the Sterling, Colorado, area when he first met Amanda Wilson.  Using his wealth to entice Amanda Wilson into spending time with him, he later sexually assaulted her.

~~10.~~12.   In Denver District Court Case No. 2013CV35298 (the "State Case"), on October 23, 2015, Amanda Wilson obtained a jury verdict in her favor against Jon Pauling for claims of assault, battery, and intentional interference with contract.  The State Case pertained to (a) the circumstances surrounding Jon Pauling's sexual assault of Plaintiff, to which he pled guilty in Denver District Court Case No. 2013CR1069, as well as (b) Jon Pauling's use of his network of business entities to employ Plaintiff for a time and to manipulate Plaintiff and groom her for sexual assault.

11.13.  Despite attempts to collect the judgment entered in the State Case following the jury verdict, Plaintiff has been unable to collect any amount owed her as a result of the State Case. In those collection proceedings, Jon Pauling has professed to have no assets or income.

12.14.  Through various post-verdict proceedings in the State Case, on December 19, 2018, the Honorable Judge Ross Buchanan amended the judgment in the State Case—increasing the punitive damage award initially rendered by the jury—to total $4,198,274.486,337,704.70.  *See October 23, 2015, jury verdict in the State Case; July 25, 2018, Order concerning costs in the State Case;* December 19, 2018, Order in the State Case, attached hereto as **Exhibit 1**.

13.15.  In Judge Buchanan's analysis of whether to increase the punitive damage award initially rendered by the jury in the State Case, Judge Buchanan considered Plaintiff's argument that Jon Pauling continued to engage in a pattern of grooming behavior with other vulnerable young women he met at adult entertainment clubs.  Exh. 1 at 5.  Judge Buchanan specifically cited evidence concerning Jon Pauling's grooming of Defendant Elyce York.

> The court agrees with Plaintiff and finds beyond a reasonable doubt that Defendant has, in fact, continued to engage in the same wrongful conduct that was the subject of Plaintiff's claims during the pendency of this case. The evidence at trial demonstrated that, following the assault on Plaintiff and including while this case has been pending, Defendant Pauling has continued to frequent adult entertainment establishments and pay for young women who work as exotic dancers, such as Elyce York, to be taken "off the list," meaning they were not required to dance and instead may sit and drink alcohol and talk with Defendant. According to Ms. York's deposition testimony, which was read at trial, Defendant used this technique over perhaps ten occasions to gain her trust and develop a relationship with her. After gaining her trust, Defendant Pauling began to take her to dinner and shopping; assisted her financially, including loaning her $5,000 to hire a divorce lawyer, giving her money to rent an apartment separate from her estranged husband, preparing and backdating a fraudulent document purporting to be an employment contract and two fraudulent paychecks designed to mislead her prospective landlord that her income was sufficient to afford the rent, loaning both her and her mother money on a no-interest basis, giving her access to a car, and buying her diamond earrings and a necklace worth $3,500. In addition, Defendant Pauling, through one of the Defendant entities he controls, has purchased the multi-million-dollar

home in a gated community in the foothills near Denver where Ms. York has resided rent-free with her son since May, 2015. Ms. York testified that she has spent at least one night in a hotel with Mr. Pauling. Although she is aware that Plaintiff claims that Mr. Pauling raped her, she does not believe that occurred, and instead believes that Defendant was "probably" set up. She knows he is a registered sex offender, but it does not concern her. She believes that Defendant is divorced, when in fact he remains married. This is a pattern of "grooming" behavior strikingly similar to that in which Defendant Pauling engaged with Plaintiff and several other exotic dancers….

As the testimony of Plaintiffs expert Janine D'Anniballe made clear, such grooming behavior is a well-recognized precursor to sexually abusive or assaultive behavior, especially where there is a significant differential in power or wealth or age….

*See* Exh. 1 at 5-6 (emphasis added).

~~14.~~16.   Jon Pauling continues to have a close relationship with Elyce York as evidenced by facts described more fully in this complaint.

17.    One of the businesses that had employed Plaintiff—and thus was instrumental to Jon Pauling's grooming behavior with respect to Plaintiff—was a partnership called Two Mile Ranch. Plaintiff sued a number of "Two Mile Ranch" affiliated entities in the State Case as well as other Jon Pauling-controlled entities; however, she did not sue Two Mile Ranch General Partnership in the State Case.

### ***Property Owned by Two Mile Ranch and Loans from Farmers State Bank***

18.    Part of the background of the fraudulent transfers that occurred between 2017 and 2019 involves a series of real property transactions and loans undertaken by Two Mile Ranch, with participation of Farmers State Bank, in May 2015.

19.    As of May 2015, Two Mile Ranch's predominant assets were real property in Logan County and Weld County, water rights, substantial and valuable mineral rights, farm and feedlot equipment, and feed.

20.     In May 2015, Two Mile Ranch engaged in three related real estate transactions discussed in detail below, and also engaged in a number of new loans with Farmers State Bank.

21.     One of the three real estate transactions by Two Mile Ranch in May 2015 was its purchase of real property located at 22424 North Turkey Creek, Morrison, Colorado, which is in Jefferson County, Colorado.

22.     In or about September 2014, Elyce York identified 22424 North Turkey Creek as a property where she wanted to live.

23.     In 2014 and continuing thereafter, Jon Pauling and Elyce York were romantically involved.

24.     22424 North Turkey Creek is a 35-acre luxury "mini ranch" nestled in the foothills. The 5,000 square-foot "main house" features an indoor swimming pool. The property has several other structures.

25.     At that time, 22424 North Turkey Creek was listed for sale by sellers Andrew J. Gardner and Karen J. Gardner. The listing broker was Kerry Endsley of Fuller Southebys International Realty. Elyce York submitted an offer to purchase 22424 North Turkey Creek on or about September 26, 2014, and the Gardners made a written counterproposal on September 28, 2014 that references Elyce York's offer.  On September 30, 2015, Jon Pauling and Elyce York signed a counterproposal pursuant to which the property would be purchased jointly by Elyce York and one of Jon Pauling's companies, JNP Enterprises.

26.     Jon Pauling entered into discussions with Farmers State Bank to finance the purchase of 22424 North Turkey Creek in or about October 2014.

27.     In or about April 2015, Jon Pauling agreed to proceed with the purchase of 22424 North Turkey Creek and agreed that Elyce York could live there without paying rent on the property.

28.     One circumstance surrounding Jon Pauling's agreement with Elyce York was that, at or about that same time, Elyce York became pregnant with Jon Pauling's child. Jon Pauling and Elyce York intended that Elyce York would live at 22424 North Turkey Creek with their child.

29.     The child, who would be born in late 2015 or early 2016—Plaintiff will require discovery on the date of the child's birth—was a little girl. Jon Pauling and Elyce York agreed that this daughter would take the name Pauling as her surname. Elyce York's income tax returns for years 2017 and 2018 obtained through discovery confirm that the child's surname is Pauling. Photos that Elyce York posted on the Internet indicate that her and Jon Pauling's child was born sometime in late 2015 or early 2016.

30.     To accomplish the purchase of 22424 North Turkey Creek, Two Mile Ranch entered into a buy/sell contract with the Gardners dated April 2, 2015. Jonathan Pauling and Mark Pauling signed the contract on behalf of Two Mile Ranch. The contractually agreed purchase price for 22424 North Turkey Creek was $1,650,000. Two Mile Ranch paid an earnest money payment of $50,000.

31.     Chicago Title was the closing company for Two Mile Ranch's purchase of 22424 North Turkey Creek.

32.     Jonathan Pauling oversaw the purchase of 22424 North Turkey Creek, for example being the recipient of emails regarding details of the purchase.

11

33.     To finance part of the purchase price of 22424 North Turkey Creek, Jonathan Pauling and Mark Pauling decided to sell some of Two Mile Ranch's real property in Logan County to Cervi Enterprises, Inc.

34.     On May 13, 2015—two days before the scheduled closing—Two Mile Ranch assigned the buy/sell contract to 1031 Corporation so Two Mile Ranch could fund part of the purchase of 22424 North Turkey Creek using proceeds from the aforementioned sale of real property in Logan County to Cervi Enterprises, Inc. as part of a like-kind exchange under Section 1031 of the Internal Revenue Code.

35.     The last-minute restructuring of the purchase of 22424 North Turkey Creek as a 1031 exchange a mere two days before the closing resulted in the creation of an erroneous and legally defective deed of trust, as will be described further below.

36.     To finance the balance of the purchase price of 22424 North Turkey Creek, Two Mile Ranch obtained a new loan from Farmers State Bank. At closing, this new loan would be documented in a signed promissory note, specifically Promissory Note Number 2346, dated May 15, 2015, in the principal amount of $730,000, made payable to Farmers State Bank by Two Mile Ranch.

37.     Farmers State Bank has not produced a loan / payment history on Promissory Note 2346 as of this date; however, a Chicago Title disbursement report indicates that $717,004.88 was advanced on Promissory Note 2346 on May 15, 2015.

