IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 19-cv-01224-RBJ

AMANDA WILSON, a Michigan resident,

      Plaintiff,

v.

JONATHAN PAULING, an individual Colorado resident,
MARK PAULING, an individual Colorado resident,
TWO MILE RANCH, a Colorado General Partnership a/k/a Two Mile Ranch General
Partnership,
ELYCE YORK, an individual Nebraska or Colorado resident,
LARDYN CONSULTING LLC, a Nebraska limited liability Company, and
FARMERS STATE BANK,

      Defendants.

---

# ORDER

---

    This matter is before the Court on defendant Farmers State Bank ("Farmers")'s motion to dismiss, ECF No. 23; defendants Lardyn Consulting LLC ("Lardyn") and Elyce York's motion to dismiss, ECF No. 35; defendants Mark Pauling and Two Mile Ranch's "motion for joinder" as to Farmers' motion to dismiss, ECF No. 38; and Mark Pauling and Two Mile Ranch's "motion for joinder" as to Lardyn and Ms. York's motion to dismiss, ECF No. 39. For the reasons stated herein, all four motions are DENIED.

## I. BACKGROUND

    This case arises out of plaintiff Amanda Wilson's attempts to collect her judgment against defendant Jon Pauling for sexual assault, and Jon Pauling's allegedly fraudulent attempts

to prevent her from collecting that judgment.  ECF No. 15-1 ¶¶ 11–14.

A. **Underlying Judgment and Partnership Transfer**

On October 23, 2015 a jury in Denver District Court Case No. 2013CV35298 ("state case") awarded Ms. Wilson a judgment against Jon Pauling for claims of assault, battery, and intentional interference with contract.  ECF No. 15-1 ¶ 11.  The state case involved (1) Jon Pauling's sexual assault of Ms. Wilson, to which he had pled guilty in Denver District Court Case No. 2013CR1069, and (2) Jon Pauling's use of his network of business entities to employ Ms. Wilson, to manipulate her, and to groom her for sexual assault.  *Id.*

Following various post-verdict proceedings in the state case, on December 19, 2018 Denver District Court Judge Ross Buchanan amended the judgment by increasing the jury's initial punitive damage award.  *Id.* ¶ 13.  The final judgment amounts to $4,198,274.48.  *Id.*  In subsequent collection proceedings, Jon Pauling has professed to have no assets or income.  *Id.* ¶ 12.

In deciding to increase the jury's punitive damage award, Judge Buchanan noted that Jon Pauling continued to engage in the same pattern of grooming behavior with other vulnerable young women he met at adult entertainment clubs, including during the pendency of the state case.  *Id.* ¶ 14.  Judge Buchanan specifically cited evidence concerning Jon Pauling's grooming of defendant Ms. York.  *Id.*  He noted that just as Jon Pauling had met Ms. Wilson, Jon Pauling met Ms. York at an adult entertainment club where she works as a dancer.  *Id.*  Jon Pauling repeatedly paid for Ms. York to be "taken off the list" at the club so that she could sit and talk with him instead of dance; took her out to dinner and to go shopping; gave her expensive gifts; and assisted her financially in a variety of ways.  *Id.*  Jon Pauling continues to have a close relationship with Ms. York, as discussed below.  *Id.* ¶ 15.

One of the businesses through which Jon Pauling had employed Ms. Wilson was defendant Two Mile Ranch General Partnership ("Two Mile Ranch"). *Id.* ¶ 16. Two Mile Ranch is a general partnership owned by Jon Pauling and his brother, Mark Pauling. *Id.* ¶¶ 16, 17. Jon Pauling and Mark Pauling have transacted business through Two Mile Ranch since the 1980s, including owning and managing several agricultural and residential properties and a variety of farming, ranching, feedlot operations, and other businesses. *Id.* ¶ 17.

Two Mile Ranch was not a party in the state case. *Id.* However, Ms. Wilson obtained a charging order on Jon Pauling's partnership interest in Two Mile Ranch to facilitate her collection of the judgment. *Id.* ¶ 20. Ms. Wilson has not yet recovered any portion of the judgment pursuant to this charging order. *Id.*

The General Partnership Agreement of Two Mile Ranch, dated February 14, 1986, states that Jon Pauling and Mark Pauling are co-equal, fifty percent partners in Two Mile Ranch. *Id.* ¶ 18. Concerning the management of Two Mile Ranch, this General Partnership Agreement also states: "The affairs of the partnership shall be conducted by all of the partners. In case of a difference of opinion among the partners with respect to the management and policies of the partnership, the decision made by Jonathan M. Pauling shall prevail." *Id.* ¶ 19.

In the course of collection proceedings, on February 10, 2016 Jon Pauling testified that the Two Mile Ranch partnership agreement had been amended on or around September 15, 2014. *Id.* ¶ 21. The amendment reallocated partnership interests such that Jon Pauling's partnership interest was reduced to ten percent and Mark Pauling's interest was increased to ninety percent. *Id.* The amendment also replaced the management provision to read: "Mark A. Pauling is the Manager of the partnership." *Id.* Jon Pauling explained that he and Mark Pauling had decided to reallocate based on Jon Pauling's misconduct and the fallout from his sexual assault on Ms.

