Stephen Stull   06/09/2020
AMANDA WILSON v. JONATHAN PAULING, ET AL.

```
 1            IN THE UNITED STATES DISTRICT COURT
                 FOR THE DISTRICT OF COLORADO
 2
     Civil Action No. 19-cv-01224-RBJ-STV
 3   _____

 4   VIDEOTAPE DEPOSITION OF:   STEPHEN STULL - June 9, 2020
                                   (Via RemoteDepo)
 5   _____

 6   AMANDA WILSON, a Michigan citizen,

 7   Plaintiff,

 8   v.

 9   JONATHAN PAULING, an individual Colorado citizen, MARK
     PAULING, an individual Colorado citizen, TWO MILE
10   RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP, a
     Colorado General Partnership, ELYCE YORK, an
11   individual Nebraska or Colorado citizen, LARDYN
     CONSULTING LLC, a Nebraska Limited Liability Company,
12   and FARMERS STATE BANK, a Nebraska Corporation,

13   Defendants.
     _____
14

15
                 PURSUANT TO NOTICE, the videotape
16   deposition of STEPHEN STULL was taken on behalf of the
     Plaintiff in, Morrill County, Nebraska, via remote
17   means, on June 9, 2020, at 9:03 a.m., before Tiffany
     D. Goulding, Registered Professional Reporter and
18   Notary Public within Colorado, appearing remotely from
     Arapahoe County, Colorado.
19

20

21

22

23

24

25


                      U.S. LEGAL SUPPORT, INC.
                          303-832-5966
```

**EXHIBIT 1**

```
09:05:54    1    And I'm with Farmers State Bank.
09:06:00    2                 THE REPORTER:  Mr. Stull, would you mind
09:06:00    3    holding up your government-issued ID up to the camera.
09:06:01    4                 (Deponent complied.)
09:06:01    5                 THE REPORTER:  Thank you very much.
09:06:01    6    Okay.  Go ahead.
09:06:01    7                       STEPHEN STULL,
09:06:01    8    having verbally declared that his testimony is under
09:06:01    9    the penalty of perjury, testified as follows:
09:06:01   10                         EXAMINATION
09:06:13   11    BY MR. PULKRABEK:
09:06:13   12         Q.   Good morning, Mr. Stull.  Can you give me
09:06:15   13    your full name, please.
09:06:18   14         A.   Stephen Edward Stull.
09:06:21   15         Q.   And where are you testifying from today?
09:06:24   16         A.   My office in Bridgeport, Nebraska.
09:06:28   17         Q.   What's the office address?
09:06:30   18         A.   823 Main Street, Bridgeport, Nebraska
09:06:35   19    69336.
09:06:38   20         Q.   And I -- just when you flashed your ID a
09:06:41   21    moment ago, I caught your date of birth as being
09:06:44   22    July 16, 1968; is that correct?
09:06:48   23         A.   Correct.
09:06:50   24         Q.   And what's your address -- your
09:06:52   25    residential address in Bridgeport?
```

**EXHIBIT 1**

Case No. 1:19-cv-01224-RBJ   Document 82-1   filed 01/26/21   USDC Colorado   pg 3 of 7

Stephen Stull   06/09/2020                                               Page 96
AMANDA WILSON v. JONATHAN PAULING, ET AL.

```
11:39:09   1   being a bitch?
11:39:13   2        A.   Correct.  And, again, I said I shouldn't
11:39:25   3   have said that, but I don't feel like you, Amanda
11:39:31   4   Wilson, should be pulling the bank into his problem.
11:39:39   5        Q.   You don't think Amanda Wilson should be
11:39:42   6   pulling the bank into Jon Pauling's problem; is that
11:39:45   7   what you're saying?
11:39:47   8        A.   I don't think the bank should be getting
11:39:49   9   pulled into this situation.
11:39:53  10        Q.   And is that how you look at it, that the
11:39:55  11   bank is being pulled into the situation?
11:39:58  12        A.   Yes.
11:39:59  13        Q.   You don't look at it as the bank is part
11:40:02  14   of the situation?
11:40:07  15        A.   I don't believe we had anything that we
11:40:11  16   would have done differently.  Had this never happened,
11:40:14  17   everything we did would have been done the way it was
11:40:21  18   done if there was no Amanda Wilson lawsuit.
11:40:32  19        Q.   Let's talk a little bit about the text
11:40:34  20   messages.  Why don't you go to Exhibit 2.
11:41:02  21        A.   Okay.
11:41:05  22        Q.   And I'll start with just a general
11:41:10  23   question:  What is your cell phone number that you use
11:41:12  24   for text messaging?
11:41:15  25        A.   (308)235-5783.
```

