Richard Stull   06/08/2020
AMANDA WILSON v. JONATHAN PAULING, ET AL.

```
1              IN THE UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF COLORADO
2
    Civil Action No. 19-cv-01224-RBJ-STV
3   _____

4   VIDEOTAPE DEPOSITION OF:  RICHARD STULL - June 8, 2020
                                 (Via RemoteDepo)
5   _____

6   AMANDA WILSON, a Michigan citizen,

7   Plaintiff,

8   v.

9   JONATHAN PAULING, an individual Colorado citizen, MARK
    PAULING, an individual Colorado citizen, TWO MILE
10  RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP, a
    Colorado General Partnership, ELYCE YORK, an
11  individual Nebraska or Colorado citizen, LARDYN
    CONSULTING LLC, a Nebraska Limited Liability Company,
12  and FARMERS STATE BANK, a Nebraska Corporation,

13  Defendants.
    _____
14

15
              PURSUANT TO NOTICE, the videotape
16  deposition of RICHARD STULL was taken on behalf of the
    Plaintiff in Morrill County, Nebraska, via remote
17  means, on June 8, 2020, at 9:13 a.m., before Tiffany
    D. Goulding, Registered Professional Reporter and
18  Notary Public within Colorado, appearing remotely from
    Arapahoe County, Colorado.
19

20

21

22

23

24

25
```

Case No. 1:19-cv-01224-RBJ   Document 82-2   filed 01/26/21   USDC Colorado   pg 2 of 4

Richard Stull   06/08/2020                                          Page 9
AMANDA WILSON v. JONATHAN PAULING, ET AL.

```
09:15:39   1    please hold your government ID up to the camera for
09:15:44   2    identification.
09:15:46   3              (Deponent complied.)
09:15:57   4              THE REPORTER:  Thank you.  I will also
09:15:57   5    ask you to agree and declare that the testimony you
09:15:58   6    are about to give will be under the penalty of
09:16:02   7    perjury.  Do you agree?
09:16:07   8              THE DEPONENT:  Restate that.  I need to
09:16:08   9    get my hearing aid set so I can understand everybody.
09:16:11  10    Repeat that question, please.
09:16:13  11              THE REPORTER:  Of course.  Do you agree
09:16:13  12    and declare that the testimony you are about to give
09:16:13  13    will be under the penalty of perjury?
09:16:22  14              THE DEPONENT:  I do.
09:16:24  15              THE REPORTER:  Thank you.  Go ahead.
09:16:25  16                    RICHARD STULL,
09:16:25  17    having verbally declared that his testimony is under
09:16:25  18    the penalty of perjury, testified as follows:
09:16:25  19                    EXAMINATION
09:16:26  20    BY MR. PULKRABEK:
09:16:27  21        Q.   Mr. Stull, my name is Ross Pulkrabek.
09:16:30  22    I'm going to start with just some kind of preliminary
09:16:35  23    points.  These may be issues that your lawyer has
09:16:38  24    already talked to you about.  First of all, if there's
09:16:41  25    any question that you do not hear fully, will you
```

Richard Stull   06/08/2020   Page 217
AMANDA WILSON v. JONATHAN PAULING, ET AL.

| | | |
|---|---|---|
| 05:25:00 | 1 | accounts are in entities; right? |
| 05:25:05 | 2 | A.  All of his entities have bank accounts |
| 05:25:09 | 3 | that I'm aware of. |
| 05:25:13 | 4 | Q.  Did you ever talk to Jon Pauling about |
| 05:25:15 | 5 | Amanda Wilson's judgment? |
| 05:25:20 | 6 | A.  All I know is -- yes, I have.  And he was |
| 05:25:28 | 7 | very closemouthed about it, and so I do not know that |
| 05:25:35 | 8 | much information about Jon and this Amanda Wilson, |
| 05:25:41 | 9 | whatever, lawsuit. |
| 05:25:49 | 10 | Q.  When did you talk to Jon Pauling about |
| 05:25:51 | 11 | the judgment? |
| 05:25:55 | 12 | A.  After we found out about it. |
| 05:25:59 | 13 | Q.  Do you remember -- |
| 05:26:00 | 14 | A.  And I don't know when that was because I |
| 05:26:04 | 15 | don't recall that time period at all. |
| 05:26:09 | 16 | Q.  Do you have even a year that you can put |
| 05:26:12 | 17 | to it when you would have talked to Jon Pauling about |
| 05:26:14 | 18 | the judgment? |
| 05:26:15 | 19 | A.  No, I can't. |
| 05:26:18 | 20 | Q.  Do you recall how you talked to him?  Was |
| 05:26:20 | 21 | it by e-mail?  Was it in person?  Phone? |
| 05:26:25 | 22 | A.  I think it was in person here at the |
| 05:26:30 | 23 | bank. |
| 05:26:33 | 24 | Q.  And what were the circumstances? |
| 05:26:37 | 25 | A.  What were the circumstances? |

**EXHIBIT 2**

```
05:26:39    1               Q.   Well, he was at the bank for a reason, I
05:26:41    2    assume?
05:26:41    3               A.   Well, yes.
05:26:42    4               Q.   Why was he at the bank?
05:26:44    5               A.   For talking about Two Mile Ranch, I'm
05:26:48    6    assuming, or one of the entities.  And so that would
05:26:57    7    have been when we talked to him.
05:27:00    8               Q.   What did he say?  I know that he was
05:27:04    9    closemouthed about it, but what did he say?
05:27:07   10               A.   I don't recall.  He just -- he confirmed
05:27:11   11    the fact that there was a lawsuit out there.
05:27:18   12               Q.   Okay.
05:27:20   13               A.   Because it affected our loan repayment.
05:27:24   14               Q.   How so?
05:27:27   15               A.   How so?  His ability to run an operation.
05:27:35   16               Q.   Explain that to me.  I don't understand
05:27:37   17    that.  What do you mean by it affected "his ability to
05:27:40   18    run an operation"?
05:27:45   19               A.   He was not able to manage the entities --
05:27:53   20    the business entities that he had and he was losing
05:28:03   21    money.  Our loans were past due.  Everything was going
05:28:11   22    backwards.
05:28:13   23               Q.   Why was Jon -- why did the existence of a
05:28:16   24    civil judgment affect Jon Pauling's ability to manage
05:28:19   25    the entities?
```

**EXHIBIT 2**