## APPENDIX A



**User Name:** Aaron Goldhamer
**Date and Time:** Tuesday, January 19, 2021 5:18:00 PM EST
**Job Number:** 134455317

## Document (1)

1. *Fifth Third Bank v. Morales, 2017 U.S. Dist. LEXIS 208288*
   **Client/Matter:** Firm

About LexisNexis | Privacy Policy | Terms & Conditions | Copyright © 2021 LexisNexis
Aaron Goldhamer

APPENDIX A

 Positive
As of: January 19, 2021 10:18 PM Z

# Fifth Third Bank v. Morales

United States District Court for the District of Colorado

December 19, 2017, Decided; December 19, 2017, Filed

Civil Action No. 16-cv-01302-CMA-STV

**Reporter**
2017 U.S. Dist. LEXIS 208288 *; 2017 WL 6492108

FIFTH THIRD BANK, Plaintiff, v. LUCY MORALES, THE LUCY MORALES REVOCABLE TRUST, MARIE KORALLUS, and MARIE LUDIAN, Defendants.

**Prior History:** *Fifth Third Bank v. Morales, 2017 U.S. Dist. LEXIS 147369 (D. Colo., Sept. 12, 2017)*

## Core Terms

equivalent value, Defaulting, transferred, fraudulent, fraudulent transfer, summary judgment, matter of law, conspiracy, defraud, parties, promise, badges, hinder, summary judgment motion, outstanding, undisputed, insolvent, factors

**Counsel:** [*1] For Fifth Third Bank, Plaintiff: Lars Henrik Fuller, Baker & Hostetler, LLP-Denver, Denver, CO.

For Marie Korallus, Marie Ludian, Defendants: Adam Patrick O'Brien, Andrew Keith Lavin, Wells, Anderson & Race, LLC, Denver, CO.

**Judges:** CHRISTINE M. ARGUELLO, United States District Judge.

**Opinion by:** CHRISTINE M. ARGUELLO

## Opinion

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on dueling motions of summary judgment filed by Plaintiff Fifth Third Bank (Doc. # 52) and Defendants Marie Korallus and Marie Ludian (Doc. # 51). Because the Court finds the existence of a fraudulent transfer as a matter of law, the Court grants Plaintiff's motion and denies Defendants' motion.

### I. BACKGROUND

In 2009, Lucy T. Morales (Ms. Morales) created the Lucy T. Morales Revocable Trust (the Trust) (collectively, the Defaulting Defendants)[1] and, as grantor, named herself as Trustee and beneficiary. (Doc. # 52-3 at 349.) Ms. Morales later amended the Trust to name her daughters Marie Ann Korallus and Marie Tess Ludian (Defendants) as successor trustees. (Doc. # 52-1 at 1, 9.) Upon Ms. Morales's death, all the Trust's assets would be distributed to the Defendants. [*2] (Doc. # 52-2 at 146, 151-52.) Ms.

---

[1] Neither Ms. Morales nor the Trust has filed an answer, entered an appearance, or otherwise responded to the Complaint in this case. On October 17, 2016, the Clerk entered default against them. (Doc. # 26.) On September 12, 2017, the Court declined to enter a default judgment against them because Plaintiff's claims against the non-defaulting defendants—Marie Korallus and Marie Ludian—had not yet been resolved. (Doc. # 63.) The Court nonetheless finds it appropriate to refer to Ms. Morales and the Trust as "Defaulting Defendants" for the purposes of this order.

Aaron Goldhamer

Case No. 1:19-cv-01224-RBJ   Document 82-11   filed 01/26/21   USDC Colorado   pg 3 of 8

APPENDIX A
2017 U.S. Dist. LEXIS 208288, *2

Page 2 of 7

Morales also transferred real property in Montrose, Colorado (the Montrose Property) to the Trust. (Doc. # 52-1 at 146, 158, 164-67.)

