IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01224-RBJ-STV

**AMANDA WILSON**, a Michigan citizen,

Plaintiff,

v.

**JONATHAN PAULING**, an individual Colorado citizen, **MARK PAULING**, an individual Colorado citizen, **TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP**, a Colorado General Partnership, **ELYCE YORK**, an individual Nebraska or Colorado citizen, **LARDYN CONSULTING LLC**, a Nebraska Limited Liability Company, and **FARMERS STATE BANK**, a Nebraska Corporation.

Defendants.

---

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR LEAVE TO AMEND TO PERMIT COURT TO CONSIDER EXEMPLARY DAMAGES**

---

Plaintiff Amanda Wilson submits the following reply in support of Plaintiff's Motion for Leave to Amend to Permit the Court to Consider Exemplary Damages ("Motion") [#82]:

**I.      REPLY TO MARK PAULING AND TWO MILE RANCH**

Mark Pauling and Two Mile Ranch ("TMR") argue [#85] that Plaintiff lacks "good cause" for seeking exemplary damages after the pleadings amendment deadline in the Scheduling Order. However, good cause may be shown where the plaintiff obtains new information through discovery. *See Minter v. Prime Equip. Co.,* 451 F.3d 1196, 1205 n.4 (10th Cir. 2006). Plaintiff required multiple rounds of discovery from and discovery disputes with Farmers State Bank ("FSB") to get to the bottom of the evidence. Mark Pauling and TMR themselves produced comparatively few documents, and Jonathan Pauling produced hardly anything.

FSB withheld thousands of pages of highly relevant internal bank emails until November 30, 2020, after being ordered to produce them by the Court. FSB produced additional emails in

1

mid-December 2020 after conferral over its privilege logs. The emails attached to Plaintiff's Motion show that Defendants took concerted action with the specific intent to protect Jonathan Pauling and the TMR partnership against Plaintiff's judgment. The documents also clearly show that—to protect Jonathan Pauling and TMR—all Defendants engaged in the fiction that Lardyn Consulting and Elyce York were independent, arms-length buyers of TMR's assets, despite knowing that Lardyn was a mere continuation of TMR under Jonathan Pauling's control.

The question for the Court is whether allowing amendment to consider exemplary damages at trial is in the interest of justice. *See* F.R.C.P. 15(a)(2). "Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded." *Foman v. Davis,* 371 U.S. 178, 182 (1962).

> If the underlying facts or circumstances relied upon by a plaintiff may be the proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."

*Id.* Here, the interests of justice favor amendment so that the Court may consider exemplary damages at trial. Granting Plaintiff's Motion also will allow the parties to avoid a motion to amend during trial, which the Court could grant subject to a different standard. *See* F.R.C.P. 15(b).

Mark Pauling and TMR next argue that Plaintiff unduly delayed in making her Motion. They argue that Plaintiff could have moved for exemplary damages sooner based on weaker evidence. [#85 at 2.] Alternatively, they posit that Plaintiff already "knew" the facts established by the evidence attached her Motion and, therefore, the discovery of evidence proving those facts is not a "bombshell revelation." *Id.* at 7. Mark Pauling and TMR therefore imply that Plaintiff should have moved to seek exemplary damages based on allegations rather than evidence.

2

Mark Pauling and TMR bear the burden of establishing any "undue delay" or "dilatory motive." *Castleglen, Inc. v. Resolution Trust Corp.,* 984 F.2d 1571, 1585 (10th Cir. 1993). They fail to meet that burden. They identify no evidence obtained earlier in the case that they believe would have supported Plaintiffs' request for exemplary damages. Further, their argument that Plaintiff should have sought exemplary damages based on allegations rather than evidence is contrary to the law. Colorado requires that a plaintiff seeking exemplary damages "establish[] prima facie proof of a triable issue." C.R.S. § 13-21-102(1.5)(a). Further, the burden of proving exemplary damages at trial is "beyond a reasonable doubt." C.R.S. § 13-25-127(2). As such, Colorado plaintiffs cannot allege exemplary damages without evidence or pursue exemplary damages until they have discovered compelling evidence. That is what Plaintiff did here.

