```
 1              IN THE UNITED STATES DISTRICT COURT

 2                 FOR THE DISTRICT OF COLORADO

 3
    Civil Action No. 19-CV-01224-RBJ
 4

 5   AMANDA WILSON,

 6          Plaintiff,

 7          vs.

 8   JONATHAN PAULING, et al.,

 9          Defendants.

10  ----------------------------------------------------------------
                          REPORTER'S TRANSCRIPT
11                         Scheduling Conference
    ----------------------------------------------------------------
12
              Proceedings before the HONORABLE R. BROOKE JACKSON,
13  Judge, United States District Court for the District of
    Colorado, commencing on the 19th day of February, 2020, in
14  Courtroom A902, United States Courthouse, Denver, Colorado.

15                             APPEARANCES

16  For the Plaintiff:
    ROSS W. PULKRABEK and AARON D. GOLDHAMER, Keating Wagner
17  Polidori & Free, PC, 1290 Broadway, Ste. 600, Denver, CO 80203

18  For the Defendants:
    CHRISTOPHER W. CARR, Dill Dill Carr Stonbraker & Hutchings,
19  PC, 455 Sherman St., Ste. 300, Denver, CO 80203

20  R. LIVINGSTON KEITHLEY, Antero Law LLC, 1700 Broadway, Ste.
    640, Denver, CO 80290
21
    PETER C. FORBES, Carver Schwarz McNab Kamper & Forbes, LLC,
22  1888 Sherman St., Ste. 400, Denver, CO 80203

23  TRACY A. OLDEMEYER, Cline Williams Wright Johnson & Oldfather,
    215 Mathews St., Ste. 300, Fort Collins, CO  80524
24

25      Sarah K. Mitchell, RPR, CRR, 901 19th Street, Room A252,
                   Denver, CO 80294, 303-335-2108
             Proceedings reported by mechanical stenography;
                 transcription produced via computer.
```

**EXHIBIT 11**

19-CV-01224-RBJ    Scheduling Conference    02/19/2020    7

1   concerning exhibits, witnesses, in limine issues.  Anything
2   that needs to be resolved before trial we'll deal with that
3   day.  I don't care about a final pretrial order as such.  I
4   never require those, but the conference will take the place of
5   that.
6           All right.  Now, let me go back over the complaint.
7   I think I noted a couple of questions.  Well, on page 10
8   there's a little discussion of settlement.  I guess
9   instinctively I have to question whether you're going to
10  settle this case if you haven't by now, but plaintiff says she
11  is amenable to scheduling a mediation or otherwise engaging in
12  settlement discussions.  Defendants say they have asked
13  plaintiff to provide a number based upon the value of the
14  property transferred, but the defendants, at least all but
15  Jonathan, indicate that they're amenable to scheduling a
16  mediation or discussing settlement, but believe that some
17  discovery is needed first.
18          Are you folks actually going to mediate and maybe
19  settle this?  That certainly would be what the plaintiff would
20  like.
21          MR. PULKRABEK:  Well, the offer still stands.  I
22  mean, we're certainly open and interested in discussing
23  settlement if we can.
24          MR. FORBES:  Your Honor, I think on this side of the
25  table, as laid out here, there's a fundamental question, which

Sarah K. Mitchell, RPR, CRR

**EXHIBIT 11**

```
19-CV-01224-RBJ    Scheduling Conference      02/19/2020    8
```

1  is what -- were there assets transferred?  Was there any
2  equity in the properties that were transferred?  And if so,
3  how much was that equity, because fraudulent transfers
4  liability is only if there was equity transferred and then
5  based on the actual equity that was transferred.  So that is
6  -- and the bank did have appraisals that have been produced.
7  They did have loans against the property.  The balances of
8  those loans have also been produced.
9        So at this point, I think the question ultimately is
10 going to be -- and I think probably we need to get new
11 appraisals for the litigation here.  But the question
12 ultimately is going to be what's the value, and we think we
13 need to do discovery on that issue before -- before a mediator
14 can assist the parties hopefully in evaluating the true
15 exposure, if any, that the defendants may have.
16        THE COURT:  Well, are you saying that the only assets
17 that are even potentially available are the ranch properties?
18        MR. FORBES:  Well, I can tell you in the case of my
19 defendant that's certainly the case.  Obviously the bank has
20 money.
21        THE COURT:  Well, what you're telling me is that's
22 what you think is the case.
23        MR. FORBES:  Well, I know that's the case.
24        THE COURT:  How do you know that?
25        MR. FORBES:  Well, talking to my client.

                    Sarah K. Mitchell, RPR, CRR

**EXHIBIT 11**

19-CV-01224-RBJ    Scheduling Conference    02/19/2020    9

1          THE COURT:  That's what I thought.
2          MR. FORBES:  Yeah.  I haven't done --
3          THE COURT:  The whole purpose of the case is to claim
4   that this group of defendants is playing fast and loose with
5   the facts, and if there were any truth to that, it could be
6   that counsel were not aware of all the facts.
7          MR. FORBES:  Your Honor, I guess -- I guess my view
8   is let's even assume that there was somebody that was engaged
9   in an improper transaction, which we deny, but let's say they
10  did this with malicious intent.  It wouldn't make any
11  difference if what they transferred were not assets with
12  equity.  We're governed by Colorado law.  There's a Colorado
13  case that we cited in our motion to dismiss, which
14  unfortunately I don't have with me -- it's Sportsmen's
15  something, and I apologize for not having the exact cite --
16  involved this exact type of situation where there were assets
17  that had no value because they were fully encumbered.  They
18  were admittedly transferred to defeat the lien of a judgment
19  creditor, and the Colorado Court of Appeals ruled that, well,
20  there's no liability because there's no fraudulent transfer
21  because there is nothing of value that was transferred.
22         And that I'm saying is the -- that is the fundamental
23  issue in this case, is our view and our position, and we think
24  the evidence shows that all these assets transferred were
25  fully encumbered.  They weren't worth as much as the bank loan

                            Sarah K. Mitchell, RPR, CRR

**EXHIBIT 11**

```
19-CV-01224-RBJ     Scheduling Conference     02/19/2020     10
```

1   against them, so basically it doesn't make any difference
2   because nothing was taken away from the judgment creditor that
3   could be used to realize her judgment, satisfy her judgment.
4   So I guess --
5             THE COURT:  Well, it could potentially make a
6   difference because by what you're telling me you're leaving
7   poor Ms. Oldemeyer picking up the drinks.
8             MR. FORBES:  Well, we're not -- that's not the case,
9   Your Honor.  First, she can only get a charging order against
10  a partnership anyway, right, which means only if there's
11  distributions from the partnership could she collect those.
12  She's claiming that these assets had value and these assets
13  were transferred away.  She's got to show the assets had
14  value.  We don't think the assets had value.  We think there
15  wasn't any monkey business involved anyway, but even assuming
16  there was, my point is it doesn't make any difference unless
17  the assets had value.
18            THE COURT:  Well, there apparently was some monkey
19  business involved in the facts that were tried in the Denver
20  District Court.
21            MR. FORBES:  Right.  My client wasn't involved in
22  that at all.
23            THE COURT:  No.  No.  Okay.  Well, you could be
24  100 percent right.  There's no money there.  I don't know.
25            MR. FORBES:  Right.

                         Sarah K. Mitchell, RPR, CRR

                                                         **EXHIBIT 11**