IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01224-RBJ-STV

AMANDA WILSON, a Michigan citizen,

Plaintiff,

v.

JONATHAN PAULING, an individual Colorado citizen,
MARK PAULING, an individual Colorado citizen,
TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP, a Colorado General Partnership,
ELYCE YORK, an individual Nebraska or Colorado citizen,
LARDYN CONSULTING, LLC, a Nebraska Limited Liability Company, and
FARMERS STATE BANK, a Nebraska corporation,

Defendants.

## LARDYN DEFENDANTS' TRIAL BRIEF

### BACKGROUND

Two Mile Ranch ("TMR") was formed in 1986 as an equal partnership between Jonathan and Mark Pauling (respectively "J. Pauling" and "M. Pauling"). Farmers State Bank ("FSB") became TMR's primary lender in January 2013. At that time, TMR's principal business involved custom cattle-breeding on a farm it owned in Logan County.

On February 26, 2013, plaintiff and J. Pauling, who had been in a prior personal relationship, smoked and consumed medical marijuana purchased by plaintiff. J. Pauling then assaulted plaintiff. None of the other defendants had anything to do with that attack. Plaintiff sued J. Pauling in December 2013, approximately 10 months later. On October 23, 2015, following trial, judgment entered in plaintiff's favor. J. Pauling did not disclose his assault or plaintiff's lawsuit to FSB until after that judgment entered. On November 19, 2015, the Denver District Court issued a charging order against J. Pauling's interest in TMR.

A. <u>Plaintiff's Claims Against The Lardyn Defendants.</u>

On April 27, 2017, Lardyn paid $7,100,000 to acquire TMR's mineral rights, Logan County real property (including water rights), and equipment. That price was based primarily on appraisals obtained by FSB. Lardyn did not purchase TMR's real property in Jefferson County or a partnership receivable from M. Pauling. Plaintiff claims that sale violated CUFTA and that the Lardyn Defendants also conspired to violate CUFTA.[1]

B. <u>The Charging Order Remedy.</u>

Charging orders were developed to balance the rights of a partner's personal creditors against the interest of non-debtor partners in continuing the partnership business. Thus, charging orders do not allow execution on partnership assets. *See Union Colony Bank v. United Bank of Greeley,* 832 P.2d 1112, 1114-15 (Colo. 1992). Nor do they entitle a creditor to force partnership distributions. *See JPMorgan Chase Bank, N.A. v. McClure,* 393 P.3d 955, 958 (Colo. 2017). Instead, they create two different and distinct remedies. The first requires payment of a debtor partner's distributions to the partner's personal creditors. The second allows personal creditors to ask the issuing court to foreclose on the debtor partner's interest. *See Union Colony Bank,* 832 P.2d at 1116. If that request is granted and the creditor acquires the interest, it can seek dissolution and then recover the partner's share of the surplus (if any) remaining after all partnership debts are paid. *See* C.R.S. §7-60-132(2)(b).

---

[1] Under C.R.S. §7-64-1205(1), because TMR was formed in 1986 and did not elect to be governed by the Uniform Partnership Act, C.R.S. §7-64-101 *et seq.,* the Uniform Partnership Law, C.R.S. §7-60-101 *et seq.* (the "UPL"), applies to plaintiff's charging order. Plaintiff did not seek relief in the Denver District Court under the charging order provisions of the UPL, instead bringing claims in this court under C.R.S. §38-8-101 *et seq.* ("CUFTA"). The Lardyn Defendants' position is that the UPL provides the exclusive remedies for a partner's personal creditors and therefore this Court lacks subject matter jurisdiction over plaintiff's CUFTA claims. They recognize, however, that barring the Court's reconsideration of its May 6, 2020 Order, this Court is exercising jurisdiction over those claims.

{00414751.DOCX / 1 }                                     2

Additionally, to ensure the effectiveness of charging orders, C.R.S. §7-60-128 vests the issuing court with the authority "to make all other orders […] that the circumstances of the case may require." Under this provision the issuing court can provide a remedy if the partnership engages in fraudulent conveyance-like transactions that improperly devalue the debtor partner's interest to the detriment of his or her personal creditors. *See Wisdom Nat'l Bank v. Klein,* 254 N.W. 602, 605 (Minn. 1934); *accord Central Petroleum Corp. v. Korman,* 177 N.Y.S.2d 761, 764 (Sup. Ct. 1958).

