IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-01224-RBJ-STV

**AMANDA WILSON**, a Michigan citizen,

Plaintiff,

v.

**JONATHAN PAULING**, an individual Colorado citizen, **MARK PAULING**, an individual Colorado citizen, **TWO MILE RANCH a/k/a TWO MILE RANCH GENERAL PARTNERSHIP**, a Colorado General Partnership, **ELYCE YORK**, an individual Nebraska or Colorado citizen, **LARDYN CONSULTING LLC**, a Nebraska Limited Liability Company, and **FARMERS STATE BANK**, a Nebraska Corporation.

Defendants.

---

**PLAINTIFF'S TRIAL BRIEF**

---

Plaintiff Amanda Wilson submits the following Trial Brief.

**I.      Overview of the Case / Timeline**

Plaintiff is suing Defendants for transferring assets from Two Mile Ranch ("TMR") to Lardyn Consulting ("Lardyn") for the purpose of circumventing a Charging Order entered by Judge Ross Buchanan and thereby preventing Plaintiff from collecting her judgment against Jon Pauling. In so doing, Defendants violated the Colorado Uniform Fraudulent Transfer Act ("CUFTA") and engaged in a civil conspiracy that caused Plaintiff damages.

Defendants' efforts to circumvent the Charging Order and cheat Plaintiff out of her judgment occurred in three phases. The first phase involved Jon Pauling and Mark Pauling's creation of a fraudulent, backdated document that purported to reduce Jon Pauling's share of profits in TMR, thereby undermining the Charging Order. The second phase involved Defendants' scheme to have the United States Bankruptcy Court approve a plan for TMR to transfer assets to

1

a "unicorn like investor," *i.e.,* Lardyn, which Jon Pauling controlled through insider and straw woman Elyce York. The third phase involved Defendants' transfer of assets from TMR to Lardyn—and later to another insider, Redtail Resources, LLC—to protect Jon Pauling's wealth from collection by Plaintiff. *See* Plaintiff's Timeline, attached as **Appendix 1**.

## II.     Statutes Applicable to Defendants' Collusive Bankruptcy Proceeding.

In 2016, Defendants developed a scheme in which TMR would file a Chapter 11 bankruptcy, then present the Bankruptcy Court with a pre-arranged plan to sell TMR's assets to a new "investor." Defendants conceived that they could get their plan "stamped approved" and that this would "protect[] the partnership from the plaintiff for the long run." Bank employees nervously joked about how this plan revolved around a "unicorn like investor." Indeed, the "investor" was Lardyn, a company that Jon Pauling set up through his insider and straw woman, Ms. York. Defendants proceeded with this plan by having TMR file Chapter 11 on July 1, 2016. In internal bank memos, the bank stated that it was working with Jon Pauling and Mark Pauling on the Chapter 11 "to get rid of" Plaintiff's judgment and protect Defendants' planned transfer of assets to Lardyn against future legal claims. Although Defendants took substantial steps toward carrying out their plan in bankruptcy, they later abandoned that plan for an equally collusive agreement to have TMR move for dismissal of its Chapter 11 bankruptcy, *then* transfer the assets.

In connection with this phase of Defendants' civil conspiracy, Plaintiff draws the Court's attention to two federal statutes. The first is 18 U.S.C. § 157, which provides as follows:

> A person who, having devised or intending to devise a scheme or artifice to defraud and for the purpose of executing or concealing such a scheme or artifice or attempting to do so—
>
> (1) files a petition under title 11, including a fraudulent involuntary petition under section 303 of such title; [or]
>
> (2) files a document in a proceeding under title 11; . . .

shall be fined under this title, imprisoned not more than 5 years, or both.

18 U.S.C. § 157. The second statute, 18 U.S.C. § 152, broadly prohibits acts of concealment, misrepresentation, or collusive dealing among debtors, creditors, or third parties in the course of a bankruptcy. Particularly, it is unlawful to "knowingly and fraudulently give[], offer[], receive[], or attempt[] to obtain any money or property . . . or promise thereof for acting or forbearing to act in any case under title 11." 18 U.S.C. § 152(6).

The foregoing statutes offer a legal frame of reference for Defendants' conduct in relation to the Chapter 11 bankruptcy. Though it may be enough that the bankruptcy was collusive and done with the intent to circumvent the Charging Order and Plaintiff's judgment, Plaintiff submits that Defendants' conduct was affirmatively unlawful and fraudulent under these federal statutes.

### III.     The Colorado Uniform Fraudulent Transfer Act ("CUFTA")

The standard for liability under section 105(1)(a) of CUFTA is that the Defendants acted with "actual intent to hinder, delay, or defraud" the plaintiff. *See* C.R.S. § 38-8-105(1)(a). The Court will receive direct proof of Defendants' wrongful intent, such as memos and emails in which Defendants state their intent "to get rid of" Plaintiff's judgment and "protect[] the partnership from the plaintiff for the long run." Of course, the Court also may consider the non-exclusive "badges of fraud" listed under section 105(2), most of which apply on their face and require no elaboration.

#### A.     Collusion between a debtor, insider, and lienor is a badge of fraud.

The following badge of fraud, although not directly on point, comes very close to the facts of this case and is instructive: "(k) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor." C.R.S. § 38-8-105(2)(k).