38.     On May 15, 2015, Two Mile Ranch acquired title to 22424 North Turkey Creek. The following funds made up the purchase price of $1,650,000: (a) a $50,000 earnest money payment by Two Mile Ranch; (b) $888,241 in 1031 exchange proceeds from Two Mile Ranch's sale of real property to Mark Pauling and/or Mike Cervi, also on May 15, 2015; and (c) a new loan

from Farmers State Bank, Promissory Note 2346, in the amount of $717,004. These amounts totaled $1,655,245—the excess over $1,650,000 was for certain costs paid by Two Mile Ranch, primarily title insurance.

39.     A deed of trust dated May 18, 2015, purporting to encumber 22424 North Turkey Creek in favor of Farmers State Bank was prepared, signed by Jonathan Pauling and Mark Pauling, and recorded with the Clerk and Recorder of Jefferson County, Colorado. However, the deed of trust stated that it secured "Promissory Note #2288 dated 05-15-2015 . . . in the amount of $1,6000,000.00 plus interest."

40.     However, Promissory Note #2288 was paid off on March 18, 2015.

41.     The recording of the deed of trust was erroneous and legally of no effect, other than to create a false appearance in public records that Farmers State Bank held a deed of trust securing a non-existent Promissory Note encumbering 22424 North Turkey Creek.

42.     As noted above, the 1031 exchange involved Two Mile Ranch's sale of some of its property in Logan County. On April 16, 2016, Two Mile Ranch contracted to sell part of its real property in Logan County to Cervi Enterprises, Inc.—a company whose principal was Mike Cervi—for $917,000. Two Mile Ranch reserved an undivided 85% of the mineral interests on the property sold to Cervi Enterprises, Inc. to itself. The sale closed on May 15, 2015.

43.     Land Title Guaranty Company provided closing services on Two Mile Ranch's sale of part of its real property in Logan County to Cervi Enterprises, Inc.

44.     Two Mile Ranch's net proceeds from the sale of part of its real property in Logan County to Cervi Enterprises, Inc. amount to $888,241.01. As previously noted, those proceeds were remitted to 1031 Corporation for use in the purchase of 22424 North Turkey Creek.

45.     Two Mile Ranch also engaged in a third real property transaction on May 15, 2015—namely, Two Mile Ranch sold its Weld County property to Mark Pauling for $1,000,000.

46.     Two Mile Ranch reserved the mineral interests beneath the Weld County property.

47.     On information and belief, the sale of the Weld County property to Mark Pauling was done to appease Mark Pauling, given that Two Mile Ranch was buying 22424 North Turkey Creek for Jon Pauling's romantic partner and mother of his unborn child.

48.     Land Title Guaranty Company provided closing services on the sale of Two Mile Ranch's property in Weld County to Mark Pauling.

49.     To finance part of the $1,000,000 purchase of the Weld County property from Two Mile Ranch, Mark Pauling signed a new Promissory Note dated May 15, 2015, payable to Two Mile Ranch in the principal amount of $275,000.

50.     To finance the balance of the $1,000,000 purchase price of the Weld County property from Two Mile Ranch, Mark Pauling obtained a new loan from Farmers State Bank documented by Promissory Note Number 2346 dated May 15, 2015, in an amount up to $1,000,000. Mark Pauling drew $754,414.13 on Promissory Note Number 2346 for his purchase of the Weld County property.

51.     One of the conditions to Two Mile Ranch's sale of the Weld County property to Mark Pauling was that Mark Pauling was required to grant "seller Jonathan Pauling" a "rent free" tenancy on the property.

52.     Promissory Note 2346 was secured by a deed of trust on the Weld County property in favor of Farmers State Bank dated May 15, 2015.

53.     Two Mile Ranch's net proceeds from the sale of its Weld County property to Mark Pauling totaled $717,004.88.

54.     On May 15, 2015, Two Mile Ranch signed a new promissory note, Promissory Note 2351, payable to Farmers State Bank in the amount of $1,000,000. The same day, Farmers State Bank advanced $1,000,000 on Promissory Note 2351. The purpose of Promissory Note 2351 and the use of the $1,000,000 advanced by Farmers State Bank remains unclear at this time.

55.     On June 20, 2015, Two Mile Ranch applied $711,991.71 to reduce the balance owed on Promissory Note 2351 to $288,000.29.

56.     Also on May 15, 2015, Farmers State Bank entered into a new loan with Two Mile Ranch, evidenced by Promissory Note 2352 dated May 15, 2015, in the principal amount of $7,600,000.

57.     On May 20, 2015, the loan evidenced by Promissory Note 2352 was applied to pay off the principal amount owed on Promissory Note 2098, leaving a balance of interest only owed on Promissory Note 2098 in the amount of $132,643.

58.     Also on May 20, 2015, the principal balance of Promissory Note 2097 was paid in part and reduced to $200,963,70. The source of that payment is unclear from bank records obtained to date.

59.     To summarize the effect of these foregoing real estate transactions and loans, after May 15, 2015:

        (a) Two Mile Ranch owned 22424 North Turkey Creek.

        (b) No enforceable deed of trust encumbered 22424 North Turkey Creek.

        (c) Two Mile Ranch continued to own real property in Logan County.

        (d) The Logan County property was encumbered by a deed of trust in favor of Farmers State Bank that secured some but not all promissory notes by Two Mile Ranch in favor of Farmers State Bank.

(e) Two Mile Ranch continued to own mineral interests in Logan County and Weld County, including an 85% undivided interest in mineral interests located beneath the real property sold to Cervi Enterprises.

(f) Mark Pauling owned real property in Weld County subject to a loan from Farmers State Bank, on which he owed $730,000, which was secured by a deed of trust on the property.

(g) Mark Pauling also owed $275,000 to Two Mile Ranch documented in a separate promissory note.

### In concert, Defendants Fraudulently Transfer Property to Avoid Collection of the Judgement in the State Case

15.60.  Two Mile Ranch a/k/a Two Mile Ranch General Partnership is a general partnership owned by Jon Pauling and Mark Pauling, through which those brothers have transacted business since the 1980s. Specifically, Jon Pauling and Mark Pauling through Two Mile Ranch have owned and managed several agricultural and residential properties and engaged in a variety of farming, ranching, feedlot operations, and other businesses. Jon Pauling and Mark Pauling are experienced, career ranchers and feedlot owners.

16.61.  The General Partnership Agreement of Two Mile Ranch, dated February 14, 1986, states that Jon Pauling and Mark Pauling are co-equal, fifty percent (50%) partners in Two Mile Ranch.

17.62.  This General Partnership Agreement states the following concerning the management of Two Mile Ranch:

> 1.05 Management. The affairs of the partnership shall be conducted by all of the partners.  In case of a difference of opinion among the partners with respect to the management and policies of the partnership, the decision made by Jonathan M. Pauling shall prevail.

63.     Plaintiff attempted to collect on the judgment in the State Case by obtaining a charging order on Jon Pauling's partnership interest in Two Mile Ranch. To date Plaintiff has collected no money through the charging order.

18.64.   The charging order entered against Two Mile Ranch on November 19, 2015.

19.65.   In the course of collection proceedings in the State Case, on February 10, 2016, Jon Pauling testified that there had been an amendment to the Two Mile Ranch partnership agreement, purportedly on or around September 15, 2014.  This purported amendment reallocated partnership interests, such that his partnership interest was reduced to ten percent (10%) and his brother Mark Pauling's partnership interest was increased to ninety percent (90%).  This purported amendment likewise replaced the above-quoted management provision for Two Mile Ranch to read, "Mark A. Pauling is the Manager of the partnership."

20.66.   The documentation for the purported reallocation of Jon Pauling's and Mark Pauling's respective partnership interests in Two Mile Ranch was falsely backdated to September 15, 2014. Additionally, it was done to effectuate a fraudulent transfer of assets so that Amanda Wilson would be unable to collect her judgment against Jon Pauling.  Facts that demonstrate that the document was falsely backdated include the following:

   a.  Jon Pauling and Mark Pauling's 2014 Internal Revenue Service Schedule K-1 forms both show that they remained co-equal fifty percent (50%) partners in Two Mile Ranch as of year-end 2014. Jon Pauling and Mark Pauling's ownership interest of 50% as of the end of 2014 contradicts the purported modifications to their respective partnership interests on September 15, 2014.

   b.  Jon Pauling and Mark Pauling signed a document to sell Two Mile Ranch real property which confirmed that—as of May 13, 2015—there had been no amendments or modifications to the Two Mile Ranch partnership agreement. The representation by both Jon Pauling and Mark Pauling that they had made no modifications to the partnership agreement was inconsistent with any purported modification on September 15, 2014, or for that matter at any other date at least through May 13, 2015.

c.   As of May 15, 2015, Jon Pauling—and Jon Pauling alone—was still signing loan agreements on behalf of Two Mile Ranch, whereby it lent Mark Pauling two-hundred seventy five thousand dollars ($275,000).

c.d.Jon and Mark Pauling's Internal Revenue Service Schedule K-1 forms for 2015, 2016, 2017, 2018, and 2019 show that they remained co-equal fifty percent (50%) partners in Two Mile Ranch as of year-end for those years.  Jon Pauling and Mark Pauling's ownership and profits interest of 50% as of the end of those years contradicts the purported modifications to their respective partnership interests on September 15, 2014.