Wilson.  *Id.* ¶ 23.  He explained: "That's just what [Mark Pauling] said he wanted.  I wasn't in a position to argue. . . .  Because he was right and I was wrong."  *Id.*  Jon Pauling received no compensation in return for this reallocation.  *Id.* ¶ 53.

Ms. Wilson alleges that the documentation for the reallocation of the partnership interests was falsely backdated to September 15, 2014.  *Id.* ¶ 22.  She proffers several supporting facts.  First, Jon Pauling and Mark Pauling's 2014 Internal Revenue Service ("IRS") Schedule K-1 forms both show that they remained co-equal fifty-percent partners in Two Mile Ranch as of year-end 2014.  *Id.*  Second, on May 13, 2015 Jon Pauling and Mark Pauling signed a document to sell Two Mile Ranch that showed no amendments to the partnership agreement.  *Id.*  Third, on May 15, 2015 Jon Pauling alone signed a loan agreement on behalf of Two Mile Ranch to loan Mark Pauling $275,000.  *Id.*

### B.  <u>Two Mile Ranch's Bankruptcy and Farmers</u>

Jon Pauling, Mark Pauling, and their businesses have a longstanding business relationship with defendant Farmers.  *Id.* ¶ 42.  Farmers has loaned millions of dollars over the years to the brothers.  *Id.* ¶ 45.  Farmers extended loans to Two Mile Ranch in at least 2014 and 2015.  *Id.* ¶ 43.  Those loans were based on Jon Pauling's signature alone on behalf of Two Mile Ranch.  *Id.*

Farmers had actual knowledge of the 2015 state case and of Ms. Wilson's efforts to collect her judgment against Jon Pauling.  *Id.* ¶ 44.  Ms. Wilson engaged in post-judgment discovery that included issuing a subpoena to Farmers for banking records pertaining to Two Mile Ranch and related business activities of Jon Pauling and Mark Pauling.  *Id.*  Farmers produced documents in response to that subpoena.  *Id.*

On July 1, 2016 Two Mile Ranch filed for bankruptcy in the United States Bankruptcy

Court for the District of Colorado, seeking relief under Chapter 11 of the Bankruptcy Code, in action No. 16-BK-16615-EEB.  ECF No. 35 ¶ 9.  Farmers proffers public documents indicating that on February 27, 2017 Farmers filed a Proof of Claim in Two Mile Ranch's bankruptcy case, including documents purporting to establish that: (1) Farmers had security agreements and Deeds of Trust encompassing all of Two Mile Ranch's property, (2) Two Mile Ranch owed Farmers $9,582,213.61, and (3) Two Mile Ranch's property was valued at $8,963,500.  *Id.* ¶ 10.

On February 28, 2017 Two Mile Ranch moved to dismiss its bankruptcy case.  *Id.* ¶ 11. It moved on the grounds that it had been unable to sell its assets, that it was fully secured to Farmers, that Farmers no longer supported Two Mile Ranch's reorganization efforts, and that accordingly Two Mile Ranch would be unable to propose a viable plan of reorganization.  *Id.* Two Mile Ranch's bankruptcy was dismissed on March 31, 2017.  *Id.* ¶ 12.

### C. Ms. York and the Creation of Lardyn

On August 24, 2016 defendant Lardyn formed as a Nebraska limited liability company. ECF No. 15-1 ¶ 25.  Lardyn's registered agent in Colorado is Brian Bates.  *Id.* ¶ 31.  Mr. Bates is a longtime attorney of Two Mile Ranch and of various other entities related to Jon Pauling and Mark Pauling.  *Id.* ¶ 29.  Mr. Bates filed a Statement of Foreign Authority with the Colorado Secretary of State in 2018, which stated that Lardyn commenced business operations in Colorado on September 1, 2016.  *Id.* ¶ 28.  Mr. Bates also filed a periodic report for Lardyn with the Colorado Secretary of State on March 31, 2019.  *Id.* ¶ 30.

Defendant Ms. York is the nominal managing member and registered agent of Lardyn. *Id.* ¶ 26.  She has signed numerous documents to facilitate the creation of Lardyn, maintenance of its status, and transaction of its business in Colorado.  *Id.*  Ms. York is not a farmer, rancher, or feedlot operator by trade.  *Id.* ¶ 37.  She is a young exotic dancer whom, as discussed, Judge

Buchanan found was also being groomed by Jon Pauling. *Id.* Mark Pauling is the only other member of Lardyn. *Id.* ¶ 6. He testified in November 2016 that he had never met Ms. York. *Id.* ¶ 33.

Ms. Wilson alleges that Ms. York has received compensation for her involvement in Lardyn and for other assistance to Jon Pauling and Mark Pauling through Redtail Resources LLC. *Id.* ¶ 32. Ms. York currently resides at 1660 Summit Drive, Sidney, Nebraska, 69162. *Id.* ¶ 5. The property at 1660 Summit Drive is owned by a Nebraska entity called Redtail Resources LLC, which is registered to do business in Colorado as Redtail Resources Colorado LLC ("Redtail Colorado"). *Id.* Mr. Bates also filed the State of Foreign Authority and other documents for Redtail Colorado. *Id.* Additionally, Jon Pauling testified that Ms. York previously lived rent-free at a property in Jefferson County, Colorado, owned by Two Mile Ranch. *Id.* ¶ 34.