Case No. 1:19-cv-01224-RBJ   Document 82-1   filed 01/26/21   USDC Colorado   pg 4 of 7

Stephen Stull   06/09/2020                                    Page 147
AMANDA WILSON v. JONATHAN PAULING, ET AL.

```
01:50:30    1    positions?
01:50:35    2         A.   I don't recall doing that.  I probably
01:50:41    3    would have sent that off to legal.  Anything like that
01:50:44    4    I would have sent to legal, but I don't recall this
01:50:47    5    for sure.
01:50:50    6         Q.   Do you have any idea why Jon Pauling
01:50:52    7    would be affirmatively asking Farmers State Bank to
01:50:55    8    alert Judge Buchanan to Farmers State Bank's lien
01:51:01    9    positions?
01:51:02   10         A.   I have no idea.
01:51:06   11         Q.   Was Jon Pauling trying to use Farmers
01:51:08   12    State Bank's liens to protect assets from collection
01:51:12   13    in this lawsuit?
01:51:16   14         A.   I don't know.  I have no idea how that
01:51:18   15    would work.
01:51:20   16         Q.   Have you and Jon Pauling had
01:51:24   17    conversations about the use of Farmers State Bank's
01:51:27   18    liens to protect assets from collection by Amanda
01:51:31   19    Wilson?
01:51:32   20         A.   No.
01:51:35   21         Q.   Other than this letter?
01:51:38   22              MS. OLDEMEYER:  Object to the form of the
01:51:38   23    question.
01:51:42   24         A.   Ask the question again, please.
01:51:46   25         Q.   (BY MR. PULKRABEK) Was there any phone
```

Case No. 1:19-cv-01224-RBJ   Document 82-1   filed 01/26/21   USDC Colorado   pg 5 of 7

Stephen Stull   06/09/2020                                          Page 182
AMANDA WILSON v. JONATHAN PAULING, ET AL.

| | | | |
|---|---|---|---|
| 02:57:59 | 1 | Q. | And were you hopeful that FirsTier would |
| 02:58:01 | 2 | agree to take the loan? | |
| 02:58:04 | 3 | A. | Yes. |
| 02:58:06 | 4 | Q. | And why were you hopeful of that? |
| 02:58:09 | 5 | A. | For obvious reasons that we're sitting |
| 02:58:13 | 6 | with assets that don't have the value that they should | |
| 02:58:17 | 7 | compared to the loan size. | |
| 02:58:23 | 8 | Q. | Did you feel that Farmers State Bank had |
| 02:58:28 | 9 | risk at the point in time of early 2017 when Two Mile | |
| 02:58:35 | 10 | Ranch was still owning all the assets? | |
| 02:58:40 | 11 | A. | Sorry.  Can you repeat that question? |
| 02:58:43 | 12 | Q. | Sure.  Did you think that Farmers State |
| 02:58:46 | 13 | Bank was exposed to risk as a result of Two Mile | |
| 02:58:49 | 14 | Ranch's loans with Farmers State Bank? | |
| 02:58:54 | 15 | A. | Obviously, yes. |
| 02:58:57 | 16 | Q. | What did you evaluate to be the risk |
| 02:58:59 | 17 | associated with Two Mile Ranch's loans? | |
| 02:59:03 | 18 | A. | What was the risk?  Are you talking |
| 02:59:06 | 19 | dollar risk?  Are you talking what? | |
| 02:59:10 | 20 | Q. | Well, I'm talking just -- I'm throwing |
| 02:59:13 | 21 | the question open to you to answer.  So what did you | |
| 02:59:15 | 22 | evaluate to be the risk? | |
| 02:59:18 | 23 | A. | The risk to Farmers State Bank was that |
| 02:59:24 | 24 | they were going through bankruptcy, and if they didn't | |
| 02:59:28 | 25 | get through bankruptcy or find another entity to | |

Case No. 1:19-cv-01224-RBJ   Document 82-1   filed 01/26/21   USDC Colorado   pg 6 of 7

Stephen Stull   06/09/2020                                    Page 183
AMANDA WILSON v. JONATHAN PAULING, ET AL.