In 2011, Plaintiff loaned approximately $510,000.00 to Grand Park Surgical Center (Grand Park) and Chicago Medical and Surgical Center (Chicago Medical). (Doc. # 52-3 at 349-50.) Ms. Morales guaranteed the repayment obligation on the loan. (*Id.* at 350.) In 2013, based on an alleged default on the loan, Plaintiff commenced a civil suit against them in the Circuit Court of Cook County, Illinois (Illinois Court). (Doc. # 52-2 at 244, 253.) The Illinois Court entered judgment in Plaintiff's favor in the amount of $607,768.10 (Illinois Judgment). (Doc. # 52-1 at 179-80.) In 2014, Plaintiff domesticated and publicly recorded the Illinois Judgment against Ms. Morales in Montrose County, Colorado (Colorado Judgment). (*Id.* at 182-84.) Meanwhile, Plaintiff also obtained an Order from the Illinois Court impressing a judicial lien against the assets of the Trust, including the Montrose Property (Judicial Lien). (Doc. # 52-2 at 189.) In September 2015, Plaintiff commenced post-judgment collection proceedings against Ms. Morales on the Illinois Judgment [*3] (*Id.* at 252.)

In December 2015, the Defaulting Defendants[2] transferred the Montrose Property by warranty deed to the Defendants (the Transfer). In exchange, the Defaulting Defendants received a promissory note and deed of trust (the Note) from the Defendants in the principal amount of $395,000.00. (Doc. # 51-1 at 3.) The Note had a fifteen-year maturity date and bore no interest. (*Id.*) It included provisions requiring Defendants to maintain the Montrose Property and an acceleration clause in the event of breach or default. (*Id.* at 4-10.) At the time of Transfer, the market value of the property was between $395,000.00 and $400,000.00. (Doc. # 51 at 4; Doc. # 52 at 6.)

In July 2017, the Illinois Court entered an Order directing the Defaulting Defendants to "turn over the [Note]" to Plaintiff "who may collect upon it." (Doc. # 52-3 at 331.) The Illinois Court later ordered that "a writ of execution shall issue directing public auction of the Note." (Doc. # 58-2 at 91.) Neither party contends that any such auction has occurred.

As the proceedings in Illinois remained pending, Plaintiff commenced this lawsuit raising three Claims for Relief. (Doc. # 1.) In its First and Second Claims, Plaintiff argues that the [*4] Defaulting Defendants fraudulently transferred the Montrose Property to the Defendants pursuant to *Colorado Revised Statute § 38-8-105(1)(a)* and *(b)*. (*Id.* at 7-10.) Plaintiff seeks the avoidance of that Transfer pursuant to *§ 38-8-108*. (*Id.*) Plaintiff's Third Claim alleges that Defendants are liable for Civil Conspiracy based on their collective participation in the Transfer. (*Id.* at 10-11.) The parties agree that all claims are ripe for summary judgment.

## II. STANDARD OF REVIEW

Summary judgment is warranted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. A fact is "material" if it is essential to the proper disposition of the claim under the relevant substantive law. *Wright v. Abbott Labs., Inc., 259 F.3d 1226, 1231-32 (10th Cir. 2001)*. A dispute is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party. *Allen v. Muskogee, Okl., 119 F.3d 837, 839 (10th Cir. 1997)*. When reviewing motions for summary judgment, a court must view the evidence in the light most favorable to the non-moving party. *Id.* However, conclusory statements based merely on conjecture, speculation, or subjective belief do not constitute competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc., 366 F.3d 869, 875 (10th Cir. 2004)*.

The well-pleaded facts in the Complaint are deemed true with respect to defaulting parties. *Newell [*5] Recycling, LLC v. DC Brands Int'l, Inc., No. 13-CV-1238-WJM-KMT, 2014 U.S. Dist. LEXIS 38423, 2014 WL 1213366, at *2 (D. Colo. Mar. 24, 2014)*.