Mark Pauling and TMR next argue that "Plaintiff puts forth <u>absolutely no evidence</u> as required by the statute to establish a *prima facie* case that Mark Pauling or TMR (as opposed to other Defendants) acted with fraud, malice, or willfully and wantonly." [#85 at 2.] They argue that Plaintiff has only made a *prima facie* showing that exemplary damages are proper against FSB and Jonathan Pauling. *Id.* at 8. However, the evidence attached to Plaintiff's Motion <u>is</u> *prima facie* proof of a conspiracy not only between Jonathan Pauling and FSB but among <u>all</u> Defendants, including Mark Pauling and TMR. Mark Pauling and Jonathan Pauling are partners in the TMR General Partnership, and Jonathan Pauling's knowledge and actions are imputed to the partnership. Moreover, the documents attached to Plaintiff's Motion explicitly refer to Mark Pauling and TMR working with Jonathan Pauling and FSB to avoid Plaintiff's judgment.

The Court also can and should infer that, if FSB knew that Elyce York and Lardyn were under Jonathan Pauling's control, Mark Pauling surely knew the same thing. After all, Mark Pauling was Jonathan Pauling's partner in TMR and was Ms. York's co-member in Lardyn.

3

Finally, Mark Pauling and TMR assert they will be "prejudiced" if they must "shift their defensive strategy this close to trial." [#85 at 7.] Arguments of "prejudice" fail when the movant's amended allegations "track the factual situations set forth in his [original] claims," *Childers v. Indep. Sch. Dist. No. 1,* 676 F.2d 1338, 1342 (10th Cir. 1982), or when "[t]he amendments [do] not propose substantially different issues," *R.E.B., Inc. v. Ralston Purina Co.,* 525 F.2d 749, 751-52 (10th Cir. 1975). Plaintiff's proposed amendment does not inject any new factual situations or substantially different issues into the case; it merely enables the Court to consider exemplary damages at trial. Mark Pauling and TMR fail to meet their burden to show prejudice.

## II.   REPLY TO ELYCE YORK AND LARDYN

Elyce York and Lardyn argue that the evidence does not support a *prima facie* showing of a triable issue of exemplary damages against them. They ignore the evidence attached to Plaintiff's Motion and perpetuate the fiction that they are arms-length investors unrelated to Jonathan Pauling. The evidence is *prima facie* proof that Lardyn is a continuation of TMR and that Ms. York is Jonathan Pauling's proxy in Defendants' conspiracy to protect him and TMR against Plaintiff's judgment.

Mark Pauling is a member of Lardyn, and the evidence shows he collaborated with FSB and Jonathan Pauling "to get rid of Jon's Judgement" [#82-4 at 8 and 10] and "protect[] the partnership from the Plaintiff" [#82-3 at 1]. Mark Pauling's participation in the conspiracy is imputable to Lardyn. Further, this evidence is *prima facie* proof that Lardyn is, in fact, a mere a continuation of TMR under Jonathan Pauling's control in furtherance of that conspiracy.

As to Elyce York, FSB employees referred to Ms. York as "Jon's puppet," and regarded Ms. York and Lardyn as a "unicorn-like investor." This is *prima facie* proof that Ms. York did, in fact, act as Jonathan Pauling's straw person in furtherance of the conspiracy.

4

The fact that FSB perceived Ms. York and Lardyn as being under Jonathan Pauling's control is relevant to both FSB's culpability and other Defendants' culpability. There is no requirement that Ms. York's guilty state of mind be proved solely through her own admissions. When FSB employees refer to Ms. York as a unicorn-like investor or as Jonathan Pauling's puppet, the Court reasonably may infer that she went along with being Jonathan Pauling's proxy to advance the conspiracy to get rid of Plaintiff's judgment and protect the partnership.

The balance of Ms. York's response concerns (a) her own arguments how the Court should interpret the evidence attached to Plaintiff's Motion and (b) unsupported factual narrative and commentary, ranging from TMR's supposed indebtedness to FSB, to equity in the assets transferred to Lardyn, to what might have occurred in a hypothetical "forced liquidation," to the likelihood that TMR could have found an actual arms-length buyer for the assets. [#84 at 4-6.] To be clear, Plaintiff does not agree with Ms. York's and Lardyn's unsupported factual assertions. More importantly, none of those topics have anything to do with determining Plaintiff's Motion to amend the pleadings to enable the Court to consider exemplary damages at trial.