C. Plaintiff's Burden Under CUFTA.

The sale to Lardyn was not between husband and wife. Therefore, plaintiff has the burden of proving "each and every element" of her CUFTA claims. *See Schempp v. Lucre Mgmt. Group, LLC,* 75 P.3d 1157, 1165 (Colo.App. 2003). To establish an improper transfer, plaintiff must show that the sale to Lardyn involved "assets" within the meaning of C.R.S. §38-8-102(2)(a). *See Park County Sportsmen's Ranch,* 271 P.3d 562, 572 (Colo.App. 2011). To do so, plaintiff must show that as of April 27, 2017 the fair market value of the transferred property was greater than the valid liens against it. If she cannot make that showing, then as a matter of law no fraudulent transfer occurred. *See Park County Sportsmen's Ranch,* 271 P.3d at 571. And if plaintiff cannot show that a fraudulent transfer occurred, she cannot establish an actionable civil conspiracy. *See id.* at 572 (defendants' intent "was immaterial" when no fraudulent transfer occurred); *accord Double Oak Const., L.L.C. v. Cornerstone Dev. Int'l, L.L.C.,* 97 P.3d 140, 146 (Colo.App. 2003) ("If the acts alleged to constitute the underlying wrong provide no cause of action, then there is no cause of action for the conspiracy itself.").

D. Plaintiff Did Not Independently Value The Property Sold To Lardyn.

Under the Federal Rules of Evidence, fair market value must be established

through expert opinion. That rule applies in diversity cases governed by Colorado law, except potentially to a property owner's lay opinions that are not based on technical or specialized knowledge. *See James River Ins. Co. v. Rapid Funding, LLC,* 658 F.3d 1207, 1213-17 (10th Cir. 2011). Plaintiff did not hire appraisers or other experts to value the property sold to Lardyn. Instead, she retained a forensic accountant (Shari Lutz) who, for the most part, adopted the internal values assigned by FSB at the time of the sale, some of which were based on appraisals and some of which were not.

Such an approach violates *James River Ins. Co.* because it attempts to have Ms. Lutz offer opinions on property value without the necessary qualifications. It also violates Colorado's common law rule because it seeks to establish value by using lay opinions from FSB, which is not the property owner. Additionally, plaintiff's approach contravenes the recognized principle that fair market value must be established through accepted valuation methods. *See, e.g., Asarco LLC v. Ams. Mining Corp.,* 396 B.R. 278, 337 (S.D.Tex. 2008); *accord r2 Advisors, LLC v. Equitable Oil Purchasing Co.,* 567 B.R. 615, 629 (Bankr.D.Wyo. 2017).

Ms. Lutz also relies on values shown on Lardyn's post-April 27, 2017 internal balance sheets. Even if such values constitute admissible lay opinion, their use is inconsistent with established fraudulent conveyance jurisprudence, which C.R.S. §38-8-112 urges this Court to follow. *See, e.g., Kipperman v. Onex Corp.,* 411 B.R. 805, 837 (N.D.Ga. 2009) (courts "should not look with hindsight at a transaction because such an approach could transform fraudulent conveyance law into an insurance policy for creditors"); *see also In re Morris Comm'ns NC, Inc.,* 914 F.2d 458, 466 (4th Cir. 1990) (neither subsequent depreciation or appreciation is relevant in determining whether reasonably equivalent value was given). Additionally, plaintiff's approach is inconsistent with the general recognition that internal

balance sheet numbers not supported by recent appraisals or extrinsic evidence should be given no weight.  *See In re F&C Cent. Mfg. Corp.,* 53 F.R.842, 849 (Bankr.E.D.N.Y. 1985); *accord In re Multiut Corp.,* 449 B.R. 323, 345 (Bankr.N.D.Ill. 2011).