> The effect of the two transfers described in . . . section 38-8-105(2)(k) . . . , if not avoided, may be to permit a debtor and a lienor to deprive the debtor's unsecured creditors of access to the debtor's assets for the purpose of collecting their claims

3

> while the debtor, the debtor's affiliate or insider, and the lienor arrange for the beneficial use or disposition of the assets in accordance with their interests. The kind of disposition sought to be reached here is exemplified by that found in *Northern Pacific Co. v. Boyd,* 228 U.S. 482 (1913), the leading case in establishing the absolute priority doctrine in reorganization law. There the Court held that a reorganization whereby the secured creditors and the management-owners retained their economic interests in a railroad through a foreclosure that cut off claims of unsecured creditors against its assets was in effect a fraudulent disposition (id. at 502-05).

C.R.S. § 38-8-105 cmt. [7].

Here, Defendants transferred TMR's essential assets to Lardyn in full coordination with the bank as "lienor." Although Defendants continue to argue that the bank's status as a lienor absolutely prohibits any finding that they violated CUFTA or conspired to violate CUFTA, a collusive transfer among a debtor, an insider, and a lienor is itself a recognized badge of fraud.

### B. CUFTA does not limit damages to the value of the asset at the time of transfer.

CUFTA contains two damage clauses applicable to this case. The first provides as follows:

> (2) Except as otherwise provided in this section, to the extent a transfer is voidable in an action by a creditor under section 38-8-108 (1) (a), the creditor may recover judgment for the value of the asset transferred, *as adjusted under subsection (3) of this section,* or the amount necessary to satisfy the creditor's claim, whichever is less. The judgment may be entered against:
>
> (a) The first transferee of the asset or the person for whose benefit the transfer was made; or
>
> (b) Any subsequent transferee other than a good-faith transferee or obligee who took for value or from any subsequent transferee or obligee.
>
> (3) If the judgment under subsection (2) of this section is based upon the value of the asset transferred, the judgment must be for an amount equal to the value of the asset at the time of the transfer, *subject to adjustment as the equities may require*.

C.R.S. § 38-8-109(2)-(3) (emphasis added). Thus, damages are not limited to the value of the transferred asset at the time of transfer. Rather, CUFTA directs trial court consider the value at the time of transfer and then make adjustments "as the equities may require."

4

The equities requiring adjustments are compelling in this case. Defendants undervalued the transferred assets at the time of transfer. Defendants subsequently signed balance sheets, filed tax returns, and created other documents in which they reflected substantially greater valuations. Further, the evidence will show that the entire point of the asset transfer was to enable Jon Pauling to maintain control over and benefit from the increased value of assets, which he has done.

In addition, CUFTA provides for a 50% statutory multiplier on damages in cases where defendants are found to have acted with "actual intent to hinder, delay, or defraud." *See* C.R.S. § 38-8-108(1)(c). CUFTA also authorizes an award of the plaintiff's "actual costs" in such cases. *See id.* As this case most definitely involves "actual intent to hinder, delay, or defraud," Plaintiff requests the 50% multiplier plus her actual costs.

**C.    CUFTA authorizes supplementary equitable remedies to aid collection.**

CUFTA also authorizes several equitable remedies designed to prevent further fraud and aid final collection of a plaintiff's judgment. Such remedies include injunctions against further asset transfers, avoidance of transfers, attachments against transferred assets, and levy and execution against transferred assets. *See* C.R.S. § 38-8-109(1)(a), (b), (d) & (2). Plaintiff's prayer for relief includes a request for these supplemental remedies. Given the problems that Plaintiff has faced collecting her judgment against Jon Pauling, Plaintiff anticipates that she will request one or more of these supplemental remedies at the conclusion of trial.

DATED: April 8, 2021

> *s/ Ross W. Pulkrabek*
> Keating Wagner Polidori Free, P.C.
> Ross W. Pulkrabek
> 1290 Broadway, Suite 600
> Denver, CO 80203
> Phone: (303) 534-0401
> Email: rpulkrabek@keatingwagner.com
> *Attorney for Plaintiff*

CERTIFICATE OF SERVICE

      I, Amanda Sauermann, hereby affirm that on April 8, 2021, I electronically served a copy of the foregoing on the following counsel for Defendants in this matter:

Beau Bryan Bump, Tracy A. Oldemeyer
Cline Williams Wright Johnson & Oldfather
215 Mathews Street Suite 300
Fort Collins, CO 80524
bbump@clinewilliams.com
toldemeyer@clinewilliams.com

R. Livingston Keithley
Antero Law, LLC
1700 Broadway, Suite 640
Denver, Colorado 80290
lkeithley@anterolaw.com

Peter C. Forbes
CARVER SCHWARZ McNAB KAMPER
& FORBES, LLC
1888 Sherman Street — Suite 400
Denver, Colorado 80203
pforbes@csmkf.com

      I also mailed via U.S.P.S. and emailed a copy of the foregoing to Jonathan Pauling at the below addresses:

60773 North Highway 71
Stoneham, CO 80754
paulingjonathan2@gmail.com

                                                            */s/ Amanda Sauermann*
                                                            Amanda Sauermann