21.67.  Moreover, Jon Pauling's purported transfer of a forty percent (40%) partnership interest in Two Mile Ranch (i.e. his 50% interest less the 10% interest he retained) to Mark Pauling was for no apparent actual consideration. Instead, Jon Pauling attempted to rationalize the transfer based on some vague perception of what was "fair" between brothers in view of Jon Pauling's misconduct and the fallout from his sexual assault on Plaintiff, as Jon Pauling testified to the following:

Q. How did you figure out -- how did you figure out to change it from 50/50 to 90/10? How did you go about doing that?
A. That's what he said he wanted. I really wasn't in a position to argue.
Q. Why not?
A. Because he was right and I was wrong.
Q. So Mark demanded 90 percent?
A. He just said that that was fair, and I said that's fine.

22.    Additionally, with respect to one of the purported sales of Two Mile Ranch property to Mark Pauling described above, a condition of this sale included the purported grant to "seller Jonathan Pauling" of a rent-free tenancy on this real property.

### The Pauling Brothers Involve Elyce York, and Lardyn, and Redtail in their Scheme to Avoid Paying Amanda Wilson's Judgment

23.68.  Lardyn Consulting LLC ("Lardyn") is a Nebraska Limited Liability Company formed on August 24, 2016.

69.     Elyce York is the *nominal* managing member of Lardyn and its registered agent. Elyce York has signed numerous documents to facilitate the creation of Lardyn, maintenance of its status, and transaction of business in Colorado. To be clear, Plaintiff does not believe Elyce York to be the *de facto* manager of Lardyn but rather a straw woman standing in for Jon Pauling.

70.     Although Defendants attempted to keep Jonathan Pauling's fingerprints off Lardyn, documents obtained through discovery demonstrate that Jonathan Pauling has been involved with and operated Lardyn behind the scenes, using his romantic partner and mother of his child as a proxy.

71.     Jon Pauling has made or directed one or more bank deposits at Farmers State Bank on behalf of Lardyn. Farmers State Bank knows that he does so.

72.     Brian Bates, as the owner and manager of Cherry Creek Cattle Company, which holds a 2% interest in Redtail, communicates with Jon Pauling about Cherry Creek Cattle Company's interests in Lardyn and Redtail. For example, on June 19, 2018, Jon Pauling sent Brian Bates financial information for Lardyn and Redtail, informed Brian Bates that his investment had grown by 73.65%, and that he would call Brian Bates to "go over the numbers." In January 2019, Jon Pauling reported to Brian Bates that 2018 had been a terrific year for Lardyn and Redtail. And, as reflected by an email produced by Brian Bates dated March 4, 2019, Jon Pauling told Brian Bates that he would be mailing him tax returns for Lardyn and Redtail.

73.     Jonathan Pauling has sent and received emails on behalf of Lardyn using the email address lardynconsulting@gmail.com. Some emails to lardynconsulting@gmail.com are addressed to Jon Pauling or signed by him. For example, on June 19, 2018, Jon Pauling used lardynconsuling@gmail.com to email updated financials for Lardyn and Redtail to Brian Bates, signing the email, "Jon." To the extent Elyce York sends emails, she has done so through the email

19

address elyceyork@gmail.com . There are numerous emails concerning Lardyn where both lardynconsulting@gmail.com and Elyce York's personal address are separately copied, indicating an intent to communicate with both Jon Pauling and Elyce York regarding Lardyn business. Elyce York, Brian Bates, and certain officers of Farmers State Bank all have communicated with Jon Pauling regarding Lardyn using the email address lardynconsulting@gmail.com .

24.74.  On information and belief, Jon Pauling is knowledgeable of, writes, directs, and reviews Lardyn's email communications while he cohabitates with Elyce York and their child.

75.     Jon Pauling is involved with Lardyn's accounting. The scope of Jon Pauling's involvement is not yet known; however, Elyce York has admitted that he provides her with "assistance" on "accounting matters relating to Lardyn."

76.     In fact, Jon Pauling personally prepares or directs Elyce York on preparing the accounting figures that Lardyn has presented to Farmers State Bank in connection with obtaining loans or providing period reports to Farmers State Bank as well as many of the communications ostensibly between "Elyce York" and Farmers State Bank. In addition to being supported by Elyce York's own admission that Jon Pauling is involved in Lardyn's finances, Jon Pauling's control reasonably may be inferred from the tenor and substance of many of the written communications with Farmers State Bank that are signed "Elyce York." This also may be inferred by Jon Pauling's "grooming" of Elyce York as found by Judge Buchanan, his historic maintenance and support of Elyce York, and the degree of access he undoubtedly must have to Elyce York and Lardyn, considering that they are romantic partners, raising a child together, and presumably have cohabitated some or all of the time relevant to this case.

25.77.  Elyce York was the sole original member of Lardyn.

26.     Mark Pauling is also a member of Lardyn.

27.78.   According to the Statement of Foreign Authority filed with the Colorado Secretary of State in 2018, Lardyn commenced business operations in Colorado on September 1, 2016.

28.79.   Brian Bates, a longtime attorney of Two Mile Ranch and various other entities related to Jon Pauling and Mark Pauling, filed this Statement of Foreign Authority.

29.80.   Brian Bates likewise filed a periodic report for Lardyn with the Colorado Secretary of State on March 31, 2019.

81.     Lardyn's registered agent in Colorado is Brian Bates.

82.     Brian Bates also has provided legal services to Lardyn.

83.     In addition to sharing the same lawyer as Two Mile Ranch, Lardyn also shares the same accountant as Two Mile Ranch—namely, Kenneth Skipworth.

30.84.   In reality, Lardyn is a continuation of Two Mile Ranch's business under a different company name.

31.85.   Upon information and belief, to be confirmed through discovery, Elyce York has received compensation for her involvement in Lardyn and other assistance to Jon Pauling and Mark Pauling through both Lardyn and the aforementioned Redtail Resources, LLC, with in which Jon Pauling and Mark Pauling's attorney Brian Bates also is involved through his company Cherry Creek Cattle Company's membership interest in Redtail.

32.86.   Despite being a co-member in Lardyn with Elyce York, and despite Elyce York giving birth to his niece (fathered by Jon Pauling) in late 2015 or early 2016, Mark Pauling testified in November of 2016 that he had never met Elyce York.

87.     Consistent with Judge Buchanan's above-quoted findings, Jon Pauling testified that, for a time, Elyce York lived rent-free at a property in Jefferson County, Colorado, titled in the name of Two Mile Ranch.

88.     Documents produced in this case by Mark Pauling reflect that he acquired a fifteen percent (15%) membership interest in Lardyn on April 7, 2017, for no apparent monetary consideration in exchange.

33.89.   On or about April 24, 2017, the Pauling brothers transferred Two Mile Ranch's business assets, less its ownership of 22424 North Turkey Creek and the promissory note payable by Mark Pauling to Two Mile Ranch in the amount of $275,000, to Lardyn.

90.     In 2017, the Pauling brothers caused Two Mile Ranch to transfer large tracts of real property to Lardyn.  Namely, in late April ofOn or about April 24, 2017 2017, Two Mile Ranch transferred parcel(s) of real property located at or around 18503 and/or 18505 and/or 18507 County Road 42.5 in Sterling, Colorado, to Lardyn for a purported sales price of four million two hundred and seventy thousand dollars ($4,270,000).

91.     Additionally, the Pauling brothers caused Two Mile Ranch to transfer its mineral interests to Lardyn for $1,945,000.

92.     Additionally, the Pauling brothers caused Two Mile Ranch to transfer its equipment to Lardyn for $610,000.

93.     In connection with the foregoing transfers, the Pauling brothers caused Two Mile Ranch to transfer its water rights to Lardyn.

94.     The total purchase price for Two Mile Ranch's transfer of the foregoing assets was $6,825,000.

95.     Before the foregoing purchases, Lardyn had few to no assets. Elyce York had poor credit and no significant personal assets. Lardyn and Elyce York were incapable of purchasing the foregoing assets from Two Mile Ranch without obtaining financing for all or nearly all of the purchase price.

96.     In anticipation of Two Mile Ranch transferring its assets to Lardyn, Elyce York and Mark Pauling discussed the transfer with officers of Farmers State Bank, particularly Steve Stull and Richard Stull, who are officers and owners of Farmers State Bank.

97.     Farmers State Bank knew that Elyce York personally had few assets. On a signed financial statement dated July 21, 2016, submitted to Farmers State Bank, Elyce York represented that she had total assets of $67,500. Nearly the entire amount of her assets consisted of a 2015 GMC Yukon XK Denali that Elyce York listed as being worth $55,000. On information and belief, Jon Pauling purchased that vehicle for her.

98.     Also, on March 15, 2017, Elyce York submitted a financial statement to Farmers State Bank in which she represented that her net worth was $125,420.00. Elyce York ascribed *no value* on that financial statement to her interest in Lardyn.

99.     However, on April 21, 2017, Elyce York submitted an additional financial statement to Farmers State Bank that *projected* what her net worth would be as of May 1, 2017, *after* Lardyn acquired assets from Two Mile Ranch. Specifically, she estimated that her net worth would jump to $1,739,211, of which $1,691,801 would be the value of her ownership of Lardyn.