In late April 2017, Two Mile Ranch transferred large tracts of real property to Lardyn. *Id.* ¶ 35. The transferred property is located at or around 18503 and/or 18505 and/or 18507 County Road 42.5 in Sterling, Colorado, and was sold for $4,270,000. *Id.* Ms. Wilson alleges that Lardyn had no effective means to pay Two Mile Ranch. *Id.* ¶ 63.

Farmers provides public documents indicating that on April 27, 2017 Farmers recorded Deeds of Trust in Logan County and Weld County securing a note from Lardyn in the maximum amount of $7,100,000. ECF No. 35 ¶ 14. Those Deeds of Trust encumbered the property sold by Two Mile Ranch to Lardyn. *Id.* On April 27, 2017 Farmers also recorded a UCC financing statement with the Colorado Secretary of State reflecting that it held a lien against all livestock and growing crops owned by Lardyn in Logan County and Weld County. *Id.* ¶ 15. On April 20, 2018 Farmers recorded a UCC financing statement against Lardyn's lease of certain farming

equipment. *Id.* ¶ 16. On June 20, 2019 Farmers recorded a Deed of Trust in Logan County securing an SBA loan to Lardyn in the maximum amount of $3,375,000. *Id.* ¶ 17. That Deed of Trust also encumbered the real property acquired by Lardyn from Two Mile Ranch. *Id.*

As of April 2019, Lardyn was in the process of obtaining state certification to operate a feedlot at 18413 County Road 42.5. ECF No. 15-1 ¶ 36. Ms. Wilson alleges that this address is for all intents and purposes identical to the location at 18503 Country Road 42.5 where Two Mile Ranch had operated irrigated farm, ranching, and feedlot operations. *Id.* Jon Pauling continues to work at this property. *Id.* ¶ 53.

D. **Procedural Background**

On April 25, 2019 Ms. Wilson filed a complaint with this Court against Jon Pauling, Mark Pauling, Ms. York, Two Mile Ranch, Lardyn, and Farmers. ECF No. 1. Ms. Wilson filed a motion to amend her complaint on June 14, 2019, ECF No. 15, which this Court accepted on June 17, 2019, ECF No. 17.

In her amended complaint, Ms. Wilson alleges three claims for relief. First, she alleges a violation of the Colorado Uniform Fraudulent Transfer Act ("CUFTA") against Jon Pauling, Mark Pauling, and Two Mile Ranch for the transfer of Jon Pauling's partnership interest in Two Mile Ranch. ECF No. 15-1 ¶¶ 49–59. Second, she alleges a violation of CUFTA against Jon Pauling, Mark Pauling, Two Mile Ranch, Ms. York, and Lardyn for the transfer of Two Mile Ranch property to Lardyn. *Id.* ¶¶ 60–69. Third, she alleges conspiracy to violate CUFTA against Jon Pauling, Mark Pauling, Two Mile Ranch, Ms. York, Lardyn, and Farmers. *Id.* ¶¶ 70–75.

On July 8, 2019 Farmers filed a motion to dismiss the claim against it. ECF No. 23. On August 23, 2019 Lardyn and Ms. York filed a motion to dismiss the claims against them. ECF

No. 35.  On September 13, 2019 Mark Pauling and Two Mile Ranch filed two motions pursuant to Fed. R. Civ. P. 10(c): a "motion for joinder" in Farmers' motion to dismiss, ECF No. 38, and a "motion for joinder" in Lardyn and Ms. York's motion to dismiss, ECF No. 39.

## II.  STANDARD OF REVIEW

To survive a Rule 12(b)(6) motion to dismiss, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plausible claim is one that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts must accept well-pled allegations as true, purely conclusory statements are not entitled to this presumption.  *Id.* at 678, 681.  Therefore, so long as the plaintiff pleads sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible," she has met the threshold pleading standard. *Twombly*, 550 U.S. at 556, 570.

Courts may consider public documents on a motion to dismiss without converting it into a motion for summary judgment.  *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (noting that courts may consider "matters of which a court may take judicial notice" on a motion to dismiss); *Papasan v. Allain*, 478 U.S. 265, 268 n.1 (1986) ("[O]n a motion to dismiss . . . we are not precluded in our review of the complaint from taking notice of items in the public record.").  However, these documents "may only be considered to show their contents, not to prove the truth of matters asserted therein." *Tal*, 453 F.3d at 1264–65 n.24 (quoting *Oxford Asset Mgmt., Ltd. v. Jaharis*, 297 F.3d 1182, 1188 (11th Cir. 2002)).

## III.  ANALYSIS

CUFTA provides a cause of action for a "transfer made or obligation incurred by a debtor . . . [w]ith actual intent to hinder, delay or defraud any creditor of the debtor."  Colo. Rev. Stat. § 38-8-105(1)(a).  CUFTA sets forth various non-exclusive factors—or "badges of fraud"—to inform whether a debtor acted with "actual intent" to hinder, delay, or defraud a creditor.  Such badges of fraud include: (1) "the transfer or obligation was to an insider"; (2) the debtor "retained possession or control of the property transferred after the transfer"; (3) "the debtor had been sued or threatened with suit" prior to the transfer; (4) the transfer "was of substantially all the debtor's assets"; (5) "the value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred"; and (6) the debtor "was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred."  Colo. Rev. Stat. § 38-8-105(2).