| | | |
|---|---|---|
| 02:59:33 | 1 | acquire the assets, we were going to do a foreclosure |
| 02:59:38 | 2 | of the assets, at which time we would have to put it |
| 02:59:42 | 3 | on our books as OREO and other assets.  We would then |
| 02:59:47 | 4 | set up a sale, at which time you auction it off.  And, |
| 02:59:55 | 5 | again, at this point in time, nobody was buying real |
| 02:59:58 | 6 | estate. |
| 03:00:03 | 7 | So we were concerned about losing money |
| 03:00:07 | 8 | by going through the foreclosure process.  And we made |
| 03:00:10 | 9 | a business decision to risk having Mark and Elyce |
| 03:00:18 | 10 | ultimately -- we hoped it would be other investors |
| 03:00:20 | 11 | included in that, but ultimately it came down to do we |
| 03:00:29 | 12 | go through the foreclosure, take the hit, plus pay the |
| 03:00:33 | 13 | sales costs -- so that's probably another 10 percent, |
| 03:00:36 | 14 | so now you're talking $2 1/2 million -- or do we take |
| 03:00:41 | 15 | the risk, sell the assets to Mark and Elyce into an |
| 03:00:45 | 16 | entity that had a plan. |
| 03:00:47 | 17 | And their plan was to sell off that |
| 03:00:52 | 18 | hunting ground, which in the appraisal it's swamp |
| 03:00:56 | 19 | ground or it's a marsh, so it had no value on the |
| 03:01:01 | 20 | appraisal, sell off real estate that was on hillsides, |
| 03:01:06 | 21 | it was waste -- what they call waste ground as home |
| 03:01:13 | 22 | sites.  And those were their plans. |
| 03:01:15 | 23 | We figured, Okay, let's give them the |
| 03:01:18 | 24 | chance to do these things.  They did do that.  They |
| 03:01:22 | 25 | made a nice chunk on the sale of the hunting ground. |

**EXHIBIT 1**

Case No. 1:19-cv-01224-RBJ   Document 82-1   filed 01/26/21   USDC Colorado   pg 7 of 7

Stephen Stull   06/09/2020   Page 184
AMANDA WILSON v. JONATHAN PAULING, ET AL.

| | | |
|---|---|---|
| 03:01:26 | 1 | They made a little bit of money on properties that |
| 03:01:31 | 2 | they sold for home sites to give them a little bit of |
| 03:01:35 | 3 | room to go.  And that was our business decision.  We |
| 03:01:40 | 4 | had an either-or situation.  We didn't know all of |
| 03:01:44 | 5 | this other Lardyn, Elyce, Wilson.  All that stuff |
| 03:01:52 | 6 | wasn't out there.  So that was our decision. |
| 03:02:00 | 7 | Q.   Let me follow up on that a little bit. |
| 03:02:03 | 8 | **So it sounds like in terms of the dollar amount of the** |
| 03:02:08 | 9 | **risk that Farmers State Bank was evaluating, it was** |
| 03:02:13 | 10 | **looking at a potential $2.5 million loss that went** |
| 03:02:17 | 11 | **through foreclosure on Two Mile Ranch's assets instead** |
| 03:02:21 | 12 | **of going forward with the acquisition by Lardyn.** |
| 03:02:27 | 13 | A.   Okay.  Sorry.  I'm going to make you |
| 03:02:29 | 14 | repeat that again.  I lost my train of thought as you |
| 03:02:32 | 15 | were saying that.  Sorry. |
| 03:02:36 | 16 | **Q.   All right.  I'll repeat it.  In terms of** |
| 03:02:41 | 17 | **the dollar amount of risk that Farmers State Bank** |
| 03:02:48 | 18 | **evaluated, Farmers State Bank believed it was looking** |
| 03:02:54 | 19 | **at a potential $2.5 million loss if it were to go** |
| 03:02:58 | 20 | **forward with foreclosing on the assets rather than** |
| 03:03:05 | 21 | **proceeding with an acquisition of the assets by Lardyn** |
| 03:03:10 | 22 | **Consulting?** |
| 03:03:15 | 23 | A.   That is accurate. |
| 03:03:23 | 24 | **Q.   Okay.  Let's look at the next exhibit** |
| 03:03:31 | 25 | **here.  Take a look at Exhibit 38, please.** |