## III. ANALYSIS

Because the parties request summary judgment on each of Plaintiff's claims, the Court address them in turn.

### A. FRAUDULENT TRANSFERS

Plaintiff claims that the Transfer was fraudulent pursuant to *§ 38-8-105(1)(a)* and *(b)* of the Colorado Uniform Fraudulent Transfer Act (CUFTA). The burden of proof lies with Plaintiff to prove fraudulent transfer under either subsection of this statute. *Schempp v. Lucre Mgmt. Grp., LLC, 75 P.3d 1157, 1165 (Colo. App.*

---

[2] Ms. Morales participated in the transfer as trustee of the Trust.

*2003)*.

1. *§ 38-8-105(1)(a)*

The Court begins with *subsection (a)*, which provides:

> A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . ., if the debtor made the transfer . . . (a) [w]ith actual intent to hinder, delay, or defraud any creditor of the debtor.

*§ 38-8-105(1)(a)*. Plaintiff need only demonstrate that the "debtor"—here, the Defaulting Defendants—made the Transfer "with actual intent to hinder, delay, or defraud" Plaintiff—the creditor.

"Actual intent" under *subsection (a)* is seldom susceptible to direct proof. Courts therefore look to the following non-exclusive factors, otherwise known as "badges of fraud," to assess a debtor's intent:

> (a) The transfer or obligation was to an insider;
> 
> (b) The debtor retained possession or control [*6] of the property transferred after the transfer;
> (c) The transfer or obligation was disclosed or concealed;
> (d) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
> (e) The transfer was of substantially all the debtor's assets;
> (f) The debtor absconded;
> (g) The debtor removed or concealed assets;
> (h) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
> (i) The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;
> (j) The transfer occurred shortly before or shortly after a substantial debt was incurred; and
> (k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

*§ 38-8-105(2)*. "While a single badge of fraud may only create suspicion of fraud, several badges of fraud considered together may infer intent to defraud." *Schempp v. Lucre Mgmt. Grp., LLC, 18 P.3d 762, 764 (Colo. App. 2000)* (citation omitted); *see also § 38-8-105(2), cmt. 4*; *Springfield Ins. Co. v. Fry, 267 F. Supp. 693, 695 (N.D. Okla. 1967)* ("'Badges of fraud' are suspicious circumstances that overhang a transaction or appear on the face of papers involved and a single badge of fraud may stamp a transaction [*7] as fraudulent, and when several badges of fraud are found in combination, strong and clear evidence will be required to repel a conclusion of fraud.").

Factors (a), (d), (h), (i) and (j) support a finding that the Defaulting Defendants had the actual intent to hinder, delay, or defraud Plaintiff. With respect to factor (a), it is undisputed that the transferees are Ms. Morales's daughters. Pursuant to *§ 38-8-102(8)(a)(I)*, a "relative" of the debtor is considered an insider. Thus, factor (a) supports a finding of an intent to hinder, delay, or defraud. With regard to factors (d) and (j), it is undisputed that Plaintiff sued Ms. Morales in Illinois before the Transfer occurred; received an Illinois Judgment in its favor in the amount of $607,768.10 and a lien against the assets of the Trust, including the Montrose Property; and initiated post-judgment collection proceedings several months before the Transfer occurred. Factors (d) and (j) support a finding of intent to hinder, delay, or defraud. Factor (i) likewise supports this finding. The well-pled allegations in Plaintiff's Complaint, which this Court may accept as true with respect to the Defaulting Defendants, demonstrate that Ms. Morales has failed [*8] to make payments on her substantial debt obligations to Plaintiff, resulting in a presumption of her "insolvency" pursuant to *§ 38-8-103(2)* ("A debtor who is generally not paying his debts as they become due is presumed to be insolvent.").[3]