## III.   REPLY TO FARMERS STATE BANK

In its Response [#83], FSB avoids addressing the evidence Plaintiff submitted with and agued in her Motion. Instead, FSB takes an unusual tack by offering an unsupported narrative akin to an opening statement (which Plaintiff disputes).[1] After reciting a litany of loan figures, FSB once again (a) suggests that it had little awareness of Plaintiff's judgment, (b) portrays itself as a

---

[1] FSB sets the stage by asserting that, "By this lawsuit, Wilson wants FSB 'to pick up the bar tab,' as her attorneys say." [#83 at 1.] Plaintiff's counsel regrets that they cannot claim responsibility for this phrase. FSB most likely is recalling a comment that the Court made in response to Elyce York's counsel's denial of her liability that "[B]y what you're telling me you're leaving poor Ms. Oldemeyer [FSB's counsel] picking up the drinks." *See* Transcript of 2/19/20 Scheduling Conference, attached hereto as **Exhibit 11** at 10:5-7.

5

normal arms-length creditor and bank, and (c) presents Elyce York as a *bona fide* investor. After offering this competing factual narrative that is contradicted by evidence attached to Plaintiff's Motion, FSB urges the Court to deny the requested amendment.

FSB fails to meet its burden of showing "undue delay, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or undue prejudice to the opposing party, or futility of amendment." *Castleglen, Inc.,* 984 F.2d at 1585. FSB bases its futility argument on the bald assertion that Plaintiff "has offered no evidence that she sustained damages as a result of TMR's decision in April 2017 to sell some of its property" and that "[t]here was no equity" in the assets transferred from TMR to Lardyn. [#83 at 10.]

First, the premise of FSB's argument—that Plaintiff has any obligation at this stage to prove the merits of her conspiracy claim, including actual damages or "equity" in the transferred assets—is wrong. Under C.R.S. § 13-21-102(1.5)(a), Plaintiff must make a *prima facie* showing of a triable issue of *exemplary damages,* which she has done. Nothing in the statute requires that Plaintiff present proof in support of actual damages or any other element of her claims.

Second, FSB acknowledges the existence of evidence supporting actual damages. Specifically, FSB informs the Court that TMR conveyed mineral interests to Lardyn for $2.2 million when FSB's own loan presentation memorandum itself valued the mineral interests at $3.4 million—a difference of $1.2 million. [*See* #83 at 8.] In other words, Defendants acknowledge that they assessed the assets transferred from TMR to Lardyn to be worth much more than Lardyn nominally paid.[2]

---

[2] Lardyn contributed *zero* cash when it acquired TMR's assets. Instead, Defendants simply converted FSB's existing loans to TMR into new loans to Lardyn. In other words, Defendants simply transferred TMR's assets together with debt to Lardyn.

Indeed, FSB's assertion that Plaintiff has "no evidence" of damages or equity in the assets transferred is patently false. To give just one short and clear example, Plaintiff offers Elyce York's deposition testimony, where she admits that she and Jonathan Pauling specifically discussed how transferring assets from TMR to Lardyn would make her rich overnight.

> Q. All right. And so what you and Mr. Pauling discussed when you put together these two balance sheets, one dated 3/15/2017 and then the one dated 5/1/2017 – what you and Mr. Pauling discussed *was that your net worth was going to go from $125,000 to $1,739,211; right?*
>
> A. Right.
>
> Q. And you discussed how that was going to happen simply by virtue of Lardyn acquiring these assets from Two Mile Ranch; correct?
>
> A. Right.

*See* Transcript of Deposition of Elyce York, attached hereto as **Exhibit 12**, at 158:16-159:1 (emphasis added). At trial, Plaintiff will present *numerous* emails, balance sheets, tax returns, internal bank memoranda, and other documents authored by Defendants which show that TMR transferred substantial equity to Lardyn. The Court should reject FSB's argument that amendment would be futile on the theory that Plaintiff cannot prove damages.

FSB next urges the Court to read C.R.S. § 13-21-102(1)(a) as prohibiting trial courts from awarding exemplary damages, despite the Colorado Supreme Court's declaration that the statute allows a trial court sitting as the trier of fact to award exemplary damages. [#83 at 11] (citing *Sky Fun 1 v. Schuttloffel,* 27 P.3d 361 (Colo. 2001)). This argument not only asks the Court to ignore *Sky Fun 1* but also invites the Court to overrule the *Erie* doctrine. "Except in matters governed by the Federal Constitution or Acts of Congress, the law to be applied in any case is the law of the State. And whether the law of the State shall be declared by its Legislature in a statute or by its

7

highest court in a decision is not a matter of federal concern." *Erie Railroad Co. v. Tompkins,* 304 U.S. 64, 78 (1938). The Court should decline this invitation.