  E. <u>Plaintiff's Novel Theory That TMR Transferred Its "Partners' Capital."</u>

    FSB's records show that TMR's secured debt as of April 27, 2017 was $10,141,626.08.  Even using the property values adopted by Ms. Lutz, there was no equity in the property sold to Lardyn.  [*See* Exhibit A.]  Thus, as a matter of law, the sale to Lardyn could not be a fraudulent transfer.  *See Park County Sportsmen's Ranch,* 271 P.3d at 572.

    To circumvent that reality, Ms. Lutz will seek to opine that TMR really sold its "partners' capital," which is a balance sheet number she derives by subtracting some (but not all) of TMR's secured debt from the values she adopted for all TMR's property (not just the property sold to Lardyn).  CUFTA, however, only applies to transfers involving property of a debtor.  *See* C.R.S. §38-8-102(2).  In turn, it defines the term "property" as "anything that may be the subject of ownership."  *See* C.R.S. §38-8-102(11).  The "partners' capital" that Ms. Lutz contends was transferred is simply a balance sheet number.  Thus, it cannot be the subject of ownership.  Accordingly, it cannot be the subject of a CUFTA claim.

    Additionally, Ms. Lutz's calculation both includes property that TMR did not sell to Lardyn and excludes TMR's liability for post-July 1, 2016 interest and fees and its liability under a guaranty of M. Pauling's loans.  As the attached Exhibit B shows, only through making such artificial adjustments can Ms. Lutz opine that there was a positive value to the "partners' capital" allegedly transferred to Lardyn because —when only the property sold to Lardyn is considered — no "partners' capital" was transferred even if the calculation only includes some of TMR's debt, per Ms. Lutz' approach.  [*Compare* Exhibit B, Illust. No. 1 *with id.,* Illust. No. 3.]

F.  <u>Plaintiff's Damages Are Limited By The Reach Of Her Charging Order.</u>

CUFTA limits a plaintiff's damages to what she could have recovered to satisfy her judgment if the improper transfer had not occurred. *See Park County Sportsmen's Ranch*, 271 P.3d at 571 ("the purpose behind fraudulent conveyance law is to allow creditors to recover what they would have recovered had the transfer not taken place"); *accord, e.g., Korth v. Luther*, 935 N.W.2d 220, 241 (Neb. 2019). Using plaintiff's values, and assuming the relevant calculation includes all TMR's property, not just the property sold to Lardyn, if all TMR's secured debt is considered (not just some of it), there would have been only $459,119 in "partners' capital" transferred to Lardyn. [*See* Exhibit B, Illus. No. 2.] Under her charging order, plaintiff could only have recovered half that amount by foreclosing on J. Pauling's interest and then recovering J. Pauling's 50% share of that "partners' capital." Hence, even under plaintiff's theory, once the full amount of TMR's secured debt is considered, any damage award would be limited to J. Pauling's 50% share of that amount, or $229,559.50.

Dated: April 8, 2021
       Denver, Colorado

    CARVER SCHWARZ McNAB KAMPER
    & FORBES, LLC

    *s/Peter C. Forbes*
By:_____
    Peter C. Forbes
    1888 Sherman Street — Suite 400
    Denver, Colorado 80203
    Telephone: 303.893.1815
    Fax: 303.893.1829
    pforbes@csmkf.com

*Attorneys for the Lardyn Defendants*

## **CERTIFICATE OF SERVICE**

    I hereby certify that on April 8, 2021, the undersigned caused a true and correct copy of the above and foregoing to be served upon the following via the CM/ECF system:

Ross W. Pulkrabek
Aaron D. Goldhamer
Keating Wagner Polidori Free, PC
1290 Broadway — Suite 600
Denver, Colorado 80203
agoldhamer@keatingwagner.com
rpulkrabek@keatingwagner.com

R. Livingston Keithley
Antero Law, LLC
1700 Broadway, Suite 640
Denver, Colorado 80290
lkeithley@anterolaw.com

Tracy A. Oldemeyer
Cline Williams Wright Johnson & Oldfather
Fort Collins
215 Mathews Street
Suite 300
Fort Collins, CO 80524
bbump@clinewilliams.com
toldemeyer@clinewilliams.com

A copy was mailed via the United States postal service and emailed to:

Mr. Jonathan Pauling
60773 North Highway 71
Stoneham, Colorado 80754
paulingjonathan@@gmail.com

            *Diane Wziontka*
          By:_____