100.    A comparison of the March 15, 2017 and April 21, 2017 statements that Elyce York submitted to the bank demonstrate her own estimation that she immediately would be enriched by $1,691,801 as the direct result of Two Mile Ranch's transfer of assets to Lardyn.

101.    Elyce York gathered her understanding of how she would be enriched from Jon Pauling.

102.    Mark Pauling also provided Farmers State Bank with a schedule of his assets and debts in advance of the transfer of assets from Two Mile Ranch to Lardyn. Mark Pauling valued his equity in Two Mile Ranch as being $1,179,319.00.

103.    Beginning approximately March 22, 2017, while Two Mile Ranch was still in Chapter 11 bankruptcy, Richard Stull and Steve Stull presented to others at Farmers State Bank their proposal to finance Two Mile Ranch's transfer of assets to Lardyn.

104.    A "Loan Presentation Memorandum" dated March 22, 2017 includes Richard Stull and Steve Stull's analysis that the assets to be transferred were worth $8,735,745, which consisted of real estate valued at $4,270,000, mineral interests valued at $3,400,000, machinery and equipment valued at $650,000, water rights valued at $280,745, and grain and feed valued at $135,000. This valuation followed a detailed examination of the assets by Richard Stull, Steve Stull, and others at Farmers State Bank.

105.    On April 7, 2017, Richard Stull and Steve Stull presented a "Farmers State of Dodge Credit Review" at a special meeting of an eight-member committee, in which Richard Stull and Steve Stull proposed for Farmers State Bank to loan $7,100,000 to Lardyn for the purchase of the foregoing assets from Two Mile Ranch.

106.    In the Credit Review, Richard Stull and Steve Stull noted that the creditor was bankrupt. This was a reference to Two Mile Ranch being in a Chapter 11 proceeding and was reflective of the fact that Richard Stull and Steve Stull regarded Lardyn and Two Mile Ranch as the same business.

107.    As part of the Credit Review, Richard Stull and Steve Stull also observed that Lardyn had "total assets" of $9,085,989—which, in fact, was a reference to their evaluation of Two Mile Ranch's assets yet to be transferred to Lardyn. This was further indication of the fact that Richard Stull and Steve Stull regarded Two Mile Ranch and Lardyn as the same entity.

108.    Richard Stull and Steve Stull further observed in the Credit Review that, if Farmers State Bank loaned $7,100,000 to Lardyn for the purchase of Two Mile Ranch's assets, the "Net

24

Margin" would be $1,635,989, meaning that the assets that Lardyn acquired from Two Mile Ranch would be worth an estimated $1,635,989 more than the liens that Farmers State Bank would hold against those assets. Furthermore, because Richard Stull and Steve Stull knew the price at which Lardyn would be acquiring assets, they knew that the assets that Two Mile Ranch proposed to transfer to Lardyn were worth approximately $2,000,000 greater than Jon Pauling, Mark Pauling, and Elyce York collusively had agreed Lardyn would pay for them.

109.    Richard Stull and Steve Stull further noted the following facts in the Credit Report: (a) that the Logan County property had an two water leases, one with Excel Energy and a second with Tallgrass "with an expected $265,000 per year average for the first five years"; that the water leases were to used by Whiting Oil to frack wells; that the Logan County property had been appraised by Farmers State Bank in 2016 for $4,270,000, which was before a new water lease was negotiated by North Stirling Irrigation district; that the transfer of assets from Two Mile Ranch to Lardyn would include all mineral interests in Weld County, which included wells with a production value of $2,301,120 plus 1100 acres of additional mineral interests valued at $1,100,000; and that the transfer also would include machinery, equipment, and vehicles valued at $650,000 plus feed on hand valued at approximately $135,000.

110.    Richard Stull and Steve Stull stated in the Credit Review that the assets to be transferred from Two Mile Ranch were worth approximately $8,786,000—which was nearly $2,000,000 greater than the price at which Two Mile Ranch proposed to transfer the assets to Lardyn.

111.    Richard Stull and Steve Stull stated in the Credit Review that "management and ownership have a lifetime experience in the ranching, cattle feeding, registered livestock and farming industries." They knew that statement to be untrue of Elyce York but true of Jon Pauling

and Mark Pauling. This statement, like others, reflected Richard Stull and Steve Stull's inability to resist viewing Lardyn as a mere continuation of Two Mile Ranch and describing it to others in that fashion.

112.   100% of the foregoing purchases of Two Mile Ranch's assets was financed by Farmers State Bank. Lardyn signed a new promissory note in favor of Farmers State Bank in the principal amount of $7,100,000.

113.   Documents produced in this case show that July 17, 2017, Pauling Hauling, LLC (a Colorado Limited Liability Company whose principal is Paul Pauling, Jon and Mark's brother), obtained a three percent (3%) membership interest in Lardyn.

114.   In September of 2017, Redtail was formed.  Its initial purported members were Elyce York, with an 82% membership interest, Mark Pauling with a 15% membership interest, and Pauling Hauling, LLC, with a 3% interest.

115.   Brian Bates—the Paulings' longtime lawyer—filed Redtail's Colorado statement of authority.

116.   On November 1, 2017, Elyce York sold a 2% membership interest in Lardyn to Brian Bates' company Cherry Creek Cattle Company, LLC, for $26,000 in cash and $14,000 worth of Mr. Bates' future legal services.

117.   On December 18, 2017, Mark Pauling withdrew his membership in Redtail and returned his 15% membership interest in Redtail to Elyce York.

118.   On or around March 27, 2018, pursuant to a "Contribution and Assumption Agreement," Lardyn conveyed the valuable mineral rights it originally obtained from Two Mile Ranch—worth more than $3.4 million—to Redtail.

119.    Lardyn, Redtail, and Farmers State Bank all signed the Contribution and Assumption Agreement. The same parties also signed an "Assumption Agreement" of the same date.

120.    Under the Assumption Agreement, Redtail agreed to assume Lardyn's indebtedness to Farmers State Bank under Promissory Note 2542, which then had a principal balance of $2,896,143.92.

121.    The Contribution and Assumption Agreement provided that the "value of the [transferred] Mineral Interests is equal to or greater than the amount of indebtedness [to Farmers State Bank] encumbering the Mineral Interest that Redtail will assume as part of the transfer of the Mineral Interest to Redtail by Lardyn." The mineral interests were, in fact, worth greater than $3,400,000.

122.    Prior to the Contribution and Assumption Agreement, and as set forth therein, Redtail had no assets and no income.

123.    Farmers State Bank agreed to the transfer of mineral interests from Lardyn to Redtail and Redtail's assumption of certain of Lardyn's obligations to Farmers State Bank.

124.    Under the Contribution and Assumption Agreement, the signatories agreed that "[i]mmediately following Lardyn's contribution of the Mineral Interest to Redtail and Lardyn receiving a membership interest in Redtail in exchange, Lardyn will then distribute to its members the membership interest it receives in Redtail" such that Redtail's membership was held 95% by Elyce York, 3% by Pauling Hauling, and 2% by Cherry Creek Cattle Company.

125.    Although Mark Pauling was a member of Lardyn as of March 27, 2018, –the Contribution and Assumption Agreement did not identify him as a recipient of a membership interest in Redtail, raising questions such as whether the Contribution and Assumption

Agreement—like many other documents prepared by one or more of the Defendants—was backdated by Defendants to March 27, 2018.

126.     In May of 2018, Redtail purchased residential real property located on a golf course in Sidney, Nebraska.

127.     Elyce York used the golf course residential property owned by Redtail as a home for herself, her and Jonathan Pauling's daughter, and her son.

128.     Redtail later transferred this property to Elyce York.

129.     As late as August of 2018, Two Mile Ranch was still transferring valuable mineral assets to Lardyn.

130.     Proceeds from oil and gas royalties to Lardyn or Redtail were commingled in Lardyn's bank accounts. Farmers State Bank had knowledge of this commingling.

131.     Brian Bates assisted in the redirecting of oil and gas royalty payments from Lardyn to Redtail's members.

132.     Documents produced in this case dated January 1, 2019, show Mark Pauling purporting to transfer his fifteen percent (15%) membership interest in Lardyn to Elyce York Trust #1 for $500,000.

133.     Elyce York Trust #1 (the "Trust") was not formed until March 19, 2019.

134.     Further, in an email from Elyce York to Brian Bates dated March 4, 2019, Elyce York informed Brian Bates that the Elyce York Trust #1 prospectively was buying Mark Pauling's 15% interest in Lardyn, stating that "a trust that I established for my children is buying the 15% interest in Lardyn from Mark Pauling."

135.    On June 20, 2019, after Plaintiff filed this case and served process on Defendants, Farmers State Bank loaned Elyce York Trust #1 $500,000 to purchase Mark Pauling's 15% interest in Lardyn.

136.    Like many other documents prepared by Defendants, the document dated January 1, 2019, in which Mark Pauling purported to transfer his 15% interest in Lardyn to Elyce York Trust #1 for $500,000 was backdated.