CUFTA also provides a cause of action for a "transfer made or obligation incurred by a debtor . . . if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation."  Colo. Rev. Stat. § 38-8-106(1).

In their respective motions, Farmers, Lardyn, and Ms. York contest only Ms. Wilson's second and third claims.

### A.  <u>Claim Two: Transfer of Two Mile Ranch Property.</u>

Ms. Wilson alleges that Jon Pauling, Mark Pauling, Two Mile Ranch, Ms. York, and Lardyn violated CUFTA in transferring Two Mile Ranch property to Lardyn.  ECF No. 15-1 ¶¶

60–69.  Farmers, Lardyn, and Ms. York argue, in their respective motions, that the transfer of

Two Mile Ranch property to Lardyn was not fraudulent because it did not involve the transfer of

a debtor's property within the meaning of CUFTA.  Specifically, Farmers, Lardyn, and Ms. York

argue that (1) Two Mile Ranch is not a "debtor" of Ms. Wilson and (2) the transferred property

was not an "asset."  ECF No. 23 at 9–12; ECF No. 35 at 7–10.  Additionally, Lardyn argues that

(3) Ms. Wilson's complaint fails to state a plausible claim under CUFTA regarding this transfer

"due to plaintiff's improper reliance on gender stereotyping."  ECF No. 35 at 6.

     1.  <u>Whether Two Mile Ranch is a "Debtor."</u>

  Farmers, Lardyn, and Ms. York argue that Two Mile Ranch is not a "debtor" of Ms.

Wilson, and therefore Two Mile Ranch's conduct is not cognizable under CUFTA.  ECF No. 23

at 9–10; ECF No. 35 at 7–8.  CUFTA provides that a "transfer made . . . by a debtor is fraudulent

as to a creditor" under various circumstances.  Colo. Rev. Stat. § 38-8-105(1)(a).  CUFTA

broadly defines its relevant terms.  A "debtor" is "a person who is liable on a claim."  Colo. Rev.

Stat. § 38-8-102(7).  A "claim" is "a right to payment, whether or not the right is reduced to

judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed,

legal, equitable, secured, or unsecured."  Colo. Rev. Stat. § 38-8-102(3).  A "transfer" is "every

mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or

parting with an asset or an interest in an asset, and includes payment of money, release, lease,

and creation of a lien or other encumbrance."  Colo. Rev. Stat. § 38-8-102(13).  An asset is "the

property of a debtor," and "property" is "anything that may be the subject of ownership."  Colo.

Rev. Stat. § 38-8-102(2), (11).

  Here, Two Mile Ranch is not a named judgment debtor of Ms. Wilson.  Jon Pauling is the

named judgment debtor of Ms. Wilson.  Ms. Wilson obtained a charging order against Jon

Pauling's interest in Two Mile Ranch.  Jon Pauling allegedly fraudulently transferred his partnership interest in Two Mile Ranch to circumvent the judgment against him.  Two Mile Ranch then allegedly fraudulently transferred its property to circumvent the charging order.  ECF No. 37 at 2–3.  Ms. Wilson's complaint provides a litany of allegations indicating that Jon Pauling caused the transfer of Two Mile Ranch's property.  Jon Pauling initially held fifty percent ownership of Two Mile Ranch plus managerial power.  The transfer of Two Mile Ranch's property occurred after Jon Pauling fraudulently transferred the majority of his partnership interest, as well as his managerial power, to his brother using backdated documents.  Still facing a charging order on Jon Pauling's remaining ten percent interest in the partnership, Jon Pauling and Mark Pauling created the sham entity of Lardyn and caused Two Mile Ranch to fraudulently transfer property to Lardyn.  In this way, Jon Pauling "indirect[ly] . . . dispos[ed] of or part[ed] with an asset or an interest in an asset."  Colo. Rev. Stat. § 38-8-102(13) (defining "transfer").  Thus, to the extent that Jon Pauling caused the transfer of Two Mile Ranch's property, that constitutes a "transfer made . . . by a debtor."  Colo. Rev. Stat. § 38-8-105(1)(a).

Farmers, Lardyn, and Ms. York emphasize that Two Mile Ranch is a partnership, and general partners do not hold personal interests in partnership property.  They correctly note that a judgment against an individual partner does not establish a lien against real property owned by the partnership.  *See Mountain States Bank v. Irvin*, 809 P.2d 1113, 1115 (Colo. App. 1991).  But Ms. Wilson does not seek to establish a lien against Two Mile Ranch's property.  She sought— through the charging order—a lien against Jon Pauling's interest in Two Mile Ranch.  Jon Pauling subverted that charging order by first fraudulently transferring away most of his partnership interest (the subject of Ms. Wilson's first cause of action, which is uncontested in these motions), and then destroying the value of his remaining partnership interest by causing

Two Mile Ranch to fraudulently transfer away partnership property (the subject of Ms. Wilson's second cause of action). Ms. Wilson seeks to collect directly from Jon Pauling by preventing him from destroying the value of his assets—i.e., his interest in Two Mile Ranch.