Much of this dispute hinges on factor (h)—whether the value of consideration received by Ms. Morales and the Trust was reasonably equivalent to the value of the Montrose Property transferred. Reasonably equivalent value "depends upon an analysis of all the facts and circumstances of each case." *Leverage Leasing Co. v. Smith, 143 P.3d 1164, 1166 (Colo. App. 2006)*; *Silverberg v. Colantuno, 991 P.2d 280 (Colo. App. 1998)*. It "is not susceptible to simple formulation" and is largely a question of fact. *In re Commercial Fin. Servs., Inc., 350 B.R. 559, 578 (Bankr. N.D.Okla. 2005)*; *see also In re Wes Dor, Inc., 996 F.2d 237, 242 (10th Cir. 1993)*; *CB Richard Ellis, Inc. v. CLGP, LLC, 251 P.3d 523, 530 (Colo. App. 2010)*. However, when the facts of the transfer are undisputed and the Court's only task is to fit undisputed facts within the statutory parameters, the Court may decide the issue as a matter of law. *Omedelena v. Denver Options, Inc., 60 P.3d 717, 722*

---

[3] Ms. Morales has not responded to Plaintiff's motion for summary judgment and has not, therefore, rebutted this presumption of insolvency.

Case No. 1:19-cv-01224-RBJ   Document 82-11   filed 01/26/21   USDC Colorado   pg 5 of 8

APPENDIX A
2017 U.S. Dist. LEXIS 208288, *8

Page 4 of 7

*(Colo. App. 2002)*; *Schempp, 18 P.3d at 765*; *see also In re Erlewine, 349 F.3d 205, 209 (5th Cir. 2003)* ("Certain transactions . . . can give the debtor reasonably equivalent value as a matter of law.").

The phrase "reasonably equivalent value," which was derived from *11 U.S.C. § 548* of the federal Bankruptcy Code, has been construed to include both direct and indirect benefits to the debtor, even if the benefit does not increase the debtors net worth. *See, e.g., In re Image Worldwide, Ltd., 139 F.3d 574 (7th Cir. 1998)*. Although not wholly synonymous [*9] with market value, market value is still an important factor to consider in the assessment. *Schempp, 18 P.3d at 765*. Indeed, "a grossly inadequate price raises a rebuttable presumption of actual fraudulent intent." *BFP v. Resolution Tr. Corp., 511 U.S. 531, 532, 114 S. Ct. 1757, 128 L. Ed. 2d 556 (1994)* (internal quotations omitted). "Intangible, non-economic benefits, such as preservation of marriage, do not constitute reasonably equivalent value." *In re Erlewine, 349 F.3d at 212*. Moreover, a non-public sale that appears collusive or that does not proscribe to standard state procedures may give rise to an inference of fraud. *BFP, 511 U.S. at 545*. "Consideration having no utility from a creditor's viewpoint does not satisfy the statutory definition." § 38-8-104, cmt. 2; *Leverage Leasing, 143 P.3d at 1167*.

Section 38-8-104 further defines "value" that is "given for a transfer or an obligation." *Leverage Leasing, 143 P.3d at 1167*. Comment 2 states that value "is to be determined in light of the purpose of [CUFTA] to protect a debtor's estate from being depleted to the prejudice of the debtor's unsecured creditors." § 38-8-104, cmt. 2. "[A] court must . . . keep in mind the equitable purposes" behind CUFTA "because any significant disparity between the benefit received and the value transferred harms innocent creditors." *Leverage Leasing, 143 P.3d at 1167*. Ultimately, the purpose behind this value determination is not to identify binding agreements, but to identify transfers made [*10] with no rational purpose except to avoid creditors. *Donell v. Kowell, 533 F.3d 762, 777 (9th Cir. 2008)*.