Finally, FSB argues that Plaintiff's request to pursue exemplary damages is untimely. Although FSB bears the burden on this point, its argument is unclear. FSB leans heavily on a May 2020 email in which Plaintiff's counsel commented that FSB was the only defendant that had "disclosed *what appear* to be fairly comprehensive emails as well as text messages." [#83 at 9, emphasis added.] However, as the Court now knows, FSB withheld thousands of pages of internal emails, including the most incriminating statements by FSB employees to be found in this case.

FSB also asserts, without support, that Plaintiff's "motive" in submitting her Motion is to attract attention from media or regulators. [#83 at 14.] This is nonsensical and false. Plaintiff's "motive" in filing her Motion is apparent on the face of the Motion—namely, to facilitate the Court's consideration of exemplary damages at trial.

Finally, FSB offers a long and largely inaccurate statement about a settlement conversation between counsel on December 3, 2020. FSB *implies* (but does not actually say) that Plaintiff's counsel conferred about exemplary damages during a "one and a half hour call . . . . in follow up to October's failed mediation" on December 3, 2020. [#83 at 14-15.] The implication is incorrect. As of December 3, 2020, Plaintiff's counsel had only just received FSB's November 30 production, was raising questions about FSB's privilege log, and expected to receive (and did in fact receive) additional documents based on those questions. Plaintiff's counsel had not yet considered or determined whether the newly produced evidence warranted exemplary damages, and there was no discussion of an amendment of pleadings to pursue exemplary damages during that call. Rather, as the Court may recall, during the November 2020 discovery hearing FSB argued that it should not be required to produce internal emails after April 2017 on the theory that

Plaintiff's complaint only alleged facts through April 2017. (The Court disagreed with FSB's position.) FSB's argument and the Court's comments were part of counsel's discussion on December 3. Plaintiff's counsel asked whether FSB takes such a narrow view of "notice pleading" that FSB's counsel believed Plaintiff would have to file an amended complaint captured all the bad facts that had been learned through discovery. FSB's counsel said she would object to such an amendment. *That* was the sum total of the conversation related to any amendment of pleadings. There was no discussion of exemplary damages.

On December 23, 2020, after Plaintiff's counsel finished reviewing FSB's production, they promptly requested that all counsel (*including* FSB's counsel) confer by telephone. Although FSB's counsel makes the point that she inadvertently was left off an email to other counsel, Plaintiff's counsel did forward the same email to her four minutes later. Plaintiff conferred with counsel for FSB as well as for Mark Pauling and TMR by telephone on January 21, and with counsel for Elyce York and Lardyn on January 22. Jonathan Pauling is the only party who never responded. Although Plaintiff and FSB have different views of the process of conferral about exemplary damages, there is no question that the parties have conferred extensively.

In sum, FSB fails to show that Plaintiff has acted with "dilatory motive" or that it would be prejudiced in any respect if the Court were to grant Plaintiff's Motion.

## CONCLUSION

For the foregoing reasons, as well as those set forth in the Motion, the Court should grant the Motion.

DATED: March 2, 2021

> s/ Ross W. Pulkrabek
> Keating Wagner Polidori Free, P.C.
> Ross W. Pulkrabek
> 1290 Broadway, Suite 600
> Denver, CO 80203
> Phone: (303) 534-0401
> Email: rpulkrabek@keatingwagner.com
> *Attorney for Plaintiff*

## CERTIFICATE OF SERVICE

I, Amanda Sauermann, hereby affirm that on March 2, 2021, I electronically served a copy of the foregoing on the following counsel for Defendants in this matter:

Beau Bryan Bump, Tracy A. Oldemeyer
Cline Williams Wright Johnson & Oldfather
215 Mathews Street Suite 300
Fort Collins, CO 80524
bbump@clinewilliams.com
toldemeyer@clinewilliams.com

R. Livingston Keithley
Antero Law, LLC
1700 Broadway, Suite 640
Denver, Colorado 80290
lkeithley@anterolaw.com

Peter C. Forbes
CARVER SCHWARZ McNAB KAMPER
& FORBES, LLC
1888 Sherman Street — Suite 400
Denver, Colorado 80203
pforbes@csmkf.com

I also mailed via U.S.P.S. and emailed a copy of the foregoing to Jonathan Pauling at the below addresses:

60773 North Highway 71
Stoneham, CO 80754
paulingjonathan2@gmail.com

> /s/ Amanda Sauermann
> Amanda Sauermann