137.    The effect of Elyce York Trust #1's purchase of Mark Pauling's 15% interest in Lardyn for $500,000 was to facilitate Mark Pauling's capture of part of the millions of dollars in equity that Two Mile Ranch transferred to Lardyn by conveying its assets to Lardyn for millions of dollars less than they were worth.

138.    Farmers State Bank took assignment of Elyce York and the Trust's common capital stock in Lardyn as collateral.

34.139. Mark Pauling's tax returns for 2019 assert that he maintained a fifteen percent (15%) membership interest in Lardyn throughout 2019, and do not reflect that he sold his interest in Lardyn to the Trust in 2019.

35.140. As of April 2019, Jon Pauling and Mark Pauling are continuing their business of ranching and operating feedlots—as well as collecting benefits from Two Mile Ranch's mineral and water -rights—through Lardyn and/or Redtail.  Lardyn is in the process of obtaining or has obtained state certification to operate a feedlot at 18413 County Road 42.5. That address is for all intents and purposes identical to the location (18503 County Road 42.5) where Jon Pauling and Mark Pauling, through Two Mile Ranch, have operated irrigated farm, ranching, and feedlot

29

operations. *See* Jeff Rice, *County P&Z OKs feedyard expansion*, JOURNAL-ADVOCATE, April 17, 2019.[1]

141.   Unlike Jon Pauling and Mark Pauling, Elyce York is not a famer, rancher, or feedlot operator by trade. To the contrary, she is a young dancer who, as Judge Buchanan found in the State Case, also was groomed by Jon Pauling. Notwithstanding her nominal title as the manager of Lardyn, it is not credible that Elyce York would be the brains, brawn, or investor behind a feedlot operation based out of the same location where Jon Pauling and Mark Pauling have operated their farm, ranch, and feedlot businesses for many years.

142.   Defendants knew in April 2017 that Two Mile Ranch was a proverbial cash cow, that it could generate enormous profits, and that the price being paid by Lardyn for Two Mile Ranch's assets were greatly undervalued.

143.   Redtail's 2018 U.S. Return of Partnership Income Form 1065 reports that it held mineral interests valued at $4,169,226. This may be contrasted to the purchase price that Jonathan Pauling, Mark Pauling, and Elyce York coordinated among themselves to be paid by Lardyn to Two Mile Ranch—$1,945,000—for the same mineral interests that were subsequently assigned to Lardyn. That is to say, Jonathan Pauling, Mark Pauling, and Elyce York transferred those mineral interests between affiliated companies for less than 50% of their value.

36.144. Federal tax filings for 2018 show that Elyce York derived $66,880 in income from Redtail and $328,271 in income from Lardyn, for a total of $395,151.

---

[1]  Available at http://www.journal-advocate.com/sterling_local_news/ci_32581616/county-p-z-oks-feedyard-expansion (last accessed April 24, 2019, discussing an application to Colorado's Logan County Commissioners to amend and renew a special use permit to increase current permitted capacity of 2,500 head of cattle to 5,000 head of cattle for a feedlot at 18413 County Road 42.5 and how the "previous owners of the property [*i.e.* Two Mile Ranch] had secured a permit from Logan County to expand the feedlot but never followed through with state certification").

37.145. The fact that Elyce York derived income of $417,319 in 2018 from the assets that Two Mile Ranch transferred to Lardyn casts doubt on Jonathan Pauling's representation that Two Mile Ranch was unable to generate a profit to distribute to its members.

146.    Unlike Jon Pauling—who testified in post-judgment proceedings to never having received distributions from Two Mile Ranch to which Amanda Wilson's charging order applied— Elyce York has received hundreds of thousands of dollars in distributions from Lardyn and/or Redtail, which has profited richly from Two Mile Ranch's historical operations.

147.    Through their conspiracy to avoid Amanda Wilson's collection efforts, Elyce York has been transferred the Pauling brothers' substantial equity in the income-producing asset that was Two Mile Ranch.

38.148. The Pauling brothers, Elyce York, and Farmers State Bank all knew that Two Mile Ranch's operations would generate significant cash flow for its owners before those operations were transferred to Lardyn and Redtail.

149.    Lardyn and Two Mile Ranch use the same Agricultural Consultant (AGPro), who in many cases has simply crossed out "Two Mile Ranch" and handwritten "Lardyn" on various relevant forms.

150.    Lardyn and Two Mile Ranch are in the same historical business (ranching) and situated the same historical location.  Indeed, Farmers State Bank has sent numerous pieces of correspondence supposedly directed to Lardyn to Jon Pauling's home.

39.151. Lardyn is a mere alter ego of Jon Pauling and Two Mile Ranch and its longstanding ranching operation.  The addresses on file with the Nebraska Secretary of State for Lardyn are a sham, and are Elyce York's parents' addresses.

40.152. Two Mile Ranch is an alter ego of Jon Pauling and Mark Pauling used to facilitate fraud, including the avoidance of Amanda Wilson's collection efforts.

153.   Lardyn also is a mere alter ego of Jon Pauling and Mark Pauling used to facilitate fraud, including the avoidance of Amanda Wilson's collection efforts.

154.   Redtail also is a mere alter ego of Jon Pauling and Mark Pauling used to facilitate fraud, including the avoidance of Amanda Wilson's collection efforts.  The addresses on file with the Nebraska Secretary of State for Redtail are a sham, and are Elyce York's parents' addresses.

41.155. York Family Trust #1 is a mere alter ego of Elyce York, used by Jon Pauling and Mark Pauling to facilitate fraud, including the avoidance of Amanda Wilson's collection efforts.

156.   Elyce York is a straw woman for Jon Pauling's interests in Lardyn and Redtail and a co-conspirator of Jon Pauling and Mark Pauling.

42.157. Consistent with applicable banking industry norms and regulations (including but not limited to the "know your customer" rule), Farmers State Bank has knowledge that Elyce York, Lardyn, and Redtail are all simply fronts for Jon Pauling and his historic Two Mile Ranch operations.

***Farmers State Bank Assists in transactions concerning the Transferred Properties***

43.158. The Pauling brothers and their businesses have a longstanding business relationship with Farmers State Bank.

44.159. At least through 2014 and 2015, Farmers State Bank continued to extend credit terms to Two Mile Ranch based on Jon Pauling's signature alone on behalf of Two Mile Ranch.

45.160. Farmers State Bank had actual knowledge of the State Case and of Amanda Wilson's efforts to collect her judgment against Jon Pauling. In particular, Amanda Wilson engaged in post-judgment discovery that included issuing a subpoena to Farmers State Bank for

banking records pertaining to Two Mile Ranch and related business activities of Jon Pauling and Mark Pauling. Farmers State Bank produced documents in response to that subpoena. There is no doubt that Farmers State Bank was fully aware of the State Case, Amanda Wilson's judgment, and her efforts to collect it including against the assets of Two Mile Ranch.

46.161. In order to protect Jon Pauling and Two Mile Ranch against efforts by Amanda Wilson to collect her judgment, Jon Pauling and Mark Pauling arranged for Farmers State Bank to lend money to Lardyn, with such loans secured by deeds of trust in favor of Farmers State Bank on the transferred property. Farmers State Bank, which had loaned Jon Pauling and Mark Pauling millions of dollars over the years, and which had profited richly from such loans, willingly participated in that scheme.

47.162. The bankers at Farmers State Bank know Jon Pauling and Mark Pauling personally and have a longstanding, highly lucrative relationship with them. They know Jon Pauling and Mark Pauling to be experienced ranch and feedlot operators operating at the location at issue. When Farmers State Bank providing provided new financing to Lardyn and Redtail, with Elyce York as the *nominal* managing member of Lardyn or Redtail who signed various documents in connection with the financing, it knew that Elyce York, and Lardyn, and Redtail were a mere front and shell operation for Jon Pauling, Mark Pauling, and Two Mile Ranch's continuing business operations. Indeed, in connection with providing financing to Lardyn, Farmers State Bank required Mark Pauling to co-sign one or more documents as a purported member of Lardyn. Farmers State Bank knew that the purpose of this elaborate scheme to transferring income-producing property from Two Mile Ranch to Lardyn and Redtail and provide providing new financing to Lardyn and Redtail was to hinder, delay, and defraud Amanda Wilson in her efforts to collect her judgment against Jon Pauling.

163.    Moreover, the U.C.C. Financing Statements filed by Farmers State Bank in Colorado with respect to its loans to Lardyn and Elyce York reflect Farmers State Bank's security in livestock and crops, farm and ranching equipment, and profits obtained from farming and ranching operations.

164.    From 2017 to 2019, Farmers State Bank repeatedly modified the debt that Lardyn assumed from Two Mile Ranch and extended additional credit to Lardyn and Redtail to effectuate the transfer of assets from Two Mile Ranch to Lardyn and Redtail.

165.    In connection with its loans to Lardyn and Redtail, Farmers State Bank has listed Two Mile Ranch as a related loan and has Jon Pauling's contact information featured in its loan files for Lardyn and Redtail.

166.    Farmers State Bank's loan files to Lardyn indicate that it had "no history with this entity," yet extended credit because of the "historic profitab[ility]" of the "purebred operation" that Two Mile Ranch ran and transferred to Lardyn.