Farmers cites to a case from the Court of Appeals of Georgia for the proposition that a charging order does not create a debtor-creditor relationship between the creditor who obtained the charging order and the LLC whose membership interests are being charged. *See Merrill Ranch Properties, LLC v. Austell*, 784 S.E.2d 125, 130–31 (Ga. App. 2016) (interpreting Georgia's Uniform Fraudulent Transfer Act, which defines its relevant terms the same as CUFTA). In *Merrill Ranch Properties, LLC v. Austell*, three LLCs with corporate relationships to the judgment debtors made transfers of real property to various newly created entities owned by trusts established for the benefit of the judgment debtor and his family members. *See id.* at 128. The Georgia state court found that the creditor did not have standing under Georgia's Uniform Fraudulent Transfer Act to challenge those transfers. *See id.* at 132.

Specifically, the Georgia state court rejected the creditor's argument that the charging orders against the non-judgment debtor LLCs created a "right to payment" from, and therefore a "claim" against, such LLCs. *See id.* at 131. It explained that a charging order "gives no direct remedy against company property." *Id.* (citing *Gaslowitz v. Stabilis Fund I, LP*, 770 S.E.2d 245, 250 (Ga. App. 2015)). It also rejected the creditor's argument that the judgment debtors "'participated' in the transfer by 'instruct[ing]' that the transfer be made and executing the necessary documents." *Id.* at 132. Although the court acknowledged the broad definitions in the statute, it found that "participating or even directing that a transfer of property be made has no consequence unless the asset was property of the debtor." *Id.*

I will not follow in the *Austell* court's footsteps.  The *Austell* court took a formalist approach to interpreting Georgia's equivalent of CUFTA.  Yet CUFTA is broadly written, seemingly to encompass a variety of novel and creative means by which debtors attempt to hinder, delay, or defraud creditors.  *See United States v. Wilhite*, No. 00-CR-00504-CMA-MEH, 2016 WL 5720707, at *6 n.11 (D. Colo. Sept. 23, 2016), *aff'd,* 774 F. App'x 478 (10th Cir. 2019) (unpublished) (noting CUFTA's broad definitions).  "Transfer" is "every mode, *direct or indirect*, . . . of disposing of or parting with an asset or an interest in an asset."  C.R.S. § 38-8-102(13) (emphasis added).  An asset is "the property of a debtor," and "property" is "anything that may be the subject of ownership."  C.R.S. § 38-8-102(2), (11).  Jon Pauling indirectly "dispos[ed] of" his interest in Two Mile Ranch by causing Two Mile Ranch to destroy the value of that interest.

The fact that Two Mile Ranch is not itself a judgment debtor of Ms. Wilson's does not hide this transaction from the eyes of the law.  Ms. Wilson's complaint sufficiently alleges that a debtor caused the transfer of property from Two Mile Ranch to Lardyn.

### 2.  Whether Two Mile Ranch Property is an "Asset."

Farmers, Lardyn, and Ms. York argue that the Two Mile Ranch property transferred to Lardyn is not an "asset" within the meaning of CUFTA.  CUFTA defines an "asset" as "the property of a debtor."  Colo. Rev. Stat. § 38-8-102(2).  An asset does not include "[p]roperty to the extent it is encumbered by a valid lien."  Colo. Rev. Stat. § 38-8-102(2)(a).  Farmers, Lardyn, and Ms. York assert that the Two Mile Ranch property transferred to Lardyn was not an "asset" because it was fully encumbered by loans from Farmers to Two Mile Ranch.  ECF No. 23 at 11–12; ECF No. 35 at 8–10.

Farmers argues in its motion to dismiss that it was Ms. Wilson's burden to allege in her complaint that the Two Mile Ranch property was not fully encumbered. ECF No. 12 at 11–12. I find that Ms. Wilson need not do so. Ms. Wilson's complaint is sufficiently plausible without proffering facts to prospectively contest defendants' possible defenses.

In their own motion to dismiss, Lardyn and Ms. York cite to public records from Two Mile Ranch's bankruptcy proceedings as alleged evidence that the Two Mile Ranch property was fully encumbered. Lardyn and Ms. York are correct that the court may take judicial notice of "facts which are a matter of public record" in a Rule 12(b)(6) motion to dismiss. *See Tal*, 453 F.3d at 1264–65 n.24 (quoting *Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)); *see also St. Louis Baptist Temple, Inc. v. F.D.I.C.*, 605 F.2d 1169, 1172 (10th Cir. 1979) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue."). However, these public documents "may only be considered to show their contents, not to prove the truth of matters asserted therein." *See Tal*, 453 F.3d at 1264–65 n.24 (quoting *Jaharis*, 297 F.3d at 1188); *Schendzielos v. Silverman*, 139 F. Supp. 3d 1239, 1251 (D. Colo. 2015) ("[W]hile the Court can take judicial notice of the attachments to [defendant's] motion to dismiss as they are public records, it cannot take the facts asserted in the filings to be true.").