Here, the record indicates that the Defaulting Defendants did not receive reasonably equivalent value from the Transfer of the Montrose Property to the Defendants. At the time of the Transfer, the Montrose Property was worth between $375,000.00 and $400,000.00. Yet, the Defaulting Defendants received no funds for the Transfer. They instead received a Note with no payments due for fifteen years (when Ms. Morales would be 90 years old), no accumulating interest, and only one default provision that merely provided for the acceleration of payment. Moreover, the Note was made payable to the Trust—the assets of which would revert back to Defendants upon Ms. Morales's death. Nothing in the record suggests that Defendants assumed additional liability for Ms. Morales's outstanding loan obligation to Plaintiff or for the judicial lien on the property. Nor did the Transfer involve a public non-collusive sale following Colorado state procedures.

Neither the parties nor this Court has found any legal authority suggesting that the value provided in this case—a promise of future payment with no contemporaneous economic obligations—constitutes reasonably [*11] equivalent value under the CUFTA. Indeed, a majority of cases hold that future promises are insufficient as a matter of law to constitute reasonably equivalent value for a debtor's asset transfers to a third party—particularly when that third party is family. *See, e.g.,* § 38-8-108(1) ("[V]alue does not include an unperformed promise made otherwise than in the ordinary course of the promisor's business to furnish support to the debtor or another person."); *In re Ventimiglia, 362 B.R. 71, 83 (Bankr. E.D.N.Y. 2007)* ("In general, a promise of future support is not considered a fair equivalent of property transferred."); *Springfield Ins. Co., 267 F. Supp. at 696* ("[O]rdinarily a transfer of property in consideration of future support is held to be invalid, at any rate, as to existing creditors whose rights are prejudiced by such transfer.").

Defendants nonetheless argue that their deed of trust, promises to maintain the property, and agreement to assign any remaining rents to the Defaulting Defendants constitute reasonably equivalent value as a matter of law. The Court disagrees.

Value is viewed from the objective standpoint of the creditor, not the debtor. Consideration having no utility or value from a creditor's vantage point may be "good" consideration supporting a valid contract, but it cannot [*12] constitute reasonably equivalent value, as a matter of law, where the exchange injures creditors' interests. *SE Prop. Holdings, LLC v. Center, No. CV 15-0033-WS-C, 2016 U.S. Dist. LEXIS 180248, 2016 WL 7493623, at *10 (S.D. Ala. Dec. 30, 2016)*; *see In re Wierzbicki, 830 F.3d 683, 688 (7th Cir. 2016)* (transferees promise to drop his appeals in state court and promises to assume liability for mortgages and other liens were not worth anywhere close to her the value of the transferred interest and were not, therefore, reasonably equivalent value as a matter of law).

APPENDIX A
2017 U.S. Dist. LEXIS 208288, *12

Page 5 of 7

Under the circumstances of this case and considering the relationship between the transferring parties, a bare deed coupled with property maintenance and the assignment of rents, which totalled less than $20,000, did not provide the Defaulting Defendants with a sufficient economic benefit to support a finding of reasonably equivalent value. To the contrary, all of the circumstances surrounding the Transfer suggest that it occurred for no other reason than to avoid Ms. Morales's payment obligation to Plaintiff. *See Donell, 533 F.3d at 777*. No reasonable juror could find otherwise. *See Schempp, 18 P.3d at 765* (the reasonable equivalence standard implies a rule of reasonableness in light of the particular circumstances).

Recognizing that this Transfer was supported by reasonably equivalent value would contravene [*13] the CUFTA's purpose of protecting a debtor's estate from depletion, to the prejudice of unsecured creditors and would violate the mandate to ignore consideration having no utility to creditors. Because no reasonably equivalent value was provided, factor (h) supports a finding that the Defaulting Defendants' intended to hinder, delay, or defraud Plaintiff when they transferred the Montrose Property to the Defendants.

Accordingly, at least five factors weigh in Plaintiff's favor, and the Court finds that the Transfer was fraudulently made pursuant to *§ 38-8-105(1)(a)*. The Court therefore grants Plaintiff's request for summary judgment on its First Claim for Relief.