167.    Various personnel at Farmers State Bank—chiefly, Stephen Stull, Michael Stull, and Richard Stull who, in their President and Senior Vice President positions effectively control Farmers State Bank—have longstanding personal and banking relationships with Jon Pauling.

168.    On information and belief, the Stulls communicated with Jon Pauling concerning Farmers State Bank's various dealings with Lardyn and Redtail.

169.    Additionally, Michael and Stephen Stull participated in loans from Farmers State Bank to Lardyn and Redtail through an entity in which they are members: Two 6 Too, LLC.

170.    Despite knowing that Jon Pauling was being actively pursued by judgment creditors, on information and belief Farmers State Bank knowingly assisted Jon Pauling and Mark

Pauling to hinder, delay, and defraud Amanda Wilson in her efforts to collect her judgment against Mark Pauling.

171.   Even after Plaintiff filed this lawsuit, Farmers State Bank continued to assist Jonathan Pauling, Mark Pauling, and Elyce York hinder, delay, and defraud Plaintiff's ability to collect her judgment.

172.   On June 20, 2019, Farmers State Bank loaned $500,000 to Elyce York Trust #1, which that trust then provided to Mark Pauling in exchange for his 15% interest in Lardyn. This enabled Mark Pauling to extract equity derived from Two Mile Ranch while distancing himself from Lardyn and its prospective liabilities.

173.   In December 2019, Farmers State Bank entered into an agreement with Jon Pauling and Mark Pauling that Two Mile Ranch would transfer ownership of 22424 North Turkey Creek to Farmers State Bank in lieu of foreclosure under the Deed of Trust dated May 15, 2019. In fact, however, there was no valid deed of trust on 22424 North Turkey Creek to support the agreement for a deed in lieu of foreclosure.

174.   Although Promissory Note 2288 was paid in full in May 2015, Farmers State Bank never released the deed of trust on 22424 North Turkey Creek.

175.   Despite the fact that the deed of trust recorded against 22424 North Turkey Creek specifically secured payment of Promissory Note Number 2288, Farmers State Bank falsely and misleadingly used amounts purportedly owed on Promissory Note 2352 as the basis for representing to Amanda Wilson and others that the amount of debt encumbering 22424 North Turkey Creek exceeded $2,050,000.

176.   Prior to negotiating and accepting the deed in lieu of foreclosure, Farmers State Bank falsely represented to Amanda Wilson and others that there was "debt encumbering the

residence." Farmers State Bank further falsely represented to Amanda Wilson that the amount of the encumbrance was greater than $2,050,000. In fact, no debt encumbered 22424 North Turkey Creek because the deed of trust secured payment of a promissory note that paid off mere days after its creation.

177.    Farmers State Bank made its representations with the intent to crate the false impression in the mind of Amanda Wilson and others that 22424 North Turkey Creek was encumbered by a valid deed of trust securing debt in excess of $2,050,000.

178.    On and before December 30, 2019, a transcript of Amanda Wilson's judgment against Jon Pauling was on record with the Clerk and Recorder of Jefferson County, Colorado. That transcript of judgment was recorded on October 26, 2015 at reception number 2015114534.

179.    Farmers State Bank had actual knowledge of Amanda Wilson's judgment against Jon Pauling. Farmers State Bank maintained copies of the transcript of judgment in its files and specifically referred to the existence of the judgment in a court filing by Farmers State Bank dated July 5, 2016.

180.    On December 30, 2019, Farmers State Bank accepted the deed in lieu of foreclosure on 22424 North Turkey Creek from Two Mile Ranch, signed by Jon Pauling and Mark Pauling.

48.181. The intent of Farmers State Bank, Jon Pauling, and Mark Pauling in misrepresenting that 22424 North Turkey Creek was encumbered by a valid deed of trust securing debt greater than $2,050,000 and giving Farmers State Bank a deed in lieu of foreclosure on 22424 North Turkey Creek was to hinder, delay, and defraud Amanda Wilson in collection of her judgment and enable Farmers State Bank to recover amounts purportedly owed to it ahead of Amanda Wilson.

49.182.  22424 North Turkey Creek was the only remaining asset of significant value titled in the name of Two Mile Ranch. Mark Pauling has not paid, and on information and has no intent of paying, the promissory note he signed in favor of Two Mile Ranch in the principal amount of $275,000. The transfer of 22424 North Turkey Creek to Farmers State Bank rendered Two Mile Ranch insolvent.

**FIRST CLAIM FOR RELIEF**
*Violation of the Colorado Uniform Fraudulent Transfer Act*
*Transfer of Jon Pauling's Partnership Interest in Two Mile Ranch*
*Against Jon Pauling, Mark Pauling, and Two Mile Ranch*

50.183.          The allegations in the preceding paragraphs are incorporated by reference.

51.184.          Under the Colorado Uniform Fraudulent Transfer Act ("CUFTA"), C.R.S. § 38-8-101 *et seq.*, any transfer made or obligation entered into by a debtor "with actual intent to hinder, delay or defraud" a present or future creditor is actionable.  C.R.S. § 38-8-105(1)(a).

52.185.          At all times relevant to Jon Pauling's purported transfer of the majority of his partnership interest in Two Mile Ranch to Mark Pauling, Jon Pauling was a "debtor" of Amanda Wilson as defined by C.R.S. § 38-8-102(7).

53.186.          At all times relevant to Jon Pauling purported transfer of the majority of his partnership interest in Two Mile Ranch to Mark Pauling, Amanda Wilson was a "creditor" of Jon Pauling with a "claim" against Jon Pauling as defined by C.R.S. § 38-8-102(3) and (5).

54.187. C.R.S. § 38-8-105 sets forth the various, non-exclusive factors (also known as "badges of fraud") that inform whether the debtor acted with "actual intent" to hinder, delay, or defraud a creditor.  Actions and transfers by the Defendants establish the existence of several badges of fraud, including but not necessarily limited to the following:

a. Whether "the transfer or obligation was to an insider[.]"  C.R.S. § 38-8-105(2)(a). Mark Pauling is an insider of Jon Pauling (C.R.S. § 38-8-102(8)(a)(I)) and Two Mile Ranch is an insider of Jon Pauling (C.R.S. § 38-8-102(8)(a)(II)).

b. Whether the debtor "retained possession or control of the property transferred after the transfer[.]"  C.R.S. § 38-8-105(2)(b).  Jon Pauling testified that he continued to work at the feed lot described at n. 1, *supra*, and Jon Pauling retains control over the former Two Mile Ranch property through this control over Elyce York and thereby his control over Lardyn, with the cooperation of Mark Pauling as a fellow member of Lardyn.

c. Whether, prior to the transfer, "the debtor had been sued[.]"  C.R.S. § 38-8-105(2)(d).  Prior to the above transfers, Jon Pauling had been successfully sued.

d. Whether the transfer "was of substantially all the debtor's assets[.]"  C.R.S. § 38-8-105(2)(e).  The transfer of 40% of his 50% partnership interest in Two Mile Ranch was of substantially all of Jon Pauling's meaningful assets, as evidenced by Jon Pauling's sworn pleas of poverty during Ms. Wilson's collection attempts in the State Case.

e. Whether the "value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred[.]"  C.R.S. § 38-8-105(2)(h).  The value that Jon Pauling received for the transfer of his Two Mile Ranch partnership interest (apparently nothing) is not reasonably equivalent to the value of the asset transferred.

f. Whether the debtor "was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred[.]"  C.R.S. § 38-8-105(2)(i).  Throughout the collection attempts in the State Case, Jon Pauling testified that he is insolvent.

55.188. The reduction of Jon Pauling's partnership interest in Two Mile Ranch is a "transfer" as that term is defined in C.R.S. § 38-8-102(13).

56.189. The above-described transfer was made with actual intent to hinder, delay, or defraud Amanda Wilson, a creditor of Jon Pauling.  This transfer violated C.R.S. § 38-8-105(1)(a). Jon Pauling's actual intent may be inferred by the existence of multiple badges of fraud, including but not necessarily limited to those set forth in C.R.S. § 38-8-105(2)(a), (b), (d), (e), (h), and (i).

57.190. Likewise, the above-described transfer was made without Jon Pauling receiving reasonably equivalent value in exchange at a time (following his arrest for the sexual assault of

Amanda Wilson) when Jon Pauling reasonably should have believed that he would face liability beyond his ability to pay as that liability became due.  C.R.S. § 38-8-105(1)(b)(II).

~~58.~~191. Additionally, or in the alternative, the transfers were made without Jon Pauling receiving reasonably equivalent value and rendered Jon Pauling insolvent such that they violated C.R.S. § 38-8-106(1).

~~59.~~192. Mark Pauling, Jon Pauling, and Two Mile Ranch agreed by words, conduct, or both to carry out the foregoing transactions, and all cooperated in carrying out these transfers.