Here, Lardyn and Ms. York improperly cite to public documents "to prove the truth of the matters asserted therein." *Id*. At the motion to dismiss stage, these public documents cannot be used to prove that the Two Mile Ranch property was fully encumbered. Indeed, this case presents a prime example of the policy behind this rule: The mere fact that documents have been entered into the public record does not render their contents conclusively truthful. For one, Jon

Pauling was previously found to have abused the bankruptcy process.  Judge Buchanan found in

the state case that Jon Pauling had directed entities that he controlled to file for bankruptcy

"solely to delay trial."  ECF No. 1-1 at 6–8 (finding that this behavior aggravated Ms. Wilson's

damages).  For another, Ms. Wilson's complaint expressly alleges that Jon Pauling has engaged

in the fraudulent backdating of certain documents (though she does not expressly allege that any

of the bankruptcy documents were fraudulently backdated).  She also alleges that Farmers—the

entity who allegedly owns the liens that fully encumber the property—played an active role in

helping Jon Pauling fraudulently transfer his assets.  Thus, Lardyn and Ms. York cannot rely on

these public documents to prove that the Two Mile Ranch property was fully encumbered.

Farmers also argues that Two Mile Ranch's property is not an "asset" due to CUFTA's

exception for "[a]n interest in property held in tenancy by the entireties to the extent it is not

subject to process by a creditor holding a claim against only one tenant."  Colo. Rev. Stat. § 38-

8-102(2)(c).  Two Mile Ranch's property does not fall under this exception because it is not held

in tenancy by the entirety.  Tenancy by the entirety is a form of joint tenancy available only to

married couples.[1]  *See Tenancy,* Black's Law Dictionary (11th ed. 2019).  It suffices to say that

Jon Pauling and Mark Pauling are not married.

As such, Ms. Wilson has met her burden of alleging that Two Mile Ranch's property was

an "asset" within the meaning of CUFTA.

### 3.   Gender Stereotyping.

Lardyn and Ms. York argue in their motion to dismiss that Ms. Wilson's second cause of

action fails to state a plausible claim due to her "improper reliance on gender stereotyping in

---

[1] Effective July 1, 2006, Colorado law no longer allows conveyance as tenancy by the entirety.  *See* Colo. Rev. Stat. § 38-31-201 (prohibiting any conveyance as tenancy by the entirety and providing that conveyances purporting to create tenancy by entirety shall instead create joint tenancy).

order to challenge Ms. York's status as an independent businesswomen [sic]." ECF No. 35 at 6.

Although Lardyn and Ms. York provide no legal framework for this argument, it appears to be an

attack on Ms. Wilson's alleged badges of fraud. Specifically, it appears to attack Ms. Wilson's

allegations that "the transfer or obligation was to an insider," Colo. Rev. Stat. § 38-8-105(2)(a),

and that Jon Pauling "retained possession or control of the property transferred after the transfer"

through Ms. York, Colo. Rev. Stat. § 38-8-105(2)(b). ECF No. 15-1 ¶ 63. This argument fails

for two main reasons.

First, this argument mischaracterizes Ms. Wilson's complaint. Lardyn and Ms. York

assert that Ms. Wilson's "sole basis" for alleging that Ms. York is a straw man for Jon Pauling is

that Ms. York is a former exotic dancer. ECF No. 35 at 6. This is demonstrably false. Ms.

Wilson alleges many facts to support her argument that Ms. York is a straw man for Jon Pauling.

Ms. York is Jon Pauling's girlfriend. ECF No. 15-1 ¶ 14. Jon Pauling has been grooming Ms.

York—in the same manner that he groomed Ms. Wilson—to such an alarming extent that Judge

Buchanan increased the jury's initial punitive damage award in the state case. *Id.* ¶ 14. Ms.

York has received compensation for her involvement in Lardyn from Redtail Resources LLC, an

entity associated with Jon Pauling, and she has lived rent-free at a property owned by Two Mile

Ranch. *Id.* ¶¶ 32, 34. Following her involvement with Jon Pauling, Ms. York went from having

no background in farming, ranching, or operating feedlots to acting as nominal manager for a

multi-million-dollar business thereof. *Id.* ¶¶ 26, 37. Mark Pauling, the only other member of

Lardyn, had never met Ms. York as of a few months after Lardyn's creation. *Id.* ¶¶ 27, 33, 63.

Jon Pauling continues to work at the transferred property. *Id.* ¶ 63. These facts are more than

sufficient to allege that "the transfer or obligation was to an insider," and that Jon Pauling

"retained possession or control of the property transferred after the transfer." Colo. Rev. Stat. § 38-8-105(2)(a)–(b).