2. *§ 38-8-105(1)(b)*

With respect to *§38-8-105(1)(b)*, the analysis is similar. *Subsection (b)* provides:

> A transfer made . . . by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made . . ., if the debtor made the transfer . . . (b) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:
> (I) was engaged or was about to engage in . . . a transaction for which the remaining assets of the debtor were unreasonably small in relation to the . . . transaction; or
>
> (II) . . . reasonably should [*14] have believed that he would incur debts beyond his ability to pay as they became due.

The Court has already found that reasonably equivalent value was not provided. *See Schempp, 18 P.3d at 765 (Colo. App. 2000)* ("In order to succeed on [any] fraudulent transfer claim . . . a creditor must show that the debtor did not receive a reasonably equivalent value in exchange for the property."). With respect to *subsections (I)* and *(II)*, it is undisputed that Ms. Morales had outstanding money judgments against her—in Illinois and Colorado—totaling just over $600K. Plaintiff also had a judicial lien on the assets of the Trust, which included the Montrose Property. This Court has also already found that Ms. Morales was considered insolvent pursuant to *§ 38-8-103(2)*. Considering these facts, the Court has no trouble concluding that the Defaulting Defendants should have reasonably believed that transferring approximately $375,000.00 worth of real property would leave them with "unreasonably small" assets and an inability to pay their outstanding debts.

The Court accordingly grants Plaintiff's request for summary judgment on its second claim for relief—fraudulent transfer pursuant to *§ 38-8-105(1)(b)*.

3. *§ 38-8-109*

Because this Court has found that no reasonably equivalent value was provided, the [*15] Court also finds against Defendants on their affirmative defense under *§ 38-8-109(1)*, which requires a showing of reasonable equivalence to prevail. *See § 38-8-109(1)* ("A transfer or obligation is not voidable under *section 38-8-105(1)(a)* against a person who took in good faith *and for a reasonably equivalent value* . . . .").

4. *§ 38-8-108*

The CUFTA sets forth the remedies available once a transfer is determined to be fraudulent. Plaintiff requests that this Court issue judgment avoiding the Transfer pursuant to *§ 38-8-108(1)(a)*, which allows for the "[a]voidance of the transfer . . . to the extent necessary to satisfy the creditor's claim." The Court grants that request.

The Colorado Supreme Court has explained that in fraudulent conveyance actions, "[t]he primary remedy . . . is a declaration that the fraudulent conveyance is void as to the judgment creditor. In other words, the remedy sought is to return the property fraudulently conveyed to its prior status of ownership thereby bringing it within reach of the judgment creditor of the fraudulent transferor." *Miller v. Kaiser, 164 Colo. 206, 433 P.2d 772, 775 (1967)*. Having found in Plaintiff's favor on its fraudulent transfer claims, the proper remedy is to avoid the Transfer of the Montrose Property.

Defendants nonetheless argue that Plaintiff should be

Case No. 1:19-cv-01224-RBJ   Document 82-11   filed 01/26/21   USDC Colorado   pg 7 of 8

APPENDIX A
2017 U.S. Dist. LEXIS 208288, *15

Page 6 of 7

judicially [*16] estopped from seeking an avoidance of the Transfer in this case because, from Defendants' perspective, Plaintiff took an inconsistent position in the Illinois proceedings. The Court disagrees.

Judicial estoppel "generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase." *New Hampshire v. Maine, 532 U.S. 742, 749, 121 S. Ct. 1808, 149 L. Ed. 2d 968 (2001)*. Plaintiff's position in this case is not inconsistent with or contradictory to its position in the Illinois lawsuit. There, Plaintiff was seeking assignment of the Note, which they received; here, Plaintiff, lawful holder of the Note, is seeking to avoid the Transfer of, and to execute on, the Montrose Property pursuant to a legitimate right to collect on Ms. Morales's outstanding debt obligation under *§ 38-8-108*. Nothing about Plaintiff's actions in these lawsuits warrants the application of the doctrine of judicial estoppel.