~~60.~~193. Amanda Wilson is entitled to any or all remedies set forth in C.R.S. § 38-8-108 as follows:

a. Avoidance of the transfer to the extent necessary to satisfy her claims;

b. An attachment or other provisional remedy against the assets transferred or other property of Jon Pauling, Mark Pauling, or Two Mile Ranch;

c. Judgment for one and one-half the value of the assets transferred or for one and one-half the amount necessary to satisfy her claims, whichever is less, jointly and severally against Jon Pauling, Mark Pauling, or Two Mile Ranch;

d. An injunction against further disposition by Jon Pauling, Mark Pauling, or Two Mile Ranch of assets already transferred or of other property, appointment of a receiver to take charge of the assets transferred, and any other relief the circumstances may require.

**SECOND CLAIM FOR RELIEF**
*Violation of the Colorado Uniform Fraudulent Transfer Act*
*Transfer of Two Mile Ranch Property to Lardyn*
*Against Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, ~~and~~ Lardyn, and Redtail*

~~61.~~194. The allegations in the preceding paragraphs are incorporated by reference.

~~62.~~195. The fraudulent transfer of the majority of Jon Pauling's Two Mile Ranch partnership interest was the first step in hindering Amanda Wilson's collection efforts, and the transfer of Two Mile Ranch property to Lardyn and Redtail was the second step.

196.    At the time when Two Mile Ranch transferred real property, equipment, feed, water rights, and mineral rights to Lardyn, Jon Pauling was a "debtor" of Amanda Wilson as defined by C.R.S. § 38-8-102(7).  Mark Pauling and Two Mile Ranch were likewise "debtors" of Amanda Wilson due to their involvement in the earlier fraudulent transfer of Jon Pauling's partnership interest in Two Mile Ranch to Mark Pauling.

~~63.~~197. Likewise, at the time when Lardyn transferred mineral rights to Redtail, Jon Pauling, Mark Pauling, and Two Mile Ranch were "debtors" of Amanda Wilson as defined by C.R.S. § 38-8-102(7).   Additionally, Lardyn was a "debtor" of Amanda Wilson due to its involvement in the earlier fraudulent transfer from Two Mile Ranch.

~~64.~~198. C.R.S. § 38-8-105 sets forth the various, non-exclusive factors that inform whether the debtor acted with "actual intent" to hinder, delay, or defraud a creditor.  Various actions and transfers by the Defendants establish the existence of several badges of fraud, including but not necessarily limited to the following~~:~~:

    a.  Whether "the transfer or obligation was to an insider[.]"  C.R.S. § 38-8-105(2)(a).  Lardyn and Elyce York are insiders of Jon Pauling, Mark Pauling, and Two Mile Ranch.  Lardyn is an insider of Jon Pauling because Lardyn is controlled by Elyce York, who is controlled by and a proxy for Jon Pauling, with Mark Pauling's assistance. C.R.S. § 38-8-102(8)(a)(IV).  Redtail is an insider of Jon Pauling and of Lardyn for the same reasons.  Lardyn and Redtail are~~is~~ likewise ~~an~~ insiders of Jon Pauling because of this "affiliate" and agency relationship.  C.R.S. §§ 38-8-102(1);

38-8-102(8)(d); 38-8-102(8)(e).  Lardyn is likewise an insider of Two Mile Ranch for these same reasons.  Elyce York and Redtail isare an insiders of Jon Pauling, Mark Pauling, and Two Mile Ranch for those same reasons.

b.  Whether the debtor "retained possession or control of the property transferred after the transfer[.]"  C.R.S. § 38-8-105(2)(b).  Jon Pauling testified that he continued to work at the feed lot described at n. 1, *supra*, and Jon Pauling retains control over the former Two Mile Ranch property through this control over Elyce York and thereby his control over Lardyn and Redtail, with the cooperation of Mark Pauling as a fellow member of Lardyn.  Similarly, Two Mile Ranch's purported managing partner Mark Pauling is likewise a member of Lardyn—whose purported managing member does not appear to have any ranching experience—and as such both Mark Pauling and Two Mile Ranch retain control of the transferred property.  Likewise, Jon Pauling and Lardyn retain control over the mineral interests transferred to Redtail because Elyce York—who is the proxy for and is controlled by Jon Pauling—is the manager of both Lardyn and Redtail.

c.  Whether, prior to the transfer, "the debtor had been sued or threatened with suit[.]"  C.R.S. § 38-8-105(2)(d).  Prior to the transfer of Two Mile Ranch's property to Lardyn, Jon Pauling had been successfully sued by Amanda Wilson.  Likewise, Two Mile Ranch had been sued in the State Case.  Similarly, Two Mile Ranch was under a charging order entered by the Denver District Court. Lardyn is a continuation of Two Mile Ranch, and Jon Pauling, Mark Pauling, and Elyce York either knew or had reason to know that Plaintiff would sue Lardyn or Lardyn was actually being sued by Plaintiff in this case at the time of the transfer.

d.  Whether the transfer "was of substantially all the debtor's assets[.]"  C.R.S. § 38-8-105(2)(e).  The transfer of Two Mile Ranch property to Lardyn appears to be substantially all of Two Mile Ranch's meaningful assets.  As evidenced by Jon Pauling's sworn pleas of poverty during Ms. Wilson's collection attempts in the State Case, he had already transferred substantially all of his assets.

e.  Whether the "value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred[.]"  C.R.S. § 38-8-105(2)(h).  On information and belief, Lardyn had no effective means to actually pay to Two Mile Ranch the purported sale price for the property transferred by Two Mile Ranch, and Two Mile Ranch received nothingdid not receive reasonably equivalent of value from Lardyn for the transfer.  Likewise, Redtail had no effective means to actually pay Lardyn the purported sale price for the mineral rights transferred by Lardyn, and Lardyn did not receive reasonably equivalent value for the transfer; the Contribution and Assumption Agreement notes that Lardyn contributed the mineral interests to Redtail for less than the amount of indebtedness assumed by Redtail.

f.  Whether the debtor "was insolvent or became insolvent shortly after the transfer was made[.]"  C.R.S. § 38-8-105(2)(i).  Throughout the collection attempts in the

State Case, Jon Pauling testified that he is insolvent.  As the property transferred by Two Mile Ranch was substantially of its property, it too became insolvent.  Similarly, around the time Lardyn transferred the mineral rights to Redtail, Lardyn began running negative bank account balances with Farmers State Bank.

65.199. The transfer of the Two Mile Ranch property to Lardyn is a "transfer" as that term is defined in C.R.S. § 38-8-102(13).  The transfer of mineral rights from Lardyn to Redtail is also such a "transfer."

66.200. Theise transfers was were made with actual intent to hinder, delay, or defraud Amanda Wilson, a creditor of Jon Pauling, Mark Pauling, and Two Mile Ranch, and Lardyn. Theise transfers violated C.R.S. § 38-8-105(1)(a).  Jon Pauling, Mark Pauling, and Two Mile Ranch, and Lardyn's actual intent may be inferred by the existence of multiple badges of fraud, including but not necessarily limited to those set forth in C.R.S. § 38-8-105(2)(a), (b), (d), (e), (h), and (i).

67.201. Likewise, theise transfers was were made without Two Mile Ranch, Jon Pauling, or Mark Pauling, or Lardyn receiving reasonably equivalent value in exchange at a time when they should have reasonably believed that they would incur liability beyond their ability to pay as that liability became due.  C.R.S. § 38-8-105(1)(b)(II).

68.202. Additionally, or in the alternative, the transfers were made without Two Mile Ranch, Jon Pauling, or Mark Pauling, or Lardyn receiving reasonably equivalent value and rendered them insolvent such that they violated C.R.S. § 38-8-106(1).

69.203. Mark Pauling, Jon Pauling, Two Mile Ranch, Elyce York, and Lardyn, Redtail, and Farmers State Bank agreed by words, conduct, or both to carry out the foregoing transaction, and all cooperated in carrying out these transfers.

70.204. Amanda Wilson is entitled to any or all remedies set forth in C.R.S. § 38-8-108 as follows:

   a.   Avoidance of the transfer to the extent necessary to satisfy her claims;

   b.   An attachment or other provisional remedy against the assets transferred or other property of Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, ~~or~~ Lardyn, Redtail, or Farmers State Bank;

   c.   Judgment for one and one-half the value of the assets transferred or for one and one-half the amount necessary to satisfy her claims, whichever is less, jointly and severally against Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, ~~, or~~ Lardyn, Redtail, or Farmers State Bank;

   d.   An injunction against further disposition by Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, ~~or~~ Lardyn, or Redtail of assets already transferred or of other property, appointment of a receiver to take charge of the assets transferred, and any other relief the circumstances may require.

**THIRD CLAIM FOR RELIEF**
*Conspiracy to Violate the Colorado Uniform Fraudulent Transfer Act*
*Against Jon Pauling, Mark Pauling, Two Mile Ranch,*
*Elyce York, Lardyn, ~~and~~ Farmers State Bank, and Redtail*

~~71.~~205. The allegations in the preceding paragraphs are incorporated by reference.

~~72.~~206. As set forth above and below, Jon Pauling, Mark Pauling, Two Mile Ranch, Elyce York, Lardyn, ~~and~~ Farmers State Bank, and Redtail agreed by words, conduct, or both to carry out the above-described transfers to hinder, delay, or defraud Amanda Wilson in violation of the Colorado Uniform Fraudulent Transfers Act.