Second, even disregarding the breadth of alleged facts indicating that Ms. York is a straw man, this argument attacks only two of Ms. Wilson's six alleged badges of fraud. Ms. Wilson also alleges that prior to the transfer "the debtor had been sued or threatened with suit," since Ms. Wilson had successfully sued him. *Id.* ¶ 63 (quoting Colo. Rev. Stat. § 38-8-105(2)(d)). She alleges that the transfer was of substantially all the debtor's assets," since the transfer of Two Mile Ranch property was substantially all of Two Mile Ranch's meaningful assets, and Jon Pauling swore poverty during Ms. Wilson's subsequent collection attempts in the state case. *Id.* (quoting Colo. Rev. Stat. § 38-8-105(2)(e)). She alleges that the "value of the consideration received by the debtor was [not] reasonably equivalent to the value of the asset transferred," because Lardyn had no effective means to pay Two Mile Ranch the purported sale price, and Two Mile Ranch received nothing of value from Lardyn. *Id.* (quoting Colo. Rev. Stat. § 38-8-105(2)(h)). And she alleges that the debtor "was insolvent or became insolvent shortly after the transfer was made," because throughout her subsequent collection attempts Jon Pauling testified that he was insolvent, and Two Mile Ranch also became insolvent. *Id.* (quoting Colo. Rev. Stat. § 38-8-105(2)(f)). Thus, in arguing that I should find Ms. Wilson's claims implausible based on "gender stereotyping," Lardyn and Ms. York entirely ignore Ms. Wilson's allegations regarding the other badges of fraud.

Accordingly, Ms. Wilson has sufficiently alleged that Jon Pauling, Mark Pauling, Two Mile Ranch, Ms. York, and Lardyn violated CUFTA in transferring Two Mile Ranch property to Lardyn. Farmers' motion to dismiss is denied on Ms. Wilson's second cause of action. Lardyn and Ms. York's motion to dismiss is denied on Ms. Wilson's second cause of action.

### B. **Claim Three: Civil Conspiracy.**

Finally, Ms. Wilson alleges that Jon Pauling, Mark Pauling, Two Mile Ranch, Ms. York, Lardyn, and Farmers conspired to violate CUFTA.  ECF No. 15-1 ¶¶ 70–75.  To establish a civil conspiracy in Colorado, "[t]here must be: (1) two or more persons, and for this purpose a corporation is a person; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof."  *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 502 (Colo. 1989) (quoting *More v. Johnson,* 568 P.2d 437, 439–40 (Colo. 1977)) (internal quotations omitted).

### 1. Farmers' Motion to Dismiss.

Farmers asserts that it is not liable for the transfer of Two Mile Ranch property to Lardyn for two reasons: because Ms. Wilson failed to allege its role in the conspiracy, and because Ms. Wilson's claim is barred by the statute of limitations.

### a. Farmers' Role in the Conspiracy.

Farmers argues that Ms. Wilson has failed to allege that Farmers had an "object to be accomplished" or "a meeting of the minds on the object or course of action" with the other alleged conspirators.  ECF No. 23 at 12.  At the motion to dismiss stage, a plaintiff need only plead sufficient factual allegations such that the right to relief crosses "the line from conceivable to plausible."  *Twombly*, 550 U.S. at 556, 570.

Here, Ms. Wilson alleges that Farmers lent money to Lardyn for the specific object of "protect[ing] Jon Pauling and Two Mile Ranch against efforts by Amanda Wilson to collect her judgment."  ECF No. 15-1 ¶ 45.  She also alleges that Farmers, Jon Pauling, and Mark Pauling had a "meeting of the minds" regarding their object of shielding Jon Pauling and Two Mile Ranch against Ms. Wilson's collection efforts.  *Id.* ¶ 46.

Specifically, Ms. Wilson alleges that Farmers had a longstanding and lucrative business relationship with Jon Pauling and Mark Pauling. *Id.* ¶¶ 42–46. She alleges that Farmers had actual knowledge of the state case and of Ms. Wilson's collection efforts due to being issued— and responding to—subpoenas for banking records pertaining to Two Mile Ranch and related business activities of Jon Pauling and Mark Pauling. *Id.* ¶ 44. She alleges that based on their longstanding business relationship, Farmers knew Jon Pauling and Marking Pauling personally and knew them to be experienced ranch and feedlot operators operating at the property at issue. *Id.* She alleges that when providing new financing to Lardyn, Farmers knew Lardyn to be a shell entity and Ms. York to be a straw man, and that it required Mark Pauling to co-sign one or more documents as a member of Lardyn. *Id.*

Based on these allegations, Ms. Wilson argues that it is plausible that Farmers "agreed to help Jon Pauling continue his business through Lardyn as a sham to avoid Plaintiff's judgment because they had a longstanding and profitable relationship, they regarded Plaintiff's judgment collection activities as a threat to their business relationship, and they concluded that it was in their mutual interests to collaborate in the subterfuge of running Jon Pauling's business through Lardyn with Elyce York as a straw woman." ECF No. 34 at 14. I agree that these allegations suffice to bring Ms. Wilson's claim against Farmers for civil conspiracy across "the line from conceivable to plausible." *Twombly*, 550 U.S. at 556, 570.

### b.   Statute of Limitations.

Farmers argues that Ms. Wilson's claim for civil conspiracy is barred by a one-year statute of limitations. ECF No. 23 at 13. "[C]ivil conspiracy claims . . . share a statute of limitations with the underlying tort, and their accrual dates are linked to the accrual dates of the underlying tort." *Sternbuch v. Goss*, 266 P.3d 428, 436 (Colo. Ct. App. 2011) (quoting *Prince*

*George's County v. Longtin,* 19 A.3d 859, 877 & n. 22 (Md. 2011)) (internal quotations omitted). As an affirmative defense, it is a defendant's burden to prove that a plaintiff's claim is barred by a statute of limitations. *See Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1298–99 (10th Cir. 2018).