### B. CIVIL CONSPIRACY

The parties also seek summary judgment on Plaintiff's Third Claim for Relief—Civil Conspiracy.

To establish a claim for civil conspiracy, a plaintiff must show by a preponderance of the evidence that there exists: (1) an object to be accomplished; (2) an agreement by two or more persons on [*17] a course of action to accomplish that object; (3) in furtherance of that course of action, one or more unlawful acts which were performed to accomplish a lawful or unlawful goal, or one or more lawful acts which were performed to accomplish an unlawful goal; and (4) damages to the plaintiff as a proximate result. *Magin v. DVCO Fuel Sys., Inc., 981 P.2d 673 (Colo. App. 1999)*; *see also Nelson v. Elway, 908 P.2d 102 (Colo. 1995)*. A fraudulent transfer is an unlawful act that supports a creditor's claim for conspiracy. *Double Oak Constr., L.L.C. v. Cornerstone Dev. Int'l, L.L.C., 97 P.3d 140, 147 (Colo. App. 2003)*.

The elements of conspiracy are clearly met in this case. Ms. Morales, the Trust, and the Defendants engaged in a fraudulent transfer of the Montrose Property, evidenced by a written agreement and resulting in damage to Plaintiff, who had a valid lien on the transferred assets and a large outstanding judgment against Ms. Morales.

The Court therefore grants Plaintiff's request for summary judgment on its claim for civil conspiracy.

### IV. ADDITIONAL RELIEF

In addition to avoidance of the Transfer, Plaintiff's Motion requests the following additional relief: foreclosure on the Judicial Lien against the assets of the Trust, a writ of execution directing the Sheriff of Montrose to conduct a public foreclosure of the Montrose Property, actual damages in the amount of $400,000.00 (the [*18] alleged appraisal value of the Montrose Property), exemplary damages, and attorney fees. Without additional information, the Court cannot grant Plaintiff's requests. It appears to this Court that the state court is the most appropriate forum to foreclose on the county court lien. Moreover, one the lien is foreclosed and the Montrose Property sold, it is unclear that Plaintiff would be entitled to an additional award of $400,000.00 in actual damages. Finally, Plaintiff has provided no documentation to support its requests for exemplary damages or attorney's fees.[4]

The Court therefore finds that a hearing is necessary to resolve these issues.

### V. CONCLUSION

For the foregoing reasons, the Court GRANTS Plaintiff's Motion for Summary Judgment (Doc. # 52) and DENIES Defendants' Motion for Summary Judgment (Doc. # 51). The Court therefore ORDERS as follows:

    1. Judgment is entered in favor of Plaintiff and against Defendants Lucy Morales, the Lucy T. Morales Revocable Living Trust, Marie Korallus, and Marie Ludian, jointly and severally. The Transfer of the Montrose Property, which was a fraudulent transfer pursuant to *§ 38-8-105(1)(a)* and *(b)*, is avoided under *§ 38-8-108(1)(a)*.

    2. The parties are ordered to contact Chambers by Wednesday, [*19] December 27, 2017, at Arguello_Chambers@cod.uscourts.gov to set this matter for a hearing on Plaintiff's additional requests for relief.

    3. The Final Trial Preparation Conference set for

---

[4] Pursuant to **D.C.COLO.LCivR 54.3**, a motion for attorney's fees shall be supported by affidavit and shall include the following for each person for whom fees are claimed: (1) a summary of relevant qualifications and experience; and (2) a detailed description of the services rendered, the amount of time spent, the hourly rate charged, and the total amount claimed.

February 7, 2018, and the Jury Trial set to begin on February 20, 2018, are HEREBY VACATED.

DATED: December 19, 2017

BY THE COURT:

/s/ Christine M. Arguello

CHRISTINE M. ARGUELLO

United States District Judge

**End of Document**

Aaron Goldhamer