~~73.~~207. These Defendants performed one or more acts—namely, the execution of the above and below transactions—to accomplish their unlawful goals.

~~74.~~208. These actions have caused Amanda Wilson damage in an amount to be determined at trial.

~~75.~~209. Additionally, all Defendants have profited from their participation in the conspiracy to hinder, delay, and defraud Amanda Wilson. Farmers State Bank has benefitted and profited through its continuing financing of Jon Pauling and Mark Pauling's operations in Colorado; Jon Pauling and Mark Pauling have benefitted and profited from their ability to continue those

operations; ~~and~~ Elyce York has benefitted from free housing in Morrison, Colorado as well as~~, on information and belief,~~ compensation funneled through Lardyn and Redtail ~~Resources LLC~~; Lardyn has benefitted from its operation of the historic Two Mile Ranch operation and its water rights; and Redtail has benefitted from its receipt of oil and gas royalties obtained from Two Mile Ranch by way of Lardyn. All of those benefits and profits were jeopardized by Amanda Wilson's collection efforts, which is why all Defendants conspired to hinder, delay, and defraud Amanda Wilson.

210.    All co-conspirators acted with wrongful intent to hinder, delay, and defraud Amanda Wilson, and are jointly and severally liable for any damages that may be awarded against one, including without limitation damages and statutory multipliers available under C.R.S. § 38-8-108(c).

### FOURTH CLAIM FOR RELIEF
*Violation of the Colorado Uniform Fraudulent Transfer Act*
*Transfer of 22424 North Turkey Creek to Farmers State Bank*
*Against Jon Pauling, Mark Pauling, Two Mile Ranch, and Farmers State Bank*

211.    The allegations in the preceding paragraphs are incorporated by reference.

212.    At all times relevant to this case, Two Mile Ranch was an alter ego of Jon Pauling and/or both Jon Pauling and Mark Pauling.

213.    At no time relevant to this case did Two Mile Ranch operate as a distinct business entity from Jon Pauling and Mark Pauling. This lack of distinction is reflected by, among other things, the fact that Two Mile Ranch purchased a luxury residential property as a rent-free home for Jon Pauling's girlfriend Elyce York and their child, while the residential property served no legitimate business purpose of Two Mile Ranch. The lack of distinction is further evidenced by

the fact that Two Mile Ranch supported Jon Pauling for years without any record of distributions being made or wages being paid. Two Mile Ranch similarly has supported Mark Pauling without records of distributions made or wages paid.

214.    Two Mile Ranch has failed to maintain adequate corporate records. The records of Two Mile Ranch's sources of income, expenses paid, and liabilities owed are spotty at best, and the lack of records facilitates concealment of expenses paid on behalf of Jon Pauling and Mark Pauling or distributions made to them.

215.    The nature and form of Two Mile Ranch's ownership and control—namely, that it is a two-member partnership owned by brothers—has further facilitated misuse by Jon Pauling and Mark Pauling.

216.    Assets of Two Mile Ranch have been used for purposes unrelated to the company's business, including subsidizing Mark Pauling's purchase of the Weld County property, purchasing 22424 North Turkey Creek for Jon Pauling's individual benefit and the benefit of his girlfriend and child, and paying living expenses of Jon Pauling.

217.    There is such unity of interest and lack of respect of the separateness of Two Mile Ranch and Jon Pauling and Mark Pauling that the personalities and assets of Two Mile Ranch and Jon Pauling and Mark Pauling are indistinct.

218.    Jon Pauling and Mark Pauling have used Two Mile Ranch to perpetuate a fraud or abuse on Amanda Wilson, as described elsewhere in this complaint in detail, including the transfer of valuable assets to Two Mile Ranch's successor Lardyn. Any adherence to the fiction that Two Mile Ranch is separate from Jon Pauling and Mark Pauling would sanction a fraud, promote injustice, and lead to evasion of legal obligations.

219.   For the foregoing reasons, there is no distinction between Jon Pauling and Two Mile Ranch.

220.   For purposes of Amanda Wilson's judgment lien, Jon Pauling had an interest in 22424 North Turkey Creek, and that property was real estate of Jon Pauling.

221.   As of December 30, 2019, Amanda Wilson's recorded transcript of judgment in Jefferson County was a valid lien on any property of Jon Pauling's located in that county and was the only valid lien and encumbrance on 22424 North Turkey Creek.

222.   Furthermore, Farmers State Bank is not an innocent purchaser of 22424 North Turkey Creek, as Farmers State Bank had actual knowledge of Amanda Wilson's judgment against Jon Pauling, had actual knowledge of facts establishing Amanda Wilson's lien on 22424 North Turkey Creek, has colluded with Jon Pauling and Mark Pauling to frustrate Amanda Wilson's recovery of some or all of her judgment, and engaged in misrepresentation regarding the existence of its putative deed of trust on 22424 North Turkey Creek to further that collusion and advance its own interests.

223.   Farmers State Bank knowingly misrepresented, on multiple occasions, both that it had an enforceable deed of trust encumbering 22424 North Turkey Creek and that the amount of the debt secured by that putative (but non-existent) encumbrance was co-extensive with the amount of debt owed on Promissory Note 2352, which was *not* secured by a deed of trust against 22424 North Turkey Creek.

224.   At the time Jon Pauling and Mark Pauling caused Two Mile Ranch to transfer its last remaining valuable asset—22424 North Turkey Creek—to Farmers State Bank, each of them was a "debtor" of Amanda Wilson as defined by C.R.S. § 38-8-102(7), in that Amanda Wilson was suing each of them for damages in this case.

225.   The transfer of title to 22424 North Turkey Creek to Farmers State Bank was a "transfer" as that term is defined in C.R.S. § 38-8-102(13).

226.   Jon Pauling, Mark Pauling, Two Mile Ranch, and Farmers State Bank transferred 22424 North Turkey Creek to Farmers State bank without honoring and paying Amanda Wilson's judgment lien against that property and with the intent to avoid her ability to execute her judgment against that property.

227.   Moreover, regardless of whether Amanda Wilson's judgment lien is found by the Court to have attached to 22424 North Turkey Creek, Jon Pauling, Mark Pauling, Two Mile Ranch, and Farmers State Bank caused the transfer of 22424 North Turkey Creek to Farmers State Bank with actual intent to hinder, delay, and defraud Amanda Wilson's ability to collect her judgment through an enforceable charging order against Two Mile Ranch, in violation of C.R.S. § 38-8-105(a).

228.   Jon Pauling, Mark Pauling, Two Mile Ranch, and Farmers State Bank's actual intent to hinder, delay, and defraud Amanda Wilson may be inferred from the circumstances, including but not limited to certain of the non-exhaustive "badges of fraud" under CUFTA that attended the transfer of 22424 North Turkey Creek to Farmers State Bank.

229.   Jon Pauling, Mark Pauling, Two Mile Ranch, and Farmers State Bank caused the transfer when all of them were being sued by Amanda Wilson in this action.

76.230. The transfer divested Two Mile Ranch of its last remaining asset of value, rendering it insolvent and otherwise incapable either of making a distribution to Jon Pauling that would be subject to the charging order entered by the Denver District Court or paying a money judgment entered in this case.

77. 231. Farmers State Bank engaged in misrepresentations of fact to Amanda Wilson and others in connection with that transfer.

232.     The transfer of 22424 North Turkey Creek was a sale of that property by Jon Pauling, Mark Pauling, and Two Mile Ranch to Farmers State Bank. Amanda Wilson is entitled to payment of damages in satisfaction of her judgment lien on 22424 North Turkey Creek.

233.     Additionally or in the alternative, Amanda Wilson is entitled to any or all remedies set forth in C.R.S. § 38-8-108 as follows:

    a.   Avoidance of the transfer to the extent necessary to satisfy her claims;

    b.   An attachment or other provisional remedy against the assets transferred or other property of Jon Pauling, Mark Pauling, Two Mile Ranch, or Farmers State Bank;

    c.   Judgment for one and one-half the value of the assets transferred or for one and one-half the amount necessary to satisfy her claims, whichever is less, jointly and severally against Jon Pauling, Mark Pauling, Two Mile Ranch, or Farmers State Bank; and/or

    a. d. An injunction against further disposition by Jon Pauling, Mark Pauling, Two Mile Ranch, or Farmers State Bank of assets already transferred or of other property, appointment of a receiver to take charge of the assets transferred, and any other relief the circumstances may require.

**Prayer for Relief**

Plaintiff Amanda Wilson prays for the following relief:

A.  An award of damages to be determined at trial, including, without limitation, any enhanced damages contemplated by C.R.S. § 38-8-108;

B.  Any other remedy set forth in C.R.S. § 38-8-108;

C.  Statutory and mandatory interest on all sums awarded;

D.  An award of costs and attorney fees as may be award by applicable law; and

E.  Any other relief as is proper.

Dated: April 27, 2020

Respectfully submitted,

/s/ *Ross W. Pulkrabek*
Ross W. Pulkrabek
Aaron D. Goldhamer
Keating Wagner Polidori Free, PC
1290 Broadway, Suite 600
Denver, Colorado 80203
303.534.0401
rpulkrabek@keatingwagner.com
agoldhamer@keatingwagner.com