CUFTA provides both a one-year and a four-year statute of limitations. *See* Colo. Rev. Stat § 38-8-110(1)(c). It provides a one-year statute of limitations for claims under § 38-8-106(2), which provides a cause of action for transfers to an insider for an antecedent debt. *See* Colo. Rev. Stat. §§ 38-8-106(2), -110(1)(c). CUFTA also provides a four-year statute of limitations for claims under § 38-8-105 and -106(1). *See* Colo. Rev. Stat § 38-8-110(1)(a)–(b).

Ms. Wilson pleads her first and second claims for fraudulent transfer under § 38-8-105. ECF No. 15-1 ¶¶ 50, 53, 55, 56, 63, 65, 66. She also alternatively pleads her first and second claims for fraudulent transfer under § 38-8-106(1). ECF No. 15-1 ¶¶ 57, 67. She pleads no claims under § 38-8-106(2). Farmers appears to argue that Ms. Wilson's claims are properly § 38-8-106(2) claims. ECF No. 36 at 3 ("Plaintiff should not benefit from CUFTA's four year statute of limitations based on how she chooses to label the claim."). Yet Farmers provides no support for this argument. *See Fernandez*, 883 F.3d at 1298–99 (noting that it is a defendant's burden to prove that a plaintiff's claim is barred by the statute of limitations). Thus, I find that Ms. Wilson's claims are subject to a four-year statute of limitations, not a one-year statute of limitations. Farmers does not argue that Ms. Wilson has failed to meet the four-year statute of limitations.

Accordingly, I find that Ms. Wilson's complaint is not barred by the statute of limitations.

2.   Lardyn and Ms. York's Motion to Dismiss.

Lardyn and Ms. York argue that because there is no underlying CUFTA claim, there can be no civil conspiracy claim.  *See Park County Sportsmen's Ranch,* 271 P.3d at 572 (vacating verdict for civil conspiracy to engage in the underlying transfer where court found underlying transfer did not constitute a fraudulent conveyance).  Because I found that Ms. Wilson has sufficiently alleged an underlying CUFTA claim, Lardyn and Ms. York's argument fails.

Accordingly, Ms. Wilson has sufficiently pled her third claim for civil conspiracy to violate CUFTA.  Farmers' motion to dismiss is denied on Ms. Wilson's third cause of action. Lardyn and Ms. York's motion to dismiss is denied on Ms. Wilson's third cause of action.

## C. **Mark Pauling and Two Mile Ranch's "Motions for Joinder."**

Mark Pauling and Two Mile Ranch seek "joinder" pursuant to Fed. R. Civ. P. 10(c) as to both Farmers' motion to dismiss and Lardyn and Ms. York's motion to dismiss.  ECF Nos. 38, 39.  Both motions summarily state: "To the extent the Court determines that Two Mile Ranch is not a debtor of Plaintiff's . . . , and/or that Two Mile Ranch's property is not as asset for purposes of CUFTA . . . , then the dismissal of all claims against Farmers[, Lardyn, and Ms. York] . . . applies equally as to all claims against Mark Pauling and Two Mile Ranch as well, and all claims against them should likewise be dismissed."  ECF No. 38 at 1–2; ECF No. 39 at 1–2.

These motions face various procedural hurdles,[2] some of which Ms. Wilson addresses in her response.  However, because I denied the motions to dismiss, I find simply that Mark Pauling and Two Mile Ranch's "motion[s] for joinder" as to those motions to dismiss are mooted.

---

[2] For example, Fed. R. Civ. P. 10(c) provides only that "[a] statement in a pleading may be adopted by reference elsewhere in the same pleading or in any other pleading or motion."  Fed. R. Civ. P. 10(c).  No authority extends Rule 10(c) to incorporation of a party's prior motion into a later motion, or the incorporation of another party's motion into one's own motion.  *See Big O Tires, LLC v. C&S Tires, Inc.*, No. 16-CV-00725-MSK-NYW, 2017 WL 2263079, at *1 (D. Colo. May 24, 2017) (explaining that the definition of "pleading" includes only complaints and answers, not motions); *see also Murphy v. Colo.*

## ORDER

1. Farmers' motion to dismiss, ECF No. 23, is DENIED.

2. Lardyn and Ms. York's motion to dismiss, ECF No. 35, is DENIED.

3. Mark Pauling and Two Mile Ranch's "motion for joinder" as to Farmers' motion to dismiss, ECF No. 38, is DENIED.

4. Mark Pauling and Two Mile Ranch's "motion for joinder" as to Lardyn and Ms. York's motion to dismiss, ECF No. 39, is DENIED.

DATED this 6th day of May, 2020.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

---

*Dep't of Corrections*, No. 06–cv–01948–REB–BNB, 2007 WL 2028763, at *2 (D. Colo. July 11, 2007) (holding that a party "may not incorporate by reference his original Complaint into the amended complaint, nor may he incorporate previously filed motions and papers"). Here, Mark Pauling and Two Mile Ranch attempt to wholesale incorporate another party's prior motion into their own motion without citing any authority procedurally allowing them to do so.